Marc Seltzer (SBN 54534)
Meng Xi (SBN 280099)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
mseltzer@susmangodfrey.com
mxi@susmangodfrey.com

Ophelia Camiña *(Pro Hac Vice)*
Daniel Charest *(Pro Hac Vice)*
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone:  (214) 754-1900
Facsimile:  (214) 754-1933
ocamina@susmangodfrey.com
dcharest@susmangodfrey.com

Attorneys for Defendant
COPART, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| SPARTA CONSULTING, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>COPART, INC.,<br><br>                Defendant. | CASE NO. 2:14-CV-00046-KJM-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COPART, INC.'S MOTION TO DISMISS OR TRANSFER**<br><br>Before the Hon. Judge Kimberly J. Mueller<br><br>Date:        June 20, 2014<br>Time:        10:00 a.m.<br>Location:  Courtroom 3, 15th Floor |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................. 2

    A.  The Parties and the AIMOS Project ........................................................... 2

    B.  Performance Under the Contract ................................................................ 3

    C.  The Controversy Leading Up to the Litigation ......................................... 4

    D.  The Parallel Actions .................................................................................. 5

III.  ARGUMENT ...................................................................................................... 5

    A.  The First-to-File Rule Requires Dismissal of the California Action ..................... 5

        1.  There is No Dispute that this is the Second-Filed Action ........................... 6

        2.  The Actions Involve Identical Parties ........................................ 6

        3.  The Actions Involve Substantial Overlap on Substantive Issues ............... 7

        4.  No Special Circumstances Justify Departure From the Rule .................... 8

            a.  Copart Did Not File Suit in Anticipation or Bad Faith ................. 8

            b.  Sparta Has No Evidence of Forum Shopping ................................ 9

    B.  Alternatively, the California Action May be Transferred ..................................... 11

    C.  The Balance of Convenience and Interest of Justice Favor Transfer.................... 11

        1.  Texas Provides Easier Access to Sources of Proof ................................... 12

        2.  Availability of Compulsory Process Favors Transfer .............................. 13

        3.  Cost of Attendance for Willing Witnesses Favors Texas ......................... 13

        4.  Either Forum is Capable of Deciding This Case....................................... 17

        5.  Shorter Time to Trial Favors Transfer to Texas........................................ 18

        6.  Texas Has an Interest in Deciding the Case.............................................. 18

IV.  CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

Cases

*Aland v. Faison Assocs.*, No. 3-97-cv-2482,
    1998 U.S. Dist. LEXIS 9649 (N.D. Tex. June 18, 1998).................................... 10

*Alltrade v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991)................................................................... 5, 6, 11

*Carolina Cas. Co. v. Data Broad. Corp.*,
    158 F. Supp. 2d 1044 (N.D. Cal. 2001) ........................................................ 9

*Cedars-Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997)...................................................................... 11

*Church of Scientology v. Dep't of the Army*,
    611 F.2d 738 (9th Cir. 1980)........................................................................ 6

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986)...................................................................... 12

*Genentech,*,
    2010 U.S. Dist. LEXIS 126773.................................................................. 11

*Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-08-02745,
    2008 U.S. Dist. LEXIS 78260 (N.D. Cal. Oct. 6, 2008)................................. 11

*Greenline Indus. v. Agri-Process Innovations, LLC*, No. C 08-2438,
    2008 U.S. Dist. LEXIS 60504 (N.D. Cal. July 28, 2008)................................. 6

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)................................................................................. 12

*Hilton v. Apple Inc.*, No. C 13-2167,
    2013 U.S. Dist. LEXIS 142354 (N.D. Cal. Oct. 1, 2013)................................. 6

*Hong v. Morgan Stanley & Co., LLC*, No. C12-01756,
    2012 U.S. Dist. LEXIS 150382 (N.D. Cal. Oct. 18, 2012)............................. 12

*In re Crown Vantage, Inc.*,
    421 F.3d 963 (9th Cir. 2005)........................................................................ 7

*Mediostream, Inc. v. Priddis Music, Inc.*, No. C07-2127,
    2007 U.S. Dist. LEXIS 73707 (N.D. Cal. Sept. 24, 2007) ............................... 9

*Meru Networks, Inc. v. Extricom Ltd.*, No. C-10-02021,
    2010 U.S. Dist. LEXIS 90212 (N.D. Cal. Aug. 31, 2010)............................... 11

*PETA, Inc. v. Beyond the Frame, LTD*, No. CV 10-07576,
    2011 U.S. Dist. LEXIS 157782 (C.D. Cal. Feb. 16, 2011)........................... 6, 11

Brief ISO Motion to Dismiss or Transfer

*Nakash v. Marciano,*
  882 F.2d 1411 (9th Cir. 1989)............................................................................. 6, 7

*Nat'l Broom Co. of Cal., Inc. v. Brookstone Co., Inc.,* No. C 09-00959,
  2009 U.S. Dist. LEXIS 69630 (N.D. Cal. July 30, 2009)...................................... 9

*Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.,* No. 10-3134,
  2011 U.S. Dist. LEXIS 56026 (E.D. Cal. May 24, 2011)...................................... 6, 8

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
  678 F.2d 93 (9th Cir. 1982).............................................................................. 5, 6, 11

*Palantir Techs., Inc. v. Palantir.net, Inc.,* No. C 07-03863,
  2007 U.S. Dist. LEXIS 76830 (N.D. Cal. Oct. 2, 2007)........................................ 10

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981)....................................................................................... 10, 12, 13

*Halo Couture, LLC v. Miracle 7, Inc.,* No. 13cv1780,
  2013 U.S. Dist. LEXIS 150426 (S.D. Cal. Oct. 17, 2013) .................................... 9

*St. Helena Wine Co. v. Allied Mgm't,* No. C98-1683,
  1998 U.S. Dist. LEXIS 12558 (N.D. Cal. Aug. 10, 1998)..................................... 11

*Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Tex. Sys.,*
  458 F.3d 1335 (Fed Cir. 2006).......................................................................... 10

*Twin City Ins. Co. v. Key Energy Servs.,* No. H-09-0352,
  2009 U.S. Dist. LEXIS 46267 (S.D. Tex. June 2, 2009) ...................................... 9

*Van Dusen v. Barack,*
  376 U.S. 612 (1964) ......................................................................................... 11

