MARK P. RESSLER (*admitted pro hac vice*)
R. TALI EPSTEIN (*admitted pro hac vice*)
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800
mressler@kasowitz.com
tepstein@kasowitz.com

JASON S. TAKENOUCHI (SBN 234835)
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone:    (415) 421-6140
Facsimile:    (415) 398-5030
jtakenouchi@kasowitz.com

*Attorneys for Plaintiff-Counterdefendant
Copart, Inc.*

LEWIS & LLEWELLYN LLP
   Paul T. Llewellyn (Cal. Bar No. 216887)
   Marc R. Lewis (Cal. Bar No. 233306)
   Ryan B. Erickson (Cal. Bar No. 268239)
   Matthew Dickman (Cal Bar No. 268108)
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:  (415) 390-2127
Email:  pllewellyn@lewisllewellyn.com
            mlewis@lewisllewellyn.com
            rerickson@lewisllewellyn.com
            mdickman@lewisllewellyn.com

GIBSON, DUNN & CRUTCHER LLP
   Frederick Brown (Cal. Bar No. 65316)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306
Email:  fbrown@gibsondunn.com

*Attorneys for Defendant-Counterplaintiff
Sparta Consulting, Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC., <br><br> Plaintiff-Counterdefendant, <br><br> v. <br><br> SPARTA CONSULTING, INC., <br><br> Defendant-Counterplaintiff. | CASE NO. 2:14-cv-00046-KJM-CKD <br><br> **STIPULATION AND ORDER REGARDING ELECTRONICALLY STORED INFORMATION, DISCOVERY, AND DOCUMENT PRODUCTION FORMAT** |

This Stipulation and [Proposed] Order Regarding Electronically Stored Information, Discovery, and Document Production Format shall govern the parties in the above-captioned case (the "Litigation").

**I. GENERAL PROVISIONS**

The parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to hard copy documents or electronically stored information ("ESI") which are to be produced in the first instance in this Litigation.

**A. SECURITY.** Both parties will make reasonable efforts to ensure that any productions made are free from viruses and, if produced on physical media, encrypted and password protected prior to submission.

**B. CONFIDENTIALITY DESIGNATION.** Responsive documents in TIFF format will be identified with the appropriate confidentiality designations in accordance with the Protective Order in this Litigation. Each responsive document produced in native format will have its confidentiality designation identified.

**C. NON-STANDARD FILES.** Prior to the production of non-standard electronic files, large or oversized documents, transparencies, etc., the parties will discuss and agree to the format of any such production to optimize for cost, convenience, accessibility, and other considerations.

**D. PRODUCTION MEDIA.** Documents shall be produced on DVDs, external hard drives, secure digital links, or other agreed upon media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001", "VOL002"), as well as the volume of the material in that production (e.g. "-001", "-002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; and (3) the Bates number range of the materials contained on the Production Media.

The production material should be produced in the following folder structure:



In the alternative, the "CTRL-005.dat" and "CTRL-005.opt" files in the screenshot above may be contained in a folder titled "Data".

## II. DATA PROCESSING

**A. KEYWORD SEARCHING.** To the extent that keywords are used in limiting the universe of potentially responsive documents to be reviewed, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols prior to the production of documents. Any search methodology employed must open compound and nested files (*e.g.*, zip files). The search utilities employed must enable the use of stemmed searches (*e.g.* using "!" or "*" to include variations on a keyword) and Boolean searches.

**B. CULLING\FILTERING.** Each party will use its reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C++ Program File (c) , C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

**C. DEDUPLICATION.** A party is only required to produce a single copy of a responsive email and a party may de-duplicate responsive emails (based on MD5 or SHA-1 hash values at

the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, if all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**III. PRODUCTION OF HARD COPY DOCUMENTS OTHER THAN TRANSACTIONAL DATA**

**A. CUSTODIAN HARD COPY DOCUMENTS TO BE PRODUCED IN TIFF.** Responsive documents located in the workplace(s) of any Custodian and that exist in hard copy format only shall be scanned and produced as single page TIFFs, with at least 300 dots per inch (dpi) resolution. (Other documents are addressed in section III.G. below.) Each TIFF image shall be named according to the corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The following requirements apply to any documents produced in TIFF format:

    1. **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. OCR text shall be provided as a single text file for each document, and the file name itself should match its respective TIFF file name. The text files will not contain the redacted portions of the documents.

    2. **DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Documents should be provided with (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Summation, ViewPoint). Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents

referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

3. **CODING FIELDS.** To the extent it is readily available, the following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, (d) CONFIDENTIALITY, and (e) REDACTED.

4. **BATES NUMBERING**. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbering should start with a unique prefix identifying the producing party and should sequentially number the images being produced.

