LEWIS & LLEWELLYN LLP
  Paul T. Llewellyn (Bar No. 216887)
  Marc R. Lewis (Bar No. 233306)
  Matthew Dickman (Bar No. 268108)
  Ryan B. Erickson (Bar No. 268239)
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile: (415) 390-2127
Email: pllewellyn@lewisllewellyn.com
       mlewis@lewisllewellyn.com
       mdickman@lewisllewellyn.com
       rerickson@lewisllewellyn.com

GIBSON, DUNN & CRUTCHER LLP
  Frederick Brown (Bar No. 65316)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
Email: fbrown@gibsondunn.com

Attorneys for Defendant and Counterplaintiff,
SPARTA CONSULTING, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>SPARTA CONSULTING, INC.,<br><br>  Defendant,<br><br><br>SPARTA CONSULTING, INC.,<br><br>  Counterplaintiff,<br><br>  v.<br><br>COPART, INC.,<br><br>  Counterdefendant. | CASE NO. 2:14-cv-00046-KJM-CKD<br><br>**DEFENDANT AND COUNTERPLAINTIFF SPARTA CONSULTING, INC.'S OPPOSITION TO COPART, INC.'S MOTION TO DISMISS THE SECOND, FOURTH, AND FIFTH CLAIMS IN SPARTA CONSULTING, INC.'S FIRST AMENDED COUNTERCLAIM**<br><br>Date:     September 3, 2015<br>Time:     10:00 a.m.<br>Judge:    Hon. Kimberly J. Mueller<br>Location: Robert T. Matsui U.S. Courthouse<br>          Courtroom 3, 15th Floor<br>          501 I Street<br>          Sacramento, CA 95814 |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND........................................... 2

III. ARGUMENT ......................................................................................................... 5

    A. Legal Standard .......................................................................................... 5

    B. Sparta's Equitable Claims For Promissory Estoppel, Quantum Meruit And Unjust Enrichment Are Sufficient As A Matter Of Law. ............................................................................................................ 6

        1. Sparta Has Complied With This Court's Order, And Has Pled With Specificity The Out-Of-Scope Work Giving Rise To Its Equitable Claims. ............................................................... 6

        2. Sparta Has Pled That It Performed Work Outside The Scope Of The Parties' Contract, And Copart's Contractual Arguments To The Contrary Are Without Merit. .................................... 9

        3. Sparta's Equitable Claims Are Properly Pled In The Alternative ................................................................................................ 12

IV. CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696 (9th Cir. 1988) ............................................... 5

*Ball v. Johanns*, No. S-07-1190 LKK/DAD, 2008 WL 269069 (E.D. Cal. Jan. 29,
    2008) ................................................................................................................................ 13, 14

*Benson Electric Co. v. Hale Bros. Assocs., Inc.*, 246 Cal. App. 2d 686 (1966) ........................ 11

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ........................................................ 6

*Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062 (N.D. Cal. 2013) .............................. 12

*FT Travel-New York, LLC v. Your Travel Ctr., Inc.*, No. CV 15-01065, 2015 WL
    3932460 (C.D. Cal. Jun. 26, 2015) ....................................................................................... 12

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.,* 601 F. Supp.
    2d 1201 (S.D. Cal. 2009) ....................................................................................................... 11

*Melt Franchising, LLC v. PMI Enters., Inc.*, No. CV 08-4148, 2009 WL 32587
    (C.D. Cal. Jan. 2, 2009) ......................................................................................................... 14

*Molsbergen v. United States,* 757 F.2d 1016 (9th Cir. 1985) ..................................................... 12

*Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260 (N.D. Cal.
    Dec. 15, 2008) .................................................................................................................. 12, 13

*Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930 (N.D. Cal. 2011) ................................ 14

*Rader Co. v. Stone*, 178 Cal. App. 3d 10 (1986) ........................................................................ 12

*Shum v. Intel Corp.,* 630 F. Supp. 2d 1063 (N.D. Cal. 2009) ....................................................... 6

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) .............................. 6, 9, 12

*T&S Enters, LLC v. Sumitomo Corp. of Am.*, No. C 10–03118 SBA, 2011 WL
    5085569 (S.D. Cal. Oct. 26, 2011) ....................................................................................... 14

## STATUTES

Fed. R. Civ. P. 8(d)(3) ................................................................................................................. 12

Fed. R. Civ. P. 8(e)(2) ................................................................................................................. 14

I.      INTRODUCTION

On July 9, 2015, this Court dismissed, with leave to amend, Sparta's claims for promissory estoppel, quantum meruit, and unjust enrichment. *See* Order on Mot. to Dismiss (the "Order"), Dkt. No. 55.  The Court found that "Sparta may assert quasi-contract principles … if the work giving rise to the equitable claims is different from the work covered by the written agreement." *Id.* at 9.  However, because the Court found that Sparta's original counterclaim "d[id] not specify with any detail the work performed outside the scope of the contemplated agreement … [and therefore] d[id] not give adequate notice to Copart as to what alleged work is covered by the agreement and what is not," it dismissed Sparta's equitable claims. *Id.* at 10.

