UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC., | No. 2:14-CV-00046-KJM-CKD |
| Plaintiff-Counterdefendant, | |
| v. | ORDER |
| SPARTA CONSULTING, INC., | |
| Defendant-Counterplaintiff. | |

This matter is before the court on the motion by plaintiff-counterdefendant Copart, Inc. (Copart) to dismiss the second, fourth and fifth claims in defendant-counterplaintiff Sparta, Inc.'s (Sparta) first amended counterclaim under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 58. Sparta opposes the motion. ECF No. 60. The matter is decided without a hearing. As set forth below, Copart's motion is DENIED.

I.   PROCEDURAL BACKGROUND

Copart filed its action against Sparta in Texas state court on November 1, 2013. *See* Case No. 2:14-cv-01884-KJM-CKD, ECF No. 1 (consolidated with this action on September 22, 2014). Sparta removed the state case to the United States District Court for the Northern District of Texas, and then filed this separate suit in this court on January 8, 2014. ECF No. 1. This court subsequently consolidated the cases, ECF No. 30, and aligned the parties to designate

1

1  Copart as plaintiff-counterdefendant and Sparta as defendant-counterplaintiff.  ECF No. 33.
2  Sparta then filed its counterclaim on November 20, 2014, alleging claims for breach of contract,
3  promissory estoppel, breach of the implied covenant of good faith and fair dealing, account
4  stated, quantum meruit, unjust enrichment, unfair competition, and declaratory relief.  ECF No.
5  46.  Copart moved to dismiss Sparta's counterclaims for promissory estoppel, breach of the
6  implied covenant of good faith and fair dealing, account stated, quantum meruit, unjust
7  enrichment, and unfair competition.  ECF No. 47.  On June 9, 2015, the court found that Sparta
8  "d[id] not specify with any detail the work performed outside the scope of the contemplated
9  Agreement . . . [and therefore] d[id] not give adequate notice to Copart as to what alleged work is
10 covered by the agreement and what is not."  The court dismissed Sparta's claims for promissory
11 estoppel, quantum meruit, and unjust enrichment.  ECF No. 55 at 10.

12 On June 30, 2015, Sparta filed its first amended counterclaim, asserting its claims
13 for breach of contract, breach of the implied covenant of good faith and fair dealing, and
14 declaratory relief, and repleading claims for promissory estoppel, unjust enrichment, and quantum
15 meruit.  First Am. Countercl., ECF No.  57.  Sparta included additional allegations to support its
16 previously dismissed equitable claims.  *See id*. at 5–7.

17 Copart has now filed the instant motion to dismiss the counterclaim of promissory
18 estoppel, quantum meruit, and unjust enrichment.  ECF No. 58.

19 II.   ALLEGATIONS OF THE COUNTERCLAIM

20 With the exception of the additional allegations concerning the scope of the
21 parties' agreement and additional work performed, Sparta's allegations remain largely the same
22 as those pled in the original counterclaim.  The court briefly reviews the allegations relevant to
23 the pending motion.

24 Plaintiff-counterdefendant Copart is a Delaware corporation with its principal
25 place of business in Dallas, Texas.  Am. Countercl. ¶ 2.  It is a worldwide provider of online
26 vehicle auctions and vehicle remarketing services, providing a means for sellers to sell their
27 vehicles over the internet in online auctions.  *Id*.  Defendant-counterplaintiff Sparta is a California
28 /////

1  corporation with its principal place of business in Folsom, California. *Id*. ¶ 1. Sparta is an
2  information technology consulting company. *Id*.

3          Copart's Auction System (CAS) coordinated the collection, storage, retrieval and
4  sale of sellers' vehicles on its website. In an effort to update the system, it contracted with Sparta
5  to design and build a new system called "AIMOS." *Id*. ¶¶ 6-8. Copart hired Sparta on October 6,
6  2011, executing an Implementation Services Agreement (ISA), attached to the complaint and
7  governed by California law. Ex. A, ECF No. 57. The parties agreed that the design and
8  implementation of the new system would proceed in two phases: (1) The "design" phase,
9  whereby Sparta would design the new system; and (2) the "realization" phase, whereby Sparta or
10 another vendor would build and implement the design in accordance with the specifications
11 documented in phase one. Am. Countercl. ¶ 10. The parties also executed a Design Statement of
12 Work (Design SOW), which defined the services to be provided under the design phase of the
13 project, as well as Copart's payment schedule. *Id*. ¶ 11. Sparta worked on the design phase
14 between October 2011 and March 2012, and Copart paid Sparta the agreed $3.7 million for that
15 phase. *Id*. Following the design phase, Copart solicited bids for the realization phase, and again
16 contracted with Sparta. *Id*. ¶ 12. At Copart's request, Sparta estimated the realization phase
17 would require approximately 193,000 hours of work. *Id*. ¶ 12. That estimation was confirmed by
18 KPMG, an auditing consulting firm retained by Copart. *Id*. ¶¶ 12-13.

