1   LEWIS & LLEWELLYN LLP
     Paul T. Llewellyn (California Bar No. 216887)
2    Ryan B. Erickson (California Bar No. 268239)
     Rebecca Furman (California Bar No. 294082)
3   505 Montgomery Street, Suite 1300
    San Francisco, California 94111
4   Telephone: (415) 800-0590
    Facsimile: (415) 390-2127
5   Email: pllewellyn@lewisllewellyn.com
            rerickson@lewisllewellyn.com
6           bfurman@lewisllewellyn.com

7   GIBSON, DUNN & CRUTCHER LLP
     Frederick Brown (California Bar No. 65316)
8    Joseph R. Rose (California Bar No. 279092)
     Ian T. Long (California Bar No. 290975)
9   555 Mission Street, Suite 3000
    San Francisco, California 94105
10  Telephone: (415) 393-8200
    Facsimile: (415) 393-8306
11  Email: fbrown@gibsondunn.com
            jrose@gibsondunn.com
12          ilong@gibsondunn.com

13  Attorneys for Defendant and Counterplaintiff,
    SPARTA CONSULTING, INC. and Defendants
14  KPIT INFOSYSTEMS, INC. and KPIT
    TECHNOLOGIES LTD.

15                  UNITED STATES DISTRICT COURT

16                  EASTERN DISTRICT OF CALIFORNIA

17

18  COPART, INC.,                      CASE NO. 2:14-cv-00046-KJM-CKD

19          Plaintiff,                 **DEFENDANT AND COUNTERPLAINTIFF
        v.                             SPARTA CONSULTING, INC.'S NOTICE
20                                     OF MOTION AND MOTION FOR
                                       SUMMARY JUDGMENT, OR, IN THE
21  SPARTA CONSULTING, INC., KPIT      ALTERNATIVE, PARTIAL SUMMARY
    INFOSYSTEMS, INC., and KPIT        JUDGMENT; MEMORANDUM OF POINTS
    TECHNOLOGIES LTD.                  AND AUTHORITIES IN SUPPORT
22                                     THEREOF**
            Defendants.
23
    _____   Date:      February 10, 2017
24  SPARTA CONSULTING, INC.,           Time:      10:00 a.m.
                                       Judge:     Hon. Kimberly J. Mueller
25          Counterplaintiff,          Location:  Robert T. Matsui United States
        v.                                        Courthouse
26                                                Courtroom 3, 15th Floor
    COPART, INC.                                  501 I Street
27                                                Sacramento, CA 95814
            Counterdefendant.
28

1  **TO PLAINTIFF AND COUNTERDEFENDANT, COPART, INC., AND ITS COUNSEL**

2  **OF RECORD:**

3        PLEASE TAKE NOTICE THAT ON February 10, 2017 at 10:00 a.m., or such other

4  convenient and available date for the Court, before the Honorable Kimberly J. Mueller in

5  Courtroom 3 of the United States District Court for the Eastern District of California, 501 I

6  Street, Sacramento, California 95814, defendant and counterplaintiff Sparta Consulting, Inc.

7  ("Sparta") will and hereby does move for entry of an order granting summary judgment for

8  Sparta and against plaintiff and counterdefendant Copart, Inc. ("Copart") on Copart's Third

9  Amended Complaint ("TAC"), or alternatively, partial summary judgment against Copart on its

10 individual claims and claims for damages.

11       Sparta has noticed the hearing for February 10, 2017, pursuant to the Court's August 17,

12 2016 Amended Status (Pretrial Scheduling) Order (Dkt. 140) which provides that "[a]ll

13 dispositive motions on all claims, except motions for continuances, temporary restraining orders

14 or other emergency applications, shall be heard no later than February 10, 2017."  Since the

15 Court entered its Scheduling Order, counsel for Sparta has regularly checked the Court's website

16 to confirm that February 10, 2017 was an available hearing date.  Despite diligent efforts,

17 however, Sparta only just learned that February 10, 2017 is no longer an available hearing date

18 for the Court.  On January 12, 2017, the parties filed a Stipulation and [Proposed] Order (Dkt.

19 183) seeking a continuance of the deadline to hear dispositive motions from February 10, 2017 to

20 February 24, 2017—the next available hearing date indicated on the Court's website.  In the

21 event the Court enters the proposed order, Sparta proposes that the hearing on this motion occur

22 on February 24, 2017.

23       This motion is based upon this Notice of Motion and Motion; the accompanying

24 Memorandum of Points and Authorities; portions of the Memorandum of Points and Authorities

25 filed concurrently by defendants KPIT Technologies Ltd. ("KPIT India") and KPIT Infosystems,

26 Inc. ("Infosystems"); Defendants' Joint Separate Statement of Undisputed Material Facts; the

27 Declarations of Paul T. Llewellyn, Vaibhav Nadgauda, Manish Kumar, Namit Swaroop,

28 Chidanand Chauhan, Swaminathan R, Professor Michael Shamos, and Travis Barrs of

1    Paymetric, Inc. filed in support thereof; all pleadings and papers on file in this action; and upon

2    such further oral and written argument and evidence as may be presented at, or prior to, the

3    hearing of this matter.

4    Dated:  January 13, 2017                    Respectfully submitted,

5                                               LEWIS & LLEWELLYN LLP
                                                   Paul T. Llewellyn
6                                                  Ryan B. Erickson
                                                   Rebecca Furman
7
                                               GIBSON, DUNN & CRUTCHER LLP
8                                                  Frederick Brown
                                                   Joseph R. Rose
9                                                  Ian T. Long

10                                             By:  /s/ Paul T. Llewellyn
                                                   Paul T. Llewellyn
11
                                                   Attorneys for Defendant and
12                                                 Counterplaintiff
                                                   Sparta Consulting, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATION OF MEET AND CONFER EFFORTS**

2        Pursuant to the Court's Amended Status (Pretrial Scheduling) order dated August 19,

3   2016, prior to filing the instant motion, Sparta engaged in meet and confer efforts with Copart to

4   discuss thoroughly the substance of the motion and a potential resolution.  Specifically, on

5   January 3, 2017, Paul Llewellyn, Ryan Erickson and Rebecca Furman, counsel for Sparta,

6   engaged in a telephone conference with Jason Takenouchi, Margaret Ziemianek and George

7   Chikovani, counsel for Copart, to discuss the motion in more detail.  Despite these meet and

8   confer efforts, the parties were unable to resolve the issues presented by this motion.

9

10                                          By: /s/ Paul T. Llewellyn
                                                 Paul T. Llewellyn

11                                          Attorney for Defendant and Counterplaintiff
                                            Sparta Consulting, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    JOINDER ................................................................................................................. 3

III.   FACTUAL BACKGROUND .................................................................................... 4

    A.   Copart Hires Sparta to Design a New Software System ....................................... 4

    B.   After Completing the Project Design to Copart's Satisfaction,
        Copart Hires Sparta to Build the New Software System ...................................... 5

    C.   Copart Terminates the Contract "For Convenience" and Asks
        Sparta to Provide the Amount It Is Owed ........................................................... 7

    D.   Rather Than Pay the Amount Due to Sparta, Copart Sues Sparta ......................... 7

IV.    ARGUMENT ........................................................................................................... 8

    A.   Copart's Fraudulent Inducement, Fraud, and Negligent
        Misrepresentation Claims Fail ............................................................................ 8

        1.   Sparta's Alleged "Misrepresentations" Are Not Actionable ..................... 9

        2.   Copart Did Not Justifiably Rely on Sparta's Alleged
            Misrepresentations ................................................................................ 10

        3.   There Is No Evidence of Sparta's Intent to Defraud Copart .................... 13

        4.   The Economic Loss Rule Bars Copart's Fraud-Based
            Claims ................................................................................................... 14

