LEWIS & LLEWELLYN LLP
Paul T. Llewellyn (California Bar No. 216887)
Ryan B. Erickson (California Bar No. 268239)
Rebecca Furman (California Bar No. 294082)
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile: (415) 390-2127
Email: pllewellyn@lewisllewellyn.com
        rerickson@lewisllewellyn.com
        bfurman@lewisllewellyn.com

GIBSON, DUNN & CRUTCHER LLP
Frederick Brown (California Bar No. 65316)
Joseph R. Rose (California Bar No. 279092)
Ian T. Long (California Bar No. 290975)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
Email: fbrown@gibsondunn.com
        jrose@gibsondunn.com
        ilong@gibsondunn.com

Attorneys for Defendant and Counterplaintiff,
SPARTA CONSULTING, INC. and Defendants
KPIT INFOSYSTEMS, INC. and KPIT
TECHNOLOGIES LTD.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC.,<br><br>              Plaintiff,<br><br>       v.<br><br>SPARTA CONSULTING, INC., KPIT INFOSYSTEMS, INC., and KPIT TECHNOLOGIES LTD.<br><br>              Defendants. | CASE NO. 2:14-cv-00046-KJM-CKD<br><br>**DEFENDANT KPIT TECHNOLOGIES LTD.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SPARTA CONSULTING, INC.,<br><br>              Counterplaintiff,<br><br>       v.<br><br>COPART, INC.<br><br>              Counterdefendant. | Date:       February 10, 2017<br>Time:       10:00 a.m.<br>Judge:      Hon. Kimberly J. Mueller<br>Location:   Robert T. Matsui United States<br>              Courthouse<br>              Courtroom 3, 15th Floor<br>              501 I Street<br>              Sacramento, CA 95814 |

1  **TO PLAINTIFF AND COUNTERDEFENDANT, COPART, INC., AND ITS COUNSEL**

2  **OF RECORD:**

3  PLEASE TAKE NOTICE THAT ON February 10, 2017 at 10:00 a.m., or such other

4  convenient and available date for the Court, before the Honorable Kimberly J. Mueller in

5  Courtroom 3 of the United States District Court for the Eastern District of California, 501 I

6  Street, Sacramento, California 95814, defendant KPIT Technologies Ltd. ("KPIT India") will

7  and hereby does move for entry of an order granting summary judgment for KPIT India and

8  against plaintiff and counterdefendant Copart, Inc. ("Copart") on Copart's Third Amended

9  Complaint ("TAC"), or alternatively, partial summary judgment against Copart on its individual

10  claims and claims for damages.

11  KPIT India has noticed the hearing for February 10, 2017, pursuant to the Court's August

12  17, 2016 Amended Status (Pretrial Scheduling) Order (Dkt. 140) which provides that "[a]ll

13  dispositive motions on all claims, except motions for continuances, temporary restraining orders

14  or other emergency applications, shall be heard no later than February 10, 2017."  Since the

15  Court entered its Scheduling Order, counsel for KPIT India has regularly checked the Court's

16  website to confirm that February 10, 2017 was an available hearing date.  Despite diligent

17  efforts, however, KPIT India only just learned that February 10, 2017 is no longer an available

18  hearing date for the Court.  On January 12, 2017, the parties filed a Stipulation and [Proposed]

19  Order (Dkt. 183) seeking a continuance of the deadline to hear dispositive motions from

20  February 10, 2017 to February 24, 2017—the next available hearing date indicated on the

21  Court's website.  In the event the Court enters the proposed order, KPIT India proposes that the

22  hearing on this motion occur on February 24, 2017.

23  This motion is based upon this Notice of Motion and Motion; the accompanying

24  Memorandum of Points and Authorities; portions of the Memorandum of Points and Authorities

25  filed concurrently by defendant and counterplaintiff Sparta Consulting, Inc. ("Sparta") and by

26  defendant KPIT Infosystems, Inc. ("Infosystems"); Defendants' Joint Separate Statement of

27  Undisputed Material Facts; the Declarations of Paul T. Llewellyn, Vaibhav Nadgauda, Manish

28  Kumar, Namit Swaroop, Chidanand Chauhan, Swaminathan R, Professor Michael Shamos, and

1   Travis Barrs of Paymetric, Inc. filed in support thereof; all pleadings and papers on file in this

2   action; and upon such further oral and written argument and evidence as may be presented at, or

3   prior to, the hearing of this matter.

4   Dated:  January 13, 2017                    Respectfully submitted,

5                                                LEWIS & LLEWELLYN LLP
                                                 Paul T. Llewellyn
6                                                Ryan B. Erickson
                                                 Rebecca Furman
7
                                                 GIBSON, DUNN & CRUTCHER LLP
8                                                Frederick Brown
                                                 Joseph R. Rose
9                                                Ian T. Long

10                                               By:  /s/ Paul T. Llewellyn
                                                      Paul T. Llewellyn
11
                                                 Attorneys for Defendant
12                                               KPIT Technologies Ltd.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>CERTIFICATION OF MEET AND CONFER EFFORTS</u>**

2          Pursuant to the Court's Amended Status (Pretrial Scheduling) order dated August 17,

3     2016, prior to filing the instant motion, KPIT India engaged in meet and confer efforts with

4     Copart to discuss thoroughly the substance of the motion and a potential resolution.  Specifically,

5     on January 3, 2017, Paul Llewellyn, Ryan Erickson and Rebecca Furman, counsel for KPIT

6     India, engaged in a telephonic meet and confer with Jason Takenouchi, Margaret Ziemianek and

7     George Chikovani, counsel for Copart, to discuss the basis for this motion.  Despite these meet

8     and confer efforts, the parties were unable to resolve the issues presented by this motion.

