1  LEWIS & LLEWELLYN LLP
   Paul T. Llewellyn (California Bar No. 216887)
2     Ryan B. Erickson (California Bar No. 268239)
   Rebecca Furman (California Bar No. 294082)
3  505 Montgomery Street, Suite 1300
San Francisco, California 94111
4  Telephone: (415) 800-0590
Facsimile: (415) 390-2127
5  Email: pllewellyn@lewisllewellyn.com
      rerickson@lewisllewellyn.com
6        bfurman@lewisllewellyn.com

7  GIBSON, DUNN & CRUTCHER LLP
   Frederick Brown (California Bar No. 65316)
8     Joseph R. Rose (California Bar No. 279092)
   Ian T. Long (California Bar No. 290975)
9  555 Mission Street, Suite 3000
San Francisco, California 94105
10 Telephone: (415) 393-8200
Facsimile: (415) 393-8306
11 Email: fbrown@gibsondunn.com
      jrose@gibsondunn.com
12       ilong@gibsondunn.com

13 Attorneys for Defendant and Counterplaintiff,
SPARTA CONSULTING, INC. and Defendants
14 KPIT INFOSYSTEMS, INC. and KPIT
TECHNOLOGIES LTD.

15

16              UNITED STATES DISTRICT COURT

            EASTERN DISTRICT OF CALIFORNIA
17

| | |
|---|---|
| 18  COPART, INC., | CASE NO. 2:14-cv-00046-KJM-CKD |
| 19           Plaintiff, | **DEFENDANT KPIT INFOSYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 20     v. | |
| 21  SPARTA CONSULTING, INC., KPIT INFOSYSTEMS, INC., and KPIT TECHNOLOGIES LTD. | |
| 22  | |
| 23           Defendants. | |
| 24  SPARTA CONSULTING, INC., | Date:     February 10, 2017<br>Time:    10:00 a.m.<br>Judge:   Hon. Kimberly J. Mueller<br>Location: Robert T. Matsui United States<br>          Courthouse<br>          Courtroom 3, 15th Floor<br>          501 I Street<br>          Sacramento, CA 95814 |
| 25          Counterplaintiff, | |
|    v. | |
| 26  COPART, INC. | |
| 27          Counterdefendant. | |
| 28 | |

1  **TO PLAINTIFF AND COUNTERDEFENDANT, COPART, INC., AND ITS COUNSEL**

2  **OF RECORD:**

3      PLEASE TAKE NOTICE THAT ON February 10, 2017 at 10:00 a.m., or such other

4  convenient and available date for the Court, before the Honorable Kimberly J. Mueller in

5  Courtroom 3 of the United States District Court for the Eastern District of California, 501 I

6  Street, Sacramento, California 95814, defendant KPIT Infosystems, Inc. ("Infosystems") will

7  and hereby does move for entry of an order granting summary judgment for Infosystems and

8  against plaintiff and counterdefendant Copart, Inc. ("Copart") on Copart's Third Amended

9  Complaint ("TAC"), or alternatively, partial summary judgment against Copart on its individual

10  claims and claims for damages.

11      Infosystems has noticed the hearing for February 10, 2017, pursuant to the Court's

12  August 17, 2016 Amended Status (Pretrial Scheduling) Order (Dkt. 140) which provides that

13  "[a]ll dispositive motions on all claims, except motions for continuances, temporary restraining

14  orders or other emergency applications, shall be heard no later than February 10, 2017."  Since

15  the Court entered its Scheduling Order, counsel for Infosystems has regularly checked the

16  Court's website to confirm that February 10, 2017 was an available hearing date.  Despite

17  diligent efforts, however, Infosystems only just learned that February 10, 2017 is no longer an

18  available hearing date for the Court.  On January 12, 2017, the parties filed a Stipulation and

19  [Proposed] Order (Dkt. 183) seeking a continuance of the deadline to hear dispositive motions

20  from February 10, 2017 to February 24, 2017—the next available hearing date indicated on the

21  Court's website.  In the event the Court enters the proposed order, Infosystems proposes that the

22  hearing on this motion occur on February 24, 2017.

23      This motion is based upon this Notice of Motion and Motion; the accompanying

24  Memorandum of Points and Authorities; portions of the Memorandum of Points and Authorities

25  filed concurrently by defendant and counterplaintiff Sparta Consulting, Inc. ("Sparta") and by

26  defendant KPIT Technologies Ltd. ("KPIT India"); Defendants' Joint Separate Statement of

27  Undisputed Material Facts; the Declarations of Paul T. Llewellyn, Vaibhav Nadgauda, Manish

28  Kumar, Namit Swaroop, Chidanand Chauhan, Swaminathan R, Professor Michael Shamos, and

1 | Travis Barrs of Paymetric, Inc. filed in support thereof; all pleadings and papers on file in this

2 | action; and upon such further oral and written argument and evidence as may be presented at, or

3 | prior to, the hearing of this matter.

4 | Dated:  January 13, 2017                                        Respectfully submitted,

5 |                                                                 LEWIS & LLEWELLYN LLP

6 |                                                                 Paul T. Llewellyn
                                                                    Ryan B. Erickson
                                                                    Rebecca Furman
7 |

8 |                                                                 GIBSON, DUNN & CRUTCHER LLP
                                                                    Frederick Brown
                                                                    Joseph R. Rose
9 |                                                                 Ian T. Long

10 |                                                                By:  /s/ Paul T. Llewellyn
                                                                    Paul T. Llewellyn
11 |

12 |                                                                Attorneys for Defendant
                                                                    KPIT Infosystems, Inc.

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## **CERTIFICATION OF MEET AND CONFER EFFORTS**

2      Pursuant to the Court's Amended Status (Pretrial Scheduling) order dated August 17,

3  2016, prior to filing the instant motion, Infosystems engaged in meet and confer efforts with

4  Copart to discuss thoroughly the substance of the motion and a potential resolution.  Specifically,

5  on January 3, 2017, Paul Llewellyn, Ryan Erickson and Rebecca Furman, counsel for

6  Infosystems, engaged in a telephonic meet and confer with Jason Takenouchi, Margaret

7  Ziemianek and George Chikovani, counsel for Copart, to discuss the basis for this motion.

8  Despite these meet and confer efforts, the parties were unable to resolve the issues presented by

9  this motion.

10

11                                      By: /s/ Paul T. Llewellyn
                                            Paul T. Llewellyn

12                                          Attorney for Defendant
                                            KPIT Infosystems, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.  JOINDER ................................................................................................................. 2

III. ARGUMENT ........................................................................................................... 2

A.   Copart Cannot Prove Essential Elements of Its Claims Against
     KPIT Infosystems ........................................................................................... 2

     1.   KPIT Infosystems Played an Extremely Limited Role on
          the AIMOS Realization Project and There Is No Evidence
          to Support Its Direct Liability ............................................................. 3

     2.   Copart Does Not Have a Cognizable Theory to Impute
          Liability as to KPIT Infosystems or KPIT India ................................. 4

B.   Copart's Claims for Common Law Misappropriation, Conversion,
     Unfair Competition, Unjust Enrichment, and Negligence Are Each
     Preempted by CUTSA Because They Are Based on the Same
     Nucleus of Facts ............................................................................................. 6

     1.   Common Law Misappropriation ........................................................... 8

     2.   Conversion ............................................................................................ 9

     3.   Unjust Enrichment ................................................................................ 9

     4.   Unfair Competition ............................................................................... 10

     5.   Professional Negligence ........................................................................ 11

C.   Copart Cannot Establish a Claim Under the CFAA ......................................... 11

     1.   Copart Has No Evidence that Its Computers Were
          Accessed Without Authorization ........................................................... 12