*Welenco, Inc. v. Corbell,* No.,S-13-0287,
  2014 U.S. Dist. LEXIS 4770 (E.D. Cal. Jan. 13, 2014)......................................... 14

*Xcel Data Sys. v. Best,* No. 1:08-CV-00613,
  2009 U.S. Dist. LEXIS 35013 (E.D. Cal. Apr. 7, 2009) ....................................... 14

*Z-Line Designs, Inc. v. Bell'O In'l, LLC,*
  218 F.R.D. 663 (N.D. Cal. 2003) ..................................................................... 8

*Zut v. Harrah's Entm't, Inc.,* No. C13-2372,
  2013 U.S. Dist. LEXIS 142355 (N.D. Cal. Sept. 30, 2013) .................................. 13

<u>Statutes</u>

28 U.S.C. § 1404(a) ............................................................................................ 1, 11, 12

Cal. Bus. & Prof. Code § 17200 ........................................................................... 17

Brief ISO Motion to Dismiss or Transfer

3105068v1/013937

Tex. Bus. & Com. Code Ann. § 17.46(a)...................................................................... 17

Rules

Fed. R. Civ. P 12(b)(6)................................................................................................... 5

Fed. R. Civ. P. 13 .......................................................................................................... 7

Fed. R. Civ. P. 45 ........................................................................................................ 13

Treatises

15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
     § 3851 (3d ed. 2007) ............................................................................................ 14

1   **I.      INTRODUCTION**

2          On November 1, 2013, Copart, Inc. ("Copart") sued Sparta Consulting, Inc. ("Sparta") in

3   Dallas, Texas—Copart's hometown, the location of a significant amount of the work at issue, and

4   the site of the harm and injury Sparta caused Copart.  That suit is presently pending in the United

5   States District Court for the Northern District of Texas (Dallas Division).  *See Copart, Inc. v.*

6   *Sparta Consulting, Inc.*, No. 3:14-cv-00013 (N. D. Tex., Hon. Judge Sam Lindsay) (the "Texas

7   Action").[1]

8          On January 8, 2014—over **two months** later—Sparta filed this suit against Copart in the

9   United States District Court for the Eastern District of California (Sacramento Division).  *See*

10  *Sparta Consulting, Inc. v. Copart, Inc.*, No. 2:14-CV-00046 (E. D. Cal., Hon. Judge Kimberly

11  Mueller) (the "California Action").  In the California Action, Sparta alleges mirror-image claims

12  to the claims asserted by Copart in the Texas Action.[2]

13         The California Action should be dismissed because the first-to-file rule applies and there

14  is no reason for deviating from the rule. The Texas Action is the first-filed case, and the

15  California Action is a parallel action involving identical parties and asserting substantially similar

16  claims.  Dismissing the California Action in favor of the Texas Action will promote judicial

17  economy by preventing duplicative litigation from proceeding in two separate forums.

18  Alternatively, proper under the first-to-file rule and pursuant to 28 U.S.C. § 1404(a), this Court

19  may transfer the California Action to be consolidated with the first-filed case in the Northern

20  District of Texas.  Sparta's claims in the California Action are compulsory counterclaims to the

21  Texas Action and Copart demonstrates that it would be clearly more convenient for all the parties

22  and witnesses and in the interests of justice to have the case proceed in Texas.

23

24  ────────────────

25  [1] Copart originally filed suit in state court but Sparta removed the case to the Northern District of
    Texas where the case is currently pending.  *See* Declaration of Ophelia Camiña ("Camiña Decl."),
    Tab 6 (Declaration of Ophelia Camiña), Ex. A, COPART APP 45-57.

26  [2] In the Texas Action, Copart asserts claims for: fraudulent inducement; fraud and promissory
27  fraud; negligent misrepresentation; breach of contract; unfair competition; attorneys' fees; and a
    declaratory judgment.  In the California Action, Sparta asserts claims for: breach of contract;
28  promissory estoppel; breach of the implied covenant of good faith and fair dealing; quantum
    meruit; unjust enrichment; an accounting; and a declaratory judgment.

## II.    FACTUAL BACKGROUND

### A.    The Parties and the AIMOS Project

Copart is a Delaware corporation with its headquarters in Dallas, Texas.  Camiña Decl., Tab 1 (Declaration of Vincent Phillips), COPART APP 2-8, ¶ 16.  Copart is an online automobile auction company selling over 1.5 million vehicles per year.  *Id.*  Copart sells these cars on the internet using a proprietary virtual bidding engine and a patented e-commerce solution in conjunction with an auction management software solution called "CAS," which stands for Copart Auction System.  *Id.* ¶ 3.  Commencing in 2010, Copart sought to replace CAS with a widely-used software platform called SAP.  *Id.* ¶ 4.  The CAS replacement was named AIMOS. Copart intended for AIMOS to provide 100% of the functionality of CAS, but be built on an SAP platform.  *Id.* ¶¶ 4-5.

Copart hired Sparta to design and implement AIMOS (the "AIMOS Project").  *Id.* ¶ 5. Sparta stood out among the other bidders because of the many promises it made to Copart relating to its unique expertise, experience, and capabilities to design and build AIMOS to Copart's requirements.  *Id.*  The parties entered into an Implementation Service Agreement ("ISA") on October 6, 2011.  *Id.* ¶ 6.  The work under the ISA was to be performed in two phases—the Design Phase and the Build Phase[3]—with specific "milestones" associated with each phase detailed in a Statement of Work ("SOW").  *Id.*  The SOW for the Design Phase ("Design SOW") set forth three milestones plus a bridge milestone, *id.* ¶ 7; the SOW for the Build Phase ("Build SOW") had eleven milestones, *id.* ¶ 8.   Each milestone had specific technical deliverable requirements, a completion schedule, and a fixed fee associated with the milestone to be paid after Sparta's completion and Copart's acceptance of the deliverable requirements.  *Id.* ¶ 9.