5. **UNITIZING OF DOCUMENTS.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly. Exception is taken when the collected document was originally in a format which does not have logical or sequential pagination. In that instance, the original pagination or order of the document shall be maintained.

**B. NON-CUSTODIAL HARD COPY DOCUMENTS TO BE PRODUCED IN TIFF OR BE MADE AVAILABLE FOR INSPECTION.** Documents stored in archives or other long-term storage that are available only in hard copy may be either (i) produced in TIFF format, per the requirements listed above; or (ii) made available for inspection and copying in California, unless stored outside of California, in which case the parties shall meet and confer on an accessible location for inspection and copying. In the event that documents are made available for inspection and copying, the party doing the inspection shall be responsible for the costs of copying.

///

///

## IV. PRODUCTION OF ELECTRONICALLY STORED INFORMATION OTHER THAN TRANSACTIONAL DATA

**A. METADATA FIELDS AND PROCESSING.** Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for that document. With the exception of prior production materials for which metadata is not available, the parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH (or BEGFAMILY), (d) ENDATTACH (or ENDFAMILY); (e) CUSTODIAN, (f) CONFIDENTIALITY, and (g) REDACTED, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct, however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process. Parties may request other native files be produced as described in Section IV.I below.

**B. TIFFs.** Unless excepted below, single page TIFFs should be provided, at least 300 dots per inch (dpi) resolution. Each TIFF image file should be one page and named according to the unique Bates number, followed by the extension ".TIF".

**C. TEXT FILES.** For each document, a text file should be provided along with the image files and metadata. The text of native files should be extracted directly from the native file. However, if a document has been redacted or does not contain extractable text, OCR of the redacted document will suffice in lieu of extracted text.

**D. DATABASE LOAD FILES/CROSS-REFERENCE FILES**. Each Production Media shall include: (a) An ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Summation, ViewPoint). Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total

number of documents in a production should match the total number of records in the database load file.

**E. BATES NUMBERING**.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.  The Bates numbering should start with a unique prefix identifying the producing party and should sequentially number the images being produced.

**F. PRESENTATIONS.**  The parties shall produce presentations (*e.g*., MS PowerPoint, Google Presently/Punch) in native format unless redacted, in which instance presentations may be produced in TIFF with OCR of the redacted document.  Native copies of presentations should be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1.  A TIFF placeholder indicating the document was provided in native format should accompany the database record.  The parties will make reasonable efforts to ensure that any presentations that are produced only as TIFF images are formatted so as to be readable, with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image.  The parties will take reasonable efforts to make redacted presentations available in native format if TIFF images are unusable or are missing material information.

**G. SPREADSHEETS.**  The parties shall produce spreadsheets in native format unless redacted, in which instance spreadsheets may be produced in TIFF with OCR of the redacted document.  Native copies of spreadsheets should be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1.  A TIFF placeholder indicating the document was provided in native format should accompany the database record.  The parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF images are formatted so as to be readable.  The parties will take reasonable efforts to make redacted spreadsheets available in native format if TIFF images are unusable or are missing material information.

**H. PROPRIETARY FILES.**  To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each

1  version of such information. The parties shall meet and confer to finalize the appropriate
2  production format.

3  **I.  REQUEST(S) FOR ADDITIONAL NATIVE FILES.** If good cause exists to request
4  production of specified files, other than those set forth above, in native format, a party may
5  request such production and provide an explanation of the need for native file review, which
6  request shall not unreasonably be denied. Any native files that are produced should be produced
7  with a link in the NativeLink field, along with all extracted text and applicable metadata fields.

8  **J.  REDACTION OF INFORMATION.** If documents are produced containing redacted
9  information, the producing party shall supply a list of the documents for any claim(s) of
10 privilege, indicating the grounds for the redaction and the nature of the redacted material (e.g.,
11 privilege, trade secret, privacy) within thirty (30) days of the production. During the course of
12 the Litigation, an electronic copy of the originally unredacted data shall be securely preserved in
13 such a manner so as to preserve without modification, alteration or addition the content of such
14 data including any metadata therewith. If scanning is necessary to create a redacted version of a
15 document, the producing party shall produce a corresponding load file identifying the custodian
16 from whom the document was collected and such documents shall subject the TIFF files to
17 Optical Character Recognition ("OCR") process if the TIFF files do not already have extractable
18 text, such that the processed files become searchable.

19 **V.  PRODUCTION OF TRANSACTIONAL DATA**

20 **A. WHAT CONSTITUTES TRANSACTIONAL DATA.** "Transactional data" consists
21 of transactional-level information stored in a database or contained in individual hard copy
22 documents such as bills of lading or invoices.

23 **B. TRANSACTIONAL DATA CONTAINED IN DATABASES TO BE PRODUCED
24 IN FLAT FILES.** Responsive transactional data shall be produced in a "flat file" format such as
25 a comma-delimited TXT files.