Following the Court's guidance, Sparta added substantial detail to these equitable claims in its First Amended Counterclaim ("FAC").  Indeed, Sparta's FAC now alleges, in detail, the precise scope of the work contemplated by the parties' agreement and describes, with specificity, the out-of-scope work that Copart demanded, that Sparta performed, and that gives rise to Sparta's equitable claims. *See*, *e.g.*, FAC at pp. 5-7.  Despite Sparta's clear compliance with the Court's order, Copart has again moved to dismiss Sparta's equitable claims.  Copart's motion is largely a rehash of its original motion to dismiss— arguments which have been rendered moot by Sparta's amended pleading.  Because the FAC provides the specificity the Court requested, and more, the Court should deny Copart's motion.

While conceding that Sparta has pled out-of-scope work with sufficient particularity, Copart now relies on a provision of the Implementation Services Agreement to argue that it would be ***impossible*** for any work Sparta performed to be outside the scope of the agreement. Not only does this argument defy both logic and the Court's prior order, it also ignores the language of the Realization Statement of Work—which governs the work at issue here—and which contains a contrary procedure for change management.  At an absolute minimum, because it is ambiguous which contractual provisions are applicable here, and because the "scope of work" question is a factual one, Copart cannot meet its heavy burden on a motion to dismiss.

But even if Copart's contractual arguments had merit (which they do not), Copart's motion still fails because Copart has pled that the parties' contracts are unenforceable, and

Sparta's equitable claims are therefore properly pled in the alternative. While acknowledging, as it must, that equitable claims may be pled in the alternative, Copart also argues that such claims should be ignored here because Sparta does not allege that no contract existed between the parties. But this argument can be easily dispatched, because, as this Court has acknowledged, ***Copart's own complaint alleges that the parties' contracts are "potentially unenforceable."*** Order at 23, Dkt. No. 55. Copart cannot, on the one hand, plead that the contracts are unenforceable to uphold its quasi-contract claims, while on the other hand seek to dismiss Sparta's quasi-contract claims on the basis that the pleadings do not allege an unenforceable contract. Were the Court to dismiss Sparta's equitable claims at this time, Sparta would be unjustly left without remedy if the contracts were ultimately found unenforceable based on Copart's allegations.

Additionally, Sparta's approach to pleading in the alternative is appropriate because it seeks equitable relief for work outside the scope of the parties' agreement. As the FAC alleges, "in the event the contract between Sparta and Copart is found to be valid or unenforceable, or does not provide full compensation for the reasonable value of the work Sparta expended at Copart's request and on Copart's behalf (including work that was outside the scope of the contract), or the benefits Sparta conferred upon Copart, Sparta brings a claim for [equitable remedies]." FAC, ¶ 37. In light of Sparta's explicit and detailed pleading that the work it performed was outside the scope of the parties' agreement, it would be premature at this stage for the Court to dismiss Sparta's quasi-contract claims. Because Sparta has adequately pled its quasi-contract claims, the Court should deny Copart's motion.

**II.      FACTUAL AND PROCEDURAL BACKGROUND**

      **A.      Copart Hires Sparta To Design And Implement A New Software System.**

Copart is an online automobile auction company. FAC, ¶ 2. It claims to sell more than one million vehicles each year using its internet sales technology. *Id.* Sparta is an IT consulting company, located in Folsom, California, that specializes in the design and implementation of SAP-based Enterprise Resource Planning ("ERP") software solutions for its customers. *Id.* ¶ 1.

Copart previously used a legacy ERP system known as Copart Auction Systems

2

("CAS").  *Id.* ¶ 6.  In 2010, Copart began the process of replacing CAS.  *Id.* ¶ 7.  Copart ultimately selected an SAP-based software platform for the new system.  *Id.* ¶ 7.