19         On March 28, 2012, Sparta and Copart executed a Realization Statement of Work
20 (Realization SOW) for phase two, which encompassed (i) the actual software coding and
21 customization as designed and documented, and signed off by Copart in phase one; and (ii) its
22 deployment and integration across Copart's three major geographic areas: Canada, the United
23 Kingdom and the United States. *See* Ex. C, Am. Countercl.

24         Sparta completed the first three milestones of phase two as defined by the
25 Realization SOW to Copart's satisfaction, and Copart paid according to the payment schedule,
26 with the exception of $200,000, which was deferred to the next milestone payment. Am.
27 Countercl. ¶ 19. The issues underlying this litigation began with the next milestone, which
28 involved implantation and deployment in three geographic markets, with Canada scheduled to

"go–live" by October 2012. *Id*. ¶ 22. This "aggressive schedule," Sparta alleges, was impracticable due to Copart's delay in developing its own operational system. *Id*. ¶ 22(a).

Sparta's counterclaim alleges that the Realization SOW contemplated more than 900 distinct tasks, and Copart "ultimately demanded" "hundreds of additional tasks that were outside the scope of the agreement." *Id.* ¶ 22(b). The Realization SOW describes the phases of the AIMOS system. Am. Countercl. ¶ 22. The system was to be carried out through six technical areas: 1) work flows; (2) reports; (3) interfaces; (4) conversions; (5) enhancements; and (6) forms (collectively referred to as "WRICEFs"). The Realization SOW comprised a total of 920 technical objects, i.e., 920 distinct technical tasks, across these six technical areas and across the three geographic areas that were included as part of the contract. *Id*. ¶ 22.b. Sparta alleges the additional work requested by Copart called for "approximately 300 new software functionalities and enhancements which were outside the agreed upon design for the AIMOS system, and were not included among the 920 technical objects, and were therefore outside the scope of the contract." *Id*. The amended counterclaim continues with examples of alleged out-of-scope work that Copart requested, not contemplated by the agreement: a separate auction database, an online payment system that required third party involvement, and "verification of outstanding blank checks; the automatic clearing of checks; lot ownership transfer from the seller to Copart; and damage code/loss validation in the context of closing of work orders." *Id*. These additional requests are allegedly documented in numerous "Change Requests," submitted to Copart from Sparta, which Copart denied. *Id*.

In contrast to the approximately 193,000 hours Sparta estimated it would take to complete the entire Realization phase of the project, Sparta ultimately spent approximately 235,000 hours on this phase, based allegedly in large part on the additional out-of-scope enhancements and functionalities demanded by Copart. In addition, delays, inadequate resources, Copart's user error and lack of training, defects in Copart's proprietary systems, and Copart's relocation to Texas also led to overruns. *Id*. ¶ 22.b-d. The additional time required of Sparta included approximately 59,646 hours spent on enhancement development alone. *Id.*

/////

On August 16, 2013, the parties amended the ISA in writing. *See* Ex. D, Am. Countercl. On September 17, 2013, without prior warning, Copart sent a notice to Sparta that it was terminating the ISA for "convenience." *See* Ex. E, Am. Countercl. Copart requested that Sparta invoice Copart for the amount Copart owed based on work performed and completed as of that date. *Id*. On October 18, 2013, Sparta responded to Copart's request, seeking $12 million, and asking for a response by November 1, 2013. *Id*. ¶ 27. In lieu of a response, Copart filed its claims against Sparta two weeks later in the Texas state court, alleging fraud, negligent misrepresentation and unfair business practices. *Id*. ¶ 28.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule

does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court's consideration of documents either attached to a complaint or incorporated by reference, or of matters of judicial notice, will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

IV.     DISCUSSION

    A. Pleading in the Alternative

Copart argues that Sparta may not plead alternative quasi-contract claims unless it alleges no express agreement existed, and Sparta does not. Mot. at 9–10.