    B.   Copart's Breach of Contract Claim Fails as a Matter of Law ............................. 15

        1.   Copart's Election to Terminate for Convenience and Not
            for Cause Forecloses Its Claim for Breach of Contract .......................... 15

        2.   Copart Waived Its Breach of Contract Claim with Respect
            to Milestones 1 Through 7 ..................................................................... 16

        3.   Copart Did Not Suffer Damages Relating to the Remaining
            Milestones ............................................................................................. 17

    C.   Copart's Claims That Are Derivative of Its Failed Fraud and
        Breach of Contract Claims Also Fail as a Matter of Law ................................... 17

        1.   Unfair Competition ............................................................................... 18

        2.   Unjust Enrichment ................................................................................ 18

        3.   Breach of the Implied Covenant of Good Faith and Fair
            Dealing ................................................................................................. 19

i

4.  Declaratory Relief ................................................................................ 19

D.  Copart's Professional Negligence Claim Against Sparta Is Time-
Barred ................................................................................................................. 19

V.  CONCLUSION ................................................................................................................. 20

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

## CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) .......................................................................... 17

*Anderson v. Deloitte & Touche*,
   56 Cal. App. 4th 1468 (1997) ........................................................................... 13

*Barkett v. Sentosa Props. LLC*,
   No. 1:14-CV-01698-LJO, 2015 WL 3756348 (E.D. Cal. June 16, 2015) ........... 11

*Baymiller v. Guarantee Mut. Life Co.*,
   No. SA CV99-1566DOC(ANX), 2000 WL 33774562 (C.D. Cal. Aug. 3, 2000) ............... 12

*BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*,
   No. CV F 08-1086 AWI SMS, 2012 WL 1355662 (E.D. Cal. Apr. 18, 2012).................... 17

*Cates Constr., Inc. v. Talbot Partners*,
   21 Cal. 4th 28 (1999) ....................................................................................... 19

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ....................................................................................... 18

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................... 9

*Copart, Inc. v. Lightmaker USA, Inc.*,
   No. 2:12-cv-02943-JAM-CKD (E.D. Cal. Jan. 28, 2013) ..................................... 8

*Farhang v. Indian Inst. of Tech., Kharagpur*,
   No. C–08–02658 RMW, 2010 WL 3504897 (N.D. Cal. Sept. 7, 2010)............................ 16

*Fruin-Colnon Corp. v. Niagara Frontier Transp. Auth.*,
   585 N.Y.S.2d 248 (N.Y. App. Div. 1992) .......................................................... 16

*Gen. Am. Life Ins. Co. v. Castonguay*,
   984 F.2d 1518 (9th Cir. 1993) .................................................................... 10, 13

*Gentry v. eBay, Inc.*,
   99 Cal. App. 4th 816 (2002) ............................................................................... 9

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999) ............................................................... 9

*Hamilton v. Willms*,
   No. CV F 02-6583, 2005 WL 3143712 (E.D. Cal. Nov. 22, 2005)..................... 13

iii

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Hinesley v. Oakshade Town Ctr.*,
    135 Cal. App. 4th 289 (2005) ......................................................................... 12

*Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Assocs., Inc.*,
    115 Cal. App. 4th 1145 (2004) ....................................................................... 19

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
    880 F. Supp. 2d 1029 (N.D. Cal. 2012) .......................................................... 15

*Johnson v. Cambridge Indus., Inc.*,
    325 F.3d 892 (7th Cir. 2003) ............................................................................ 3

*K. Darpinian & Sons, Inc. v. E.I. Du Pont de Nemours & Co.*,
    902 F.2d 39 (9th Cir. 1990) ............................................................................ 10

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
    No. 2:12-cv-02182-KJM-KJN, 2016 WL 829210 (E.D. Cal. Mar. 3, 2016) ...................... 15

*N. Cal. Collection Servs. Inc. of Sacramento v. Cent. Sierra Const., Inc.*,
    No. 2:06-CV-01899 JAMDAD, 2008 WL 3876266 (E.D. Cal. Aug. 20, 2008) ................ 10

*Nebre v. Wachovia Mortg.*,
    No. C 09-1239-SBA, 2009 WL 1690567 (N.D. Cal. June 16, 2009) ..................... 9

*Pac. MDF Prods., Inc. v. Bio-Mass Energy Concepts, LLC*,
    No. CIV. S-05-642 LKK/JF, 2006 WL 3359211 (E.D. Cal. Nov. 20, 2006) .................. 8, 11

*Paragon Restoration Grp. Inc. v. Cambridge Square Condos.*,
    42 A.D.3d 905 (N.Y. 2007) ............................................................................. 15

*Ridgewood Assocs., Inc. v. Trumpower*,
    No. CIVS061376LKK/GGH, 2007 WL 1223666 (E.D. Cal. Apr. 25, 2007) ..................... 18

*Roger E. Smith, Inc. v. SHN Consulting Eng'rs & Geologists, Inc.*,
    89 Cal. App. 4th 638 (2001) ...................................................................... 19, 20

*Schiff v. City & Cty. of San Francisco*,
    No. C-03-4345 MMC, 2007 WL 2301773 (N.D. Cal. Aug. 8, 2007) ..................... 11

*Schutte & Koerting, Inc. v. Swett & Crawford*,
    298 Fed. App'x 613 (9th Cir. 2008) ................................................................ 19

*Segal v. Silberstein*,
    156 Cal. App. 4th 627 (2007) ......................................................................... 16

*Shelter Prods. v. Steelwood Constr. Inc.*,
    307 P.3d 449 (Or. Ct. App. 2013) ................................................................... 15

iv

*Simpson v. Allstate Ins.*,
  No. C-99-02940-CRB, 2000 WL 1006533 (N.D. Cal. July 10, 2000) ................................. 14

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ..................................................................... 10

*Smith v. Ramis*,
  647 F. App'x 679 (9th Cir. 2016) ......................................................................... 9

*Spirtos v. Allstate Ins. Co.*,
  No. CV 02-8798-RGK AJWX, 2004 WL 5803855 (C.D. Cal. May 3, 2004) ..................... 19

*Thomas v. Canyon*,
  198 Cal. App. 4th 594 (2011) ............................................................................. 19

*Wang & Wang LLP v. Banco Do Brasil S.A.*,
  No. 2:06–CV–00761–JAM–KJM, 2009 WL 530135 (E.D. Cal. Mar. 3, 2009) ................... 14

**STATUTES**

Cal. Civ. Proc. Code § 339 ........................................................................................ 19

Cal. Evid. Code § 623 ............................................................................................... 17

SPARTA CONSULTING, INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Sparta Consulting, Inc. ("Sparta") designs and implements SAP-based Enterprise Resource Planning ("ERP") software solutions.  Copart, Inc. ("Copart") is a provider of online vehicle auctions.  In 2010, Copart decided to replace it's legacy ERP system, known as the Copart Auction System ("CAS"), with an SAP-based solution.  In March 2011, Copart hired Accenture to design and build the new system.  But Copart fired Accenture just four months later, levying admittedly baseless accusations of fraud and dishonesty against the company.

After firing Accenture, Copart solicited new bids for the project, this time splitting the design phase from the build phase.  In October 2011, Copart hired Sparta to design a replacement for CAS and the parties entered into a written contract for this design phase.  Sparta completed the design project in less than six months, ahead of the agreed schedule, for which Copart paid Sparta in full.  Copart further acknowledged several times in writing that Sparta met its obligations in full and had "no further obligations with respect to the [design] Deliverables."

Thereafter, Copart sought competitive proposals for the separate "realization" or "build" phase of the new ERP system.  After evaluating several companies, Copart again hired Sparta and agreed to pay it $18.8 million in ten installment payments, or milestones.  Sparta completed the first few milestones of the build project, and Copart again agreed that Sparta had "no further obligations with respect to the [milestone] Deliverables."