By: /s/ Paul T. Llewellyn

9                                                           Paul T. Llewellyn

10                                                       Attorney for Defendant
                                                          KPIT Technologies Ltd.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### TABLE OF CONTENTS

3      I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

4      II.     JOINDER ................................................................................................................... 3

5      III.    FACTUAL BACKGROUND ....................................................................................... 4

6              A.      Copart Alleges Sparta Developed and Then Stole Copart's Trade
7                      Secrets ............................................................................................................. 4

8              B.      Copart's Alleged Trade Secrets Are Publicly Known ........................................ 4

9                      1.      Imaging Functionality ........................................................................... 4

10                     2.      Paymetric Functionality ........................................................................ 6

11             C.      Sparta Independently Developed the ZCL_IMAGING
                       Methodology which Copart Alleges Is Its Trade Secret ................................... 7

12             D.      Sparta Tested the Alleged Imaging Trade Secrets in Its Own
13                     Sandbox Before Incorporating Them into AIMOS ........................................... 8

14             E.      Sparta Never Incorporated the Allegedly Misappropriated Code
                       into AutoEdge, and Never Marketed, Licensed, or Sold the Code ..................... 8

15     IV.     ARGUMENT ............................................................................................................... 9

16             A.      Copart Cannot Prove Essential Elements of Its Claims Against
17                     KPIT India ...................................................................................................... 9

18             B.      Copart Cannot Establish a Claim for Trade Secret
                       Misappropriation ........................................................................................... 11

19                     1.      Copart Cannot Establish the Existence of a Trade Secret ..................... 11

20                     2.      Copart Does Not Have A Cognizable Damages Claim ......................... 13

21                     3.      ZCL_IMAGING Is Not Copart's Property ........................................... 16

22     V.      CONCLUSION ........................................................................................................... 17

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Ajaxo Inc. v. E\*Trade Financial Corp.*,
    187 Cal. App. 4th 1295 (2010) ........................................................................ 16

4

5

*Berster Techs., LLC v. Christmas*,
    Civ. No. S–11–1541 KJM JFM, 2012 WL 33031 (E.D. Cal. Jan. 6, 2012) ........................ 14

6

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*,
    213 F.3d 474 (9th Cir. 2000) .............................................................................. 9

7

8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 9

9

10

*E.R. v. Sutter Davis Hosp.*,
    No. CV 2:14-2053 WBS CKD, 2016 WL 7229117 (E.D. Cal. Dec. 13, 2016) ................. 12

11

12

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
    No. 2:13–cv–00784–MCE–DAD, 2013 WL 3872950 (E.D. Cal. Jul. 25, 2013) ................ 11

13

*FAS Techs., Ltd. v. Dainippon Screen Mfg., Co., Ltd.*,
    No. C 00-01879 CRB, 2001 WL 637451 (N.D. Cal. 2001) ...................................... 14

14

*Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*,
    95 Cal. App. 4th 1249 (2002) ............................................................................ 11

15

16

*Integral Dev. Corp. v. Viral Tolat*,
    No. C 12–06575 JSW, 2015 WL 674425 (N.D. Cal. Feb. 12, 2015) ........................... 14

17

18

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
    No. C 09–05185 JW, 2010 WL 5422556 (N.D. Cal. Dec. 27, 2010) ........................... 12

19

20

*Unilogic, Inc. v. Burroughs Corp.*,
    10 Cal. App. 4th 612 (1992) ..................................................................... 14, 16

21

**STATUTES**

22

Cal. Civ. Code § 3426.1(d) ...................................................................................... 11

23

Cal. Civ. Code § 3426.3(a) ...................................................................................... 14

24

Cal. Civ. Code § 3426.3(b) ...................................................................................... 14

25

**OTHER AUTHORITIES**

26

Adv. Comm. Note to 2000 Amd. to Fed. R. Evid. 702 advisory committee's note,

27

   2000 Amd. ...................................................................................................... 12

28

i

I.     INTRODUCTION AND SUMMARY OF ARGUMENT

KPIT India seeks summary judgment regarding Copart's trade secrets claims. Copart engaged Sparta to design and implement a new SAP-based Enterprise Resource Planning ("ERP") software solution. Over two years after this lawsuit was filed, and right before fact discovery closed, Copart argued, for the first time, that its trade secrets had been stolen. Copart eventually obtained leave to file a Third Amended Complaint ("TAC") alleging misappropriation of trade secrets and related claims. The TAC also named as defendants Sparta's U.S. parent, KPIT Infosystems ("Infosystems"), and Sparta's India-based grandparent, KPIT India.

With fact discovery on the new claims now closed, the undisputed evidence establishes that (1) there is no support to establish the liability of KPIT India, and (2) Copart's eleventh hour trade secret and related additions are legally unsustainable and devoid of factual support. The Court should grant summary judgment as to these claims.

First, KPIT India did not engage in any wrongdoing. Only a small number of the personnel who worked on the design and implementation of the ERP solution for Copart were employees of KPIT India, and those employees were all non-managerial junior consultants who were directly supervised by Sparta. Undisputed evidence shows none of these individuals played a role with respect to the alleged misappropriation or did anything wrong. Because Copart cannot prove that KPIT India was involved in the alleged wrongdoing, caused any harm to Copart, or received any benefit from the alleged misconduct, the Court should grant summary judgment in favor of KPIT India.

Second, Copart's trade secrets claims have legal and factual defects. Copart's CUTSA claim is the most glaring example. Copart vaguely describes its purported trade secrets as "imaging functionality" and "Paymetric functionality." When pressed to identify the specific code that was allegedly misappropriated, Copart identified "ZCL_IMAGING" and the software packages "ZIMAGING" and "ZIMG" as constituting the "imaging functionality" at issue. For "Paymetric functionality," Copart identified the configuration of a third-party credit card payment system.

Neither the "imaging functionality" nor the "Paymetric functionality" is a trade secret.

1

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Primarily, neither "functionality" was unique or proprietary to Copart, and both are publicly

2  known.  All of the imaging functions were described in patent disclosures, websites and other

3  readily available public sources.  Similarly, the software packages themselves, and the code

4  contained therein, were neither unique nor proprietary to Copart, and were publicly known.