     2.   Copart Cannot Show Any Damage or Loss From the
          Alleged Violation of the CFAA ............................................................ 15

D.   Copart Cannot Establish a Claim Under the California Computer
     Data Access and Fraud Act ............................................................................. 16

E.   Copart's Claim for Professional Negligence Is Barred by the Two-
     Year Statute of Limitations ............................................................................. 18

IV.  CONCLUSION ........................................................................................................ 19

Lewis & Llewellyn LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

1

### TABLE OF AUTHORITIES
### CASES

2

3    *2KDirect, LLC v. Azoogleads US, Inc.*,
        No. CV 08-3340-VBF(JWJx), 2010 WL 11455972 (C.D. Cal. Apr. 19, 2010) .................... 8

4    *Acculmage Diagnostics Corp. v. Terarecon, Inc.*,
5        260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................. 8

6    *AtPac, Inc. v. Aptitude Sols., Inc.*,
        730 F. Supp. 2d 1174 (E.D. Cal. 2010) ............................................................................... 15
7

8    *Bennett v. Hibernia Bank*,
        47 Cal. 2d 540 (1956) .......................................................................................................... 19
9

     *Brooks v. AM Resorts, LLC*,
10       954 F. Supp. 2d 331 (E.D. Pa. 2013) ................................................................................... 16

11   *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*,
        318 F. Supp. 2d 216 (D. Del. 2004) ..................................................................................... 11
12

13   *Calvert v. Hicks*,
        875 F. Supp. 674, 678 (E.D. Cal. 1995) ................................................................................ 5

14   *Convolve, Inc. v. Compaq Comp. Corp.*,
15       No. 00 CV 5141 (GBD), 2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) .................................. 7

16   *ConWest Res., Inc. v. Playtime Novelties, Inc.*,
        No. C 06-5304 SBA, 2006 WL 3346226 (N.D. Cal. Nov. 17, 2006) ...................................... 5
17

18   *Dhaliwal v. Singh*,
        No. CV F 13–0484 LJO SKO, 2013 WL 4460266 (E.D. Cal. Aug. 16, 2013) .................... 19

19   *Dig. Envoy, Inc. v. Google, Inc.*,
20       370 F. Supp. 2d 1025 (N.D. Cal. 2005) ............................................................................... 10

21   *Dresser-Rand Co. v. Jones*,
        957 F. Supp. 2d 610 (E.D. Pa. 2013) ................................................................................... 14
22

23   *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
        No. 2:13-CV-00784-MCE, 2013 WL 3872950 (E.D. Cal. July 25, 2013) .......................... 15

24   *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*,
25       82 F. Supp. 3d 844 (C.D. Ill. 2015) ..................................................................................... 14

26   *Fox v. Ethicon Endo–Surgery, Inc.*,
        35 Cal. 4th 797 (2005) ......................................................................................................... 19
27

28   *Hat World, Inc. v. Kelley*,
        2:12–CV–001591–LKK, 2012 WL 3283486 (E.D. Cal. Aug.10, 2012) ............................. 15

ii

*Ikon Office Sols., Inc. v. Rezente,*
  No. CIV. 2:10–1704 WBS EFB, 2011 WL 1402882 (E.D. Cal. Apr. 13, 2011) ................... 7

*Integral Development Corp. v. Tolat,*
  No. C 12-06575 JSW, 2013 WL 11245078 (N.D. Cal. Oct. 25, 2013) ............................... 17

*Jolly v. Eli Lilly & Co.,*
  44 Cal. 3d 1103 (1988) .................................................................................................... 19

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,*
  171 Cal. App. 4th 939 (2009) .................................................................................... 7, 10

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.,*
  944 F. Supp. 2d 775 (N.D. Cal. 2013) ............................................................................. 9

*Lindsay-Stern v. Garamszegi,*
  No.: SACV 14-01970-CJC(DFMx), 2015 WL 12645024
  (C.D. Cal. Apr. 15, 2015) ............................................................................................... 18

*LVRC Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009) ................................................................................. 11, 14

*MedioStream, Inc. v. Microsoft Corp.,*
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ..................................................................... 9, 10

*Memry Corp. v. Ky. Oil Tech. N.V.,*
  No. C-04-03843 RMW, 2005 WL 1656877 (N.D. Cal. Jul. 14, 2005) ................................. 8

*Norgart v. Upjohn Co.,*
  21 Cal. 4th 383 (1999) .................................................................................................... 19

*NovelPoster v. Javitch Canfield Grp.,*
  140 F. Supp. 3d 954 (N.D. Cal. 2014) ...................................................................... 16, 18

*NuCal Foods, Inc. v. Quality Egg LLC,*
  887 F. Supp. 2d 977  (E.D. Cal. 2012)............................................................................. 5, 6

*Paskenta Band of Nomiaki Indians v. Crosby,*
  No. 2:15-cv-00538-MCE-CMK, 2016 WL 3854237 (E.D. Cal. Jul. 15, 2016) ................... 16

*Perkins v. LinkedIn Corp.,*
  53 F. Supp. 3d 1190 (2014) ............................................................................................. 17

*Pollara v. Radiant Logistics, Inc.,*
  No. CV 12-0344 GAF (SPx), 2013 WL 12113385 (C.D. Cal. May 30, 2013) ..................... 8

*Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC,*
  No. 1:13–CV–01262 AWI SKO, 2014 WL 1333999 (E.D. Cal. Apr. 3, 2014) ................... 14

iii

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2

*Silvaco Data Sys. v. Intel. Corp.*,
   184 Cal. App. 4th 210 (2010), *as modified on denial of reh'g* (May 27, 2010) ................... 7

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
   No. 10–CV–01773–LHK, 2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ........................... 10

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ....................................................................... 16

*SunPower Corp. v. SolarCity Corp.*,
   No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ........................... 7

*Synopsis, Inc. v. ATop Tech, Inc.*,
   No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ......................... 8, 9

*Thomsen v. Sacramento Metro. Fire Dep't*,
   No. CIV S-09-1108 KJM AC, 2013 WL 2458403
   (E.D. Cal. June 6, 2013).......................................................................................... 17

*U.S. v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) .............................................................................. 12, 14

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) ................................................................................ 11

*Wehlage v. EmpRes Healthcare, Inc.*,
   791 F. Supp. 2d 774 (N.D. Cal. 2011) ....................................................................... 6

*Welenco, Inc. v. Corbell*,
   126 F. Supp. 3d 1154 (E.D. Cal. 2015)................................................................. 11, 12

## STATUTES

Cal. Civ. Proc. Code § 339 .............................................................................................. 18

Cal. Civ. Proc. Code § 3426.7(b)(2) .................................................................................. 7

Cal. Pen. Code § 502(c) ................................................................................................. 16

iv

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The factual and procedural background is set forth in detail in the motions filed concurrently by Sparta Consulting, Inc. ("Sparta") and KPIT Technologies Ltd. ("KPIT India") and incorporated here by reference. With respect to the new trade secret claims, the Court granted Copart over five months to conduct further discovery. (Dkt. 140.) Thereafter, Copart failed to even begin the process necessary to take the deposition of KPIT India or any of its employees. As Magistrate Judge Delaney concluded, Copart "made no timely effort to comply with the Hague Convention." (Dkt. 163.) Copart's discovery directed at Infosystems was similarly halfhearted, as Copart took only the deposition of Infosystems itself—a deposition that lasted just over three hours on the record. Meanwhile, in an effort to prove that Copart's fanciful misappropriation of trade secret allegations have no basis in fact, defendants conducted what Magistrate Judge Delaney referred to as a "voluminous document production" (*id.*), and Sparta produced the entire software system at issue—the AutoEdge sandbox—in native form for Copart to review. When fact discovery came to a close in late October 2016, Copart had adduced no evidence to support either its new claims or any damage suffered as a result thereof.