At Milestone 7, during the Build Phase, Sparta got stuck and could not complete all the deliverable requirements set forth in the Build SOW.  *Id.*  Sparta requested that the uncompleted deliverable requirements of Milestone 7 be rolled over to Milestone 8.  In a good faith effort to

---

[3] Sparta's pleadings and the documents refer to this phase as the "Realization" phase, but the intent was to build the system during this phase, thus for clarity Copart will call it the "Build Phase."

move the AIMOS Project along, Copart agreed and paid Sparta for Milestone 7 despite the uncompleted deliverable requirements and lack of acceptance by Copart.  *Id.*

But Sparta's efforts continued to fail.  More than a year after it started working on Milestone 8 (which was scheduled to be completed in 8 weeks), Sparta was still unable to meet that milestone's deliverable requirements.  *Id.* ¶ 10.  To allow Sparta one last chance to salvage the AIMOS Project, the senior management of Sparta and Copart met in Dallas, Texas, in June 2013 to try to find a way forward.  *Id.* ¶ 11.  At the meeting, the parties negotiated the terms of an amendment to the ISA.  *Id.*  On August 16, 2013, the parties entered into an Amendment to the ISA ("Amendment") to memorialize the agreements from the Dallas meeting.  *Id.* ¶ 12.  The purpose of the Amendment was to give Sparta an extension of time, to clarify the requirements for Milestone 8 and other missing functional gaps, and to set a new schedule for completion of the requirements.  *Id.*  Despite the additional time and clarified requirements, Sparta continued to produce unworkable source code which consistently failed testing.  As a result of Sparta's continued failures, Copart terminated its contract with Sparta by letter dated September 17, 2013. *Id.*

## B.    Performance Under the Contract

The Design SOW and the Build SOW state that the primary location for the AIMOS Project was to be in Fairfield, California.  The reason is simple.  When the SOWs were signed, Copart was headquartered in Fairfield.  *Id.* ¶ 5.  However, in 2011, Copart moved its headquarters to Dallas, Texas.  Copart's various departments moved to Dallas over a period of 18 months.  *See id*. ¶ 17; Camiña Decl., Tab 3 (Declaration of Sean Eldridge), COPART APP 35-36, ¶ 3; Tab 2 (Declaration of Will Franklin), COPART APP 31-33, ¶ 7; Tab 4 (Declaration of Aron Rosenfield), COPART APP 38, ¶ 3; Tab 5 (Declaration of Donna Stern), COPART APP 40, ¶ 3.

From mid-2013 to September 2013, at least 7 Sparta employees worked on site at Copart's Dallas headquarters, located at 14185 Dallas Parkway, Dallas, Texas 75254.  Camiña Decl., Tab 1 (Phillips Decl.), COPART APP 2-8, ¶ 17.  Sparta's Project Manager for AIMOS at this time was Shyam Chodapuneri.  *Id.*  Mr. Chodapuneri, along with Praveen Cadpakar, Ravi Gudemella, Roslan Mohamad, and Parag Gandhi worked on AIMOS.  Susan Matthew and Stephen Blecker

worked on AURORA.  Both teams worked at Copart's Dallas headquarters.  *Id.*  Indeed, Ravi Gudemella lived in Dallas at the time he was working on AIMOS at Copart's Dallas headquarters.  *Id.* at Ex. C, COPART APP 20-26.

Commencing in mid-2013, meetings between Copart and Sparta also occurred at Copart's headquarters in Dallas.  *Id.*, COPART APP 2-8, ¶ 18.  At the very least, Sparta employees Chodapunedi, Cadpakar, Gudemella, Mohamad, Gandhi, Matthew and Blecker attended these meetings at Copart's Dallas headquarters.  *Id.*  Other Sparta employees attended these meetings by teleconference from their home locations.  *Id.*

Other major meetings also occurred between Copart and Sparta at Copart's Dallas headquarters.  *Id.* ¶ 19.  Among them was a meeting of the senior management of Sparta and Copart in June 2013.  *Id.*  Vaibhav Nadgauda and Ashu Bhalla, the President and Executive Vice President of Sparta, attended this meeting in Dallas.  *Id.*  Attending this meeting from Copart were Jayson Adair and Vincent Mitz, the Chief Executive Officer and President of Copart.  *Id.*  Copart's Chief Technology Officer, Vincent Phillips, was also in attendance.  *Id.*  The meeting was called so that Sparta could try to convince Copart to make a partial payment to Sparta for Milestone 8 before it was complete.  *Id.*  At this meeting, the parties negotiated what would become the Amendment to the ISA.

**C.     The Controversy Leading Up to the Litigation**

In a letter dated September 17, 2013, Copart exercised its right to terminate under Section 15.2 of the ISA and invited Sparta to "discuss the services that Sparta believes have been performed, completed, and documented as of today for Copart's review and, as appropriate, Copart's agreement."  *Id.* ¶ 12 & Ex. A, COPART APP 10.  One month later, on October 18, 2013, Sparta responded with a demand that Copart pay Sparta $12 million, including payment for Milestones 8 through 15, all of which remain uncompleted.  *Id.* at Ex. B, COPART APP 12-18.

Prior to November 1, 2013, Copart learned that certain promises made by Sparta were false.  *Id.* ¶ 14.  These misrepresentations were made by Sparta representatives during the sales cycle to induce Copart to hire Sparta.  These misrepresentations continued throughout Sparta's work on the AIMOS Project to ensure continued payment by Copart.  *Id.*  Sparta also continued to

conceal the truth about its misrepresentations to avoid discovery and termination.  *Id.*  Some of these misrepresentations and omissions occurred in Dallas, Texas, where Sparta was working at the end of the AIMOS Project.  Additionally, Copart learned of Sparta's motives for the misrepresentations and omissions.

### D.    The Parallel Actions

On November 1, 2013, after learning about Sparta's misrepresentations, omissions, and motive for fraud, Copart filed the Texas Action against Sparta in the 44th Judicial District Court of Dallas County, Texas.[4]  On January 8, 2014—**more than two months after Copart filed its suit**—Sparta filed this, the California Action, against Copart, alleging mirror-image claims.  Then, in the Texas Action, Sparta filed a Motion to Transfer to a More Convenient Forum and Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  Sparta's Motion seeks to dismiss half of Copart's Texas claims and transfer the rest to this Court.  *See* Texas Action, ECF No. 5.  Copart filed an opposition to that Motion on March 19, 2014.  *See id.* at ECF No. 12.  That same day, Copart also amended its complaint to provide further details of Sparta's fraud, misrepresentations, and omissions to meet the federal pleading requirements; the substance of Copart's claims remains unchanged.  *See id.* at ECF No. 11.