26 **C. TRANSACTIONAL DATA CONTAINED IN HARD COPY FORMAT.** Responsive
27 transactional data that is contained in hard copy format but that is also contained in a
28 transactional database that is subject to production need not be separately produced. For

example, if transaction-level information is contained in a hard copy invoice, but that information is also entered into a transactional database, the hard copy invoice need not be produced.  Responsive transactional data that is contained in hard copy format that is not contained in a transactional database shall be either (i) produced in TIFF format, per the requirements listed III.A. above; or (ii) made available for inspection and copying at an accessible location in either California or Texas.  In the event that documents are made available for inspection and copying, the party doing the inspection shall be responsible for the costs of copying.

## VI. PROCESSING OF THIRD-PARTY DOCUMENTS

**A.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the parties to the Litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

**B.** The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party within fourteen (14) days of receipt of those documents by the Issuing Party.

**C.** If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing it to the opposing party.

**D.** Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

## VII.   MISCELLANEOUS PROVISIONS

**A. Objections Preserved.**  Nothing in this agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**B. No Effect on Cost Shifting.**  Nothing in this agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI.

**C. No Waiver**.  Pursuant to Federal Rule of Evidence 502 and applicable California law, the inadvertent production of a privileged document or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.  Moreover, the mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.  The Parties acknowledge and understand that, under California law, if a lawyer receives materials covered by the attorney-client privilege or that otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were produced or made available through inadvertence, the lawyer should refrain from examining the materials any more than is essential to ascertain if the materials are privileged and should immediately notify the sender that he or she possesses material that appears to be privileged.  *See Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (2007).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  November 14, 2014

By:  /s/ Jason S. Takenouchi

KASOWITZ BENSON TORRES & FRIEDMAN LLP
   Mark P. Ressler
   R. Tali Epstein
   Jason S. Takenouchi

*Attorneys for Plaintiff-Counterdefendant Copart, Inc.*

Dated:  November 14, 2014

By:  /s/ Paul T. Llewellyn

LEWIS & LLEWELLYN LLP
   Paul T. Llewellyn
   Marc R. Lewis
   Ryan B. Erickson
   Matthew Dickman

1  
2  
GIBSON, DUNN & CRUTCHER LLP  
Frederick Brown

*Attorneys for Defendant-Counterplaintiff Sparta Consulting, Inc.*

3  
4  
5  **IT IS SO ORDERED.**

6  Dated:  November 18, 2014

7  _____  
CAROLYN K. DELANEY  
UNITED STATES MAGISTRATE JUDGE

8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

**Appendix 1:  ESI Metadata and Coding Fields**

**A.**  Image Load File shall contain the following comma-delimited fields:

   BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

**B.**  Metadata Load File shall be delimited according to the following characters:

   o Delimiter = D (ASCII:0020)
   o Text-Qualifier = þ (ASCII:00254)
   o NewLine = (ASCII:00174)

**C.**  The following fields will appear in the metadata load file in the order displayed in the chart on the next page:

STIPULATION AND [PROPOSED] ORDER REGARDING ESI, DISCOVERY, AND DOCUMENT PRODUCTION FORMAT

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH (or BEGFAMILY) | First production Bates number of the first document in a family |
| ENDATTACH (or ENDFAMILY) | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| NATIVELINK | Native File Link (e.g., Excel files and Powerpoint files) |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| LASTAUTHOR (Edoc only) | The name of the last author as identified by the metadata of the produced document. |
| FILENAME (Edoc only) | File name of an electronic document |
| FILE EXTENSION | The original file or document extension of the produced document. |
| FILEPATH | The original file path to the produced document. |
| FILESIZE | The original file size of the produced document. |
| DATEMOD (Edoc only) | Date an electronic document was last modified (format: MM/DD/YYYY) |
| TIMEMOD (Edoc only) | Time an electronic document was last modified (format: HR:MN AM/PM) |
| DATECREATED (Edoc only) | Date the document was created (format: MM/DD/YYYY) |
| TIMECREATED (Edoc only) | Time an electronic document was last modified (format: HR:MN AM/PM) |
| CONVERSATIONINDEX (Email Only) | The conversation index extracted from the produced email message. |
| PAGES | The number of pages of a produced document. |
| MD5HASH | A calculated value unique to each identical file. The producing party may substitute the SHA1 Hash value, but will name the field accordingly to indicate such. |
| TEXTPATH | Path to the associated multi-page/document level text file for each produced document. |
| CONFLABEL | The confidentiality designation of the produced file. |
| REDACTED | Identifies whether or not the produced file is redacted. |
| PRODVOLUME | The production volume associated with the produced file. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28