On October 6, 2011, Copart and Sparta entered into an Implementation Services Agreement ("ISA") for Copart's new ERP system.  *Id.* ¶ 9, Ex. A.  In addition to the ISA, the parties entered into Statements of Work ("SOWs") which detailed the work to be performed, the proposed timetable, and the payments to be made by Copart to Sparta.  *Id.*, ¶ 11, 14; Exs. B and C.  The parties agreed that the project would proceed in two phases:  (1) the "design" phase; and (2) the "realization" or "build" phase.  *Id.* ¶ 10.

The initial phase of Sparta's work was the "design" phase.  *Id.* ¶ 11, Ex. B.  Sparta completed work on the design phase in March 2012 to Copart's satisfaction and received corresponding payment.  *Id.*  Then, in March 2012, Copart and Sparta entered into a SOW for the "realization" or "build" phase of the project.  *Id.*, ¶ 14, Ex. C.  The Realization SOW provided that "[t]his SOW describes the realization of the AIMOS design as documented in the collective output of the AIMOS Design project."  *Id.*, Ex. C, ¶ 1 (Executive Summary).  The Realization SOW contained a clearly defined and finite scope for the project, consisting of 920 distinct technical tasks.  *Id.* ¶ 22.b.  Despite this agreed scope, Copart frequently sought to expand the scope of the engagement to include work not contemplated by—and outside the scope of—the parties' agreement.  *Id.*  In total, over the life of the project, Copart demanded approximately 300 new software functionalities that were outside the agreed upon design for AIMOS (as defined by the parties' agreement), which resulted in Sparta expending thousands of additional labor hours for which it was never compensated.  *Id.*

For the in-scope work in the Realization SOW, Copart agreed to pay Sparta $18.8 million in a series of installment payments, or milestones, scheduled to occur between April 2012 and May 2013.  *Id.*, ¶ 15.  Following delays associated with the project, the majority of which were attributable to Copart, on August 16, 2013, the parties entered into a written amendment to the contract.  *Id.* ¶ 24, Ex. D.  Among other things, the amendment provided a mechanism to address the outstanding issues with respect to the next milestone, and set new dates for the completion of the remaining work under the SOW.  *Id.*

**B.     Copart Terminates The Contract "For Convenience" And Asks Sparta To Provide The Amount It Is Owed.**

On September 17, 2013, just one month after it had agreed to a revised schedule for the completion of the realization phase, and without any prior warning, Copart notified Sparta that it was terminating the ISA for "convenience." *Id.* ¶ 25, Ex. E. Recognizing its obligation to pay Sparta for that portion of services performed and completed as of the September 17, 2013 termination date, in its termination notice, Copart invited Sparta to provide the amount it was owed pursuant to section 15.2 of the ISA—the contract provision governing termination for "convenience." *Id.* ¶ 26. On October 18, 2013, Sparta responded to Copart's request with a detailed analysis of the amount it was owed, and requested a response to its request for payment by November 1, 2013. *Id.* ¶ 27.

**C.     Rather Than Pay The Amount Due To Sparta, Copart Sues Sparta In Texas.**

Rather than address Sparta's proposal, or make its own proposal for a resolution pursuant to section 15.2 of the ISA, Copart responded on November 1, 2013, by suing Sparta in Texas state court. Of course, if Copart had genuinely believed that Sparta had engaged in wrongdoing, then it had the option to terminate the ISA "for cause." *See id.*, Ex. A, ¶ 15.4. On January 2, 2014, Sparta removed the action to the United States District Court for the Northern District of Texas.

**D.     The Texas Court Grants Sparta's Motion And Transfers The Lawsuit To California.**

On August 8, 2014, the Honorable Magistrate Judge Renee H. Toliver of the Northern District of Texas granted Sparta's motion to transfer and transferred the case to this District. The Court consolidated Copart's lawsuit with Sparta's lawsuit (which had been pending here since January 8, 2014), and then realigned the parties, with Copart as the plaintiff and counterdefendant and Sparta as the defendant and counterplaintiff. On October 30, 2014, Copart filed its Second Amended Complaint ("SAC"). On November 20, 2014, Sparta filed its Counterclaim, alleging claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, account stated, quantum meruit, unjust enrichment,

4

unfair competition, and declaratory relief.

### E. This Court Grants In Part And Denies In Part Copart's Motion To Dismiss, And Sparta Files Its First Amended Counterclaim.