Federal Rule of Civil Procedure 8(d)(2) expressly permits pleading in the alternative: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Alternative claims may be asserted "regardless of consistency" between theories of liability. Fed.R.Civ.P. 8(d)(3). "At the pleading stage, a plaintiff will not be forced to elect a single theory on which to seek recovery." *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F.Supp.2d 1013, 1030 n. 11 (D. Ariz. 2003) (citing *Arthur v. United States by and Through VA*, 45 F.3d 292, 296 (9th Cir. 1995)). As here, a plaintiff may "seek both an equitable remedy of estoppel and a legal remedy for breach of contract." *Arnold & Assocs.*, 275 F.Supp.2d at 1030 n.11.

The court finds Copart's argument unpersuasive. Copart itself alleges that the agreement is unenforceable. *See* Copart Second Am. Compl., ECF No. 38 at 18 (pleading fraudulent inducement). At the same time, Copart argues a valid agreement exists barring Sparta from bringing equitable claims. Mot. at 9–10. Copart, like Sparta, is free to take such inconsistent legal positions at this time, and what is good for the goose is good for the gander. Of course, neither party may eventually recover under both inconsistent theories. But the court need

/////

not dismiss Sparta's equitable claims at this stage. Sparta has sufficiently alleged its theories in the challenged claims.

B. Out-of-Scope Work

Pursuit of alternate relief does not relieve a party of its obligation to plead sufficient factual allegations in support of its claims. *Garcia v. M–F Athletic Co.*, No. 11–2430, 2012 WL 531008, at *2 (E.D. Cal. Feb. 17, 2012) (though plaintiffs are allowed to plead in alternative, on motion to dismiss plaintiff must allege facts that "plausibly suggest an entitlement to relief" (quoting *Iqbal*, 556 U.S. at 680)). In its previous dismissal of these claims, the court found that Sparta's equitable claims could survive "only if the work giving rise to the equitable claims is different from the work covered by the written agreement"; if a contract provides the terms of a party's performance, equitable principles would not apply, rather the contract's terms would. Order, ECF No. 55 at 9. Sparta argues here that "because it is ambiguous which contractual provisions are applicable here, and because the 'scope of work' question is a factual one," the equitable claims should be permitted to be pled in the alternative. Opp'n at 1.

Turning to the claims Copart challenges, promissory estoppel requires: "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance." *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, Inc., 688 F.Supp.2d 940, 953 (N.D. Cal. 2010) (citations omitted). "Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996), *as modified on denial of reh'g* (Feb. 22, 1996). "[E]quitable entitlement to a quantum meruit payment is not implied where the parties have actual contract terms covering payment." *Id*. "The reason for the rule is simply that where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability . . . ." *Wal–Noon Corp. v. Hill,* 45 Cal.App.3d 605, 613 (1975). Unjust enrichment, known as restitution under California law,[1]

---

[1] The Ninth Circuit recently clarified whether unjust enrichment is recognized under California

provides a claim where an opposing party has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." 55 Cal. Jur. 3d Restitution § 2. The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." *Id*.; *see Munoz v. MacMillan*, 195 Cal.App.4th 648 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'").

Upon review of the amended counterclaim, the court finds Sparta has stated its claims with sufficient particularity. Copart has sufficient notice of the nature of the claims and what work is alleged to have been outside the scope of the agreement. *See Benson Elec. Co. v. Hale Bros. Associates*, 246 Cal. App. 2d 686, 697 (1966) (finding general rule barring equitable remedies when written agreement controls inapplicable where damages sought for value of "extras for which there was no underlying express contract"); *see also Shum v. Intel Corp.*, 630 F.Supp.2d 1063, 1077 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) (unjust enrichment claim not precluded by parties' written agreement where court ruled agreement covered conduct different from that underlying unjust enrichment claim). The court cautions, however, that the equitable claims will not lie if Sparta ultimately seeks the same remedy as for the breach of contract claims, or if, after a more developed factual record emerges, the court finds the agreement covered "the same subject matter" as that supporting the equitable claims.

/////

/////

/////

---

law. In *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), it held,

> in California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350 (2010); *Jogani v. Superior Court*, 165 Cal.App.4th 901 (2008). However, unjust enrichment and restitution are not irrelevant in California law. . . When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014).

8

V.   CONCLUSION

The motion to dismiss, ECF No. 58, is DENIED.

IT IS SO ORDERED.

DATED: September 14, 2015.

_____
UNITED STATES DISTRICT JUDGE