On September 17, 2013, after Sparta had performed tens of thousands of hours of additional work, Copart notified Sparta that it was terminating the parties' contract for "convenience" rather than for "cause."  Under the relevant contractual provision, Copart invited Sparta to provide the amount it was owed for its services performed as of the termination date.  On October 18, 2013, Sparta provided Copart a detailed analysis of the amount it believed it was owed—just over $12 million—and requested that Copart respond by November 1, 2013.  Instead of paying Sparta or negotiating over the amount due, Copart filed a lawsuit in Texas state court on November 1 alleging for the first time that Sparta had engaged in fraud, breach of contract and other misconduct.  Despite the fact that scores of Copart employees had worked side by side with Sparta for nearly two years, Copart claimed that it only "discovered" Sparta's alleged fraud

1

1   in the six-week period between terminating the contract for convenience on September 17, 2013,

2   and filing its lawsuit on November 1, 2013.  Copart's lawsuit was subsequently transferred to

3   this District, and consolidated with the lawsuit that Sparta brought against Copart on January 8,

4   2014, seeking payment for its services that Copart had wrongfully withheld.

5       On June 2, 2016, the Court granted Copart leave to amend to file its Third Amended

6   Complaint ("TAC").  Copart's amendment added a claim for trade secret misappropriation and

7   related claims, which are addressed in the motions filed concurrently by the other defendants.

8   This motion addresses Copart's fraud and contract-based claims.

9       First, with respect to Copart's fraud-based claims (fraud, fraudulent inducement and

10  negligent misrepresentation), Copart claims to have relied on vague generalizations before Sparta

11  was hired, such as the "commitment" of Sparta's management, or its intention to bring the "A

12  team" to the project.  Copart is unable to provide the specifics of *any* of these alleged

13  misrepresentations, including what was said, when it was said, and by whom it was said.

14  Moreover, such statements are not actionable as a matter of law because they are subjective

15  statements of opinion, or statements regarding future intent.

16      Second, Copart cannot establish that it justifiably relied on the alleged representations.

17  Copart is a sophisticated, publicly-traded company, which employs a team of IT professionals.  It

18  had experience evaluating the performance of other SAP companies shortly before engaging

19  Sparta.  In the course of negotiating lengthy and detailed contracts with Sparta, Copart was

20  represented by sophisticated counsel, and the relevant contract specifically disclaims any reliance

21  on purported pre-contract representations by Sparta.  Copart also bargained for an intricate

22  process allowing it to evaluate and verify Sparta's performance on the project before Sparta

23  received any payments.  Given these undisputed facts, Copart's purported reliance on Sparta's

24  alleged misrepresentations was manifestly unreasonable as a matter of law.

25      Third, Copart has no evidence of Sparta's fraudulent intent.  Copart had admitted that it

26  has no evidence of intent to defraud other than the "fact" that Sparta did not live up to its alleged

27  promises.  But allegations of non-performance are insufficient to establish fraud.

28      Fourth, Copart's fraud-based claims are barred by the economic loss rule.  Copart has

1   adduced no evidence that it faces liability resulting from Sparta's alleged misrepresentations, and

2   this case not involve a defective product or threat to public safety.  Accordingly, the economic

3   loss rule prevents Copart from conflating the law of contract and tort.

4          With respect to Copart's claim for breach of contract, by electing to terminate the parties'

5   contract for convenience, as opposed to cause, Copart denied Sparta the bargained-for

6   opportunity to cure its alleged breach.  Copart is now foreclosed from trying to convert its

7   termination for convenience into one for cause.  Moreover, Copart's breach of contract claim

8   fails separately because it has no damages.  With respect to milestones 1 through 7—milestones

9   Copart signed, paid Sparta for, and agreed in writing that Sparta had "no further obligations"—

10  Copart has waived its right to claim breach after the fact.  Regarding the remaining milestones,

11  Copart suffered no damages because it did not pay Sparta anything for these milestones.

12         With respect to Copart's claims for unfair competition, unjust enrichment, breach of the

13  implied covenant of good faith and fair dealing, and a "claim" for declaratory relief, because

14  they are all derivative of Copart's claims of fraud and breach of contract, they too must fail.  And

15  Copart's claim for professional negligence, which appeared for the first time in June 2016, is

16  barred by the two-year statute of limitations.

17         Copart manufactured this anticipatory lawsuit to avoid paying what was due to Sparta

18  under the termination provision of the parties' contract.  Through creative pleading, Copart was

19  able to survive early dismissal.  But after voluminous discovery spanning nearly three years,

20  Copart has been unable to adduce sufficient evidence to support its claims.  Summary judgment

21  is the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d

22  892, 901 (7th Cir. 2003).  It is time to put an end to Copart's charade and grant summary

23  judgment, or in the alternative partial summary judgment, in favor of Sparta.

24  **II.    JOINDER**

25         Pursuant to the Court's Minute Order of November 29, 2016 (Dkt. 170), Sparta hereby

26  joins Sections III and IV-B of KPIT India's Motion for Summary Judgment, as well as Sections

27  III-B through III-D of Infosystems' Motion for Summary Judgment, both of which are being

28  filed concurrently.

1    **III.    FACTUAL BACKGROUND**

2         **A.    Copart Hires Sparta to Design a New Software System**

3         Sparta designs and implements SAP-based ERP software solutions.  (Joint Statement of

4    Undisputed Material Facts ("SUF") 1.)  Copart claims to sell more than two million vehicles per

5    year for a variety of consignors, including insurance companies, finance companies and banks.

6    (SUF 2.)  For over 20 years, Copart used a legacy ERP system known as CAS that was

7    developed in-house by Copart.  (SUF 3–4.)  In 2010, Copart began the process of replacing CAS

8    and ultimately selected an SAP-based solution after a "bake-off" with ERP software providers.

9    (SUF 5.)  Copart called the project to replace CAS "AIMOS."  (TAC (Dkt. 126) ¶ 29.)

10        In March 2011, Copart hired Accenture to design and build AIMOS.  (SUF 6.)  But

11   Copart fired Accenture just four months later, accusing Accenture of making numerous "pre-

12   contractual representations [that] were false," "conceal[ing] the falsity of its statements," and

13   providing "wholly deficient and unacceptable" work product.  (SUF 7–8.)  In its termination

14   letter, Copart estimated its "actual reliance and expectations damages at over $60 million."  (SUF

15   8.)  Copart's CEO, who negotiated the termination with Accenture, disclaimed any knowledge of

16   these accusations and dismissed them as an attempt to paper over what was, in reality, a simple

17   fee dispute.  (Llewellyn Decl., Ex. KK (J. Adair Dep.) at 106:7–108:6, 118:12–123:5.)

18        After terminating Accenture, Copart began the search for replacement firms to design and

19   build its new ERP system.  This time, however, Copart split the design contract from the build

20   contract "to ensure that we have a solid handle on what we are going to build before we commit

21   to, and contract for, the build."  (SUF 9.)

22        In August 2011, Copart issued a Request for Proposal for the design of AIMOS.  (TAC

23   ¶ 30.)  Sparta, along with two other consulting firms, Deloitte and Cognizant, submitted a

24   proposal and attended several in-person meetings.  (SUF 10; Nadgauda Decl., ¶ 4.)

25        On October 6, 2011, after negotiations in which Copart was represented by sophisticated

26   counsel, Copart and Sparta entered into an Implementation Services Agreement ("ISA").  (SUF

27   ¶¶ 11–13; Llewellyn Decl., Ex. F.)  The parties acknowledged that the ISA was the product of

28   "extensive discussions and negotiations that [ ] culminated in the formation of the relationship

4

described in the [ISA]." (SUF 14.) The ISA, moreover, states that it represented "the entire agreement between the Parties with respect to the subject matter," and Copart acknowledged that "there are no other representations, understandings, or agreements between the parties relative to such subject matter." (SUF 15.) The ISA granted Copart several options for termination. (SUF 17.) Relevant here, "Termination for Convenience" allowed Copart to end the parties' relationship without cause, but required it to pay Sparta for the portion of the work completed as of the termination date. (SUF 18.) On the other hand, Copart could terminate "for cause" if Sparta failed materially to perform its obligations, in which case Sparta would have a 30-day period in which to cure its alleged breach. (SUF 19.)