5  Regarding the "Paymetric functionality," the process of configuring SAP to work with a third-

6  party credit card payment system, such as Paymetric, is similarly neither unique nor proprietary

7  to Copart.  Indeed, Paymetric itself distributes publicly available documents describing how to

8  configure the very functionality that Copart now claims is its trade secret.  Because these

9  undisputed facts prove that there is no "trade secret," the Court should accordingly summary

10  judgment as to Copart's CUTSA claim.

11      And even if identified functionality were protectable trade secrets, Copart's claims still

12  fail because there are no damages.  There is no evidence that Copart has incurred any loss as a

13  result of the alleged misappropriation.  The code and configuration at issue remain in Copart's

14  possession and has never even been used by Copart.  Similarly, there is no evidence that

15  defendants sold, licensed or included the allegedly misappropriated code in any of its products.

16  Without any cognizable damages, Copart has been forced to retreat to a theory of reasonable

17  royalty for the imaging functionality.  In advancing such a theory, however, Copart focuses on

18  the wrong target.  The only reasonable royalty theory advanced by Copart focuses not on the

19  discrete software code that was allegedly misappropriated, but rather on Copart's *entire legacy*

20  *imaging solution*, involving different code and hardware, that Copart developed nearly a decade

21  earlier.  But defendants never used or had access to Copart's legacy imaging solution, and it

22  remains in the possession of Copart.

23      This damage theory is fundamentally flawed and the claim should be dismissed as a

24  matter of law.  And Copart does not even advance a damage theory for the Paymetric

25  functionality that it alleges was misappropriated.  Therefore, the Court should grant summary

26  judgment on Copart's trade secrets claims.

27      Third, even if the software packages did somehow qualify as trade secrets, under the clear

28  terms of the parties' contract, the ZCL_IMAGING methodology that Copart asserts is its

2

1  intellectual property is "Background Technology" under the ISA that is not owned by Copart.

2  As the undisputed evidence reveals, Sparta developed this methodology independently of the

3  Copart project.  At an absolute minimum, therefore, the Court should grant partial summary

4  judgment in favor of defendants and make a finding that ZCL_IMAGING is not owned by

5  Copart.

6         The remaining claims are addressed in Infosystems' brief, in which KPIT India joins.  As

7  explained in that motion, Copart's claims for common law misappropriation, conversion, unfair

8  competition, unjust enrichment and professional negligence, are each preempted by CUTSA

9  because they are based on the same nucleus of facts as the CUTSA claim.  As for Copart's

10  claims under the CFAA and CDAFA, the so-called "anti-hacking statutes," there is no evidence

11  that Copart's computers were accessed without authorization or of defendants' fraudulent intent.

12  And just like the CUTSA claim, Copart cannot show any damages or loss stemming from the

13  alleged unauthorized access.  Finally, Copart's claim for professional negligence, added at the

14  eleventh hour, is barred by the two-year statute of limitations.

15         After months of discovery, Copart has been unable to adduce any support for its trade

16  secret and related claims.  The Court should therefore grant summary judgment, or in the

17  alternative, partial summary judgment in favor of KPIT India, and the other defendants, each of

18  which has joined in relevant parts of this motion.

19  **II.     JOINDER**[1]

20         Pursuant to the Court's Minute Order of November 29, 2016 (Dkt. 170), KPIT India joins

21  Sections III and IV-D of Sparta's Motion for Summary Judgment, and Sections III-A-2 and III-B

22  through III-E of Infosystems' Motion for Summary Judgment, both of which are being filed

23  concurrently.

24

25  [1]  For the Court's convenience, Exhibit A to the Declaration of Paul T. Llewellyn ("Llewellyn

26  Decl.") contains an overview of the claims in Copart's TAC and the defendants that are
   subject to each claim.  To gain an understanding of the history of the AIMOS design and

27  build projects, as well as the contractual relationship between Sparta and Copart, defendants
   respectfully recommend that the Court first review Sparta's motion for summary judgment.

28

1   **III.   FACTUAL BACKGROUND**[2]

2       **A.   Copart Alleges Sparta Developed and Then Stole Copart's Trade Secrets**

3       Copart alleges that "[a]t the same time Sparta and KPIT were botching the SAP

4   implementation for Copart, they were also using that Project to steal certain Copart's valuable

5   and proprietary trade secrets."[3]  (TAC (Dkt. 126) ¶ 93.)  According to Copart, "Sparta and

6   KPIT's theft of Copart's trade secrets arose out of Sparta and KPIT's [desire] to upgrade their

7   standalone, property SAP product, known as AutoEdge."  (TAC ¶ 94.)

8       When fact discovery was open, Copart vaguely identified the trade secrets that

9   defendants allegedly misappropriated as falling into two categories: (1) "imaging functionality"

10  and (2) "Paymetric functionality."  (Joint Statement of Undisputed Material Facts ("SUF") 80.)

11  Sparta personnel developed the code that Copart now alleges are its trade secrets.[4]  (SUF 87.)

12      **B.   Copart's Alleged Trade Secrets Are Publicly Known**

13          **1.   Imaging Functionality**

14      With respect to "imaging functionality," when asked to identify the "specific lines of

15  code" allegedly misappropriated, Copart finally identified the following items in amended

16  interrogatory responses served a month after the close of fact discovery: "The stolen imaging

17  functionality includes the global class ZCL_IMAGING and its dependent tables, and all contents

18  of the 'ZIMAGING' and 'ZIMG' packages."  (SUF 82.)  Given that ZCL_IMAGING is part of

19  the ZIMAGING software package (SUF 88), Copart asserts at bottom that defendants

20  misappropriated two software packages: ZIMAGING and ZIMG.[5]  (*Id.*; Llewellyn Decl., Ex.

---

21

22  [2]  Sparta's motion for summary judgment, which is being filed concurrently, focuses on Copart's non-trade secret claims.

23  [3]  Copart does not distinguish between KPIT India and Infosystems, and instead uses the general reference "KPIT" throughout the TAC.  (TAC at 1:1-3.)

24  [4]  The TAC alleges "[t]hese software materials were contained within the legacy CAS system

25  and the AIMOS system that was under development on the Project."  (TAC ¶ 93.)  However, Copart has since backtracked, conceding that defendants did not misappropriate any property from Copart's legacy CAS system.  (SUF 85–86.)