First and foremost, there is not a shred of evidence that Infosystems engaged in any wrongdoing. Out of the more than 230 individuals working on the Copart project, there was just a ***single employee*** from Infosystems who, in turn, was supervised by Sparta. That employee had absolutely no role to play with respect to the functionality that Copart alleges comprises its trade secrets. Because Copart cannot prove that the Infosystems was involved in any wrongdoing, caused any harm to Copart, or received any benefit from the alleged wrongdoing, Copart's claims against Infosystems necessarily fail.

Even if Copart could somehow allege a viable claim, as set forth below, Copart's claims for common law misappropriation, conversion, unfair competition, unjust enrichment and professional negligence, are each preempted by CUTSA because they are based on the same nucleus of facts as the CUTSA claim. They are superfluous claims that were asserted in an attempt to have multiple bites at the same trade secrets apple.

As for Copart's claims under the CFAA and CDAFA, the so-called "anti-hacking

1

1   statutes," there is no evidence that Copart's computers were accessed without authorization.  To

2   the contrary, the individuals who allegedly performed the "hacking" were both working on the

3   AIMOS Project and appeared on Copart's own internal list of authorized users.  And just like the

4   CUTSA claim, Copart cannot show any damages or loss stemming from the alleged

5   unauthorized access.

6          Finally, to the extent any of Copart's professional negligence claim survives CUTSA

7   preemption, such claim is further barred by the two-year statute of limitations.

8          Whatever the motivation for dragging Infosystems into this lawsuit, Copart's attempts at

9   establishing liability have been a spectacular failure.  Infosystems never had any business being

10  in this lawsuit, and it is time to put Copart's misadventure to an end.  The Court should grant

11  summary judgment in favor of Infosystems.

12  **II.      JOINDER[1]**

13         Pursuant to the Court's Minute Order of November 29, 2016 (Dkt. 170), defendant

14  Infosystems hereby joins Sections III and IV-D of Sparta's Motion for Summary Judgment, and

15  Sections III, IV-B, and IV-C of KPIT India's Motion for Summary Judgment, both of which are

16  being filed concurrently.

17  **III.     ARGUMENT**

18         **A.      Copart Cannot Prove Essential Elements of Its Claims Against KPIT**
                     **Infosystems**
19

20         Because Infosystems can show that it played a virtually nonexistent role in the

21  development of AIMOS and no role in the alleged misappropriation of trade secrets—and

22  because Copart has no evidence to the contrary—the Court should grant summary judgment and

23  emancipate Infosystems from this case.

24

25  [1]  For the Court's convenience, Exhibit A to the Declaration of Paul T. Llewellyn ("Llewellyn
         Decl.") contains an overview of the claims in Copart's TAC and the defendants that are
26       subject to each claim.  To gain an understanding of the history of the AIMOS design and
         build projects, as well as the contractual relationship between Sparta and Copart, defendants
27       respectfully recommend that the Court first review Sparta's motion for summary judgment.
28

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

KPIT INFOSYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

1.     **KPIT Infosystems Played an Extremely Limited Role on the AIMOS Realization Project and There Is No Evidence to Support Its Direct Liability**

When seeking leave to file its TAC, Copart represented to the Court that Infosystems was an "integral participant" in the theft of Copart's trade secrets and that Infosystems had "extensive involvement in other crucial aspects of the botched Project." (Dkt. 135 at 1.)  Glaringly absent from the TAC, however, are any allegations that Infosystems' employees engaged in any of the alleged misconduct.[2] (Dkt. 126.)  Indeed, Copart does not even include any specific allegations focused on Infosystems.  (*Id.*)  Rather, Copart refers only to Infosystems and KPIT India "collectively" as "KPIT," and then alleges, in deliberately vague terms, that the "Sparta/KPIT offshore team" performed poorly, or that Copart's trade secrets were allegedly misappropriated "into the Sparta/KPIT AutoEdge software product."  (*Id.* ¶¶ 85, 86, 99.)

With the close of discovery, the evidence shows that Infosystems played no role in the AIMOS Design Project and a triflingly small role on the AIMOS Realization Project.  Of the approximately 230 individuals under Sparta's direction who worked on the design and build of AIMOS, *only one employee* worked for Infosystems.  (Joint Statement of Undisputed Material Facts ("SUF") 169–177.)  This employee, Chandrashakhar Bade, worked as a consultant developer on the AIMOS Realization Project from May 2012 until Copart's termination of the project in Sept. 2013.  (SUF 178.)  Mr. Bade's work was directed and supervised by Sparta. (SUF 164, 179–180.)  There were no complaints or warnings made by others, including Copart, about Mr. Bade's performance, and his supervisor thought he performed excellent work.  (SUF 181; Swaroop Decl., ¶ 4.)  Moreover, there is no evidence that Mr. Bade's performance on the AIMOS Build Project harmed Copart.  Thus, Copart has no evidence—much less significant

---

[2]  The only reference in the TAC that focuses on individuals who Copart alleges are Infosystems employees states the following: "The KPIT Infosystems employees who worked on the project included Chandrasekhar Bade and Prabudh Kakkarl. Collectively, these employees worked thousands of hours on the Project, according to Sparta records."  (TAC ¶ 59(b).)  This reference is in the context of an allegation regarding the alleged wrongdoing of Sparta—not Infosystems.  *See* TAC ¶ 59 ("Sparta also failed to disclose to Copart that Sparta was relying on KPIT and Sparta offshore personnel to perform critical design work.".)

1    evidence—to support its professional negligence claim against Infosystems.

2         Similarly, Mr. Bade and Infosystems had no role whatsoever in the alleged unauthorized

3    access of the AIMOS system and the misappropriation of trade secrets that allegedly resulted

4    from such access.  As an initial matter, Copart does not allege Mr. Bade—the only Infosystems

5    employee who worked on AIMOS (SUF 177)—was involved in any such misconduct.  (TAC

6    ¶¶ 99, 201, 208–209.)  Nor can Copart provide evidence of Mr. Bade's involvement, as Mr. Bade

7    has no knowledge of AutoEdge, did not develop AutoEdge, and did not work on imaging or

8    credit card processing while on the project.  (SUF 182–183.)  Likewise, contrary to Copart's

9    allegations that the AutoEdge is a "Sparta/KPIT" product, Infosystems "had no role to play in

10   AutoEdge"—*i.e.*, Infosystems does not have a project accelerator called AutoEdge, it did not

11   develop Sparta's AutoEdge project accelerator, and it does not market or sell AutoEdge.  (SUF

12   184–185.)  Additionally, Copart has no evidence that any of the allegedly misappropriated

13   property was transferred to any computer systems that are within the possession of Infosystems.

14   (SUF 186.)  And again, there is no evidence that Infosystems' lack of any involvement with

15   AutoEdge somehow harmed Copart.  (SUF 184–186.)  Accordingly, the Court should grant

16   summary judgment in favor of Infosystems.