## III.    ARGUMENT

### A.    The First-to-File Rule Requires Dismissal of the California Action

The first-to-file rule governs the fate of this case.  The Ninth Circuit adheres to the rule, also known as the federal comity doctrine, that permits a district court to "decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *see Alltrade v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  The rule was developed to promote judicial economy and prevent inconsistent judicial decisions and piecemeal litigation, and "should not be disregarded lightly."  *Id.*  Indeed, the Ninth Circuit has identified only three circumstances under which a court may decline to apply the first-to-file rule: where there is evidence of bad faith, anticipatory action, or forum shopping.  *See Alltrade*, 946 F.2d at 625, 628;

---

[4] On January 2, 2014, Sparta removed that action to the Northern District of Texas.

*Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 749-50 (9th Cir. 1980).  None of these special circumstances is present in this case.

In determining whether to apply the first-to-file rule, courts consider three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946 F.2d at 625-26; *Pacesetter*, 678 F.2d at 95.  Exact parallelism between the two actions need not exist; it is sufficient if the parties and issues in the two actions are "substantially similar."  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

### 1.    There is No Dispute that this is the Second-Filed Action

There can be no dispute: Sparta's California Action is the second-filed case.  Copart filed the first action in Texas on November 1, 2013.[5]  Sparta filed this action on January 8, 2014.  For purposes of the first-to-file rule, courts consider the date of filing in state court to be the relevant benchmark for a federal action that has been removed from state court.  *Greenline Indus. v. Agri-Process Innovations LLC*, No. C 08-2438, 2008 U.S. Dist. LEXIS 60504, *10 (N.D. Cal. July 28, 2008); *Hilton v. Apple Inc*., No. C 13-2167, 2013 U.S. Dist. LEXIS 142354, *12 (N.D. Cal. Oct. 1, 2013).  Thus, there is no dispute that the Texas Action is the first-filed action, because it predates the California Action by more than two months.

### 2.    The Actions Involve Identical Parties

The first-to-file rule requires that the parties be substantially similar.  *See Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.*, No. 10-3134, 2011 U.S. Dist. LEXIS 56026, *9 (E.D. Cal. May 24, 2011) (Mueller, J.) (citing *PETA, Inc. v. Beyond the Frame, LTD*, No. CV 10-07576, 2011 U.S. Dist. LEXIS 157782, *2 (C.D. Cal. Feb. 16, 2011)).  Here, the parties are *identical* in the Texas and California actions.[6]  There are no additional parties involved in either case.

---

[5] On January 2, 2014, Sparta removed the Texas Action to the Northern District of Texas.

[6] In the Texas Action, Copart is the plaintiff, and Sparta is the defendant.  In the California Action, the parties are reversed: Sparta is the plaintiff and Copart is the defendant.

### 3.  The Actions Involve Substantial Overlap on Substantive Issues

The first-to-file rule requires that the issues share "substantial similarity" or "overlap." *Id.* at *12 (citations omitted).  Here, substantial similarity and overlap exists between the Texas and California actions.  In both cases, the allegations stem from the AIMOS Project—namely, the various AIMOS agreements, the rights and duties of the parties, and Sparta's representations, omissions, and conduct, all in connection with the AIMOS Project.  The live complaints tell the story:

- In the Texas Action, Copart alleges (1) fraudulent inducement, (2) fraud and promissory fraud; (3) negligent misrepresentation; (4) unfair business practices; (5) breach of contract; (6) request for declaratory judgment; and (7) request for attorneys' fees.[7]  *See* First Amended Complaint, Texas Action, ECF No. 11

- In the California Action, Sparta alleges: (1) breach of contract; (2) promissory estoppel; (3) breach of the implied covenant of good faith and fair dealing; damages claims based on (4) quantum meruit, (5) unjust enrichment, (6) an accounting; and (7) declaratory judgment.  *See* Complaint, California Action, ECF No. 1.

The overlap between the two cases is apparent.  In both cases, the claims concern which party breached duties owed to the other; which party breached which terms under the various contracts; which party owes the other party money (and how much); and a request for declaratory relief concerning the construction of the various contract terms and the rights, duties, and obligations of the parties under those terms.  Indeed, Sparta's claims in this suit arise out of the same transactions or occurrences that are the subject matter of Copart's claims in the Texas Action, and should have been brought as compulsory counterclaims under Fed. R. Civ. P. 13.  *See In re Crown Vantage, Inc.*, 421 F.3d 963, 973 n.7 (9th Cir. 2005) ("Federal courts will not permit an action to be maintained where the claims asserted should have been brought as a compulsory counterclaim in an earlier action.").  For these reasons, both relevant factual and evidentiary issues substantially overlap—if they are not identical—in the two actions, triggering the application of the first-to-file rule.

---

[7]  The claims and allegations in Copart's First Amended Complaint in the Texas Action track Copart's Original Petition filed in state court, but supply further details of Sparta's misrepresentations and omissions to meet the federal pleading requirements. *Compare* Original Petition, Camiña Decl., Tab 6 (Camiña Decl.), Ex. A, COPART APP 45-57, *with* First Amended Complaint, Texas Action, ECF No. 11.

**4.      No Special Circumstances Justify Departure From the Rule**

**a.      Copart Did Not File Suit in Anticipation or Bad Faith**

Copart did not file an anticipatory suit.  In determining whether a first-filed suit was anticipatory, a court considers whether it was filed pursuant to a specific, concrete indication that the other party's suit was imminent. *Pac. Coast Breaker*, 2011 U.S. Dist. LEXIS 56026, at *13; *Z-Line Designs, Inc. v. Bell'O In'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (citations omitted).  Here, Copart sent Sparta the notice of termination on September 17, 2013—creating the first grounds for a lawsuit.  On that day, the clock started equally for both parties to file suit. After being terminated, Sparta should not have been surprised if Copart filed a lawsuit.  And, after terminating, Copart would not have been surprised if Sparta filed a lawsuit.  However, the mere fact that Copart sued first, and Sparta waited two months to sue, does not render Copart's earlier-filed lawsuit "anticipatory."

In the termination letter, Copart "invite[d]" Sparta "to contact Copart[ ] . . . to discuss" what accounts may be outstanding.  Camiña Decl., Tab 1 (Phillips Decl.), Ex. A, COPART APP 10.  Copart's invitation was done to fulfill its obligations under the termination provision—not in bad faith.   And, even if Sparta interpreted that invitation as a settlement discussion, then, importantly, Copart (not Sparta) initiated the discussion.   Sparta responded with a letter demanding $12 million from Copart for Milestones 8 to 15.  *Id.*, Ex. B, COPART APP 12-18. Specifically, Sparta sought payment for Milestone 8, the milestone it was working on but never completed when it was terminated.  And, remarkably, Sparta also sought payment for Milestones 9 to 15 which Sparta never got to because, even after a year, Sparta could not complete the requirements of Milestone 8 to pass user acceptance testing of a working AIMOS system.  Thus, the Texas Action by Copart was a legitimate and expected response.