On December 4, 2014, Copart filed a motion to dismiss Sparta's claims for promissory estoppel, breach of the implied covenant of good faith and fair dealing, account stated, quantum meruit, unjust enrichment, and unfair competition. On June 9, 2015, this Court issued an order granting in part and denying in part Copart's motion. Dkt. No. 55. Pertinent to this motion, the Court granted with leave to amend Copart's motion to dismiss Sparta's equitable claims for promissory estoppel, quantum meruit, and unjust enrichment.[1] *Id.* at 10. In dismissing those claims, the Court held that "Sparta may assert quasi-contract principles … if the work giving rise to the equitable claims is different from the work covered by the written agreement." However, the Court found that Sparta had not specified with sufficient "detail the work performed outside the scope of the contemplated agreement" and thus failed to provide "adequate notice to Copart as to what alleged work is covered by the agreement and what is not." *Id.* at 9-10.

On June 30, 2015, Sparta filed its FAC, reducing its number of claims from eight to six, and, as directed by the Court, adding the required specificity to its equitable claims. On July 21, 2015, Copart filed a motion to dismiss Sparta's equitable claims.

## III. ARGUMENT

### A. Legal Standard

To defeat a Rule 12(b)(6) motion, a plaintiff need only allege facts that add up to "more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling upon such a motion, a court must accept "all factual allegations in the complaint as true" and

---

[1] The Court also dismissed with leave to amend Sparta's claim for account stated, but Sparta elected not to re-plead that claim in its FAC.

1 construe those allegations "in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

### B. Sparta's Equitable Claims For Promissory Estoppel, Quantum Meruit And Unjust Enrichment Are Sufficient As A Matter Of Law.

Sparta's FAC includes claims for promissory estoppel (count 2), quantum meruit (count 4), and unjust enrichment (count 5). Copart admits that Sparta has adequately pled the essential elements of these claims. Rather, Copart seeks to dismiss these claims solely based on the assertion that the subject matter of Sparta's equitable claims is covered by the parties' written contracts. *See* Mot. at 7-9. However, this argument, which is effectively a rehash of the argument Copart made in its prior motion, lacks merit in light of the additional allegations in Sparta's FAC. As detailed below, and following this Court's guidance, Sparta's FAC now clearly and explicitly alleges that the work giving rise to its equitable claims is outside the scope of the parties' agreements, and thus appropriately supports the pleading of equitable relief.

#### 1. Sparta Has Complied With This Court's Order, And Has Pled With Specificity The Out-Of-Scope Work Giving Rise To Its Equitable Claims.

In its Order, this Court acknowledged that "Sparta may assert quasi-contract principles … if the work giving rise to the equitable claims is different from the work covered by the written agreement." Order at 9, Dkt. No. 55; *citing Shum v. Intel Corp.,* 630 F. Supp. 2d 1063, 1077 (N.D. Cal. 2009). However, the Court dismissed Sparta's claims for unjust enrichment, quantum meruit, and promissory estoppel with leave to amend because, as previously drafted, "[t]he facts pled by Sparta do not specify with any detail the work performed outside the scope of the contemplated agreement … [and therefore] [i]ts pleading does not give adequate notice to Copart as to what alleged work is covered by the agreement and what is not." *Id.* at 10.

Based on the Court's guidance, Sparta's FAC clearly alleges the scope of the work covered by the parties' agreement, which consisted of 920 distinct tasks:

/ / /

> In the Realization SOW, the parties specifically agreed that "[t]his SOW describes the realization of the AIMOS design *as documented* in the collective output of the AIMOS design project." The scope of the Realization SOW, and the subject matter of the contract, was therefore the realization of the design that Sparta had developed, and Copart had signed off on, in phase 1—*i.e.* the build-out of the AIMOS system, and its deployment and integration across Canada, the United Kingdom and the United States. The Realization SOW divided the tasks to be performed into six technical areas: (1) work flows; (2) reports; (3) interfaces; (4) conversions; (5) enhancements; and (6) forms (collectively referred to as "WRICEFs"). The Realization SOW comprised a total of 920 technical objects, *i.e.* 920 distinct technical tasks, across these six technical areas and across the three geographic areas that were included as part of the contract.

FAC, ¶ 22.b. (emphasis in original). Simply put, the purpose of the Realization SOW was to bring to life the AIMOS design that Sparta had created, and that Copart had signed off on, through the Design SOW. The parameters of that design were explicitly documented, and, as stated in the Realization SOW, resulted in 920 distinct tasks being identified as "in scope" for the realization phase of the project. FAC, Ex. C., p. 5.