Concurrently with the ISA, Copart and Sparta entered into a Design Statement of Work ("SOW") for the design of Copart's new ERP system. (SUF 13, 26.) The SOW detailed the work to be performed, the proposed timetable, and the payments to be made by Copart to Sparta. (TAC ¶ 47; *see generally* Nadgauda Decl., Ex. B (Design SOW).) The design project was performed over four "milestones" between October 2011 and February 2012 under a fixed bid contract. (SUF 27–28.) Before Copart signed off on a project milestone, Sparta was required to provide "evidence of completion of such Milestone" to Copart for review. (SUF 22.) Copart then had a "Review Period" to analyze the evidence provided by Sparta. (*Id.*) Only if Sparta had "satisfie[d] all the applicable Acceptance Criteria," and in Copart's "sole discretion," would it "provide written confirmation of acceptance" of each project milestone to Sparta. (SUF 24.) Copart has admitted that it reviewed and commented on Sparta's work product throughout the design project, and that "Copart had the discretion to accept or reject deliverables." (SUF 29–30.) But ultimately, between December 2011 and March 2012, Copart signed off on and paid for the four project milestones of the Design project. (SUF 31–41.) In the milestone sign-offs, Copart acknowledged its acceptance of Sparta's work product, and that Sparta had "no further obligations" with respect to that milestone. (SUF 32, 37, and 40.)

### B.  After Completing the Project Design to Copart's Satisfaction, Copart Hires Sparta to Build the New Software System

Following the completion of, and Copart's sign-off for, the design, Copart considered

5

proposals to build AIMOS.  (SUF 42.)  This project addressed the implementation and deployment of the new software system across Copart's three key geographic markets—Canada, the United Kingdom and the United States.  (SUF 43.)  After evaluating several companies, and after engaging KPMG to evaluate Sparta's proposed effort and cost estimates, Copart hired Sparta again for the "realization" or "build" of AIMOS.  (SUF 42, 44–45.)  On March 28, 2012, the parties signed a realization SOW (SUF 45), which provided, "[t]his SOW describes the realization of the AIMOS design as documented in the collective output of the AIMOS Design project."  (Nadgauda Decl., Ex. G at 3.)  Pursuant to the realization SOW, Copart agreed to pay Sparta $18.8 million in eleven installment payments, or milestones (milestones 5 through 15), scheduled to occur between April 2012 and May 2013.  (*Id.* at 33; SUF 48.)  And once again, the milestone sign-offs were governed by the detailed acceptance criteria set forth in the ISA and the Realization SOW.  (SUF 23–24, 47.)

By June 29, 2012, Copart had signed off on the next three milestones, again agreeing that Sparta had "no further obligations" with respect to those milestones.  (SUF 49–56.)  The next project milestone, milestone 8, addressed testing for Canada, after which the new system would "go-live" in Canada.  (Llewellyn Decl., Ex. B, ¶ 10; Nadgauda Decl., Ex. G at 9–11.)

On September 19, 2012, Copart announced that "all the major functionality of CAS ha[d] been reproduced in AIMOS."  (Llewellyn Decl., Ex. J.)  However, Copart decided to postpone the Canada "go-live" date to December 17, 2012.  (*Id.*)  In early December 2012, Copart announced that AIMOS was in the "home stretch."  (*Id.*, Ex. K.)  Then Copart unilaterally postponed the Canada "go-live" date once again.  (*Id.*)  Whereas the realization SOW anticipated that milestone 8 would take 8 weeks to complete, as a result of these and other delays, Sparta was required to spend a total of 29 weeks on this milestone.  (Nadgauda Decl., Ex. G at 33; Llewellyn Decl., Ex. B, ¶ 10.)

On August 16, 2013, the parties entered into a written amendment to the contract.  (SUF 59.)  Among other things, the amendment provided a mechanism to address the outstanding issues with respect to the pending milestone, and set new dates for the completion of the remaining work under the SOW.  (*See generally* Nadgauda Decl., Ex. K.)

6

**C.     Copart Terminates the Contract "For Convenience" and Asks Sparta to Provide the Amount It Is Owed**

On September 17, 2013, just one month after it had agreed to a revised schedule for the completion of the realization project, Copart notified Sparta that it was terminating the ISA for "convenience." (SUF 59–61.) Internally, Copart admitted that the termination of Sparta was a "strategic decision" to bring AIMOS "in-house." (Llewellyn Decl., Ex. L.) The relevant provision of the ISA provides as follows:

> In the event that Copart terminates this Agreement pursuant to this <u>Section 15.2</u>, then Copart shall pay [Sparta] only for the portion of the Services that have been performed and completed as of the termination date, as such portion agreed by Copart and calculated and documented by [Sparta's] project management software system. (SUF 18.)

Concurrently with the termination, Copart invited Sparta to provide the amount Sparta was owed pursuant to section 15.2 of the ISA. (Nadgauda Decl., Ex. L.) On October 18, 2013, Sparta responded to Copart's request with a detailed analysis of the amount it was owed under the ISA. (SUF 62.) In that analysis, Sparta pointed out, among other things, (a) it had not been paid anything by Copart since August 2012, *i.e.* more than a year; (b) at the time of termination, Sparta had expended nearly 250,000 professional hours on Copart's behalf; and (c) the vast majority of the work for all remaining milestones, across all three geographic areas, had been completed. (Llewellyn Decl., Ex. M.) In light of these and other factors, Sparta demanded just over $12 million, and requested a response by November 1, 2013. (*Id.*)

**D.     Rather Than Pay the Amount Due to Sparta, Copart Sues Sparta**

Rather than address Sparta's proposal, or make its own proposal for a resolution pursuant to section 15.2 of the ISA, Copart responded on November 1, 2013, by suing Sparta in Texas. (SUF 63.) According to Copart, "Sparta's unreasonable position caused Copart to file suit against Sparta." (Llewellyn Decl., Ex. N.) In virtually identical allegations that it had levelled against Sparta's predecessor, Accenture, Copart's lawsuit accused Sparta of breaching the ISA and engaging in fraud and other misconduct and claimed damages of tens of millions of dollars.

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (*Id.*, Ex. O.)[1]  Despite the fact that Sparta worked on the project side by side with Copart for

2   nearly two years, Copart claims that it only "discovered" Sparta's alleged misconduct in the six-

3   week period between terminating the contract for convenience on September 17, 2013, and filing

4   its lawsuit on November 1, 2013—the same period in which the only communication between

5   the parties was Sparta's request for payment pursuant to the ISA's "termination for convenience"

6   provision.  (SUF 64–65.)  In an earnings call held on May 29, 2014—nearly seven months after

7   Copart sued Sparta—Copart's CEO, Jayson Adair, admitted that SAP was just not "the right

8   tool" for Copart.  (SUF 76.)  Copart had taken the decision to implement an SAP-based solution

9   long before it hired Sparta.  (SUF 5.)