26  [5]  After identifying the software packages "ZIMAGING" and "ZIMG," Copart cited eight

27  documents pursuant to Rule 33(d)(1) of the Federal Rules of Civil Procedures, which in turn attached dozens of additional documents.  (Llewellyn Decl., Ex. U at p. 6-7.)  When

28

4

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1   QQ (Hartfield Dep.) at 255:16–256:24.)

2       Copart claims that this "imaging technology allows [it] to automatically associate images

3   with specific lots and the metadata for those lots, and efficiently retrieve and load those images

4   for auction or in response to client requests." (Llewellyn Decl., Ex. V at p. 7–8.)  Critically, the

5   two software packages that Copart alleges were misappropriated—ZIMAGING and ZIMG —

6   constitute only a small part of the imaging functionality that was being built as a part of AIMOS,

7   which in turn was intended to be only one part of Copart's overall imaging solution.  (SUF 89–

8   97.)

9       Copart's proposed overall imaging solution comprised processes and systems for

10  capturing images, uploading them to AIMOS, transferring them to a repository, associating those

11  images with cars to be auctioned, and then retrieving them during online auctions.  (Shamos

12  Decl., Ex. A at ¶ 31.)  The overall imaging solution included both AIMOS portions, for which

13  Sparta was responsible, and non-AIMOS portions, for which Sparta was not responsible and

14  which had been developed by Copart.  (SUF 89–97.)  And the ZIMAGING and ZIMG packages

15  perform only a small, publicly-known portion of Copart's overall imaging solution.  (*Id.*)

16      The ZIMAGING software package is written in an SAP programming language, known

17  as ABAP.  (Shamos Decl., Ex. A at ¶ 94.)  ZIMAGING includes 37 methods, whose code is

18  publicly available and not unique to Copart.  (SUF 98–101.)  After examining each of the 37

19  methods, defendants' expert, Dr. Michael Shamos, a Distinguished Professor at Carnegie Mellon

20  University, concluded, with supporting citations to numerous patents, patent applications and

21  other publicly available information, that "ZIMAGING contains nothing unique or proprietary to

22  Copart and is publicly known, thus providing no independent economic value from not being

23  known by others."  (*Id.*; Shamos Decl., Ex. A at ¶¶ 93–149.)

24  _____

    defendants requested that Copart "identify with specificity what portion or portions of [these
25  documents] constitute a trade secret," Copart could not identify any alleged trade secrets.
    (Llewellyn Decl., Ex. V at p. 8–16.).  And after reviewing these documents and their
26  attachments, defendants' expert, Dr. Shamos, concluded, "I am unable to locate any unique
    or proprietary process to Copart that is not publicly known, thus providing independent
27  economic value from not being known by others, in any of the materials alleged by Copart to
    contain its intellectual property."  (Shamos Decl., Ex. A at ¶¶ 165–225.)
28

5

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    As for the ZIMG package, Dr. Shamos performed a similar analysis of public sources and

2    concluded "ZIMG contains nothing unique or proprietary to Copart and is publicly known, thus

3    providing no independent economic value from not being known by others."  (SUF 102–105;

4    Shamos Decl., Ex. A at ¶¶ 93, 150–155.)

5    Thus, all of the functions performed by both the ZIMAGING and ZIMG software

6    packages have been described in public patent documents and are embodied in websites and

7    readily available consumer software.  (SUF 98–105.)  Copart has no evidence to the contrary.

8    ### 2.    Paymetric Functionality

9    Paymetric is a third-party software company that sells software to facilitate the

10   processing of credit card transactions.  (SUF 108.)  When asked to identify the "specific lines of

11   code" related to "Paymetric functionality" that were allegedly misappropriated, Copart instead

12   stated that "Paymetric functionality is the ability to securely process credit card payments, and

13   the configuration of Paymetric to function with the SAP environment that was embodied in

14   AIMOS."  (SUF 84.)  But as Paymetric makes clear, the ability to securely process credit card

15   payments is the core function of Paymetric's software product—a product that remains the "sole

16   and exclusive property of Paymetric" under an agreement entered by Copart and Paymetric.

17   (SUF 110–113.)

18   Additionally, many products on the market—including SAP's standard Business Suite—

19   include the functionality necessary to securely process credit card payments. (SUF 109.)  Indeed,

20   virtually every merchant and website accepts credit cards and has been obliged to configure its

21   systems for that purpose.  And both Paymetric and SAP distribute publicly available documents

22   instructing users how to implement the necessary configurations for Paymetric's proprietary

23   payment processing solution.  (SUF 116.)  As Dr. Shamos has concluded, "the process of

24   configuring Paymetric is not unique or proprietary to Copart and is publicly known, thus

25   providing no independent economic value from not being known by others."  (SUF 114–115,

26   117–119; Shamos Decl., Ex. A at ¶¶ 159–163.)  Copart has no evidence to the contrary.

27   / / /

28   / / /

6

C.    **Sparta Independently Developed the ZCL_IMAGING Methodology which Copart Alleges Is Its Trade Secret**

Before hiring Sparta, Copart hired another SAP consulting firm, Accenture LLP ("Accenture"), to design and build AIMOS.  (SUF 6.)  At Accenture's recommendation, Copart selected third-party software called OpenText "to replace [] the imaging functionality that existed in CAS [Copart's legacy system] pertaining to image management…the uploading and the movement of the images, the cataloging of the images."  (SUF 120–121; Ex. II (Nelson Dep.) at 39:14–40:21.)  After Copart terminated Accenture and hired Sparta, Copart signed off on an AIMOS design that relied upon an OpenText-based imaging solution.  (SUF 122.)  While building the agreed-upon design, however, some began to doubt that the OpenText-based imaging solution would provide a workable solution.  (Kumar Decl. ¶ 4; Llewellyn Decl., Ex. Y.)  Accordingly, in May 2012, Sparta employees began investigating an alternative imaging solution based open source—*i.e.*, publicly available—information.  (SUF 123; Kumar Decl. ¶ 4–9, Exs. A–B.)