17             **2.      Copart Does Not Have a Cognizable Theory to Impute Liability as to
                          KPIT Infosystems or KPIT India**

18

19        The eight claims Copart directs at Infosystems and KPIT India all allege the direct

20   involvement of these two entities in the underlying misconduct, and the direct liability that

21   allegedly flows from such involvement.  (TAC ¶¶ 160–220.)  There are no allegations of

22   secondary or imputed liability in the body of these claims.  (*Id.*)

23        Given the conspicuous absence of any evidence to support the direct liability of

24   Infosystems following Copart's halfhearted discovery efforts, [3] defendants suspect that Copart

25   _____

26   [3]  With regard to Infosystems, Copart did not seek to take the depositions of the two individuals
          it alleges worked on AIMOS and were employed by Infosystems (TAC ¶ 59(b)), and the
27        deposition of Infosystems itself lasted just over three hours on the record.  Copart's discovery
          directed at KPIT India was even more languid, as Copart failed to even begin the process

28

                                                          4

1   may latch on to the jurisdictional allegations in the TAC in a desperate attempt to keep these

2   entities in the case.  Specifically, in the section of the TAC that is focused on the parties, venue,

3   and jurisdiction, Copart alleges generally that "[a]t all relevant times, Sparta, KPIT Technologies

4   and KPIT Infosystems were each an alter ego of the other insofar as there was a unity of interest

5   between them[.]"  (TAC ¶ 24.)  This last-ditch effort to ensnare two large and reputable

6   companies, one of which is publicly traded on both the National Stock Exchange of India and the

7   Bombay Stock Exchange, should be given no quarter.

8          As Courts in this District have held, piercing the corporate veil is an "extreme remedy"

9   recognized only in "exceptional circumstances."  *Calvert v. Hicks*, 875 F. Supp. 674, 678 (E.D.

10  Cal. 1995); *see also ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304 SBA, 2006

11  WL 3346226, at *7 (N.D. Cal. Nov. 17, 2006) (describing alter ego liability as the "the rare

12  exception.").  It is permitted "only in narrowly defined situations when the ends of justice so

13  require."  *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992 (E.D. Cal. 2012)

14  (Mueller, J.).  To establish alter ego liability, a plaintiff must satisfy each prong of a two-part

15  test: (1) "there must be such a unity of interest and ownership between the corporation and its

16  equitable owner that the separate personalities of the corporation and the shareholder do not in

17  reality exist"; and (2) "there must be an inequitable result if the acts in question are treated as

18  those of the corporation alone."  *Id.* (citations omitted).[4]  As this Court held in *NuCal*, in refusing

19  to pierce the corporate veil, "plaintiff neither alleges in its complaint, nor proffers any evidence,

20  that either defendant Quality Egg or Hillandale Farms—the two entities that concede

21  jurisdiction—are currently underfunded or non-operational.  Plaintiff does not allege that

22  defendants have attempted to strip Quality Egg of its assets since the recall, such that plaintiff

23  would potentially receive an unenforceable judgment."  *Id.* at 993.  Similarly, in this case, Copart

24

25         necessary to take the deposition of KPIT India or any of its employees.  As Magistrate Judge
           Delaney concluded, Copart "made no timely effort to comply with the Hague Convention."
26         (Dkt. 163.)

27  [4]    Copart is no doubt very familiar with this standard, since its counsel also represented the
           plaintiff in the *NuCal* case.
28

1    cannot show that Sparta, Infosystems, or KPIT India, are currently underfunded or non-

2    operational, or that the separate personalities of the corporations do not exist.  To the contrary,

3    the corporations operate as separate companies.  They maintain their own Board of Directors,

4    employees, bank accounts and customers.  (Swaminathan R. Decl. ¶¶ 6–7, Ex. B.)  They also

5    maintain their own accounts and do not comingle funds.  (*Id.*)  Moreover, KPIT India is a

6    publicly-traded company listed on both the Bombay Stock Exchange and the National Stock

7    Exchange of India.  (*Id.* ¶ 4.)  As a publicly traded company, it is subject to stringent regulatory,

8    reporting and disclosure requirements.  (*Id.*)  In 2015–2016, for example, KPIT India's accounts

9    were audited by BSR & Co. LLP, an affiliate of the global powerhouse KPMG.  (*Id.* ¶ 5, Ex. A.)

10   The idea that KPIT India could somehow hoodwink both the Indian financial regulators and one

11   of the world's leading accounting firms, and operate sham subsidiaries, is beyond absurd.

12          Even if Copart could satisfy the first element—namely, that they are not separate

13   entities—Copart would still have to show an inequitable result would occur if both Infosystems

14   and KPIT India were not held liable.  *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774,

15   782–83 (N.D. Cal. 2011).  "To prove injustice, the plaintiff must be more than just a creditor

16   attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to

17   bad faith."  *NuCal*, 887 F. Supp. 2d at 992.  Here, the TAC lacks allegations sufficient to support

18   alter ego liability, and Copart simply has no evidence showing that Sparta is "underfunded or

19   non-operational" or that at some point in the future Copart may "potentially receive an

20   unenforceable judgment."  *Id.* at 993.

21        **B.    Copart's Claims for Common Law Misappropriation, Conversion, Unfair
22              Competition, Unjust Enrichment, and Negligence Are Each Preempted by
              CUTSA Because They Are Based on the Same Nucleus of Facts**
23

24          Seeking multiple bites at the same trade secret apple, Copart recasts its misappropriation

25   of trade secrets claim in multiple iterations as separate purported claims for relief for common

26   law misappropriation (claim 8), conversion (claim 9), unfair competition (claim 13), unjust

27   enrichment (claim 14), and professional negligence (claim 10).  Because CUTSA preempts other

28

1    claims for relief based on the same nucleus of facts, each of these claims must be dismissed.[5]

2          "CUTSA's 'comprehensive structure and breadth' suggests a legislative intent to occupy

3    the field."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th

4    939, 957 (2009).  Accordingly, CUTSA preempts claims "based on the same nucleus of facts" as

5    trade secret claims.  *Id.* at 962.  "In other words, preemption generally applies where 'there is no

6    material distinction' between the wrongdoing underlying the CUTSA claim and the non-CUTSA

7    claim."  *Ikon Office Sols., Inc. v. Rezente*, No. CIV. 2:10–1704 WBS EFB, 2011 WL 1402882, at

8    *3 (E.D. Cal. Apr. 13, 2011); Cal. Civ. Proc. Code § 3426.7(b)(2) ("This title does not affect . . .

9    other civil remedies that are not based upon misappropriation of a trade secret.").  "If there is no

10   'material distinction' between the wrongdoing alleged in a [C]UTSA claim and that alleged in a

11   different claim, the [C]UTSA claim preempts the other claim."  *Convolve, Inc. v. Compaq Comp.*

12   *Corp.*, No. 00 CV 5141 (GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (applying

13   California law).

14         Moreover, CUTSA preemption applies whether or not the information allegedly

15   misappropriated meets the definition of a trade secret.  As the Court held in *SunPower Corp. v.*

16   *SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012),

17   "CUTSA supersedes claims based on the misappropriation of information, regardless of whether

18   such information ultimately satisfies the definition of trade secret."  The Court explained, "[t]o

19   permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby

20   plead potentially more favorable common-law claims) by simply failing to allege one of the

21   elements necessary for information to qualify as a trade secret."  *Id.* at *5; *see also Silvaco Data*

22   *Sys. v. Intel. Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010), *as modified on denial of reh'g* (May

23   27, 2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310

24   (2011) ("We emphatically reject the *Cenveo* court's suggestion that the uniform act was not

25

26   ─────────────────────
     [5]   To the extent Copart's professional negligence claim is based on conduct unrelated to the
27   alleged trade secret misappropriation, as discussed *infra* in section III-E, it is barred by the
     two-year statute of limitations.
28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   intended to preempt 'common law conversion claims based on the taking of information that,

2   though not a trade secret, was nonetheless of value to the claimant.'").