Even before the termination letter, Copart had substantial grounds to sue.  Sparta failed to complete the deliverable requirements and was well aware of Copart's dissatisfaction.  For example, months before the termination, senior executives of Sparta met with Copart in Dallas to discuss Copart's dissatisfaction with Sparta's work.  At the meeting, Copart reaffirmed its refusal to pay Sparta for its work which was incomplete, riddled with failures, and untimely.  *Id.* at

1   COPART APP 2-8, ¶¶ 11 & 19.  Without an element of surprise, the anticipatory exception to the

2   first-to-file rule does not apply.  *See Twin City Ins. Co. v. Key Energy Servs.*, No. H-09-0352,

3   2009 U.S. Dist. LEXIS 46267, *24-25 (S.D. Tex. June 2, 2009) (declining to find an "anticipatory

4   exception to the first-to-file rule" because "neither party was taken by surprise" when parallel

5   breach of contract claims were filed).

6       In addition, the fact that the Texas Action includes other non-declaratory judgment claims

7   (i.e., substantive claims for fraudulent inducement, fraud, promissory fraud, negligent

8   misrepresentation, unfair business practices, and breach of contract) serves to distinguish this case

9   from the "anticipatory declaratory judgment" cases where the *only* claim is for declaratory

10  judgment.  *See, e.g.*, *Halo Couture, LLC v. Miracle 7, Inc*., No. 13cv1780, 2013 U.S. Dist. LEXIS

11  150426, *7-8 (S.D. Cal. Oct. 17, 2013); *Nat'l Broom Co. of Cal., Inc. v. Brookstone Co., Inc.*, No.

12  C 09-00959, 2009 U.S. Dist. LEXIS 69630, *2-3 (N.D. Cal. July 30, 2009).  Here, Copart defeats

13  the anticipatory suit exception because its real and substantive grievances against Sparta were ripe

14  for filing in Copart's home forum.  *Cf. Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d

15  1044, 1049 (N.D. Cal. 2001) (finding plaintiff's action for declaratory relief to have been filed

16  preemptively to deprive the defendant's choice of forum for its substantive claims alleging breach

17  of contract in addition to seeking declaratory relief); *Mediostream, Inc. v. Priddis Music, Inc*., No.

18  C07-2127, 2007 U.S. Dist. LEXIS 73707, *11-12 (N.D. Cal. Sept. 24, 2007) (transferring an

19  "anticipatory" declaratory judgment action so that it may be "litigated alongside the substantive

20  claims" in the earlier-filed case).  Contrary to true anticipatory suits, the Texas Action—which

21  contains five substantive claims in addition to declaratory relief—was not manufactured in bad

22  faith by Copart to win the race to the courthouse.

23                  **b.      Sparta Has No Evidence of Forum Shopping**

24      Copart did not engage in forum shopping.  First, in 2011, Copart moved its headquarters

25  and principal place of business to Dallas, Texas, making the Northern District of Texas Copart's

26  "home forum."  Camiña Decl., Tab 2 (Franklin Decl.), COPART  APP 31-33, ¶ 7; Tab 1 (Phillips

27  Decl.), COPART APP 2-8, ¶ 16.   The fact that Copart filed the first case in its home forum,

28  where it resides and conducts business, operates to defeat any accusation of "forum shopping."

1    *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (stating that a party's choice of forum

2    is entitled to great deference and "should rarely be disturbed" when the forum chosen is its "home

3    forum"); *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343

4    (Fed Cir. 2006) (applying Ninth Circuit law) (recognizing "the general rule that favors the forum

5    of the first-filed action"); *Palantir Techs., Inc. v. Palantir.net, Inc.*, No. C 07-03863, 2007 U.S.

6    Dist. LEXIS 76830, *5 (N.D. Cal. Oct. 2, 2007) (denying application of the "forum shopping"

7    exception to the first-to-file rule because "there can be no allegation of forum shopping [when the

8    first-filed plaintiff] is located in [its home forum]").

9        Second, Copart suffered harm in Dallas, Texas.   Sparta's misrepresentations and

10   omissions continued in Dallas.   Copart was injured by not having the AIMOS system as

11   represented.  Without a CAS replacement with 100% of CAS functionality, Copart's operations

12   have suffered.  *See* First Amended Complaint, Texas Action, ECF No. 11, ¶¶ 52, 61 & 77.

13   Because Copart's headquarters and principal place of business are in Dallas, Copart's harm and

14   injury accrued in Texas.[8]

15       Third, Sparta employees performed services at Copart's headquarters in Dallas, Texas.

16   Before the termination, Sparta's project manager and team members were working at Copart's

17   headquarters in Dallas, Texas.  Camiña Decl., Tab 1 (Phillips Decl.), COPART APP 2-8, ¶¶ 17 &

18   18.   Additionally, Sparta had regular and important meetings with Copart in Dallas, including a

19   meeting of senior management of Sparta and Copart that led to the Amendment—the last signed

20   agreement between the parties.  *Id.* ¶¶ 11, 18-20.  Thus, Sparta's misrepresentations, as well as its

21   concealment and omissions, continued and occurred in Dallas.  And, Sparta's misrepresentation

22   and omissions, as well as the motive for its misconduct, came to light only after Copart's move to

23   Dallas, Texas.  *See id.* ¶¶ 14 & 17.  Thus, Copart's decision to file the first-filed Texas Action

24   was non-abusive, non-anticipatory, and not an instance of forum shopping.  Accordingly, Sparta's

25

26   _____

[8] Courts in the Fifth Circuit accord great weight to an injured plaintiff's chosen forum where, as
27   here, the injuries occurred within the forum.  *Aland v. Faison Assocs.*, No. 3-97-cv-2482, 1998
     U.S. Dist. LEXIS 9649, *16-17 (N.D. Tex. June 18, 1998) ("If a plaintiff's injuries occur within
28   the Northern District of Texas, the Court gives great weight to the plaintiff's choice of this forum
     for relief.").

second-filed California Action should be seen for what it is: an attempt to circumvent the first-to-file rule.