Having explicitly set forth the scope of the parties' agreement, Sparta's FAC then proceeds to allege with specificity the out-of-scope work, which Copart demanded, Sparta completed, and that gives rise to Sparta's equitable claims. As the FAC alleges:

> Even though the parties had already agreed upon the scope of phase 2 of the AIMOS project, *i.e.* they had agreed that it would be limited to the 920 technical objects identified in the Realization SOW, Copart sought to expand the scope of the engagement during the course of the project and often following each test cycle. Specifically, ***Copart demanded that Sparta add approximately 300 new software functionalities and enhancements which were outside the agreed upon design for the AIMOS system, and were not included among the 920 technical objects, and were therefore outside the scope of the contract***.

FAC ¶ 22.b. (emphasis added). The FAC then goes on to allege, in great detail, specific examples of this out-of-scope work. For example:

- Pursuant to the design Copart had agreed to in phase 1, the auction database (called "PROTON") was to be a replica of the client transaction database (called "ATOM"). However, Copart deviated from the parties' agreement and began developing the PROTON database separate and apart from ATOM. This change forced Sparta to develop or revise approximately a dozen software interfaces that were outside the scope of the AIMOS design.

7

- In order to develop an online payments system that conformed to the AIMOS design and industry standards, the parties engaged a third-party company that provided online payment solutions. Subsequently, Copart demanded payment options and features that were beyond the scope of the AIMOS design (*e.g.*, integrating "Verified by Visa" in the United Kingdom), which forced Sparta to recode existing payment software interfaces and develop approximately four new custom interfaces.

- Copart bypassed the change order process by insisting that numerous out-of-scope projects were the result of the "process automation." These out-of-scope projects included, among others, verification of outstanding blank checks; the automatic clearing of checks; lot ownership transfer from the seller to Copart; and damage code/loss validation in the context of closing of work orders.[2]

*Id.*

In other words, while the Realization SOW contemplated the completion of only 920 distinct tasks, Copart ultimately demanded—and Sparta completed—hundreds of additional tasks that were outside the scope of the agreement. These additional tasks did not simply make the realization of AIMOS more laborious; rather, they were wholly outside of the scope and design of AIMOS, and resulted in Sparta needing to create a new system and functionalities not contemplated by the parties' contracts, for which Sparta has not been compensated. As the FAC alleges:

> Because these, and the other new functionalities and enhancements were outside of the original design that Copart had signed off on, Sparta submitted numerous "Change Requests" to Copart, asking Copart to agree to a change in the scope of the project and an associated additional payment. For the most part, however, Copart declined Sparta's Change Requests, taking the position (incorrectly) that these new functionalities and enhancements were part of the agreed-upon scope of the project. Faced with the prospect of not getting paid at all, and even though they were outside the scope of the contract, Sparta had no choice but to provide the new functionalities and enhancements. Sparta also made numerous requests to freeze the project scope and requirements, but Copart refused to do so. By changing the scope and requirements of the project, Sparta was required to spend a substantial amount of additional time on the project, including the time spent

---

[2] In its motion, Copart characterizes these allegations as a "slew of technical sounding terms" and "overcomplicated allegations." Mot. at 7, fn. 7. Copart cannot have it both ways. It cannot, on the one hand, demand that Sparta provide specific details of the out-of-scope work it performed, but then complain that such allegations are too "technical" or "complicated." Indeed, as the FAC alleges, one of the reasons for the delays associated with the AIMOS project was Copart's lack of "institutional and technical knowledge." FAC, ¶ 22.d.

8

working on the approximately 300 new software functionalities and enhancements which were outside the agreed upon design for the AIMOS system, and thereafter await Copart's testing and approval of these new functionalities. Whereas Sparta estimated that it would take approximately 193,000 hours to complete the entire Realization phase of the project—an estimate validated by KPMG on Copart's behalf—based in large part on the additional out of scope enhancements and functionalities demanded by Copart, Sparta ended up spending approximately 235,000 hours on the project, the vast majority of which it has not been compensated for. This included approximately 59,646 hours spent on enhancement development alone.

FAC, ¶ 22.b.[3]

As outlined above, the scope of the project contemplated by the agreement and the out-of-scope work Sparta completed are now pled with specificity to conform with this Court's Order that Sparta's pleading must "give adequate notice to Copart as to what alleged work is covered by the agreement and what is not" for its equitable claims to survive. There can be no doubt that Sparta has now provided such notice in its FAC, and Copart does not contend otherwise. Because Sparta has now (1) provided the requisite notice, (2) has clearly pled that "the work giving rise to the equitable claims is different from the work covered by the written agreement," and (3) because a court must accept "all factual allegations in the complaint as true," Sparta has sufficiently pled its equitable claims as a matter of law, and the Court should deny Copart's motion to dismiss. *Skilstaf*, 669 F.3d at 1014.