10  **IV.   ARGUMENT**

11          **A.   Copart's Fraudulent Inducement, Fraud, and Negligent Misrepresentation
                   Claims Fail**

12

13          Copart alleges that Sparta is liable for fraudulent inducement, fraud, and negligent

14  misrepresentation, each premised on allegations that Sparta misrepresented and/or concealed

15  information both during and after the parties' contractual negotiations regarding its alleged

16  abilities and commitment to the project.  "In California, a cause of action for intentional

17  misrepresentation or fraud requires that the plaintiff prove the following: (1) a misrepresentation

18  (false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to

19  deceive or induce reliance, (4) justifiable reliance, and (5) resulting damage."  *Pac. MDF Prods.,*

20  *Inc. v. Bio-Mass Energy Concepts, LLC*, No. CIV. S-05-642 LKK/JF, 2006 WL 3359211, at *6

21  (E.D. Cal. Nov. 20, 2006).  Negligent misrepresentation requires the plaintiff to prove the same

22  elements "except that plaintiff need not prove the element of scienter."  *Id.* at *8.  As discussed

23  below, each of these claims suffer from one or more fatal defects.

24  / / /

---

25  [1]   Copart's duplicitous treatment of Accenture and Sparta is emblematic of its pattern and practice of
         using litigation to intimidate vendors.  For example, on December 4, 2012, Copart sued another

26      vendor working on AIMOS, asserting similar allegations of fraudulent inducement, fraud and

27      negligent misrepresentation.  *See Copart, Inc. v. Lightmaker USA, Inc.*, No. 2:12-cv-02943-JAM-
        CKD (E.D. Cal. Jan. 28, 2013); *see also* Copart's Answer to Sparta's Counterclaim (Dkt. 134) ¶ 99.

28

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1    **1.    Sparta's Alleged "Misrepresentations" Are Not Actionable**

2          To constitute fraud, the misrepresentation or concealment complained of must be "of a

3    past or existing material fact."  *Smith v. Ramis*, 647 F. App'x 679, 681 (9th Cir. 2016).  By

4    contrast, "predictions as to future events are deemed opinions, and not actionable by fraud."

5    *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999); *see also*

6    *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002) ("expressions of opinion are not generally

7    treated as representations of fact, and thus are not grounds for a misrepresentation cause of

8    action").  Further, an alleged misrepresentation must be a *specific* factual assertion.  *Glen Holly*,

9    100 F. Supp. 2d at 1093. (generalized or speculative statements are considered "puffery," and

10   cannot form the basis of a claim for fraud)  Whether an alleged representation is a statement of

11   fact or mere puffery may be determined as a matter of law.  *Cook, Perkiss and Liehe, Inc. v. N.*

12   *Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

13         In support of its misrepresentation claims, Copart purports to have relied on 17

14   generalized statements concerning: (1) the "commitment" of Sparta and its management to the

15   project; (2) what constitutes "standard" SAP practice; (3) Sparta's ability to "fix" source code;

16   (4) Sparta's intention to bring the "A team" of expert resources; (5) Sparta's "understanding" of

17   what Copart needed; and (6) Sparta's "application" of "SAP solutions."  (SUF 66.)  Despite its

18   obligation to state "when and where the statements were made," *Nebre v. Wachovia Mortg.*, No.

19   C 09-1239-SBA, 2009 WL 1690567, at *1 (N.D. Cal. June 16, 2009), Copart does not know the

20   specifics of a *single one* of these alleged 17 misrepresentations.  (SUF 66–72.)  Yet even if

21   Copart could identify Sparta's "misrepresentations" with the particularity the law requires, not

22   one of them is actionable as a matter of law.

23         For example, Sparta's alleged misrepresentations that it was "committed to completing

24   the project," "committed to getting the resources needed to complete Milestone 8," and "very

25   committed to the success of the engagement" are highly-generalized statements—not specific

26   assertions of fact of the type that would induce Copart's reliance to enter into a multi-million

27   dollar contract.  *Glen Holly*, 100 F. Supp. 2d at 1096 (manufacturer's statements concerning the

28   "superior[ity]" of its products, "high priority" given to product development, and manufacturer's

9

1  commitment to "aggressive program" of "'vastly increasing' corporate resources" for promotion

2  constituted non-actionable puffery.).

3      Similarly, Sparta's alleged misrepresentations that it had the "experience and expertise to

4  deliver 100% CAS functionality," and that it would build a team representing the "A-team of

5  Expert Resources," are not only highly-generalized statements, they are also subjective

6  statements of opinion. *See*, *e.g.*, *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D. Cal.

7  2001) ("Representations of opinion are ordinarily not actionable for fraud because they contain

8  judgments of quality, value, authenticity, or other matters of judgment."). Likewise, Sparta's

9  alleged representations that it "would fix and finish the source code in four weeks" and that it

10 "could fix source code errors and build missing or incomplete components in eight weeks" are

11 predictions of future conduct, not of past or existing fact. Copart's alleged misrepresentations

12 are not a viable basis for its fraud-based claims.

### 2.  Copart Did Not Justifiably Rely on Sparta's Alleged Misrepresentations

13

14

15     Copart's fraud-based claims separately fail because Copart cannot establish that it

16 justifiably relied on the representations. "To show justifiable reliance, a plaintiff must show that

17 circumstances were such to make it reasonable for the plaintiff to accept the defendant's

18 representations without an independent inquiry or investigation." *K. Darpinian & Sons, Inc. v.*

19 *E.I. Du Pont de Nemours & Co.*, 902 F.2d 39 (9th Cir. 1990). "[W]hether a party's reliance was

20 justified may be decided as a matter of law" when "reasonable minds can come to only one

21 conclusion based on the facts." *N. Cal. Collection Servs. Inc. of Sacramento v. Cent. Sierra*

22 *Const., Inc.,* No. 2:06-CV-01899 JAMDAD, 2008 WL 3876266, at *5 (E.D. Cal. Aug. 20, 2008).

23     The alleged misrepresentations are far from the type of specific, factual assertions upon

24 which a sophisticated, publicly-traded commercial entity would rely, particularly when engaged

25 in an arm's length transaction involving millions of dollars. Courts have concluded that reliance

26 is unreasonable when sophisticated businesses in arm's-length transactions claim to have relied

27 on general, extra-contractual statements. *See, e.g.*, *Gen. Am. Life Ins. Co. v. Castonguay*, 984

28 F.2d 1518, 1520 (9th Cir. 1993) (affirming summary judgment of fraud claim when the plaintiff

10

1  "could easily have checked" the defendant's claim and "any sensible business entity in its place

2  would have done so."); *Pac. MDF Prods.*, 2006 WL 3359211, at *7 (granting summary

3  adjudication of fraud and negligent misrepresentation claims when a sophisticated businessman

4  took statements of party on the other side of a transaction at "face value" without "conducting

5  any due diligence.").  This is particularly true where, as here, the party claiming reliance was

6  represented by sophisticated counsel in the course of complex contractual negotiations.  *See*, *e.g.*,

7  *Barkett v. Sentosa Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 3756348, at *7 (E.D. Cal.

8  June 16, 2015) ("sophisticated parties represented by counsel are unjustified relying on

9  misrepresentations made during the negotiations process"); *Schiff v. City & Cty. of San*

10  *Francisco*, No. C-03-4345 MMC, 2007 WL 2301773, at *11 (N.D. Cal. Aug. 8, 2007) ("Where a

11  party is represented by counsel . . . courts have held that reliance is unjustifiable.").

12      Here, the undisputed facts prove that Copart did not reasonably rely upon Sparta's

13  purported "misrepresentations."  Copart is a sophisticated business with significant experience

14  with enterprise software implementations.  (SUF 2, 6.)  Copart employed hundreds of IT staff,

15  including professionals who specialized in SAP.  (SUF 73, 74.)  It engaged independent

16  professionals to evaluate Sparta's proposals and work product.  (SUF 44, 75.)  It was represented

17  by counsel during its "extensive discussions and negotiations" with Sparta regarding the ISA,

18  which together with the SOWs, comprise 90 pages.  (SUF 11–12, 14; Llewellyn Decl., Ex. F.)