Months earlier, Sparta employees working on a different project, for a different client, developed the ZCL_IMAGING methodology.  (SUF 124.)  Undisputed evidence establishes that when the Sparta-Copart team first learned of "ZCL_IMAGING"—it had been "implemented in another project already" by Sparta for another client. [6]  (SUF 125.)  After learning about the ZCL_IMAGING methodology, Sparta employees on the AIMOS project sought to test it to see if it would be a helpful addition to the open source imaging solution they were developing.[7]  (SUF 129; Kumar Decl. ¶ 4, Ex. E.)

///

///

---

[6]   Copart has admitted that it does not know who wrote ZCL_IMAGING.  (SUF 126.)

[7]   Copart was aware that Sparta was developing an open source-based imaging solution.  In June 2012, Dan Raven—Copart's SAP Systems Director—described this software to Sparta as "your java code," and declared it "Great news!" when he received an update on the progress Sparta was making on its open source-based solution.  (Kumar Decl. ¶ 14, Ex. D.)

1

2

   **D.      Sparta Tested the Alleged Imaging Trade Secrets in Its Own Sandbox Before Incorporating Them into AIMOS**

3          In the context of software development, a "sandbox" is a development environment or

4   "test bed," where code is built and tested outside of the system that is being developed.  (SUF

5   128.)  The AIMOS environment, which Sparta was building, and Copart's sandbox environment

6   were both hosted by AT&T.  (Llewellyn Decl., Ex. II (P. Nelson Dep.) at 120:8–121:2, Ex. UU

7   (Copart Dep.) at 163:4–9; Kumar Decl., ¶ 15.)  Sparta attempted to test its code in Copart's

8   AT&T-hosted sandbox, but AT&T informed Sparta it was "not able to move forward" with the

9   testing until it received certain certifications from the AT&T's products group.  (Kumar Decl., ¶

10  15, Ex. E.)  Not wishing to delay the project, Sparta proceeded to test portions of its open source-

11  based imaging solution in its own sandbox environment, called the AutoEdge sandbox.[8]  (SUF

12  129.)  There is nothing in the ISA or any other contract that prohibits Sparta from developing or

13  testing code for Copart in Sparta's own sandbox environment.  (*See generally* Nadgauda Decl.,

14  Exs. A, B, G, and K.)  To the contrary, the ISA specifically grants Sparta a license to use "Copart

15  Software" to perform its Services.   (SUF 130.)

16

17

   **E.      Sparta Never Incorporated the Allegedly Misappropriated Code into AutoEdge, and Never Marketed, Licensed, or Sold the Code**

18         "AutoEdge" is the tradename for a Sparta project accelerator.  (SUF 131.)  A project

19  accelerator is a standardized tool that can be used to accelerate ERP implementations.  (SUF

20  132.)  AutoEdge consists of a series of standardized templates, or "Best Practices," that are

21  developed by SAP and grouped together by Sparta.  (SUF 133.)  Sparta has never licensed or

22  sold AutoEdge.  (SUF 138–139.)  Rather, Sparta markets its project accelerator as a

23  preconfigured solution that can be used to accelerate project delivery and reduce implementation

24  costs.  (SUF 132.)  Critically, the AutoEdge accelerator is not the same as the AutoEdge sandbox

25  used for Copart.  (SUF 131–132, 134–135.)

26

27

28

---

[8]    While not obligated to do so, Sparta informed Copart that testing of the open source imaging solution was taking place outside of the AT&T hosted environment, and Copart replied "[n]o problem."  (Kumar Decl. ¶ 14, Ex. D.)

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1    Copart has claimed that defendants stole "software materials and business methods" from
2    Copart "for use in AutoEdge."  (TAC ¶ 95.)  However, the imaging and Paymetric
3    "functionalities" that Copart alleges defendants misappropriated were never incorporated into the
4    AutoEdge project accelerator.  (SUF 136.)  Indeed, the documents Sparta submitted periodically
5    to SAP to recertify its AutoEdge project accelerator to use on SAP integrations show that there
6    were no "changes or enhancements" to the accelerator from 2012 to 2014, and that the accused
7    functionalities were never part of the AutoEdge accelerator.  (SUF 136; Nadgauda Decl., Exs. P
8    and Q.)

9    Additionally, defendants have never marketed, licensed, or sold either the accused
10   software code, or any project accelerators or products that contained the code.[9]  (SUF 141–143.)
11   In fact, *Sparta has not used its AutoEdge project accelerator on any implementation since the*
12   *time of the alleged misappropriation.*  (SUF 140.)

13   **IV.    ARGUMENT**

14       **A.    Copart Cannot Prove Essential Elements of Its Claims Against KPIT India**

15       "One of the principal purposes of the summary judgment rule is to isolate and dispose of
16   factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Given
17   that Copart bears the burden of proof for its claims at trial, KPIT India need only show "that
18   there is an absence of evidence to support [Copart's] case."  *Id.* at 325.  Once KPIT India has met
19   this initial burden, "the burden then moves to the opposing party, who must present significant
20   probative evidence tending to support its claim."  *C.A.R. Transp. Brokerage Co., Inc. v. Darden*
21   *Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted); *Celotex*,  477 U.S. at 322
22   ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and
23   upon motion, against a party who fails to make a showing sufficient to establish the existence of
24   an element essential to that party's case, and on which that party will bear the burden of proof at
25   trial.").

26   ───────────────

27   [9]   Copart does not allege that defendants disclosed or otherwise made public its alleged trade
     secrets.