3                  **1.      Common Law Misappropriation**

4         As California courts have held, "CUTSA preempts common law misappropriation of

5   trade secrets claims." *Memry Corp. v. Ky. Oil Tech. N.V.*, No. C-04-03843 RMW, 2005 WL

6   1656877, at *1 (N.D. Cal. Jul. 14, 2005).[6]

7         Here, Copart's common law misappropriation claim is not only based on the same

8   nucleus of facts as its trade secret claim—the two claims are indistinguishable.  Indeed, Copart

9   explicitly concedes that the purported common law claim is intended to cover the same behavior

10   and information but is brought "in the event these materials somehow did not qualify as trade

11   secrets."  TAC ¶ 180.  For example, Copart alleges that defendants "instructed their employees . .

12   . to use other employees' login and password credentials for the AIMOS Project to copy Copart's

13   proprietary methods and materials and incorporate them into the Sparta/KPIT AutoEdge

14   software product," (*id.* ¶ 178), mirroring the *identical allegation* in its trade secret

15   misappropriation claim (*id.* ¶ 165).  Moreover, the description of the alleged conduct by

16   individual employees giving rise to the claims is similarly *identical*.  *Compare id.*, ¶¶ 166–167,

17   170, *with* ¶ 178.

18         Nor can Copart escape preemption by arguing that its common law misappropriation

19   claim is pled "in the alternative."  *See Synopsis, Inc. v. ATop Tech, Inc.*, No. C 13–cv–02965 SC,

20   2013 WL 5770542, at * 7 (N.D. Cal. Oct. 24, 2013) ("[P]reempted claims are not saved from

21

22   [6] *See also Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D.

23   Cal. 2003) (dismissing plaintiff's common law misappropriation claim with prejudice "because the conduct at issue occurred after the enactment of the UTSA."); *2KDirect, LLC v.*

24   *Azoogleads US, Inc.*, No. CV 08-3340-VBF(JWJx), 2010 WL 11455972, at *7 (C.D. Cal. Apr. 19, 2010) (granting defendant's motion for summary judgment as to plaintiff's common

25   law misappropriation claim because the claims "are plainly based on the same nucleus of facts underlying the CUTSA claims in that both the CUTSA claims and the common law

26   misappropriation claims rest on the exact same allegations in Second Amended Complaint."); *Pollara v. Radiant Logistics, Inc.*, No. CV 12-0344 GAF (SPx), 2013 WL 12113385, at *7

27   (C.D. Cal. May 30, 2013) ("[B]ecause it is clear that Counterclaimants' common law misappropriation of trade secrets and statutory unfair competition claims do arise from the

28   same nucleus of operative facts, they are preempted by CUTSA.").

1    preemption just because they are pled in the alternative.")  The Court explained, "[a]bsent any

2    real distinction among any of Plaintiff's allegations, this pleading distinction is meaningless:

3    there is no way to distinguish Plaintiff's common law misappropriation claim from its CUTSA

4    claim.  They are based on the same facts.  CUTSA preempts this claim."  *Id.* at *8.  Because

5    Copart's common law misappropriation claim is indistinguishable from its trade secrets claim, it

6    is preempted by CUTSA and should be dismissed.

7                    **2.       Conversion**

8          Just like common law misappropriation, CUTSA preempts conversion claims when they

9    are based on the same set of facts as a trade secrets claim.  *See*, *e.g.*, *Language Line Servs., Inc.*

10   *v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 781 (N.D. Cal. 2013) ("As plaintiff has

11   failed to show its claim of conversion is based on facts distinct from those on which its CUTSA

12   claim is based, defendants' motion for partial summary judgment on the conversion claim must

13   be granted."); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal.

14   2012) ("[I]t is plain that MedioStream's conversion claim is 'no more than a restatement of the

15   same operative facts supporting trade secret misappropriation,' and therefore preempted by the

16   CUTSA.") (citation omitted).

17         Here, the situation is the same.  In support of its conversion claim, Copart alleges that

18   defendants "instructed their employees . . . to use other employees' login and password

19   credentials for the AIMOS Project to copy Copart's proprietary methods and materials and

20   incorporate them into the Sparta/KPIT AutoEdge software product," (TAC ¶ 187), once again

21   mirroring the identical allegation contained within the trade secret misappropriation claim (*id.*, ¶

22   165.)  And once again, the description of the alleged conduct by individual employees giving rise

23   to the claims is identical.  *Compare id.*, ¶¶ 166–167, 170, *with* ¶ 187.  There can be no serious

24   dispute that the conversion claim is based on the same nucleus of facts as the trade secrets claim.

25   Accordingly, Copart's conversion claim is preempted by CUTSA.

26                    **3.       Unjust Enrichment**

27         While incorporating all preceding allegations in the TAC, the operative allegation in

28   Copart's unjust enrichment claim consists of a single sentence: "Sparta and KPIT received

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  benefits from their theft of work product from the AIMOS project."  TAC ¶ 219.  In other words,

2  the gravamen of the unjust enrichment claim is the alleged theft or misappropriation of Copart's

3  trade secret information by defendants.  Once again, because this claim is based on the same

4  nucleus of facts, it is preempted by CUTSA.  *See, e.g., Dig. Envoy, Inc. v. Google, Inc.*, 370 F.

5  Supp. 2d 1025, 1035 (N.D. Cal. 2005) (granting defendant's motion for partial summary

6  judgment with respect to plaintiff's unjust enrichment and unfair competition claims "since those

7  claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for

8  relief."); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, No. 10–CV–01773–LHK, 2010 WL

9  5069832, at *10 (N.D. Cal. Dec. 7, 2010) ("SOAProjects' attempt to use unjust enrichment to

10  recover for SCM's alleged misappropriation of SOAProjects' trade secrets likewise fails because

11  it is preempted by the California Uniform Trade Secret Act.").[7]

12  **4.  Unfair Competition**

13  With respect to Sparta and the KPIT defendants, Copart's unfair competition claim

14  consists of a single allegation: "Sparta and KPIT further violated the UCL by taking materials

15  and work product from the Project that in fact belonged to Copart, and using that work product

16  and those materials in their proprietary AutoEdge product."  TAC ¶ 214.  Once again, this is

17  simply a recast of Copart's trade secrets claim—namely that defendants allegedly

18  misappropriated or stole Copart's information.  CUTSA, however, displaces a statutory claim for

19  unfair competition where—as here—the claim is based on the same set of facts.  *See, e.g., K.C.

20  Multimedia, Inc.*, 171 Cal. App. 4th at 962 (finding that plaintiff's unfair competition claim was

21  preempted by CUTSA); *MedioStream, Inc.*, 869 F. Supp. 2d at 1116 ("[T]he court finds that

22  MedioStream's Section 17200 claim is preempted by the CUTSA").  To the extent Copart's

23

24

25  [7]  Copart's unjust enrichment claim independently fails because there is no evidence that
26  defendants received any benefit from the alleged misappropriation.  *See* Section IV-B-2 of
   KPIT India Motion of Summary; *see also SOAProjects, Inc.*, 2010 WL 5069832, at *10 ("To
27  make out a claim for unjust enrichment SOAProjects must show that SCM received a benefit
   and that SCM unjustly retained the benefit at SOAProjects' expense.").