In cases involving the same parties and issues and with no evidence of bad faith, anticipatory litigation, or forum shopping, it is within the second-filed court's discretion—and typical—for the court to dismiss the second case in the interest of efficiency and judicial economy. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *Pacesetter*, 678 F.2d at 96; *Alltrade*, 946 F.2d at 629 & n.16 (acknowledging "dismissal to be proper in most cases"). Dismissing this action will promote judicial efficiency. Accordingly, this Court should dismiss this action.

### B.      Alternatively, the California Action May be Transferred

If the Court declines to dismiss this action, it has the discretion to transfer it to the Northern District of Texas where the first-filed action is pending.[9] *St. Helena Wine Co. v. Allied Mgm't*, No. C98-1683, 1998 U.S. Dist. LEXIS 12558, *8-9 & n.7 (N.D. Cal. Aug. 10, 1998) (transferring case for judicial economy); *PETA*, 2011 U.S. Dist. LEXIS 157782, at *7 (*sua sponte* ordering the parties to show cause for why the entire case should not be transferred to the first-filed court). The second-filed court is not required to "duplicate" the inquiry of convenience. *Genentech*, 2010 U.S. Dist. LEXIS 126773, at *7. Instead, it may defer entirely to the first-filed court. *Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-08-02745, 2008 U.S. Dist. LEXIS 78260, *8 (N.D. Cal. Oct. 6, 2008); *Meru Networks, Inc. v. Extricom Ltd.*, No. C-10-02021, 2010 U.S. Dist. LEXIS 90212, *2 (N.D. Cal. Aug. 31, 2010).

If this Court chooses to consider transfer, then Copart herein moves, in the alternative, to transfer the California Action in its entirety to the Northern District of Texas pursuant to 28 U.S.C. §1404(a). *See Van Dusen v. Barack*, 376 U.S. 612, 622 (1964).

### C.      The Balance of Convenience and Interest of Justice Favor Transfer

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it

---

[9] The Court also has the discretion to stay this case until the Texas Action concludes and determine then if there are any claims left that are not barred by res judicata or collateral estoppel.

1   might have been brought."[10]   A motion to transfer venue under § 1404(a) requires the court to

2   weigh private and public interest factors affecting the convenience of the forum.   *Piper Aircraft*,

3   454 U.S. at 241.   The private interest factors include the "relative ease of access to sources of

4   proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

5   attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy,

6   expeditious and inexpensive."   *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843

7   (9th Cir. 1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).   The public interest

8   factors include "the administrative difficulties flowing from court congestion; the local interest in

9   having localized controversies decided at home; the interest in having the trial of a diversity case

10  in a forum that is at home with the law . . . and the unfairness of burdening citizens in an

11  unrelated forum with jury duty."   *Id.* (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

12                              **1.      Texas Provides Easier Access to Sources of Proof**

13          The majority of the evidence relevant to this dispute resides in Copart's custody.   Copart

14  maintains a document repository called Sharepoint.   Camiña Decl., Tab 2 (Franklin Decl.),

15  COPART APP 31-33, ¶ 5.   Both Copart and Sparta used Sharepoint and placed documents

16  relevant to the AIMOS Project into this repository.   *Id.*   While the documents in Sharepoint are

17  electronic, the repository is maintained by Copart from its Dallas headquarters.   *Id.*   Copart keeps

18  no documents, electronic or otherwise, related to the AIMOS Project in the Eastern District of

19  California.   *Id.*

20          Even though the relevant documents are primarily stored in electronic format and as such,

21  the burden of accessing documents from remote locations is substantially alleviated, "the factor of

22  access to records is not a nullity."   *Hong v. Morgan Stanley & Co., LLC*, No. C12-01756, 2012

23  U.S. Dist. LEXIS 150382, *14 (N.D. Cal. Oct. 18, 2012).   Thus, still meaningful in the § 1404(a)

24  analysis, this factor favors transfer because the relevant evidence is in Copart's custody and

25  possession in Dallas, Texas.

26

27  _____

28  [10] Copart's first-filed action is in the Northern District of Texas, therefore the threshold issue has
    been satisfied.   Thus Copart will confine its argument to the convenience and interest of justice
    factors of Section 1404(a).

### 2. Availability of Compulsory Process Favors Transfer

This factor examines the availability of compulsory process to secure the attendance of unwilling non-party witnesses, and favors transfer when a transferee district has subpoena power over a greater number of these witnesses. *Zut v. Harrah's Entm't, Inc.*, No. C13-2372, 2013 U.S. Dist. LEXIS 142355, *10-11 (N.D. Cal. Sept. 30, 2013). The most important non-party witnesses for this case fall into three categories: (1) former employees of Sparta, (2) former employees of Copart, and (3) third-party consultants that worked on the AIMOS Project.

***Former Sparta employees***: Sparta employed about 200 people to work on the AIMOS Project. Camiña Decl., Tab 1 (Phillips Decl.), COPART APP 2-8, ¶ 14 & Ex. C, COPART APP 20-26. The majority of these employees are ***not*** residents of California. *Id.* According to Sparta's list,[11] the majority of its employees (49) reside in India. *Id.* Another 17 reside in Texas, including 12 who reside in the Dallas area. *Id.* Only 7 reside in the Sacramento area. *Id.* Thus, the Northern District of Texas can assert its subpoena power over a greater number of former Sparta employees.

***Former Copart employees***: Copart is not aware of a single witness that would not cooperate with Copart and agree to appear in Dallas, Texas.

***Non-party consultants***: Among the consultants that worked with Sparta on the AIMOS project were: (1) Paymetric, a company based in Atlanta, Georgia; (2) Abreon, a company based in Pittsburg, Pennsylvania; and (3) AT&T, a company based in Dallas, Texas. *Id.* ¶ 15; Tab 5 (Stern Decl.), COPART APP 40, ¶ 2;. AT&T is within the subpoena power of the Northern District of Texas under Fed. R. Civ. P. 45. The other two consultants are in locations much closer to Dallas, Texas than to Sacramento, California. Thus, this factor favors transferring the action to Texas.

### 3. Cost of Attendance for Willing Witnesses Favors Texas

"The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted." *Xcel Data*

---

[11] During the AIMOS Project, Sparta maintained a list of its employees who worked on the project.

1  *Sys. v. Best*, No. 1:08-CV-00613, 2009 U.S. Dist. LEXIS 35013, *15 (E.D. Cal. Apr. 7, 2009).