## 2. Sparta Has Pled That It Performed Work Outside The Scope Of The Parties' Contract, And Copart's Contractual Arguments To The Contrary Are Without Merit.

Apparently conceding that Sparta has now sufficiently detailed the out-of-scope work in its pleading, Copart now argues that it would be *impossible* for any work Sparta performed to be outside the scope of the agreement. Mot. at 8. Copart premises this argument on section 2.2 of the ISA, which provides as follows:

/ / /

---

[3] In addition to the body of the FAC, the out-of-scope work giving rise to Sparta's equitable claims is also now detailed in each of Sparta's claims for equitable relief. *See* FAC ¶¶ 36-42, 52-66.

> **2.2 New Services**. Copart may from time to time during the Term request that Service Provider perform new services.  Within 10 days after receipt of such a request from Copart (or such other time as Copart and Service Provider may agree depending on the nature and scope of the new services), Service Provider shall provide Copart with a written proposal for such new services.  Service Provider shall not begin performing any new services until Copart and Service Provider have agreed upon the terms for such new services, which terms shall be set forth under a new Statement of Work, and Copart has provided Service Provider with written authorization to perform the new services by executing such Statement of Work.  Any new services performed by Service Provider without such advance agreement to terms and authorization shall be deemed part of the Services without incremental charge.

FAC, Ex. A, ¶ 2.2.

Copart relies on this section to argue that "[e]ven if Sparta's 'additional' work was outside the scope of the Realization SOW," Sparta would still not be able to assert its equitable claims as a matter of law because "that work would have been subject to the New Services provision" of the ISA.  Mot. at 8.  In other words, Copart argues that no work performed by Sparta—no matter what the subject matter or scope of that work was—could *ever* be outside the scope of the parties' contracts unless Copart, in its sole discretion, agreed to execute a new Statement of Work, *i.e.* a new contract for each of the approximately 300 additional functionalities and enhancements that Sparta performed.

As a threshold matter, this argument contradicts this Court's Order, which held that "Sparta may assert quasi-contract principles … if the work giving rise to the equitable claims is different from the work covered by the written agreement."  It also ignores the contrary language of the Realization SOW—which governs the work at issue here—and which contains its own procedure for change management.  *See* FAC, Ex. C., p. 24.  Whereas section 2.2 of the ISA calls for "new services" to be set out in a "Statement of Work," section 5 of the Realization SOW explicitly states that "[c]hanges in the scope of this project [are to] be identified via a ***Change Request***."[4]  *Id.* (emphasis added).  Indeed, Copart concedes that the Realization SOW

---

[4] In an apparent attempt to confuse the Court, and recognizing that section 2.2 of the ISA is inapplicable here, Copart uses ellipses when quoting section 2.2 to omit its references to "Statement[s] of Work." Mot. at 8. The reasoning behind this omission is clear—in the context of

controls here by acknowledging that "Change Requests," rather than Statements of Work, were the proper vehicle for altering the scope of the project.[5] *See* Mot. at 8 ("Sparta could submit 'Change Requests' if Sparta believed that Copart was demanding work that was outside the scope of the project."). And pertinently, neither section 5 nor any other part of the Realization SOW contains the "new services" language that is the basis of Copart's argument.

Given that the Realization SOW is applicable here, and the additional work completed by Sparta was not covered by that agreement, Sparta may plead equitable claims. It is well settled in California that a plaintiff may assert quasi-contractual claims where he or she performed out-of-scope work, the compensation for which is not covered by the parties' contract. *See, e.g., In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.,* 601 F. Supp. 2d 1201, 1220-21 (S.D. Cal. 2009) (denying defendants' motion to dismiss an unjust enrichment claim on the grounds that "[a]lthough there are contracts at issue in this case, none appears to provide for the specific recovery sought by Plaintiffs' unjust enrichment claim."). For example, in *Benson Electric Co. v. Hale Bros. Assocs., Inc.*, 246 Cal. App. 2d 686 (1966), the plaintiff electrical subcontractor, who was working on the construction of a bowling alley, was authorized by the project owner's agents to perform and install various "extras," which were not contemplated by the parties' express contract. *Id.* at 693. Affirming the trial court's judgment in favor of plaintiff on its quantum meruit claim, the Court of Appeal found that "for the extra labor, the party is entitled to his quantum meruit." *Id.* at 698 (citation omitted). As in *Benson*, Sparta has pled that the additional work it performed falls outside the parameters of the parties' agreement—which

---

Copart and Sparta's relationship, "Statements of Work" were used to address entirely new, large scale projects (*i.e.* the Design SOW and the Realization SOW), while changes to the scope of the build phase of the project—the subject of Sparta's equitable claims—were to be addressed by "Change Requests" and governed by the Realization SOW.