19  Before any negotiations with Sparta took place, Copart had entered into a similar contract with

20  Accenture to "design and implement" an SAP-based ERP system.  (SUF 6.)  After just four

21  months, Copart terminated this contract because of Accenture's purported "inability to achieve

22  the very purpose of the AIMOS project" and alleged "misrepresentations."  (SUF 8.)  After

23  having just terminated Accenture based on the company's alleged misrepresentations and failure

24  to perform, it is inconceivable that Copart would be immediately hoodwinked into the same

25  situation, on the same project, based on Sparta's alleged misrepresentations.

26      The ISA's integration clause makes Copart's alleged reliance even more unreasonable.

27  The ISA "represent[s] the entire agreement between the parties with respect to its subject matter,

28  and there are *no other representations*, understandings or agreements between the Parties relative

11

1  to such subject matter." (SUF 15.) It further provides that "[n]o amendment to, or change,

2  waiver or discharge of, any provision of this Agreement shall be valid unless in writing and

3  signed by both Parties." (SUF 16.) For Copart to purport to rely on pre-contractual

4  representations not set forth in the ISA is objectively unjustified, and further demonstrates the

5  futility of Copart's fraud claims. *See, e.g., Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th

6  289, 302 (2005) (integration clause was properly considered in determining whether buyer was

7  justified in relying on seller's extracontractual statements in entering purchase transaction);

8  *Baymiller v. Guarantee Mut. Life Co.*, No. SA CV99-1566DOC(ANX), 2000 WL 33774562, at *

9  4 (C.D. Cal. Aug. 3, 2000) ("there cannot be reasonable reliance upon misrepresentations or a

10 failure to disclose that are contradicted by the express language of the . . . contract.").

11          Moreover, the ISA's integration and modification clauses are expressly incorporated into

12 both the Design SOW and Realization SOW, which provide that it "is a Statement of Work

13 under the Implementation Services Agreement ('ISA') between Copart and [Sparta] dated Oct 6,

14 2011 and *is subject to all the terms of the ISA*." (SUF 15–16, 25, 46–47.) Again, it is both

15 unreasonable and unjustified for Copart to purport to rely on alleged representations that do not

16 appear in the ISA or SOWs, the contracts that governed the parties' relationship.

17          But what makes Copart's assertion of reliance truly incredible is that it bargained for the

18 contractual right to investigate, and easily verify, whether Sparta's representations were true.

19 Copart alleges Sparta fraudulently induced it to enter the ISA by claiming, among other things,

20 that Sparta had "the technical experience and expertise to deliver 100% functionality," the

21 "consultants with necessary skills, experience, and expertise to deliver 100% functionality," and

22 that Sparta "would build a team of highly experienced senior level SAP consultants." (SUF 66.)

23 At the same time, however, Copart bargained for an intricate process allowing it to evaluate and

24 approve each high-level Sparta employee working on the Project. (SUF 20.) Copart also had the

25 right to undertake constant, in-depth, independent review of Sparta's performance through, for

26 example, weekly "progress reports in a form acceptable to Copart that describe in reasonable

27 detail the status and performance of" Sparta's services, and any "other matters reasonably

28 requested by Copart." (SUF 21.) These, and other detailed requirements negotiated in the ISA

12

1    and related SOWs confirm that Copart did not rely on Sparta's alleged misrepresentations.[2]

2    Copart cannot credibly argue that it relied on Sparta's alleged misrepresentations rather than its

3    own bargained-for ability to investigate precisely the same subject matter.

4         For the same reasons, Copart's reliance on Sparta's alleged misrepresentations following

5    the execution of the ISA is also patently unreasonable.  For example, after the ISA was signed,

6    Copart alleges that Sparta made statements like "it is standard SAP practice to generate business

7    requirement documents without much detail," and that "screen shots and static views are

8    unimportant under standard SAP design."  (SUF 66.)  But at any time, Copart could have simply

9    asked for evidence supporting Sparta's claims as "any sensible business entity in its place would

10   have done." *Castonguay*, 984 F.2d at 1520.  Instead, Copart apparently rested the fate of a multi-

11   million-dollar project—and the decision to *re-hire* Sparta, rather than another company, for the

12   build project—on a handful of alleged generalized statements by Sparta, which, according to

13   Copart, had already failed to provide a complete design.  (*See, e.g.,* TAC, ¶ 55 (At the deadline

14   of the design project, "there were several CAS functions that were not yet designed").)

15   Continuing to rely on Sparta's alleged statements under these circumstances was manifestly

16   unreasonable. *Hamilton v. Willms*, No. CV F 02-6583, 2005 WL 3143712, at *10 (E.D. Cal.

17   Nov. 22, 2005) ("Where [a] person learns one representation is false, he may not assume other

18   representations are true.").  Without justifiable reliance, Copart's fraud claims fail as a matter of

19   law.

20              **3.    There Is No Evidence of Sparta's Intent to Defraud Copart**

21        Copart's fraud claims also fail as a matter of law because Copart has admitted that it has

22   no evidence of scienter.  Under California law, the "requisite state of mind, or scienter, for actual

23   fraud or intentional misrepresentation is disbelief of the truth of the statement, *i.e. knowledge of*

24   *falsity*." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1476 (1997).  Thus, to avoid

---

[2] The ISA also required Sparta to provide Copart with "evidence of completion" of each Milestone for Copart to review, following which Copart had a "Review Period" to analyze the evidence provided by Sparta. (SUF 22.)  Only if Sparta had "satisfie[d] all the applicable Acceptance Criteria" in Copart's "sole discretion" would Copart sign off on Sparta's work.  (SUF 24.)

13

1   summary judgment on a fraud claim, plaintiff must adduce evidence that the defendant knew the

2   statements he made were false when made.  *See, e.g.*, *Simpson v. Allstate Ins*., No. C-99-02940-

3   CRB, 2000 WL 1006533, at *3–4 (N.D. Cal. July 10, 2000) (granting summary judgment when

4   plaintiff failed to present evidence that defendant made alleged misrepresentation with

5   knowledge of its falsity); *Wang & Wang LLP v. Banco Do Brasil S.*A., No. 2:06–CV–00761–

6   JAM–KJM, 2009 WL 530135, at *3 (E.D. Cal. Mar. 3, 2009) (granting summary judgment on

7   fraud claim when plaintiff failed to provide "evidence of a contemporaneous fraudulent intent" at

8   the time the representations were made.).

9           After voluminous discovery, including the production of over one million pages of

10  documents, Copart has adduced *no evidence* that Sparta knew the alleged misrepresentations

11  were false when made.  Indeed, Copart has admitted that it has no evidence of *intent* to defraud

12  other than the "fact" that Sparta did not live up to its promises:

13          Q.  I'm asking what Copart's position is as to what Sparta's intent was as to the
            allegations of fraud and misrepresentation that are detailed in the answer to
14          amended answer to interrogatory No. 4.  What is Copart's position as to Sparta's
            intent at the time the statements were made?
15
            A.  Sparta told us and represented that this was the case, and the proof is in the
16          pudding that that is absolutely not the case.  *There's nothing else I can say about it.*

17  (SUF 72 (emphasis added).)  But "something more than nonperformance is required to prove

18  defendant's intent not to perform his promise."  *Wang & Wang LLP*, 2009 WL 530135, at *3.

19          The conclusory nature of Copart's fraud claims also doom its ability to prove intent.

20  "[T]he plaintiff must present significant probative evidence relevant to the issue of intent, *e.g.*,

21  the time, place, or nature of the alleged fraudulent activities; mere conclusory allegations are

22  insufficient to require that the motion for summary judgment be denied."  *Simpson*, 2000 WL

23  1006533, at *3.  Here, despite Sparta's probing in the form of interrogatories and deposition

24  testimony, including a Rule 30(b)(6) deposition focused on Sparta's alleged misrepresentations

25  and fraud (SUF 60–72), Copart has been unable to adduce any specific evidence of fraudulent

26  intent.  Without such evidence, Copart's fraud-based claims fail as a matter of law.