28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    When seeking leave to file its TAC, Copart represented to the Court that KPIT India was

2    an "integral participant" in the theft of Copart's trade secrets and that KPIT India had "extensive

3    involvement in other crucial aspects of the botched Project."[10]  (Dkt. 135 at 1.)  Following

4    discovery, however, the evidence shows that KPIT India's employees, under contract to Sparta,

5    played only a minor role on the AIMOS design and build projects.  Of the approximately 230

6    individuals under Sparta's direction who worked on the design and build of AIMOS, only

7    approximately 20 of them were employed by KPIT India, and all of these resources were junior

8    consultants who worked offshore and were directly managed and supervised by Sparta.  (SUF

9    164, 169–171; Nadgauda Decl., ¶ 20.)  There were no KPIT India consultants on the AIMOS

10   project management team.  (SUF 171.)  The Sparta management team—not KPIT India—

11   decided which consultants would be staffed on the projects, and when they would be rolled off.

12   (Llewellyn Decl., Ex. WW (Sparta Dep.) at 148:21–148:10.)  And, of course, KPIT India was

13   not a party to the ISA or the statements work.  (SUF 165–168.)

14   Additionally, there is no evidence that KPIT India employees were involved in the

15   alleged misappropriation.  None of the individuals Copart alleges were employees of KPIT India

16   are even referenced in portions of the TAC that contain Copart's allegations related to

17   unauthorized access or the misappropriation of trade secrets.  (*Compare* TAC ¶ 59(a)), *with* ¶¶

18   99, 201, 208–209.)  Additionally, Copart has no evidence that any of the allegedly

19   misappropriated property was transferred to any computer systems that are within the possession

20   of KPIT India (SUF 172), and there is no evidence that the conduct of KPIT India's employees

21   resulted in the damages Copart alleges its unauthorized access and trade secret misappropriation

22   claims.  Because there is no evidence of KPIT India's wrongdoing, the Court should grant

23

24   [10]   When Copart filed its TAC, however, allegations that KPIT India employees engaged in
25   purported misconduct were glaring absent. (Dkt. 126.)  Indeed, the operative complaint does
     not include any specific allegations focused on KPIT India.  (*Id.*)  Rather, the TAC refers
26   only to KPIT India and KPIT USA "collectively" as "KPIT," and then alleges, in deliberately
     vague terms, that the "Sparta/KPIT offshore team" performed poorly, or that Copart's trade
27   secrets were allegedly misappropriated "into the Sparta/KPIT AutoEdge software product."
     (TAC ¶¶ 85, 86, and 99.)

28

10

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  summary judgment in its favor.[11]

2  **B.  Copart Cannot Establish a Claim for Trade Secret Misappropriation**

3        **1.        Copart Cannot Establish the Existence of a Trade Secret**

4        "To prevail on their trade secret misappropriation claim, Plaintiffs must satisfy the

5  CUTSA's 'two primary elements': '(1) the existence of a trade secret, and (2) misappropriation

6  of the trade secret.'"  *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13–cv–00784–MCE–

7  DAD, 2013 WL 3872950, at *13 (E.D. Cal. Jul. 25, 2013) (citing *AccuImage Diagnostics Corp.*

8  *v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003), Cal. Civ. Code § 3426.1(b)).

9  CUTSA defines a "trade secret" as "information, including a formula, pattern, compilation,

10  program, device, method, technique, or process, that . . . [d]erives independent economic value,

11  actual or potential, from not being generally known to the public or to other persons who can

12  obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are

13  reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

14  "When information has no independent economic value, a claim for misappropriation lacks

15  merit."  *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1263

16  (2002) (citation omitted).  Here, because Copart's alleged trade secrets are not unique or

17  proprietary, it cannot meet the threshold requirement of independent economic value.

18        First, as described above, Copart's alleged trade secrets are neither unique nor proprietary

19  to Copart, and are publicly known.  As for the ZIMAGING and ZIMG packages, all of the

20  functions they perform were well-known and not proprietary to Copart.  (SUF 98–105.)  The

21  functions were described in prior patents and applications and were embodied in websites and

22  readily available consumer software.  (SUF 99–100, 103–104.)  *See, e.g.*, *Spring Design, Inc. v.*

23  *Barnesandnoble.com, LLC*, No. C 09–05185 JW, 2010 WL 5422556, at *7 (N.D. Cal. Dec. 27,

24  2010) (granting partial summary judgment as to plaintiff's trade secret claim where the "Court

25  finds that the information was publicly disclosed in Plaintiff's published patent applications.").

26  _____

27  [11]  As described in Section III-A-2 of Infosystems' motion, nor does Copart have a basis to
        impute liability to KPIT India using an "alter ego" theory.

28

11

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Similarly, the code contained in these packages is not unique or proprietary to Copart and is

2   publicly known.  (SUF 98–105.)  Accordingly, the packages have no independent economic

3   value from being secret because they are not secret.  (SUF 101, 105.)  And with regard to

4   "Paymetric functionality" or "credit card processing configuration" these too are not unique or

5   proprietary to Copart and are publicly known, thus providing no independent economic value.

6   (SUF 113–119.)

7          Second, while Copart's expert, LaBaron Hartfield, boldly claims that the accused

8   software packages are Copart's "intellectual property," he stays at the 50,000-foot level and

9   provides no detail to support that conclusory statement.  *See, e.g.*, *E.R. v. Sutter Davis Hosp.*, No.

10  CV 2:14-2053 WBS CKD, 2016 WL 7229117, at *4 (E.D. Cal. Dec. 13, 2016) ([C]onclusions

11  alone . . . are insufficient to establish causation under Rule 26(a)(2)(B)(i) because they do not

12  provide the basis or reasons for their conclusions"); Adv. Comm. Note to 2000 Amd. to Fed. R.

13  Evid. 702 advisory committee's note, 2000 Amd. ("The expert's testimony must be grounded in

14  an accepted body of learning or experience in the expert's field, and the expert must explain how

15  the conclusion is so grounded.")  Further, in his expert report, dated November 23, 2016, Mr.

16  Hartfield stated: "The ZIMAGING and ZIMG packages in the sandbox appear to be complete

17  applications that could be dropped into another SAP system and, with minimal adjustments,

18  would give that SAP system the full imaging functionality contained in those packages."  (SUF

19  106.)  In deposition, however, Mr. Hartfield conceded that he had never tried to run those

20  software packages in an SAP system.  (SUF 107.)  Additionally, he testified that (a) he was

21  aware of no evidence that the allegedly misappropriated code was moved anywhere beyond the

22  Sparta test environment; and (b) he could not identify any functions beyond the uploading of

23  photos that could supposedly be achieved by the allegedly misappropriated packages.