28

10

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  UCL claim is based on trade secret misappropriation, which at least as to the KPIT defendants is

2  the only basis for the claim, it should therefore be dismissed.[8]

3  **5.      Professional Negligence**

4  As explained in Sparta's motion for summary judgment (Section IV-D), and Section E,

5  *infra*, Copart's claim for professional negligence is barred by the two-year statute of limitations.

6  Even if it was not time-barred, however, to the extent Copart's claim rests on the alleged theft of

7  Copart's property, it is preempted by CUTSA.  As the TAC alleges: "Sparta and KPIT also knew

8  that the theft of client property, and giving unauthorized persons access to client property, was

9  contrary to professional standards applicable to their industry.  Sparta and KPIT nonetheless

10  stole Copart property and gave unauthorized persons access to that property."  (TAC ¶ 195.)

11  Because these allegations simply recast Copart's trade secret claim, they are preempted by

12  CUTSA.  *See*, *e.g.*, *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 318 F. Supp. 2d 216,

13  221 (D. Del. 2004) (applying California law and holding that "because Dunlop cannot show that

14  its negligence claim is 'supported by facts unrelated to the misappropriation of the trade secret,'

15  its negligence claim is preempted by CUTSA.") (internal citation omitted).

16  **C.      Copart Cannot Establish a Claim Under the CFAA**

17  The CFAA, 18 U.S.C. § 1030, is "primarily a criminal statute designed to combat

18  hacking."  *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012).  It was

19  "designed to target hackers who accessed computers to steal information or to disrupt or destroy

20  computer functionality, as well as criminals who possessed the capacity to 'access and control

21  high technology processes vital to our everyday lives.'"  *LVRC Holdings LLC v. Brekka*, 581

22  F.3d 1127, 1130 (9th Cir. 2009); *see also Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1169

23  (E.D. Cal. 2015) (Mueller, J.) ("At least one court has noted '[t]he definition of "loss" itself

24  makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional

---

[8]  Copart also seeks to hold Sparta liable for unfair competition based on its alleged unlawful, unfair and/or fraudulent acts or practices.  (*See* TAC ¶ 214.)  Those allegations are addressed in Sparta's motion for summary judgment, filed concurrently.

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    computer "hacker" scenario—where the hacker deletes information, infects computers, or

2    crashes networks.'") (quoting *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185

3    (E.D. Cal. 2010)); *U.S. v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (cautioning that the statute

4    should be construed "narrowly" and determining that "the plain language of the CFAA 'target[s]

5    the unauthorized procurement or alteration of information, not its misuse or misappropriation.'")

6    (brackets in original) (citation omitted).  As this Court has noted, "[w]hile *Nosal's* focus was on

7    the extent of criminalization of conduct, its reading of the statute has been applied in the civil

8    context."  *Welenco*, 126 F. Supp. 3d at 1168–69.

9         Copart fails to specify which of the seven provisions of the CFAA defendants allegedly

10    violated, leaving defendants to guess as to the basis of its claim.  Instead, Copart generally

11    alleges that "[t]he [CFAA], 18 U.S.C. § 1030, prohibits the unauthorized access to a company's

12    computer system for the purposes of committing fraud."  (TAC ¶ 199.)  Regardless of Copart's

13    obfuscation, it lacks sufficient evidence to prove its CFAA claim.

14             **1.      Copart Has No Evidence that Its Computers Were Accessed Without**

15                      **Authorization**

16         The gravamen of Copart's CFAA claim is that a Sparta employee named Narenda Singh

17    used the personal login and password information for another Sparta employee, Shivraj Sinha, to

18    access the AIMOS environment without authorization.  (TAC ¶¶ 200–201.)  Copart confirmed in

19    discovery responses served a month after the close of discovery that the only evidentiary support

20    it has for this claim is an October 10, 2012 email wherein Mr. Sinha provides his login

21    credentials to Mr. Singh and others, and asks that "the class ZCL_IMAGIN[G] and its dependent

22    tables" be copied to Sparta's sandbox. (Llewellyn Decl., Exs. U at 12:1–13:20, BB, and CC.)

23    The next day, on October 11, 2012, Mr. Sinha replied that the "task assigned to us . . . is

24    completed."  (*Id.*, Ex. CC.)

25         Copart's CFAA allegations are not supported by the evidence.  First, contrary to Copart's

26    allegations that Mr. Sinha "was not working on the Project" when the alleged unauthorized

27    access occurred sometime between October 10 and 11, 2012 (TAC ¶ 201), undisputed evidence

28    establishes that Mr. Sinha began the AIMOS onboarding process on October 4, 2012, and his

1   official start date on the project was October 8, 2012.  (SUF 151–152.)   Moreover, key Copart

2   employees—such as Copart's SAP Systems Director, Dan Raven—were aware that "Narendra

3   Singh" was a "Sparta team member" before the date of the alleged unauthorized access.

4   (Swaroop Decl., Ex. A.)

5          Second, Sparta was generally authorized to access the SAP-based AIMOS system it was

6   hired to build.  As Copart admits in the TAC, "**Sparta** was granted access to Copart's CAS and

7   AIMOS systems, including software and information that enabled, embodied, and described

8   Copart's unique and proprietary methods and processes."  (TAC ¶ 164 (emphasis added).)  This

9   "access" was "*restricted to members of the Project Team*."[9]  (*Id.*)  Thus, Mr. Singh was

10  authorized to access the AIMOS system when he joined the AIMOS project team.

11         Third, Mr. Singh was specifically authorized to access the AIMOS system.  In contrast to

12  Copart's flamboyant allegations that "Sparta and KPIT's theft was a carefully planned,

13  choreographed and executed scheme to steal from under Copart's nose" (TAC ¶ 102), both Mr.

14  Singh and Sparta requested that Mr. Singh be provided access to AIMOS *before* the alleged

15  theft.  On October 4, 2012, Mr. Singh submitted Copart's "VPN/SAP Access Request Form" and

16  noted in the body of his email that he was "[r]equesting for Copart access and kindly generate

17  my VPN and SAP Id."  (SUF 153.)  Then on October 9, 2012—the day before Mr. Sinha emailed

18  his login credentials—Sparta requested in writing that Copart's SAP Systems Director confirm

19  the approval of Mr. Singh to access "Copart's SAP environments."  (SUF 154.)  Thereafter, Mr.

20  Singh's name appeared on the AIMOS project management document that tracks the individuals

21  who were authorized to access the AIMOS system.  (SUF 156– 159.)  Accordingly, it cannot be

22  disputed[10] that Mr. Singh's request for access was approved, and he was provided with a Copart

23  ────────────────────

24  [9]   The sentiment that Sparta employees were authorized to access the AIMOS environment is
     echoed by provisions in the ISA.  For example, the "Confidentiality" section states that
     "Each Party may disclose relevant aspects of the other Party's Confidential Information to its

25   employees, Affiliates, subcontractors, and agents to the extent such disclosures is reasonably
     necessary for the performance of its obligations…under this Agreement."  (Nadgauda Decl.,

26   Ex. A (ISA) at 12.)

27  [10]  Copart admitted at deposition that it does not know "if Mr. Sinha was given his own user ID
     and password or not."  (SUF 155.)  And because Copart destroys the logs that track access to

28

13

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   ID.  (*Id.*)  And at an absolute minimum, there is no evidence that Mr. Singh, who joined the

2   project only a few days earlier, acted with intent to defraud, a requirement for a claim under the

3   CFAA.  *See*, *e.g.*, *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 82 F. Supp. 3d 844, 854

4   (C.D. Ill. 2015) (granting defendant's summary judgment as to plaintiff's CFAA claim because

5   plaintiff "has pointed to no evidence in the record, circumstantial or otherwise, that [defendant]

6   had the intent to defraud.").