2  And this important factor plainly supports transferring the case to Texas.

3      A party seeking transfer must identify the key witnesses and the general content of their

4  testimony.  *Welenco, Inc. v. Corbell*, No. S-13-0287, 2014 U.S. Dist. LEXIS 4770, *19-22 (E.D.

5  Cal. Jan. 13, 2014) (Mueller, J.).  The movant "must specify clearly . . . the key witnesses to be

6  called and their location and must make a general statement of what their testimony will cover."

7  15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851, at 221-22 (3d

8  ed. 2007).

9       For the following reasons, venue in Texas imposes the least burden on expected party

10  witnesses:

11      ***Copart witnesses***:  Copart employees work in Copart's Dallas headquarters, only 12 miles

12  from the courthouse, and can easily be made available for trial in the Northern District of Texas.

13  Camiña Decl., Tab 2 (Franklin Decl.), COPART APP 31-33, ¶¶ 2-3.  Indeed, most of the key

14  Copart witnesses work in Dallas.  *Id.* ¶ 3; Tab 1 (Phillips Decl.), COPART APP 2-8, ¶ 16.  These

15  Copart employees could continue to work out of Copart's headquarters while the case goes to

16  trial, with much less disruption to their work.  *Id.*, Tab 2 (Franklin Decl.), COPART APP 31-33.

17  ¶¶ 3-4.  The same is true for Copart employees who work outside of Dallas.  They would find

18  Dallas more convenient than Sacramento because Copart's headquarters are located in Dallas.  *Id.*

19  ¶ 3.

20      In contrast, the Eastern District of California (Sacramento Division) is not convenient to

21  any of Copart's witnesses.  *Id.* ¶ 4.  None of Copart's witnesses work in Sacramento.  *Id.*  Even

22  witnesses who live in California would have to travel to Sacramento.  *Id.*  Additionally, Copart

23  does not maintain an office in Sacramento.  The nearest Copart office is located in Fairfield,

24  California, which is over 40 miles away.  *Id.*  Thus, Copart witnesses traveling to Sacramento

25  would have little to no support services, causing disruption to their work schedules.  *Id.*  These

26  witnesses would also have to work from hotel rooms, with less robust and secure internet access.

27  *Id.*

28      The key Copart witnesses who work in Dallas include:

- **Jayson Adair,** Chief Executive Officer, attended meetings with Sparta, including the June 2013 meeting with Sparta executives in Dallas, and would testify about the misrepresentations made by Sparta during these meetings.

- **Vincent Mitz,** President, was one of the key executives involved in negotiating the contracts in dispute with Sparta, and he also attended meetings with Sparta, including the June 2013 meeting with Sparta executives in Dallas. His testimony would be relevant to establishing Copart's fraud-based claims against Sparta.

- **Vincent Phillips**, Chief Technology Officer, was one of the key executives negotiating the contracts in dispute with Sparta. His testimony would include intimate insight of all contractual matters, including Sparta's fraudulent misrepresentations, what transpired during meetings between Copart and Sparta, and all technical, functional, and management difficulties Copart encountered with Sparta.[12] In addition, several other technology employees who work with Phillips would have knowledge of the AIMOS Project and Sparta's work on it, including **Diane Yassa**, **Phatela Mosothoane**, and **David Fung**.

- **Will Franklin**, Chief Financial Officer, was directly involved in gathering the requirements for the finance and accounting application phases of the AIMOS Project commencing in the fall of 2011 until Sparta was terminated in the fall of 2013. His testimony would include Copart's efforts in gathering requirements for the finance and accounting features of the AIMOS Project, which Sparta was unable to design and implement. In addition, three other Finance employees who work with Franklin would have knowledge of the AIMOS Project.

- **Sean Eldridge**, previously Vice President of Corporate Operations and currently Chief Operating Officer, worked directly with Sparta on the AIMOS Project, especially in the gathering of business requirements for Sparta. His testimony would include the difficulties Copart encountered with Sparta, particularly with respect to the design of CAS features and functionality for AIMOS and the failed testing of Sparta's code. In addition, three other Member Services employees who work with Eldridge would have knowledge of the AIMOS Project.

- **Aron Rosenfield**, Vice President of Corporate Operations, worked directly with Sparta on the AIMOS Project in the gathering of business requirements for all of Copart's operational member processes. His testimony would include the various meetings he attended at which Sparta personnel were present and the difficulties Copart encountered in working with Sparta. In addition, two other Corporate Operations employees who work with Rosenfield would have knowledge of the AIMOS Project.

- **Donna Stern**, Director of Training, headed the Training department in working with third-party consultants employed by Sparta on the AIMOS Project. Her testimony would include the difficulties Copart encountered with Sparta as well as the work done by third-

---

[12] Vincent Phillips maintains a residence in Fairfield, California, but works at Copart's headquarters in Dallas. Mr. Phillips returns to Fairfield only every other weekend.

party consultant, Abreon.  In addition, five other Training employees who work with Stern would have knowledge of the AIMOS Project.

***Sparta witnesses***:   The majority of Sparta's employees who worked on the AIMOS Project are not California residents, and actually live in India, Texas, the Midwest, and the Northeast.  *See* Tab 1 (Phillips Decl.), COPART APP 2-8, ¶ 14 & Ex. C, COPART APP 20-26. Travel for these witnesses to Dallas, Texas for trial would be more convenient than travel to Sacramento, California, based on distance, time, and expense.  Indeed, for witnesses that must travel, Dallas serves as a more convenient destination than Sacramento, because of its central location and proximity to two major airports, Dallas/Fort Worth International Airport (DFW) and Dallas Love Field (DAL).  One of the largest and busiest airports in the United States, DFW offers hundreds of nonstop flights to destinations across the country and internationally.

Additionally, many of the key Sparta witnesses do not reside in California and are located either in Texas or in cities closer to Dallas than to Sacramento.  *See id*.  These key witnesses include:

- **Prafulla Kharkar**, project manager, who lives in ***Detroit, Michigan***, and whose testimony would include Sparta's work on the AIMOS Project through March 2013; the various functional, technical, and management decisions he made during the AIMOS Project; his decision to deny source code access to Copart personnel upon Copart's discovery of the failure of Sparta's code; and his eventual removal from the AIMOS Project due to Copart's dissatisfaction.