[5] Pursuant to this procedure, Sparta submitted numerous "Change Requests" to Copart, asking Copart to agree to a change in the scope of the project. FAC ¶ 22.b. For the most part, however, despite the fact that the requested work was outside the scope of the parties' agreements, Copart declined these Change Requests, and Sparta—faced with the prospect of not getting paid at all if it refused the changes—had no choice but to provide the new functionalities. *Id.* However, the fact that Copart refused to execute Change Requests does not mean the additional services rendered were within the scope of the agreement. To the contrary, as Sparta has pled, the additional work Sparta performed was not covered by the parties' agreements.

contained an explicitly defined and finite scope—and Sparta may thus appropriately pursue equitable claims.

At a minimum, it is ambiguous what contractual provisions are applicable here, and it is a question of fact whether the work performed by Sparta was outside the scope of the parties' agreements. At the motion dismiss stage, "all ambiguities in the contract must be resolved in plaintiff's favor" and "the court must accept all factual allegations in the complaint as true." *FT Travel-New York*, *LLC v. Your Travel Ctr., Inc.*, No. CV 15-01065, 2015 WL 3932460, at *19 n.134, *6 (C.D. Cal. Jun. 26, 2015); *see also Skilstaf*, 669 F.3d at 1014. In light of Sparta's explicit and detailed pleading that the work it performed was outside the scope of the parties' agreement, it would be premature for the Court to find the contrary. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) ("Despite Defendants' arguments that the [express] agreements preclude the claim here, the Court finds it is premature [at the motion to dismiss stage] for the Court to take a position on whether this action derives from the subject matter of the agreements such that a claim for unjust enrichment is unavailable.").

### 3. Sparta's Equitable Claims Are Properly Pled In The Alternative.

The Federal Rules of Civil Procedure "explicitly authorize litigants to present alternative and inconsistent pleadings." *Molsbergen v. United States,* 757 F.2d 1016, 1018 (9th Cir. 1985); Fed. R. Civ. P. Rule 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Likewise, a pleading may properly set forth alternative theories in varied and inconsistent counts, and equitable claims may be properly pled with a breach of contract claim. *See Rader Co. v. Stone*, 178 Cal. App. 3d 10 (1986) (holding plaintiff "is not precluded by law from alleging in one cause of action the breach of a contract and an inconsistent theory of recovery in another cause of action."); *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *9 (N.D. Cal. Dec. 15, 2008) (denying defendant's motion to dismiss a claim for unjust enrichment, and holding that "[a] defendant is not entitled to have a cause of action dismissed for failure to state a claim simply because it conflicts with another cause of action … for pleading purposes, plaintiffs are entitled to plead inconsistent causes of action.")

Sparta's FAC alleges, in each of its equitable claims, that equitable relief is being sought "[i]n the alternative to its breach of contract claim, and in the event the contract between Sparta and Copart is found to be invalid or unenforceable, or does not provide full compensation for the reasonable value of the work Sparta expended at Copart's request and on Copart's behalf, (including work that was outside the scope of the contract)." FAC, ¶¶ 37, 53, 62. Nevertheless, despite acknowledging, as it must, that Sparta may plead "alternative, inconsistent claims," Copart attacks Sparta's pleading of quasi-contract claims in the alternative on the ground that its pleading lacks explicit "alleg[ations] that no express agreement existed." Mot. at 9-10. But Copart cannot have it both ways. As this Court has acknowledged, Copart's own operative complaint alleges that the parties' contracts are "potentially unenforceable." Order at 23, Dkt. No. 55. Copart cannot, on the one hand, plead that the contracts are unenforceable for purposes of upholding its quasi-contract claims, while on the other hand seek to dismiss Sparta's quasi-contract claims on the basis that the pleadings do not allege an unenforceable contract. Indeed, at trial, it is, of course, possible that the factfinder could find partly in favor of Copart—and therefore find the contracts unenforceable—while also finding in favor of Sparta on its equitable claims. Because it is possible, based on the pleadings, for a factfinder to find the contracts unenforceable, Sparta's equitable claims are properly pled in the alternative. *See Oracle Corp.*, 2008 WL 5234260, at *9 (N.D. Cal. Dec. 15, 2008) ("Under an unjust enrichment theory, restitution may be awarded … in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective.") (citations omitted).