27          **4.      The Economic Loss Rule Bars Copart's Fraud-Based Claims**

28          Like its previous accusation against Accenture, Copart's fraud claims in this case are just

                                                    14

1  allegations of nonperformance dressed up with hyperbole.  But, under the economic loss rule,

2  "parallel fraud and contract claims" are permitted "only if the defendant's conduct was both

3  intentional and 'exposed the plaintiff to liability.'" *Lennar Mare Island, LLC v. Steadfast Ins.*

4  *Co.*, No. 2:12-cv-02182-KJM-KJN, 2016 WL 829210, at *8 (E.D. Cal. Mar. 3, 2016) (quoting

5  *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 328 (2006)).  Moreover, federal

6  courts have hesitated to except from the economic loss rule claims that do not involve either a "a

7  threat of public safety" or "products liability claims."  *Id.* (collecting cases).  The economic loss

8  rule is "particularly suited to commercial transactions" like the contract between Sparta and

9  Copart.  *See JMP Sec. LLP v. Altair Nanotechnologies Inc.,* 880 F. Supp. 2d 1029, 1032 (N.D.

10  Cal. 2012) (holding economic loss rule bars fraud claims based on contractual promises to

11  provide financial adviser services).

12        Here, Sparta's purported misrepresentations are tied to its contractual performance under

13  the ISA.  Copart has provided no evidence that it faces liability resulting from these purported

14  misrepresentations, and this case does not involve a defective product or a threat to public safety.

15  The Court should reject Copart's clear attempt at conflating fraud with breach of contract to

16  bolster its alleged damages.

17        **B.    Copart's Breach of Contract Claim Fails as a Matter of Law**

18              **1.    Copart's Election to Terminate for Convenience and Not for Cause**
19              **Forecloses Its Claim for Breach of Contract**

20        A party may not terminate a contract for convenience and thereafter convert that

21  termination into termination for cause by alleging fraud and breach of contract, unless a contract

22  specifically allows for such a conversion.  *See, e.g.*, *Shelter Prods. v. Steelwood Constr. Inc.*, 307

23  P.3d 449, 461 (Or. Ct. App. 2013) ("At least in the absence of an opportunity to correct allegedly

24  defective work . . . where a party has terminated a contract for convenience, that party may not

25  then counterclaim for the cost of curing any alleged default."); *Paragon Restoration Grp. Inc. v.*

26  *Cambridge Square Condos.*, 42 A.D.3d 905, 906 (N.Y. 2007) (dismissing defendant's

27  counterclaims for breach of contract and fraud because "where defendant elects to terminate for

28  convenience . . . it cannot counterclaim for the cost of curing any alleged default."); *Fruin-*

15

1  *Colnon Corp. v. Niagara Frontier Transp. Auth.*, 585 N.Y.S.2d 248, 256 (N.Y. App. Div. 1992)

2  ("[B]ecause termination of plaintiff is deemed to be for defendant's convenience, defendant is

3  not entitled to recover . . . damages under the contract.").

4  Here, the ISA gave Copart the option to choose between termination for convenience or

5  termination for cause.  (SUF 17.)  Each option carried with it carefully bargained-for rights and

6  obligations.  If Copart terminated for cause, it had to afford Sparta the opportunity to cure.  (SUF

7  19.)  By contrast, if Copart terminated for convenience, it could end the relationship

8  immediately, but had to pay Sparta for the portion of the work completed.  (SUF 18.)  Copart

9  chose to terminate the ISA for convenience and not for cause specifically to obtain the benefits

10  of the Termination of Convenience provision and avoid "allowing for a 30-day cure period."

11  (SUF 60–61.)  Copart's lawsuit attempts to have it both ways and renders illusory the ISA's

12  distinction between "convenience" and "cause," which the law does not allow.  *See Segal v.*

13  *Silberstein*, 156 Cal. App. 4th 627, 633 (2007) (California courts "give effect to every provision

14  and avoid rendering any part of an agreement surplusage").

### 2.  Copart Waived Its Breach of Contract Claim with Respect to Milestones 1 Through 7

17  After each of milestones 1 through 7, Copart reviewed Sparta's work and signed a

18  milestone approval form affirming Sparta's performance of its obligations under the ISA with

19  respect to that milestone and waiving any ability to later claim that Sparta breached those

20  obligations.  "California courts will find waiver when a party intentionally relinquishes a right or

21  when that party's acts are so inconsistent with an intent to enforce the right as to induce a

22  reasonable belief that such right has been relinquished."  *Farhang v. Indian Inst. of Tech.,*

23  *Kharagpur*, No. C–08–02658 RMW, 2010 WL 3504897, at *2 (N.D. Cal. Sept. 7, 2010)

24  (concluding plaintiffs waived the right to claim breach of a contract after assisting with the

25  conduct plaintiffs subsequently claimed amounted to a breach).

26  After each milestone, (a) Sparta provided "evidence of completion of such Milestone" to

27  Copart for review; (b) Copart then evaluated that evidence pursuant to the negotiated

28  "Acceptance Criteria"; (c) after its review, Copart formally accepted Sparta's work and informed

16

1   Sparta, in writing, that Sparta "has no further obligations with respect to" each milestone; and (d)

2   Copart paid Sparta for the work it had completed for milestones 1 through 7.  (SUF 21–24, 31–

3   41, 49–57.)  Indeed, after milestones 1 through 4, which comprised the design project, Copart

4   evaluated other companies, and after consulting with KPMG, decided to *re-hire* Sparta for the

5   build project.  (SUF 27–28, 42, 44–45, 46.)

6         Copart's explicit, repeated acceptance of each milestone after its independent review

7   process, its re-hiring of Sparta for the build project, and its decision to terminate the contract for

8   convenience rather than cause—which deprived Sparta the opportunity to cure any purported

9   breach in the process—is entirely inconsistent with the intent to subsequently claim Sparta failed

10   to perform under those milestones.  *See BNSF Ry. Co. v. San Joaquin Valley R.R. Co*., No. CV F

11   08-1086 AWI SMS, 2012 WL 1355662, at *12–13 (E.D. Cal. Apr. 18, 2012) (holding that

12   plaintiff was estopped from claiming damages arising from a contract after repeatedly accepting

13   performance with notice of potential breach); Cal. Evid. Code § 623 ("Whenever a party has, by

14   his own statement or conduct, intentionally and deliberately led another to believe a particular

15   thing true and to act upon such belief, he is not, in any litigation arising out of such statement or

16   conduct, permitted to contradict it.").

17         **3.     Copart Did Not Suffer Damages Relating to the Remaining Milestones**

18         Without a claim that Sparta failed to perform milestones 1 through 7, Copart's breach of

19   contract—to the extent it is even permitted—is limited to the remaining milestones.  But Copart

20   suffered no damage resulting from Sparta's alleged non-performance of its obligations under

21   these milestones.  "Under California law, a breach of contract claim requires a showing of

22   appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d 1010, 1015

23   (9th Cir. 2000).  Because Copart did not pay Sparta for its work relating to milestones 8 through

24   15 (SUF 58), Copart has not suffered any actual, appreciable damages from Sparta's purported

25   non-performance.  Accordingly, Copart's breach of contract claim fails as a matter of law.

26         **C.     Copart's Claims That Are Derivative of Its Failed Fraud and Breach of
27                Contract Claims Also Fail as a Matter of Law**

28         Copart has also alleged boilerplate claims that are derivative of its flawed fraud and

17

1   breach of contract claims.  These derivative claims should be dispatched as well.