24  (Llewellyn Decl., Ex. QQ (L. Hartfield Dep.) at 270:9–23, 271:22–272:25, 285:9–286:2.)  And

25  with regard to Paymetric, Mr. Hartfield's only testimony was as follows:  "There's nothing that I

26  recall at the moment regarding Paymetrics [sic]."  (SUF 119.)  Having failed to provide such

27  details in either his report or during his deposition, it is too late for Copart to add such details

28  now.  *See* Am. Status (Pretrial Scheduling) Order (Aug. 17, 2016) (Dkt. 140) (setting the expert

1    discovery cutoff date for January 13, 2017).

2         Third, Copart's 30(b)(6) designee had no knowledge of the purported uniqueness of the

3    code allegedly misappropriated.  To the contrary, she conceded that she was not a programmer

4    and could not speak to individual lines of code.  (Llewellyn Decl., Ex. UU (Copart Dep.)

5    106:21–107:17, 138:17–139:14.)  Not only that, she did not know (a) if what was allegedly

6    copied was code that actually worked; (b) who wrote the code that was allegedly

7    misappropriated; and (c) whether the allegedly misappropriated code was ever used.  (*Id.* at

8    34:24–37:5, 37:17–38:8, 40:18–24, 146:5–11, 37:17.)  Against this background, it is hardly

9    surprising that Copart attempts to shift the focus from the two software packages that were

10   allegedly misappropriated, to its entire "imaging functionality," of which the two software

11   packages were just one small part.  (SUF 89–97; Llewellyn Decl., Ex. Z at 5:9–24, 5:9–24, 6:4–

12   2.)  But it is these two software packages, and not Copart's overall "imaging functionality,"

13   which forms the basis for its trade secrets claim.  In fact, Mr. Hartfield claimed ignorance of

14   Copart's overall imaging solution, and based on that lack of information, refused to answer

15   questions or draw a diagram of the overall solution.  (Llewellyn Decl., Ex. QQ (Hartfield Dep.)

16   90:6–92:5, 295:14–21, 300:25–301:10, 302:5–16.)

17        Because Copart's alleged trade secrets are neither unique nor proprietary to Copart, and

18   are publicly known, and because Copart's expert and 30(b)((6) designee provided no information

19   to the contrary, Copart's CUTSA claim must fail.

20              **2.      Copart Does Not Have A Cognizable Damages Claim**

21        "[I]n order to state an actionable claim for trade secret misappropriation, a plaintiff must

22   show that the alleged misappropriation caused damage."  *Integral Dev. Corp. v. Viral Tolat*,

23   No. C 12–06575 JSW, 2015 WL 674425, , at *6 (N.D. Cal. Feb. 12, 2015); *see also Berster*

24   *Techs., LLC v. Christmas*, Civ. No. S–11–1541 KJM JFM, 2012 WL 33031, at * 9 (E.D. Cal.

25   Jan. 6, 2012) (Mueller, J.) (listing the elements of a claim under CUTSA including that

26   "defendant's actions damaged plaintiff"); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th

27   612, 628 (1992) (affirming the grant of a nonsuit on plaintiff's trade secret cause of action

28   because "[t]here was no point in submitting the liability issue to the jury when there was no basis

                                          13

1    for a determination of damages."); *FAS Techs., Ltd. v. Dainippon Screen Mfg., Co., Ltd.*, No. C

2    00-01879 CRB, 2001 WL 637451, at *3–4 (N.D. Cal. 2001) (upholding the grant of summary

3    judgment on plaintiff's CUTSA claim where "no reasonable trier of fact could find that

4    [plaintiff] was damaged or [defendant] unjustly enriched").

5        Under CUTSA, "[a] complainant may recover damages for the actual loss caused by

6    misappropriation.  A complainant also may recover for the unjust enrichment caused by

7    misappropriation that is not taken into account in computing damages for actual loss."  Cal. Civ.

8    Code § 3426.3(a).  In the event that "neither damages nor unjust enrichment caused by

9    misappropriation are provable, the court may order payment of a reasonable royalty for no longer

10   than the period of time the use could have been prohibited."  *Id.* § 3426.3(b).

11        First, there is no evidence that Copart has incurred any actual loss as a result of the

12   alleged misappropriation.  Copart does not claim to have lost business or profits due to the

13   alleged misappropriation, and there is no evidence that the property at issue was disseminated

14   publicly or somehow transferred to Copart's competitors.  In fact, Copart freely admits that

15   Copart it is still using the imaging solution from its pre-AIMOS legacy system, CAS, and that

16   neither the OpenText-based imaging solution called for in the AIMOS design, nor the open

17   source-based imaging solution that Sparta independently developed, ever went live.  (SUF 3,

18   144–145, 147.)  Likewise, the Paymetric credit card processing software never went live at

19   Copart.  (SUF 146.)  In other words, Copart has never even attempted to use the property that it

20   alleges defendants misappropriated—property that remains undisclosed, undamaged, and within

21   Copart's possession.

22        Second, there is also no evidence that defendants were unjustly enriched by the alleged

23   misappropriation of the property at issue.  As an initial matter, there is no evidence that KPIT

24   India or Infosystems benefited in any way from the alleged misappropriation.  As for Sparta,

25   Copart has conceded that it does not know "whether Sparta used ZCL_IMAGING after Sparta

26   was terminated by Copart."  (Llewellyn Decl., Ex. UU (Copart Dep.) at 38:4–9.)  And the

27   undisputed evidence shows that the imaging and Paymetric "functionality" that was allegedly

28   misappropriated were never incorporated into Sparta's AutoEdge project accelerator.  (SUF

14

1    136.)  Similarly, as noted above, Sparta did not market, sell, or license the property at issue after

2    it was allegedly misappropriated.  (SUF 141–143.)  In fact, Sparta has not used its AutoEdge

3    project accelerator—which, again, never included the property at issue—on any implementation

4    since the date of the alleged misappropriation, which was over four years ago.  (SUF 140.)