7          The Ninth Circuit has determined that a person uses a computer "without authorization"

8   under the CFAA "when the person has not received permission to use the computer for any

9   purpose (such as when a hacker accesses someone's computer without any permission), or when

10  the [computer's owner] has rescinded permission to access the computer and the defendant uses

11  the computer anyway."  *LVRC Holding* , 581 F.3d at 1135; *see also Dresser-Rand Co. v. Jones*,

12  957 F. Supp. 2d 610, 620 (E.D. Pa. 2013) (finding no CFAA violation where defendants were

13  "authorized to access their work laptops and to download files from them").  But even assuming

14  Mr. Singh did not have "authorization" to access AIMOS—an assumption that contradicts the

15  evidence—the purported "purpose" of accessing Copart's computer systems was to "take

16  Copart's property, including its unique and valuable trade secret information."  (TAC ¶ 200.)  In

17  other words, the alleged purpose was to misappropriate Copart's trade secrets.  However, "the

18  plain language of the CFAA targets the unauthorized procurement or alteration of information,

19  *not its misuse or misappropriation*."  *Nosal*, 676 F.3d at 860 (citation omitted) (emphasis added);

20  *see also Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC*, No. 1:13–CV–01262 AWI

21  SKO, 2014 WL 1333999, at *4 (E.D. Cal. Apr. 3, 2014) (dismissing plaintiff's CFAA claim

22  because "[p]laintiff appears to be alleging violations of use restrictions or misappropriation of

23  trade secrets, but not a cause of action under the CFAA—a statute designed to target hacking

24  crimes."); *Hat World, Inc. v. Kelley*, 2:12–CV–001591–LKK, 2012 WL 3283486, at *5 (E.D.

25  Cal. Aug.10, 2012) ("In short, the CFAA is an 'anti-hacking' statute and not a misappropriation

26

27  its computer system after 45 days, it does not have such records dating back to 2012 or 2013.
    (Llewellyn Decl., Ex. UU (Copart Dep.) at 161:21–163:1.)

28

14

1  statute.") (citing *Nosal*, 676 F.3d at 860).  Because Copart cannot meet the requirements of this

2  hacking statute, its CFAA claim fails.

3          **2.      Copart Cannot Show Any Damage or Loss From the Alleged**
                     **Violation of the CFAA**
4

5          Copart's CFAA claim is should be rejected for the additional and sufficient reason that

6  Copart cannot prove any damages or loss stemming from the alleged unauthorized access.  To

7  recover on a CFAA claim, "plaintiffs must identify impairment of or damage to the computer

8  system that was accessed without authorization."  *AtPac*, 730 F. Supp. 2d at 1184 (quoting *Doyle*

9  *v. Taylor*, No. 09–158, 2010 WL 2163521, at *2 (E.D. Wash. May 24, 2010)) (holding that

10 where plaintiff alleged defendant accessed plaintiff's USB thumb drive and retrieved a sealed

11 document, "[p]laintiff would have to show that the thumb drive itself was somehow damaged or

12 impaired by Defendant's act of accessing the drive."); *see also Farmers Ins. Exch. v. Steele Ins.*

13 *Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013)

14 ("Costs not related to computer impairment or computer damages are not compensable under the

15 CFAA.")

16         Here, the TAC alleges that "the value of the materials stolen from Copart as a result of

17 this unauthorized access was well in excess of $5,000" and "[t]he value of any license to use the

18 stolen materials would also greatly exceed $5,000."  (TAC ¶ 202.)  Yet neither of these

19 purported categories of damages relate to "computer impairment or computer damages," and

20 therefore they are not recoverable under the CFAA.  *Farmers Ins. Exch.*, 2013 WL 3872950, at

21 *21.

22         Copart further alleges that it has "expended resources investigating the nature and scope

23 of Sparta and KPIT's unauthorized access to Copart's computer systems."  (TAC ¶ 202.)

24 However, when responding to an interrogatory that sought specific details regarding Copart's

25 damages related to the "costs for investigating," Copart claimed to have expended 40 hours on an

26 "investigation of the nature of the material taken and the investigation of the contents of the

27 AutoEdge 'sandbox' produced by Sparta," and 40 additional hours "setting up the 'sandbox' for

28 one of its experts to analyze.  (Llewellyn Decl., Ex. V at 3–4.)  Such damages are not

15

1   recoverable under the CFAA.  Costs of "investigation" are not recoverable under the CFAA

2   unless they relate to damage to the plaintiff's computer or data.  *See*, *e.g.*, *NovelPoster v. Javitch*

3   *Canfield Grp.*, 140 F. Supp. 3d 954 (N.D. Cal. 2014) ("[U]nder the CFAA, the plaintiff's costs

4   are only cognizable where they arise from the investigation or repair of a damaged computer

5   system or data, or from an 'interruption of service.'"); *Brooks v. AM Resorts, LLC*, 954 F. Supp.

6   2d 331, 338 (E.D. Pa. 2013) ("[L]itigation costs are not a compensable loss under the CFAA

7   because they are not related to investigating or remedying damage to the computer.").  Copart

8   fails to allege any "damage" or "interruption in service," nor could it.  It is undisputed that the

9   AIMOS system, which was the subject of the alleged CFAA violation, was not live at the time of

10  the alleged violation, and never went live (because of Copart's early termination of the contract

11  for convenience).  (SUF 147.)  And the AutoEdge sandbox that Copart investigated was a Sparta

12  environment; not a Copart environment.  (SUF 134–135.)  Thus, Copart's CFAA claim should

13  be rejected for lack of any cognizable damages.

14          **D.      Copart Cannot Establish a Claim Under the California Computer Data**
15                  **Access and Fraud Act**

16          California's Computer Data Access and Fraud Act ("CDAFA"), codified at California

17  Penal Code section 502, is similar to the CFAA.  *See Paskenta Band of Nomiaki Indians v.*

18  *Crosby*, No. 2:15-cv-00538-MCE-CMK, 2016 WL 3854237, at *3 (E.D. Cal. Jul. 15, 2016)

19  ("Similar to the CFAA, liability under [the CDAFA] requires the person to act 'knowingly' and

20  'without permission' in committing computer-related crimes.").  Just like the CFAA, the

21  CDAFA is "an anti-hacking statute intended to prohibit the unauthorized use of any computer

22  system for improper or illegitimate purpose."  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d

23  1026, 1032 (N.D. Cal. 2014).  In order to state a claim under subsections (c)(1) and (2)—the

24  subsections that defendants allegedly violated—TAC ¶ 205—Copart must show that defendants

25  acted "without permission."  Cal. Pen. Code § 502(c).

26          In support of its CDAFA claim, Copart cuts and pastes the allegations from its CFAA

27  related to Mr. Singh.  (TAC ¶ 208.)  However, as discussed above, the undisputed evidence

28  establishes Copart knew Mr. Singh had permission to access the AIMOS environment.  Nor is

16

1  there any evidence of Mr. Singh's "intent to defraud."  Therefore, these regurgitate allegations

2  cannot survive.