- **Stephen Joseph**, CRM functional lead, who lives in ***Atlanta, Georgia***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestone 8.

- **Parug Gandhi**, technical lead, who lives in ***Chicago, Illinois***, and whose testimony would include Sparta's work on data migration and failed work during the Build Phase.

- **Charles D. Nilson**, project manager, who lives in ***Chicago, Illinois***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestone 8.

- **Shrikhar Saddapalli**, interface manager, who lives in ***Denver, Colorado***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestones 7 and 8.

- **Sanath Kumar**, workflow manager, who lives in ***Houston, Texas***, and whose testimony would be relevant to establishing why and how Sparta failed to deliver the Milestones set forth in the Build SOW.

- **Pramod Nair**, global SAP leader, lives in ***Dallas (Allen), Texas***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestone 8.

- **Dhanasekar Kadirvelv**, dispatch/receiving manager, lives in ***Dallas (Allen), Texas***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestone 8.

- **Ravi Gundemella**, lives in ***Dallas, Texas***, and whose testimony would be relevant to establishing why and how Sparta failed to complete Milestone 8, and Sparta's work on the AIMOS Project in Dallas, Texas.

Finally, according to its website, Sparta maintains two offices in Texas—in Austin and Houston. *Id.* ¶ 20 & Ex. D, COPART APP 28. Thus, Sparta employees not only reside in Texas, they must also travel regularly to Texas on business. And for the other Sparta employees who do not reside in Texas, their work schedules should suffer less disruption when the case goes to trial because Sparta maintains these offices in Texas.

### 4. Either Forum is Capable of Deciding This Case

Although the contract at issue is governed by California law, the dispute does not involve any issues peculiar to California law. Indeed, because this dispute involves mostly the interpretation of facts—what were the parties' respective rights and obligations; what did Sparta represent to Copart about the project; which party breached and when; and who suffered damages and how much—neither Court can be said to possess particular expertise over the resolution of those issues.

For similar reasons, the parties' other claims involving unfair competition law is not unique to California law either. California's unfair competition law defines prohibited conduct as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Texas equivalent, the Deceptive Trade Practices-Consumer Protection Act, is just as reaching, prohibiting all "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or business." Tex. Bus. & Com. Code Ann. § 17.46(a). Given Texas's equally inclusive and open-ended standard for unfair competition, the Northern District of Texas is poised to be just as competent as this Court in adjudicating an unfair competition claim under California law. That may be all the more so since Copart's unfair competition law claims are premised upon common theories of fraud, misrepresentation, and breach of contract, with which both courts are familiar. At worst, this factor is neutral for the purposes of transfer.

### 5.    Shorter Time to Trial Favors Transfer to Texas

Federal judicial caseload statistics show the median time for a civil case to proceed from filing to trial in different Districts.  Camiña Decl., Tab 6 (Camiña Decl.), COPART APP 42, ¶ 3 & Ex. B, COPART APP 59-61.  Those statistics for the 12-month period ending March 31, 2013 show that the median time to trial in the Northern District of Texas is 20.2 months.  By contrast, the median time to trial in the Eastern District of California is 30.2 months.  These statistics support transfer because the actual difference here is substantial—it takes an additional 10 months to get to trial in California.

### 6.    Texas Has an Interest in Deciding the Case

The significant contacts that both parties have with the Northern District of Texas cannot be overlooked.  Copart is headquartered in Dallas, and employs more than 300 people there.  *Id.*, Tab 2 (Franklin Decl.), COPART APP 31-33, ¶ 2.  Copart's substantial harm and multiple injuries accrued in Dallas.  Sparta performed services in Dallas.  Sparta made misrepresentations and omissions in Dallas.  Sparta's project manager and team members were working, meeting, and directing the AIMOS Project out of Copart's Dallas headquarters.  *Id.*, Tab 1 (Phillips Decl.), COPART APP 2-8, ¶¶ 17-19.  Key senior management meetings took place in Dallas.  *Id.*  The Sparta team was working in Copart's Dallas headquarters when the ISA was terminated.  *Id.* ¶ 18.  At least 17 of Sparta's employees who worked on the AIMOS Project reside in Texas, with 12 residing in Dallas.  *Id.* ¶ 15 & Ex. C, COPART APP 20-26.  Sparta maintains offices in Texas and enjoys those rights and benefits.  *Id.* ¶ 20.

A Texas jury would thus have an interest in remedying the injury to Copart, a Texas resident whose injuries accrued in Dallas.  Litigating in Texas also presents no injustice to Sparta given Sparta's substantial contacts with, conduct, and offices in the state of Texas.

## IV.   CONCLUSION

The first-to-file rule favors dismissal of this case because it will promote judicial economy by preventing duplicative litigation from proceeding in two separate forums.  Alternatively, it is within this Court's discretion to transfer the case to the Northern District of Texas where the first-

1   filed action is pending.  Transfer would be in the interest of justice and for the convenience of the

2   parties and witnesses.

3

4   Dated:  March 24, 2014                          /s/ Ophelia F. Camiña
                                                    Marc M. Seltzer (SBN 54534)
5                                                   Meng Xi (SBN 280099)
                                                    SUSMAN GODFREY L.L.P.
6                                                   1901 Avenue of the Stars, Suite 950
                                                    Los Angeles, California 90067-6029
7                                                   Telephone:  (310) 789-3100
                                                    Facsimile:  (310) 789-3150
8                                                   mseltzer@susmangodfrey.com
                                                    mxi@susmangodfrey.com
9
                                                    Ophelia F. Camiña *(Pro Hac Vice)*
10                                                  Daniel Charest *(Pro Hac Vice)*
                                                    SUSMAN GODFREY L.L.P.
11                                                  901 Main Street, Suite 5100
                                                    Dallas, Texas 75202
12                                                  Telephone:  (214) 754-1900
                                                    Facsimile:  (214) 754-1933
13                                                  ocamina@susmangodfrey.com
                                                    dcharest@susmangodfrey.com
14
                                                    Attorneys for Defendant Copart, Inc.
15

16

17                            **CERTIFICATE OF SERVICE**

18          The undersigned hereby certifies that on the 24th day of March, 2014, all counsel of

19   record who are deemed to have consented to electronic service are being served with a copy of

20   this document via the Court's CM/ECF system.

21                                                  /s/ Ophelia F. Camiña
22                                                  Ophelia F. Camiña

23

24

25

26

27

28

3105068v1/013937