Sparta may also plead in the alternative, where, as here, Sparta alleges that it performed work that is not covered by the parties' agreement. While numerous Ninth Circuit cases support this proposition, a case from this District is directly on point. In *Ball v. Johanns*, No. S-07-1190 LKK/DAD, 2008 WL 269069 (E.D. Cal. Jan. 29, 2008), plaintiff[6] alleged the breach of an

---

[6] The claims at bar in *Ball* were actually cross-claims brought by the defendant, but the court addressed the defendant as "[t]he plaintiff for the purposes of this motion." *Ball,* 2008 WL 269069 at *1. Sparta has done likewise to avoid any confusion.

express contract and, in the alternative, various equitable claims. *Id.* at *1. In the context of a Rule 12(b)(6) motion, defendant argued that plaintiff's equitable claims were precluded by the existence of an express contract between the parties. *Id.* at *3. Rejecting this argument, the Court reasoned that even though plaintiff "has pled that the Lender's Agreement was an express contract between the parties, … pursuant to Federal Rule of Civil Procedure 8(e)(2), the plaintiff may plead alternative, inconsistent theories." *Id.* Accordingly, the court held:

> Plaintiff's claim for unjust enrichment should not be barred despite the simultaneous claim for breach of contract. To the extent the Plaintiff is ultimately able to prevail on a legal breach of contract theory, the Plaintiff will be barred from also recovering under an equitable claim for unjust enrichment. However, if the factfinder determined that the terms of the Lender's Agreement did not govern the conduct in dispute…, then the unjust enrichment claim is proper.

*Id.* (internal citation omitted); *see also Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 944-45 (N.D. Cal. 2011) ("to the extent that Plaintiff ultimately is able to prevail under a breach of contract theory, she will be precluded from simultaneously recovering under a theory of unjust enrichment. Nonetheless, at the pleading stage, a plaintiff is entitled to plead inconsistent causes of action…The Court therefore denies Aurora's motion to dismiss Plaintiff's claim for unjust enrichment."); *T&S Enterprises, LLC v. Sumitomo Corp. of Am.*, No. C 10–03118 SBA, 2011 WL 5085569 at *6 (S.D. Cal. Oct. 26, 2011) ("if Plaintiff prevails on its breach of written contract claim, it will be precluded from simultaneously recovering under a quasi-contract claim. However, a plaintiff is allowed to plead inconsistent claims."); *Melt Franchising, LLC v. PMI Enterprises, Inc.*, No. CV 08-4148, 2009 WL 32587 at *4 (C.D. Cal. Jan. 2, 2009) ("the fact that Defendants have alleged the existence of a written contract does not preclude them from pleading unjust enrichment as an alternate theory of recovery."). Here, if the Court ultimately concludes the parties' agreement does "not govern the conduct in dispute" (*i.e.,* the additional, out-of-scope work Sparta performed for Copart) or does not provide a means of compensation for all of the work Sparta performed on Copart's behalf, Sparta is entitled to seek recovery under its equitable claims. *See Ball*, 2008 WL 269069 at *3.

### IV.   CONCLUSION

In its Order of July 9, 2015, this Court provided clear guidance to Sparta regarding its

14

equitable claims.  Sparta has followed that guidance to the letter in its FAC, complying with the Court's Order and pleading with specificity the out-of-scope work giving rise to its claims for promissory estoppel, quantum meruit, and unjust enrichment.  Additionally, Sparta's equitable claims are properly pled in the alternative to its breach of contract claims because both (1) Sparta seeks equitable relief for work not covered by the parties' agreements and (2) Copart has pled that the parties' contracts are potentially unenforceable.  For the foregoing reasons, the Court should deny Copart's motion to dismiss in its entirety.

Dated:  August 20, 2015

Respectfully submitted,

LEWIS & LLEWELLYN LLP
    Paul T. Llewellyn
    Marc R. Lewis
    Matthew Dickman
    Ryan B. Erickson

GIBSON, DUNN & CRUTCHER LLP
    Frederick Brown

By: /s/ Paul T. Llewellyn
    Paul T. Llewellyn

Attorneys for Defendant and Counterplaintiff
Sparta Consulting, Inc.

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on the 20th day of August, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

By: /s/ Matthew Dickman
Matthew Dickman