2                **1.**      **Unfair Competition**

3        California's unfair competition law ("UCL") allows a plaintiff to claim restitution of

4   monies obtained by "unlawful," "unfair," or "fraudulent" business practices.  While Copart

5   alleges Sparta engaged in "unlawful, unfair and/or fraudulent business acts," its allegations

6   focus[3] on Sparta's alleged fraudulent conduct.  (TAC ¶ 214).  When relying on the fraud prong

7   of the UCL,  a plaintiff must show that "members of the [general] public are likely to be

8   deceived" by the defendant's conduct.  *Comm. on Children's Television, Inc. v. Gen. Foods*

9   *Corp.*, 35 Cal. 3d 197, 211 (1983) (citations omitted).  No evidence suggests that Sparta's

10   alleged "misrepresentations," which were made to Copart only during closed-door negotiations,

11   were likely to deceive the general public, so Copart cannot prevail on a claim based on the

12   "fraudulent" prong of the UCL.  Accordingly, Copart's fraud-based UCL allegations fails.

13                **2.**      **Unjust Enrichment**

14        Ruling on Sparta's motion to dismiss, the Court noted that "Copart relies on its fraud

15   claims to justify its request for restitution[.]"  (Dkt. 55 23:16–18).  Because Copart's fraud-based

16   claims fail, it has no basis for seeking restitution here.  Moreover, Copart's claim—even when

17   couched as a result of fraud—is that the money Copart paid Sparta under the ISA amounts to

18   unjust enrichment because Sparta failed to perform its contractual duties.  At the summary

19   judgment stage, an unjust enrichment claim fails when it covers the same subject matter as a

20   contract defining the parties' rights—such as the right to damages for nonperformance.  *See, e.g.*,

21   *Ridgewood Assocs., Inc. v. Trumpower*, No. CIVS061376LKK/GGH, 2007 WL 1223666, at *5

22   (E.D. Cal. Apr. 25, 2007) (granting summary judgment where the unjust enrichment claim was

23   "covere[ed by] the same subject matter" as the parties' contract).  Finally, as set forth above,

24   Copart can hardly claim that Sparta was "unjustly enriched" when Copart ***accepted*** the work

25   product, *i.e.* milestones 1 through 7, for which it now seeks restitution.

26

27   [3]   The UCL allegation based on the purported "taking [of] materials and work product" (TAC ¶ 214) is addressed by the motions filed concurrently by KPIT India and Infosystems.

28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       **3.**          **Breach of the Implied Covenant of Good Faith and Fair Dealing**

2          In response to Sparta's motion to dismiss, the Court concluded that Copart's implied

3 covenant claim survived because Sparta's alleged misrepresentations regarding "its expertise

4 capabilities and handling of problems with the AIMOS program . . . are separate from Sparta's

5 failure to meet the obligations of the contract; they are actions giving rise to actionable claims of

6 fraud[.]" (Dkt. 55 at 21:25–28.) But with the benefit of discovery, Copart has failed to establish

7 a basis for its fraud claims, so the alleged misrepresentations cannot be the basis of Copart's

8 implied covenant claim. Separately, damages for the breach of the implied covenant are "limited

9 to contract rather than tort remedies." *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43

10 (1999). Because Copart has not suffered any damages from Sparta's alleged non-performance

11 under the ISA, Copart cannot prevail on this claim.

12       **4.**          **Declaratory Relief**

13          A claim for declaratory relief cannot be superfluous of a breach of contract claim.

14 *Spirtos v. Allstate Ins. Co*., No. CV 02-8798-RGK AJWX, 2004 WL 5803855, at *5 (C.D. Cal.

15 May 3, 2004). Here, Copart's declaratory relief claim which seeks an interpretation of the

16 parties' rights under the ISA is simply another way of framing the parties' contractual dispute.

17 Accordingly, the Court should reject Copart's claim for declaratory relief.

18       **D.**          **Copart's Professional Negligence Claim Against Sparta Is Time-Barred**

19          In California, the statute of limitation for professional negligence is two years. Cal. Civ.

20 Proc. Code § 339; *Thomas v. Canyon*, 198 Cal. App. 4th 594, 606 (2011); *see also Schutte &*

21 *Koerting, Inc. v. Swett & Crawford*, 298 Fed. App'x 613, 614 (9th Cir. 2008) ("[T]he district

22 court properly held that the 'gravamen' of S & K's claims was for professional negligence

23 subject to a two-year statute of limitations period under Cal. Code Civ. Proc. § 339."). A claim

24 for relief for professional negligence accrues when "the plaintiff (1) sustains damage and (2)

25 discovers, or should discover, the negligence." *Roger E. Smith, Inc. v. SHN Consulting Eng'rs &*

26 *Geologists, Inc.*, 89 Cal. App. 4th 638, 650–51 (2001). "It does not matter [if] the damages or

27 losses . . . may have increased over time." *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp*

28 *Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1161 (2004).

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Copart's claim for professional negligence first appeared in the TAC filed on June 8,

2   2016.  (SUF 77.)  Therefore, this claim is time-barred if it can be shown that Copart allegedly

3   sustained damages and knew of, or should have known of, Sparta's alleged negligence before

4   June 8, 2014.  The damages allegedly associated with this claim include "paying Sparta fees,"

5   "lost profits stemming from delays," and "the continued costs of maintaining Copart's CAS

6   system."  (TAC ¶ 196.)  Copart does not allege a delay in discovering such damages.

7   The Court need look no further than the pleadings associated with this dispute to

8   appreciate that Copart's professional negligence claim is time-barred.  On November 1, 2013,

9   Copart alleged in its initial complaint that "[f]rom the start, Sparta performed its services poorly"

10  and that it "missed schedules, its software failed tests, and the project foundered."  (SUF 63, 78.)

11  Copart also alleged damages as a result of Sparta's performance, including "business injury

12  related to the delay in the project."  (*Id.*)  Therefore, per its own allegations,[4] Copart's

13  professional negligence claim accrued with the filing of its initial complaint in November 2013,

14  at the latest.[5]  Because Copart then waited over two years and seven months to file this claim, the

15  claim is precluded as a matter of law.  *See Roger E. Smith*, 89 Cal. App. 4th at 650–51 (affirming

16  dismissal of plaintiff's professional negligence claim where plaintiff filed its claim more than

17  two years after it complained to defendant about construction delays and errors).

18  **V.    CONCLUSION**

19  Copart and Sparta are sophisticated companies which negotiated and entered into a

20  detailed contract.  After terminating that relationship for its own convenience, Copart then

21  manufactured wild fraud claims in a misguided attempt to avoid paying Sparta what it was owed.

22  Because there are no genuine issues of material fact on Copart's claims, summary judgment

23  should be granted in favor of Sparta.

24

25  [4]  Copart's First Amended Complaint ("FAC") was also filed more than two years before this claim was
        alleged in the TAC.  (SUF 79.)  The FAC contains further detail of Sparta's alleged performance
26      failures for which Copart claimed damages.  (Llewellyn Decl., Ex. S, ¶¶ 35–39, 44–45, 50.)

27  [5]  Beyond the pleadings, by late 2012, Copart's Chief Technology Officer, complained to Sparta about
        its alleged poor performance and resulting project delays.  *See, e.g.*, Nadgauda Decl., Exs. M & N.

28

20

1   Dated:  January 13, 2017                    Respectfully submitted,

2                                               LEWIS & LLEWELLYN LLP
                                                    Paul T. Llewellyn
3                                                   Ryan B. Erickson
                                                    Rebecca F. Furman
4
                                                GIBSON, DUNN & CRUTCHER LLP
5                                                   Frederick Brown
                                                    Joseph R. Rose
6                                                   Ian T. Long

7                                               By: /s/ Paul T. Llewellyn
                                                    Paul T. Llewellyn
8
                                                    Attorneys for Defendant and
9                                                   Counterplaintiff
                                                    Sparta Consulting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SPARTA CONSULTING, INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

**<u>CERTIFICATION OF SERVICE</u>**

The undersigned hereby certifies that on the 13th day of January, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

By: /s/ Paul T. Llewellyn
Paul T. Llewellyn