5           Without any damages, Copart has resorted to a tortured reasonable royalty theory.  But

6    Copart cannot avoid the inescapable fact that a viable damage theory for trade secret

7    misappropriation must be based on the value or the property that was allegedly misappropriated.

8    Herein lies Copart's conundrum:  It only has evidence that two limited code packages were ever

9    moved to Sparta's sandbox for testing, and that code by itself is essentially worthless.  In an

10   attempt to sidestep this fatal flaw in its claim, Copart avers that its damages are the cost of the

11   "development, support, and maintenance of Copart's overall imaging technology" from 2003

12   through 2010.  (Llewellyn Decl., Ex. Z at 6:9–24.)  Copart then estimates the cost of developing

13   and maintaining its legacy imaging solution[12]—including the full salaries of over a dozen Copart

14   employees and "payments to contractors FP Solutions, Sun Microsystems, and IBM"—at over

15   $9.3 million.  (*Id*.)  Copart seeks this sum both as an approximation of the "value of the trade

16   secret misappropriated" and as a "reasonable royalty."  (*Id.* 6:9–24, 7:4–2 ("Copart will seek a

17   reasonable royalty in an amount equal to the full development cost of the technology, which

18   Copart continues to use.")

19          While not lacking in creativity, both theories must fail because they do not even attempt

20   to value what was allegedly misappropriated—*i.e.,* the ZIMAGING and ZIMG software

21   packages.  *See Unilogic*, 10 Cal. App. 4th at 626–28 (affirming the grant of a nonsuit on a trade

22   secret claim where the party bringing the claim "did not present evidence of damages specific to

23   the dispute at hand"); *Ajaxo Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th 1295, 1306

24   (2010) ("Where the plaintiff retains the use of the secret, as here, and where there has been no

25

26   _____
     [12]   Indeed, as Copart has conceded, "Copart currently does not have any evidence that any
27          system other than the AIMOS database was wrongfully accessed by defendants, or had its
            contents misappropriated."  (SUF 85.)
28

15

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  effective disclosure of the secret through publication the total value of the secret to the plaintiff is

2  an inappropriate measure of damages for misappropriation.") (citation omitted).

3      And with regard to "Paymetric functionality" Copart does not even advance a damage

4  theory.  (SUF 148–150.)

5      Because Copart has no evidence or cognizable damage theory that would allow for a

6  recovery, summary judgment must be granted on this claim.

7          **3.      ZCL_IMAGING Is Not Copart's Property**

8      Even if part of the software packages somehow constituted Copart's intellectual

9  property—a proposition which is contradicted by the evidence—Copart's claims based on

10  ZCL_IMAGING (which constituted the vast majority of the ZIMAGING package) cannot form

11  the basis of its trade secrets claim because it is Sparta's "backgound technology"—not Copart's

12  property.  Under the terms of Section 11.2 of the ISA, "[a]ny software, tools, databases, data or

13  methodologies" that are "(i) owned by [Sparta] before the Effective Date, (ii) developed or

14  acquired by [Sparta] independent of the Services or this Agreement after the Effective Date, or

15  (iii) licensed by [Sparta] from a third party, including any such items used by [Sparta] to provide

16  the Services," are "Background Technology."  (SUF 127).

17      Critically, Background Technology is explicitly excluded from Copart's ownership as a

18  project deliverable under Section 11.4.  (Nadgauda Decl., Ex. A (ISA) at p. 11.)  When coupled

19  with the undisputed facts in this case, this unambiguous contractual language further dooms

20  Copart's half-baked trade secret claims.

21      Irrefutable evidence establishes that the ZCL_IMAGING methodology was developed by

22  Sparta independently of AIMOS and the ISA.  It was first developed by a *different* Sparta team

23  while working on a *different* project.  (SUF 124.)  And this development took place *months*

24  *before* Sparta employees on the AIMOS project began searching for alternatives to the

25  OpenText-based imaging solution that was called for the AIMOS design.  (SUF 123–125; Kumar

26  Decl., ¶¶ 3–13. Exs. A–C.)  Such evidence is corroborated by contemporaneous documents that

27  establish that "ZCL_IMAGING" had been "*implemented in another project already*" by the

28  time Sparta considered including it in its new imaging solution.  (SUF 125.)  Because Copart has

16

1   conceded that it does not know who wrote ZCL_IMAGING (SUF 126), it cannot dispute the

2   evidence of Sparta's independent development of this methodology.  At an absolute minimum,

3   therefore, the Court should grant partial summary judgment in favor of defendants and make a

4   finding that ZCL_IMAGING is not owned by Copart.

5   **V.      CONCLUSION**

6           For the reasons set forth above, the Court should grant summary judgment in favor of

7   KPIT India for the fundamental reason that it engaged in no alleged wrongdoing.  Separately, the

8   Court should grant summary judgment in favor of all defendants as to the trade secret claims.

9   Dated:  January 13, 2017                    Respectfully submitted,

10                                              LEWIS & LLEWELLYN LLP
                                                Paul T. Llewellyn
11                                              Ryan B. Erickson
                                                Rebecca F. Furman
12
                                                GIBSON, DUNN & CRUTCHER LLP
13                                              Frederick Brown
                                                Joseph R. Rose
14                                              Ian T. Long

15                                              By:  /s/ Paul T. Llewellyn
                                                   Paul T. Llewellyn
16
                                                Attorneys for Defendant and
17                                              Counterplaintiff
                                                Sparta Consulting, Inc.
18

19

20

21

22

23

24

25

26

27

28

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1

**CERTIFICATION OF SERVICE**

2       The undersigned hereby certifies that on the 13th day of January, 2017, all counsel of

3  record who are deemed to have consented to electronic service are being served with a copy of

4  this document via the Court's CM/ECF system.

5

6                                        By: /s/ Paul T. Llewellyn
                                             Paul T. Llewellyn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28