3         Copart also cherry-picks other emails and mischaracterizes them as evidence that two

4  additional Sparta personnel—Tejas Shrishrimal and Roobal Sehgal—"copied additional material

5  for incorporation within Sparta and KPIT's AutoEdge Product."  (TAC ¶ 209.)  Yet just as with

6  Mr. Singh, the evidence shows that Messrs. Shrishrimal and Sehgal were both authorized to

7  access the AIMOS system before the access at issue occurred.[11]

8         As this Court has noted, "section 502(h)(1) provides that '[s]ubdivision (c) does not apply

9  to punish acts which are committed by a person within the scope of his or her lawful

10  employment.'"  *Thomsen v. Sacramento Metro. Fire Dep't*, No. CIV S-09-1108 KJM AC, 2013

11  WL 2458403, at *1 (E.D. Cal. June 6, 2013) (Mueller, J.).  Just as with Copart's CFAA claim,

12  the gravamen of Copart's CDAFA claim is misuse or misappropriation of information, not

13  unauthorized access.  In *Integral Development Corp. v. Tolat*, No. C 12-06575 JSW, 2013 WL

14  11245078 (N.D. Cal. Oct. 25, 2013), plaintiff alleged that defendant unlawfully copied,

15  downloaded and removed numerous source code files.  As the Court held in dismissing

16  plaintiff's CDAFA and CFAA claims, "Integral does not allege that Tolat used improper

17  methods to gain access to the source code, but rather concedes, as it must, that at the time of the

18  alleged acquisition of the materials, Tolat was working for Integral and had access to virtually all

19  of Integral's trade secret information and confidential and proprietary intellectual property."  *See*

20  *also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (2014) (finding that a party acts

21  "without authorization" under the CDAFA "only where defendants circumvent technical or code

22  based barriers in place to restrict or bar a user's access.").  Because the individuals identified by

23  Copart were all authorized users of AIMOS, Copart's CDAFA claim fails.

24

25  [11]  The AIMOS project management document that tacks the individuals who were authorized to
26  access the AIMOS system clearly shows that both "Tejas Shrishrimal" and "Roobal Sehgal"
    requested, and were granted access to, the AIMOS environment months before their alleged
27  unauthorized access occurred in October 2012 and December 2012, respectively.  (TAC ¶
    209; SUF 156–157, 160–163; Chauhan Decl., Ex. C; Swaroop Decl., Exs. B, C)
28

1    Copart also suffered no damages or loss from the alleged violation.  Section 502(e)(1) of

2    the California Penal Code allows a party to recover compensatory damages for "expenditure

3    reasonably and necessarily incurred by the owner or lessee to verify that a computer system,

4    computer network, computer program, or data was or was not altered, damaged, or deleted by the

5    access."  Rather than point to expenditure reasonably and necessarily incurred, the TAC simply

6    alleges, in generic terms, that Copart "suffered damages and losses in an amount to be proven at

7    trial, but in any event in excess of $5,000 in value."  (TAC ¶ 211.)  This mirrors the allegation in

8    *NovelPoster*, where plaintiff alleged that it "suffered damages and/or loss in excess of $5,000 in

9    the year preceding the date of this filing."  140 F. Supp. 3d at 949.  As the Court held in granting

10   defendant's motion for judgment on the pleadings on plaintiff's CDFA and CFAA claims, this

11   "is nothing more than a 'conclusory allegation[ ] of harm'" and "the complaint does not

12   adequately plead that NovelPoster 'suffer[ed] damage or loss by reason of a violation.'"  *Id.* at

13   950–51; *see also Lindsay-Stern v. Garamszegi*, No.: SACV 14-01970-CJC(DFMx), 2015 WL

14   12645024, at *3 (C.D. Cal. Apr. 15, 2015) (dismissing plaintiff's CDAFA claim because "the

15   FAC's conclusory statement that 'Stern has suffered damages in an amount to be proven at trial'

16   is insufficient, even at the pleading stage.").  And as noted above, because AIMOS was not live

17   at the time of the alleged violation, and never went live, Copart could not allege that it suffered

18   any damages from the alleged violation.  (SUF 147.)  For these reasons, the Court should grant

19   summary judgment on Copart's CDFA claim as to all defendants.

20         **E.       Copart's Claim for Professional Negligence Is Barred by the Two-Year**
21                    **Statute of Limitations**

22   As set forth in Sparta's motion for summary judgment (Section IV-D), it cannot be

23   credibly disputed Copart's professional negligence claim is barred by the two-year statute of

24   limitations.  *See* Cal. Civ. Proc. Code § 339.  With respect to Infosystems and KPIT India,

25   because Copart's professional negligence claim first appeared in the TAC filed on June 8, 2016

26   (SUF 77)—*i.e.* more than two years after the filing of the original complaint—in order for the

27   claim to survive, the discovery rule must apply.  However, to rely on the discovery rule, a

28   plaintiff must "plead that, despite diligent investigation of the circumstances of the injury, he or

18

1  she could not have reasonably discovered facts supporting the cause of action within the

2  applicable statute of limitations period."  *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797,

3  809 (2005); *see also Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 563 (1956) (a plaintiff must

4  allege "facts showing the time and surrounding circumstances of the discovery of the cause of

5  action upon which they rely.").  Moreover, the discovery rule only tolls the limitations period

6  until a plaintiff is on inquiry notice of its injury and cause.  *Dhaliwal v. Singh*, No. CV F 13–

7  0484 LJO SKO, 2013 WL 4460266, at *11 (E.D. Cal. Aug. 16, 2013).

8          Notably, nowhere in the TAC does Copart allege the time and circumstances of the

9  discovery of the alleged wrongdoing of Infosystems and KPIT India, nor could it.  From the very

10  outset, Copart was aware that Sparta had hired offshore consultants to work on the design and

11  build contracts, and specific references to KPIT India even appeared in the FAC filed on March

12  19, 2014.  (*See, e.g.*, Llewellyn Decl., Ex. S, at ¶¶ 4 & 52.)  Because Copart was aware of its

13  alleged injury and cause at the latest by November 1, 2013 – *i.e.* the date it filed its complaint—

14  Copart's professional negligence claim against Infosystems and KPIT India, just like its claim

15  against Sparta, is time-barred.  *See, e.g.*, *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 399 (1999) (A

16  claim accrues even if the plaintiff "does not suspect, or have reason to suspect, the identity of the

17  defendant."); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1114 (1988) ("[I]gnorance of the identity

18  of the defendant does not affect the statute of limitations.").

19  **IV.    CONCLUSION**

20          For the foregoing reasons, the Court should grant summary judgment in favor of

21  Infosystems.

22

23

24

25

26

27

28

19

1    Dated:  January 13, 2017                    Respectfully submitted,

2                                                LEWIS & LLEWELLYN LLP
                                                     Paul T. Llewellyn
3                                                    Ryan B. Erickson
                                                     Rebecca F. Furman
4
                                                 GIBSON, DUNN & CRUTCHER LLP
5                                                    Frederick Brown
                                                     Joseph R. Rose
6                                                    Ian T. Long

7                                                By: /s/ Paul T. Llewellyn
                                                     Paul T. Llewellyn
8
                                                 Attorneys for Defendant
9                                                KPIT Infosystems, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

KPIT INFOSYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on the 13th day of January, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

By: _/s/ Paul T. Llewellyn_____

Paul T. Llewellyn