1    LEWIS & LLEWELLYN LLP
        Paul T. Llewellyn (California Bar No. 216887)
2       Ryan B. Erickson (California Bar No. 268239)
        Rebecca Furman (California Bar No. 294082)
3    505 Montgomery Street, Suite 1300
     San Francisco, California 94111
4    Telephone: (415) 800-0590
     Facsimile: (415) 390-2127
5    Email: pllewellyn@lewisllewellyn.com
            rerickson@lewisllewellyn.com
6            bfurman@lewisllewellyn.com

7    GIBSON, DUNN & CRUTCHER LLP
        Frederick Brown (California Bar No. 65316)
8       Joseph R. Rose (California Bar No. 279092)
        Ian T. Long (California Bar No. 290975)
9    555 Mission Street, Suite 3000
     San Francisco, California 94105
10   Telephone: (415) 393-8200
     Facsimile: (415) 393-8306
11   Email: fbrown@gibsondunn.com
            jrose@gibsondunn.com
12           ilong@gibsondunn.com

13   Attorneys for Defendant and Counterplaintiff,
     SPARTA CONSULTING, INC. and Defendants
14   KPIT INFOSYSTEMS, INC. and KPIT
     TECHNOLOGIES LTD.

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17

18   COPART, INC.,                        CASE NO. 2:14-cv-00046-KJM-CKD

19                Plaintiff,              **DEFENDANTS' OPPOSITION TO
                                          COPART, INC.'S MOTION FOR
          v.                              SUMMARY JUDGMENT AND PARTIAL
20                                        SUMMARY JUDGMENT**

21   SPARTA CONSULTING, INC., KPIT
     INFOSYSTEMS, INC., and KPIT          Date:      February 24, 2017
22   TECHNOLOGIES LTD.                    Time:      10:00 a.m.
                                          Judge:     Hon. Kimberly J. Mueller
                  Defendants.             Location:  Robert T. Matsui United States
23                                                   Courthouse
                                                     Courtroom 3, 15th Floor
24   SPARTA CONSULTING, INC.,                        501 I Street
                                                     Sacramento, CA 95814
25                Counterplaintiff,

          v.
26
     COPART, INC.
27
                  Counterdefendant.
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   ARGUMENT ....................................................................................................... 3

    A.     There Are Triable Issues of Fact with Respect to Sparta's Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing............................................................................... 3

          1.     Sparta Used SharePoint and Its Internal Time Tracking System as the "Project Management Software System" for AIMOS ................................................................................. 4

          2.     Copart Agreed to All Work Performed for Which Sparta Seeks Damages Under Section 15.2 .............................................. 6

          3.     There Is a Triable Issue of Fact as to the Work Performed by Sparta and the Payment It Is Entitled to Under Section 15.2.......................................................................................... 8

    B.     There Are Triable Issues of Fact with Respect to Sparta's Equitable Claims ............................................................................. 11

    C.     Sparta Has Produced Substantial Evidence Regarding Its Damages .................. 13

          1.     Sparta Disclosed Both the Amount and Basis for Its Damages as Early as 2013 ................................................... 13

          2.     Sparta Has Produced Additional Evidence Specifically Showing the Hours It Spent on AIMOS. ................................. 16

    D.     Copart's Motion for Partial Summary Judgment on Elements of Its Affirmative Claims Must Be Denied .................................................... 17

          1.     Copart Fails to Apply the Correct Legal Standard................................. 18

          2.     Genuine Issues of Material Fact Exist as to Each Element for Which Copart Seeks Partial Summary Judgment ............................. 19

IV.   CONCLUSION................................................................................................... 20

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Cal. Parents for Equalization of Educ. Materials v. Noonan*,
   600 F. Supp. 2d 1088 (E.D. Cal. 2009)...................................................................................3

4

5

*Cash v. State Farm Fire & Cas. Co.*,
   125 F. Supp. 2d 474 (M.D. Ala. 2000) ...............................................................................15

6

*Citizens for Goleta Valley v. HT Santa Barbara*,
   117 Cal. App. 4th 1073 (2004) ............................................................................................7

7

8

*City & Cty. of San Francisco v. Tutor-Saliba Corp.*,
   218 F.R.D. 219 (N.D. Cal. 2003)........................................................................................15

9

*Cohen v. Hansen*,
   No. 2:112-cv-01401-JCM-PAL, 2014 WL 1873968 (D. Nev. May 8, 2014) .....................17

10

*Ford v. Affirmed Hous. Grp.*,
   2014 WL 1233078 (S.D. Cal. Mar. 25, 2014) ......................................................................8

11

12

*Fresno Rock Taco, LLC v. Nat'l. Sur. Corp.*,
   No. 1:11-CV-00845-SKO, 2013 WL 3803911 (E.D. Cal. July 19, 2013)...........................17

13

*Ingenco Holdings, LLC v. ACE Am. Ins. Co.*,
   No. C13-543RAJ, 2016 WL 4703758, at (W.D. Wash. Sept. 7, 2016) ..............................17

14

15

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
   176 F. Supp. 3d 949 (E.D. Cal. 2016)...................................................................................8

16

*Midwest Transp., Inc. v. FCE Benefit Adm'rs, Inc.*,
   No. C 07-4408 CW, 2007 WL 4357632 (N.D. Cal. Dec. 11, 2007)......................................8

17

18

*Objectware Corp. v. Authentix Network, Inc.*,
   No. 00 C7823, 2002 WL 1477625 (N.D. Ill. Jul. 9, 2002) ..................................................10

19

*Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*,
   No. 1:10–cv–00370–OWW–DLB, 2010 WL 3783871
   (E.D. Cal. Sep. 27, 2010)....................................................................................................12

20

21

*Segal v. Silberstein*,
   156 Cal. App. 4th 627 (2007) ..............................................................................................7

22

*Spring Inv'r. Servs., Inc. v. Carrington Capital Mgmt., LLC*,
   No. 10-10166-FDS, 2013 WL 1703890 (D. Mass. Apr. 18, 2013) .....................................14

23

24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ..............................................................................................18

25

*tagTrends, Inc. v. Nordstrom, Inc.*,
   No. SACV 13-00563 JVS (JPRx), 2014 WL 12561604
   (C.D. Cal. Sept. 30, 2014)...................................................................................................17

26

27

28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**STATUTES**

Cal. Civ. Code § 1641 .................................................................................................. 7

Fed. R. Civ. P. 26(e) ................................................................................................... 14

Fed. R. Civ. P. 56(a) ................................................................................................... 18

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO COPART'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

## I.    INTRODUCTION

Copart, Inc.'s ("Copart") Motion for Summary Judgment and Partial Summary Judgment ("Motion") (Dkt. 197) is based on a deficient Separate Statement that rattles off dozens of hotly disputed "facts" and then cites inadmissible evidence as support.  Copart even fails to number its purported "facts," which makes it nearly impossible to reference them, and obfuscates any attempt to link them to Copart's arguments.  Copart's brief—which contains a hyperbolic "factual" background and applies the wrong legal standard—fares no better.  For these reasons, and a host of other reasons set forth below, Copart's Motion must be denied.

Copart first argues that Sparta Consulting, Inc. ("Sparta") should be barred from any recovery because it did not maintain a project management software system to document its work, as anticipated in Section 15.2 of the Implementation Services Agreement ("ISA").  But throughout the project, Sparta utilized collaborative Microsoft document management software known as "SharePoint," which itself contained many project management documents.  A wealth of evidence establishes that Copart, which also used SharePoint, viewed this software as the project management system referenced in Section 15.2.  Sparta also separately maintained a database where the hours of its professionals were logged, and which Copart conveniently ignores.

Second, Copart argues that it should not be required to pay anything to Sparta because it did not "agree" with the amount Sparta is owed, thus converting Section 15.2 into an illusory and meaningless contract provision.  In reality, Copart's agreement with regard to the portion of the work completed is reflected in several project management documents on SharePoint, including documents that tracked the number of technical objects completed, and the number of test cases that Copart agreed AIMOS had passed.

Third, Copart argues that Sparta's claims fail because it has not produced calculations and evidence supporting its damages.  Copart, however, ignores that Sparta provided in writing both the amount and basis for Sparta's damages, based on several parameters, *before Copart even filed suit in 2013*.  Since then, Sparta has produced further evidence in support of its damages, and its damages expert, Richard Eichmann, produced a detailed written report and

1

testified at length about the basis for Sparta's damages in his deposition.

Fourth, Copart asserts that Sparta's equitable claims are "barred on their face." But this argument is nothing more than a re-hash of Copart's motion to dismiss, which the Court already denied. Those arguments carry no more weight at summary judgment than they did when the Court first rejected them, as the equitable claims are by their nature outside of the scope of the contract, and Copart advances no evidence or argument to the contrary.

Finally, Copart also seeks partial summary judgment with respect to certain elements of its affirmative claims. By mischaracterizing a handful of cherry-picked documents, Copart argues that it has "presented evidence establishing" certain elements of its claims. Of course, "presenting evidence" is not the standard on summary judgment. Because Copart's ham-handed attempt prove its case is littered with triable issues of fact, its Motion should be denied.

## II.     FACTUAL BACKGROUND

Few of the facts in the background section of Copart's Motion relate to any recognizable request for summary judgment. The bulk of Copart's "Factual Background" appears to be a summary of the allegations in the Third Amended Complaint and the report of Copart's SAP "expert" related to Sparta's supposed "poor performance" and its alleged "theft" of intellectual property. As set forth below, Copart's only "argument" related to Sparta's performance is its assertion that it has "sufficient evidence" to support "certain elements of its claims," which on its face falls woefully short of the standard Copart must meet to obtain summary judgment. Indeed, the only arguments in Copart's motion that even purport to be based on the proper standard are those related to the terms of the contract and the assertion that Sparta failed to produce certain damages information in discovery—neither of which have anything to do with Copart's laborious and misguided recitation of "faulty software design," "underperforming consultants," "bugs," "theft of AIMOS property," and the like.

Copart's beside-the-point allegations regarding Sparta's performance and supposed "theft," which are based the mischaracterization of a small number of internal Sparta documents culled from the millions of pages produced, are vigorously disputed. Indeed, as set forth in detail in Sparta's motion for summary judgment filed on January 13, 2017, Copart was satisfied with,

1  and consistently accepted and signed off in writing on, Sparta's work on each of seven

2  milestones under the Statements of Work ("SOWs").  (*See* Dkt. No. 184 at 4–8.)  Despite

3  working-side-by-side on AIMOS with Sparta for nearly two years, Copart claims that it only

4  "discovered" Sparta's poor performance and its fraudulent conduct in the six-week period

5  between its termination of the contract for convenience on September 17, 2013, and its filing of

6  this lawsuit on November 1, 2013—the same period in which the only communication between

7  the parties was Sparta's request for payment pursuant to the ISA's "termination for convenience"

8  provision.  Further, KPIT Technologies Ltd.'s motion for summary judgment demonstrates that

9  there was never any "theft" of Copart's purported intellectual property.  (*See* Dkt. No. 185 at 4–

10  9.)  Defendants incorporate those background sections by reference but do not discuss them in

11  detail here because they have little to do with Copart's summary judgment arguments.

12  **III.    ARGUMENT**

> **A.    There Are Triable Issues of Fact with Respect to Sparta's Claims for Breach
> of Contract and Breach of the Implied Covenant of Good Faith and Fair
> Dealing**

15  Copart seeks summary judgment on Sparta's claims for breach of contract and breach of

16  the implied covenant of good faith and fair dealing, arguing that under its interpretation of

17  certain terms in the ISA, Sparta is not entitled to any damages.  Copart claims, without any

18  reference to its Separate Statement or other evidence, that Sparta has failed to produce evidence

19  establishing that (a) Sparta maintained a "project management software system"; or (b) Copart

20  "agreed" that any portion of the Services for which Sparta seeks payment had been "performed

21  and completed" as of the termination date.

22  As a threshold matter, Copart misunderstands the standard for summary judgment.  It is

23  not Sparta's burden to "establish" a fact at the summary judgment stage.  Instead, it need only

24  establish the existence of a factual dispute.  *See*, *e.g.*, *Cal. Parents for Equalization of Educ.*

25  *Materials v. Noonan*, 600 F. Supp. 2d 1088, 1105 (E.D. Cal. 2009).  Here, because there are

26  genuine issues of material fact with respect to both grounds on which Copart seeks adjudication

27  of Sparta's contract-based claims, Copart is not entitled to summary judgment.

28

1.  **Sparta Used SharePoint and Its Internal Time Tracking System as the "Project Management Software System" for AIMOS**

On September 17, 2013, after Sparta had performed hundreds of thousands of hours of work on Copart's behalf, Copart notified Sparta that it was terminating the parties' contract for "convenience" rather than "cause." (Nadgauda Decl. (Dkt. 190) ¶ 22, Ex. L (Dkt. 190-12).) The relevant provision of the ISA, Section 15.2, provides as follows:

> **15.2 Termination for Convenience.** Copart may terminate this Agreement for convenience by giving [Sparta] written notice of the termination, which termination shall be effective on the date specified in such notice. In the event that Copart terminates this Agreement pursuant to this Section 15.2, then Copart shall pay [Sparta] only for the portion of the Services that have been performed and completed as of the termination date, as such portion agreed by Copart and calculated and documented by [Sparta's] project management software system.

(*Id.*, Ex. A (Dkt. 190-1) at 14.) Concurrently with its termination notice, Copart invited Sparta to provide the amount it was owed under this section. (*Id.*, Ex. L (Dkt. 190-12).) In an effort to avoid making any payment, Copart now claims that Sparta has failed to produce evidence that it maintained a "project management software system" that "calculated and documented" the portion of the Services completed. (Mot. at 15.) Copart's argument is baseless.

Throughout the design and build of AIMOS, Sparta used a collaborative Microsoft document storage and management application known as SharePoint. (Decl. of Vaibhav Nadgauda in Supp. of Def.'s Opp'n to Copart Inc.'s Mot. for Summ. J. ("Suppl. Nadgauda Decl.") ¶ 7.) Both Sparta and Copart used SharePoint, and it is the repository into which all relevant documents relating to AIMOS were maintained. (*Id.*) Project tracking documents, including the Test Tracker and documents which tracked the number of WRICEFs completed, among many others, were housed on SharePoint, and were maintained by Sparta. (*Id.* ¶¶ 8, 10.) Contrary to Copart's assertions, SharePoint was a "project management software system" (one which Copart had been aware of from the very beginning of the AIMOS Project) that explicitly "calculate[d] and document[ed]" the portion of work Sparta had completed.

There is a wealth of evidence demonstrating that both Sparta and Copart viewed SharePoint and its contents as the "project management software system" for AIMOS. For

4

example:

⌡ The Sparta sales presentation to Copart (which was cited in Copart's own Motion) notes that "Issue Management and Change Control Management is supported by a choice of Sparta Track or SharePoint." (Decl. of Jason Takenouchi in Supp. of Pl. Copart Inc.'s Mot. for Summ. J. ("Takenouchi Decl."), Ex. 1 (Dkt. 198-1) at 30.)

⌡ Onboarding documents directed new Sparta consultants to the SharePoint site for AIMOS project documents and include screenshots of SharePoint's "AIMOS Dashboard," which shows "AIMOS Deliverables Tracking to Plan," "AIMOS WRICEF work Tracking to Plan," and "AIMOS Overall" with a count of how many deliverables were in progress as of a certain date. (Suppl. Nadgauda Decl., Ex. G at 3, 8.)

⌡ The "Communication Plan" approved by Copart in connection with the design phase provides that "Copart will establish a SharePoint repository for the project team" that "acts as the place where project documentation is collected," including the project schedule, risk and issues list, and project documentation. (Suppl. Nadgauda Decl., Ex. H at 4.)

⌡ The "Documentation Governance" document approved by Copart in connection with the design phase provides that "[a]ll the developed, reviewed, approved documents in the life cycle of this project will be kept in SharePoint in a meaningful folder structure under the AIMOS tab." (Suppl. Nadgauda Decl., Ex. I at 4.)

⌡ The Realization Statement of Work states: "Copart will provide and maintain a project SharePoint site for project management, list keeping, calendaring, news, and document repository purposes." (Nadgauda Decl., Ex. G (Dkt. 190-7) at 30.)

⌡ Will Franklin, Copart's CFO, stated the following in a March 2014 declaration: "Copart maintains a document repository called SharePoint. Copart and Sparta used SharePoint and placed documents relevant to the AIMOS Project into the repository." (Decl. of Will Franklin (Dkt. 14-2) ¶ 5.)

⌡ Matthew Raabe, Copart's former Director of Information Technology during the time of the AIMOS Project, testified that "the point of having the SharePoint site was to have a centralized location where project documents are stored." (Declaration of Paul T. Llewellyn in Support of Defendants' Opposition to Copart's Motion for Summary Judgment ("Suppl. Llewellyn Decl."), Ex. S (M. Raabe Dep.) at 48:18–49:17.)

⌡ During her deposition, Copart's 30(b)(6) designee described SharePoint as a "repository location for information," and explained that documentation about what issues had been "resolved were stored in SharePoint." (Suppl. Llewellyn Decl., Ex. AA (Copart Dep.) 68:22–69:9, 70:4–14.)

(See also Defendants' Statement of Disputed Facts, No. 5.)  In the face of such evidence, Copart's assertion that there is no evidence that Sparta maintained a project management software system is beyond a triable issue of fact—it is a blatant falsehood.

Equally false is the suggestion that Sparta did not "calculate and document" the portion of the Services for which Sparta seeks recovery.  During the design and build of AIMOS, Sparta and Copart maintained documents which tracked each technical object and its completion status.

5

(Suppl. Nadgauda Decl. ¶ 8.)  These tracking documents provided concrete numbers of how many technical objects, or WRICEFs[1], were completed, thus "calculat[ing] and document[ing]" the portion of work Sparta had completed.  As reflected in those documents, Sparta performed and completed 777 of the 920 technical objects or WRICEFs, or the equivalent of nearly 85% of the objects identified in the Build SOW.  (*Id.* ¶ 9.)

SharePoint also tracked the number of test cases that Copart agreed AIMOS passed. During the last test cycle before Copart terminated the contract, Copart itself passed or conditionally passed 340 out of 405 test cases across all remaining milestones.  (*Id.* ¶ 11.)  In other words, Copart agreed that approximately 84% of the code developed and configured by Sparta met its requirements and had passed testing.  (*Id.* ¶ 10.)  Sparta and Copart maintained an Excel spreadsheet that tracked these test cases known as the "Test Tracker" which resided on SharePoint.  (*Id.*)

Sparta also tracked the hours its professionals and contractors worked on its internal time management system, known as Sparta Portal.  (*Id.* ¶ 13.)  Using that database, Sparta calculated the number of hours its personnel spent on the Project, which provides yet another metric for the amount owed by Copart.  (*Id.*)

At an absolute minimum, whether or not Sparta "calculated and documented" the portion of Services performed and completed is a disputed factual issue which precludes summary judgment.  (*See* Defendants' Statement of Disputed Facts, No. 5.)

### 2.   Copart Agreed to All Work Performed for Which Sparta Seeks Damages Under Section 15.2

Copart also argues, again without supporting evidence or citation to its Separate Statement, that Sparta has "failed to produce evidence establishing that . . . Copart 'agreed' that any portion of the Services for which Sparta seeks recovery had been 'performed and completed

---

[1]   The AIMOS project was segregated into six technical objects: (1) work flows; (2) reports; (3) interfaces; (4) conversions; (5) enhancements; and (6) forms (collectively, "WRICEFs"). (Suppl. Nadgauda Decl. ¶ 6.)  The Build SOW comprised a total of 920 technical objects, *i.e.* 920 distinct technical tasks or WRICEFs.  (*Id.*)

1   as of the termination date.'"  (Mot. at 15.)  To the contrary, Copart knew of and approved the

2   work tracked on SharePoint.  Copart's knowledge and agreement is evident in, among other

3   places, the WRICEF tracking documents and Test Tracker Excel spreadsheets which were

4   maintained on SharePoint.  (Suppl. Nadgauda Decl. ¶¶ 8, 10.)  The work completed was also

5   discussed at weekly meetings of the AIMOS management team and at monthly meetings of the

6   Steering Committee.  (*Id.* ¶ 14.)  Again, at a minimum, whether Copart "agreed" that any

7   portions of the work had been performed is a disputed, triable issue of fact.  (*See* Defendants'

8   Statement of Disputed Facts, No. 6.)

9        Copart's suggestion that it now has the right to veto any payment requested by Sparta

10  under Section 15.2 violates basic principles of contract law.  Copart's interpretation of the

11  "portion agreed by Copart" in Section 15.2 would give Copart complete and unfettered discretion

12  to pay or not pay Sparta any amount it wished and render the payment provision of Section 15.2

13  illusory and meaningless.  *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken

14  together, so as to give effect to every part[.]"); *Segal v. Silberstein*, 156 Cal. App. 4th 627, 633

15  (2007) (courts should "give effect to every provision and avoid rendering any part of an

16  agreement surplusage").  Moreover, Copart's interpretation of the phrase would effectively bar

17  recovery for any portion of work that Copart disputes—an absurd and unjust result.[2]  *See*

18  *Citizens for Goleta Valley v. HT Santa Barbara*, 117 Cal. App. 4th 1073, 1076–77 (2004) ("The

19  [court's] interpretation [of a contract] must be fair and reasonable, not leading to absurd

20  conclusions.  The court must avoid an interpretation which will make a contract extraordinary,

21  harsh, unjust or inequitable.") (internal quotations and citations omitted); *Midwest Transp., Inc.*

22  _____

23  [2]    Indeed, the unjust result that would flow from the interpretation urged by Copart is not an
24  abstract hypothetical—it actually occurred here.  After Copart invited Sparta "to discuss the
     services that Sparta believes have been performed, completed, and document as of" its
25  termination of the ISA (Nadgauda Decl., Ex. L (Dkt. 190-12), Sparta provided Copart with a
     detailed explanation of the work that had been completed to date, as documented and agreed
26  to in certain project management documents.  (Llewellyn Decl., Ex. M (Dkt. 196-13).)
     Copart's counsel responded with the following analysis regarding what Sparta was owed
27  under Section 15.2: "Copart does not agree to Sparta's assessment . . . Accordingly, since
     Copart does not agree, nothing is due under section 15.2."  (*Id.*, Ex. N (Dkt. 196-14).)

28

1  *v. FCE Benefit Adm'rs, Inc.*, No. C 07-4408 CW, 2007 WL 4357632, at *3 (N.D. Cal. Dec. 11,

2  2007) (rejecting a contractual interpretation that would "preclude [p]laintiff from enforcing the

3  contract against [d]efendant, essentially rendering the contract meaningless").

> ### 3. There Is a Triable Issue of Fact as to the Work Performed by Sparta and the Payment It Is Entitled to Under Section 15.2

6  Copart argues the ISA prohibits Sparta from recovering anything beyond "agreed-to,

7  contractual milestone based payments for completed and accepted work."  (Mot. at 2.)  Copart

8  goes on to argue that "to the extent [Sparta's] contract claims seek to recover anything other than

9  what is allowed under Section 15.2 of the ISA, such recovery is barred by Section 15.5, 9.3 and

10  18 of the ISA."  (Mot. at 15.)  Copart fails to identify what it believes *is allowed* under Section

11  15.2, and therefore it puts Sparta in an impossible position having to respond to an amorphous

12  argument.[3]  While Copart's motion is unclear, to the extent Copart is arguing that Sparta is

13  somehow limited to a portion of the next milestone payment—an argument which is not

14  appropriate in the context of a summary judgment motion (*i.e.* it does not dispose of the

15  contractual claims)—there is simply no support for such a proposition, which at the very least

16  represents a disputed issue of fact.

17  First and foremost, the plain language of Section 15.2 does not limit recovery to a portion

18  of the next milestone payment.  Rather, it provides for payment for the "portion of the Services

19  that have been performed and completed as of the termination date[.]"  (Nadgauda Decl., Ex. A

20  (Dkt. 190-1) at 14.)[4]  If the parties had intended the termination payment to be limited to a

21  portion of the next milestone payment, then the contract would have said so.  *See*, *e.g.*, *Lennar*

22  *Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 955 (E.D. Cal. 2016) ("Unless the

---

[3]  Moreover, by seeking a ruling "to the extent" Sparta seeks to recover certain, undefined damages, Copart is essentially asking for an improper advisory opinion.  *See, e.g.*, *Ford v. Affirmed Hous. Grp.*, 2014 WL 1233078, at *3 (S.D. Cal. Mar. 25, 2014) ("In order to avoid improper advisory opinions on 'abstract propositions of law,' 'a present, live controversy' must exist concerning the issues before the court.") (citation omitted).

[4]  Under Section 2.1 of the ISA, "Services" is defined to all include all services described in the ISA and SOWs—in other words, it is much broader than "milestones."  (Nadgauda Decl., Ex. A (Dkt. 196-1) at 4.)

1   parties intended to use words in a technical or special sense, a court reads a contract's language

2   to understand its plain meaning as a layperson ordinarily would.").  Moreover, such a limitation

3   would make no sense in the context of the AIMOS realization project.  The project comprised

4   three geographical areas—Canada, the United Kingdom and the United States—and Sparta and

5   Copart agreed to a blueprint which provided a consistent and scalable platform where the vast

6   majority of the work performed could be applied across all three areas.  (Suppl. Nadgauda Decl.

7   ¶ 5.)  The result was that while the focus over the last few months on the Project was the Canada

8   testing milestone, the vast majority of the work *for all remaining milestones* had been completed.

9   (*Id.*)  At the time of termination Sparta had performed and completed 777 technical objects, or

10  the equivalent of more than 84% of the items identified in the Build SOW.  (*Id.* ¶ 9.)

11  Additionally, Copart had passed or conditionally passed 340 out of 405 test cases involving all of

12  its business areas.  (*Id.* ¶ 11.)  Or to put it another way, approximately 84% of the work Sparta

13  performed for Copart *across all three geographical areas*, had been signed off by Copart.  To

14  limit recovery under Section 15.2 to the next milestone, when Sparta had completed the vast

15  majority of the work across all remaining milestones, would not only be contrary to the contract,

16  it would also provide Copart with an unjust windfall.

17          Second, the Copart employee who was responsible, in part, for negotiating the ISA,

18  testified at deposition that the payment under Section 15.2 was not limited to the next milestone.

19  As Matthew Raabe[5] testified:

20          Q.  And under Section 15.2, if Copart terminated Sparta for convenience, what
            fees would be owed to Sparta, as far as you understood?

21          . . .

22          A.  So the intention there was that Sparta would be engaged in work and would
            have incurred costs that had not either been paid because they hadn't been
23          invoiced yet – say, for example, they had hit a milestone, milestone payment,
            invoice had been delivered but not paid.  Those would be paid, ***plus work that***
24          ***had been completed toward the – any upcoming milestones.  So work in***
            ***progress.***

25  _____

26  [5]  Mr. Raabe was Copart's Director of Information Technology from June 2011 through March
     2014—the time period that covered the entire AIMOS Project.  In that role, he was involved
27   in drafting the ISA for Copart and negotiating with Sparta regarding the agreement.  (Suppl.
     Llewellyn Decl., Ex. S (M. Raabe Dep.) at 23:13–21, 121:12–15.)

28

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1    (Suppl. Llewellyn Decl., Ex. S (M. Raabe Dep.) 34:20–35:8 (emphasis added).)

2           Third, when faced with very similar facts, other courts have soundly rejected the position

3    now advanced by Copart.  In *Objectware Corp. v. Authentix Network, Inc.*, plaintiff and

4    defendant entered into a milestone-based software development agreement whereby defendant

5    was to make payments to plaintiff upon completion of certain milestones.  No. 00 C7823, 2002

6    WL 1477625 (N.D. Ill. Jul. 9, 2002).  Just like the Sparta-Copart ISA, the parties' agreement

7    contained a provision for "payment for termination," Section 10.4, which provided, in part, for

8    payment "for all services performed . . . through . . . the date of such termination[.]"  *Id.* at *8.

9    Following the termination of the contract, defendant moved for summary judgment, arguing that

10   the agreement "does not contemplate partial payment for partial completion of milestones."  *Id.*

11   at *7.  As the Court held in denying defendant's motion:

12           Under Authentix's interpretation, Objectwave would not be entitled to payment
13           for work it had performed up to the date of termination, thus rendering Paragraph
             10.4 meaningless. . . .  [W]hen the Software Agreement was terminated, the
14           payment scheme laid out by the Payment Plan and Development Plan no longer
             governed.  Rather, upon termination of the Software Agreement, Authentix's
15           obligation to pay became grounded on paragraph 10.4.  As such, summary
             judgment is improper because Objectwave has successfully alleged genuine issues
16           of material fact as to the amount of work performed by it prior to the termination
             of the Software Agreement and the money due to it for the performance of this
17           work.

18

19   *Id.* at *9 (internal citation omitted).  Similarly, in this case, there is a genuine issue of material

20   fact as to the amount of work performed by Sparta prior to termination, and the money it is owed

21   for that work, thus precluding summary judgment.[6]

22   _____

23   [6] Copart also cites Sections 9.3, 15.5 and 18 of the ISA in its Motion.  (Mot. at 14.)  But other
     than citing these provisions, Copart fails to explain their relevance, or why it believes they
24   should limit Sparta's recovery.  In fact, none of these provisions have any impact on the
     amount Sparta is owed under Section 15.2.  Section 9.3 concerns only the fees "described in
25   this Section 9"—*i.e.* the fixed-fee, milestone based fees.  (Nadgauda Decl., Ex. A (Dkt. 190-
     1) at 9.)  It makes no reference to, and has no impact on, the fees owed by Copart following
26   termination for convenience under Section 15.2.  (*Id.*)  Section 15.5 provides for no
     termination fees "[e]xcept as expressly provided in Section 15.2."  (*Id.* at 15.)  And Section
27   18, the Limitation of Liability provision, concerns "indirect, incidental, special or
     consequential damages."  (*Id.* at 17.)

28

1

**B.      There Are Triable Issues of Fact with Respect to Sparta's Equitable Claims**

2      Sparta's Counterclaim includes claims for relief for promissory estoppel, quantum meruit

3  and unjust enrichment—the so-called equitable or quasi-contract claims.  Copart seeks summary

4  judgment on those claims, arguing that "Sparta cannot establish a genuine issue of material fact."

5  (Mot. at 14.)  However, on the very preceding page of its motion, Copart concedes that "[t]he

6  moving party has an initial burden to demonstrate the absence of any genuine issue of material

7  fact."  (*Id.* at 13.)  Here, Copart does not even attempt to meet that burden; indeed, the relevant

8  section of the motion does not even include a reference to Copart's Separate Statement.

9      In the absence of any supporting evidence, Copart essentially raises a pleadings

10  challenge, arguing that Sparta's equitable claims are "barred on their face."  Mot. at 15.[7]  As this

11  Court previously held in finding Copart's same arguments "unpersuasive" and denying Copart's

12  motion to dismiss Sparta's equitable claims:

13      Copart itself alleges that the agreement is unenforceable.  At the same time,
       Copart argues a valid agreement exists barring Sparta from bringing equitable
14      claims.  Copart, like Sparta, is free to take such inconsistent legal positions at this
       time, and what is good for the goose is good for the gander.  Of course, neither
15      party may eventually recover under both inconsistent theories.  But the court need
       not dismiss Sparta's equitable claims at this stage.
16

17  Order (Dkt. 65) at 67 (citation omitted)).[8]  In the absence of any new evidence, the Court should

18  once again reject Copart's repackaged arguments.

19      By framing its argument on the provisions of the ISA, Copart misses the mark.  As the

20  Counterclaim makes clear, Sparta pled the equitable claims "*[i]n the alternative* to its breach of

21

------

22  [7]   In the first section of its Separate Statement, Copart states that it "moves for summary
       judgment on Sparta's counterclaims [sic] for promissory estoppel which are [sic] barred by
23     contract and for which Sparta has failed to support damages."  (Copart's Statement of
       Undisputed Facts (Dkt. 200) at 1.)  Based on this, it is unclear whether (1) Copart is just
24     moving for summary judgment on the promissory estoppel claim; (2) it simply forgot to
       include reference to quantum meruit and unjust enrichment in its Separate Statement; or (3) it
25     does not purport to provide any material facts with respect to the quantum meruit and unjust
       enrichment claims.  In an abundance of caution, Sparta will treat Copart as moving for
       summary judgment on all three claims.
26  [8]   In denying Copart's motion, the Court further ruled that "Copart has sufficient notice of the
27     nature of the claims and what work is alleged to have been outside the scope of the
       agreement."  (Order (Dkt. 65) at 8.)
28

11

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

contract claim." (Counterclaim (Dkt. 132) ¶¶ 107, 123, 132 (emphasis added).)  Indeed, the very gravamen of an equitable claim is that it is *outside the scope of the contract*.  *See*, *e.g.*, *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, No. 1:10–cv–00370–OWW–DLB, 2010 WL 3783871, at *3 (E.D. Cal. Sep. 27, 2010) ("quasi-contract actions may be utilized to prevent unjust enrichment regarding disputes between contracting parties that are related to, but outside the scope of, the parties' contract").  Because equitable claims are outside the scope of the contract, Copart cannot rely on contractual provisions to defeat them.[9]

Even if the contractual provisions were somehow relevant, they do not support Copart's position.  Copart cites section 18 of the ISA—the Limitations of Liability section—to claim that Sparta's equitable claims are barred as they seek recovery for "indirect, incidental, special or consequential damages." (Mot. at 15.)  Copart fails to explain *why* the damages Sparta seeks for its quasi-contract claims would constitute such damages.  Moreover, Copart fails to quote the part of section 18 which provides that it only applies to damages "arising out of or relating to its performance or failure to perform *under this Agreement."*  (Nadgauda Decl., Ex. A (Dkt. 190-1) at 17 (emphasis added).)  As noted above, because equitable claims are by their very nature outside the scope of the contract, this section has no application.

Copart further argues that Sparta "has not presented a basis for ignoring the plain meaning of Sections 9.3 and 15.5, which restrict the damages that Sparta can seek." (Mot. at 15.)  Once again, Copart fails to articulate why sections 9.3 and 15.5—which govern the payment of fees and termination fees under the contract—apply to Sparta's equitable claims, how the damages that Sparta can seek for such claims are restricted, and why such a purported restriction should entitle Copart to summary judgment.

---

[9] Copart anticipates this argument, but retorts "Sparta will be unable to present evidence that this is the case." (Mot. at 15 n.2.)  In support, it relies on a provision of the ISA, Section 2.2, which relates to "New Services." (*Id.*)  Yet Copart raised this *identical argument* in its failed motion to dismiss—an argument rejected by the Court.  (*See* Copart's Mot. to Dismiss (Dkt. 58) at 8:5–13 (citing section 2.2 of the ISA and arguing "[e]ven if Sparta's additional work was outside the scope of the Realization SOW . . . that work would have been subject to the New Services provision of the ISA.")).

**C.**     **Sparta Has Produced Substantial Evidence Regarding Its Damages**

      **1.**     **Sparta Disclosed Both the Amount and Basis for Its Damages in 2013**

Copart's argument that Sparta "never explained how it reached its estimate that it completed 84% of Milestone 8 through 15" is demonstrably false.  (Mot. at 16, 17.)  Following Copart's termination of the ISA for convenience, and in response to Copart's invitation to Sparta to provide the amount it was owed under Section 15.2, on October 18, 2013, Sparta sent Copart a seven-page, single-spaced letter that detailed—including reference to supporting documents— how Sparta calculated the percentage of work that it performed and the amount of money that it was owed under Section 15.2 of the ISA.  (Llewellyn Decl., Ex. M (Dkt. 196-13).)  In response, Copart sued Sparta, ostensibly because of "Sparta's unreasonable position" regarding the amount it was owed.  (Llewellyn Decl., Ex. N (Dkt. 196-14).)

Once litigation commenced, Sparta provided additional support for its damages calculations.  For example, the October 18, 2013 letter was referenced and incorporated into Sparta's written discovery responses.  (*See*, *e.g.*, Takenouchi Decl., Ex. 89 (Dkt. 198-89) at 15– 16).  Sparta also produced numerous additional documents in support of its damages calculation, including a PowerPoint presentation which specifically addressed the basis for the 84%.  (*See* Suppl. Nadgauda Decl., Ex. A at 9–11.)  In addition, the calculation of Sparta's damages was addressed in the expert report of Sparta's damages expert, Richard Eichmann, who also testified about it at length during his deposition.[10]  (*See*, *e.g.*, Suppl. Llewellyn Decl., Ex. GG, (R. Eichmann Dep.) at 21:15–29:11.)  The testimony of Mr. Eichmann alone is sufficient to defeat Copart's motion.  *See Spring Inv'r. Servs., Inc. v. Carrington Capital Mgmt., LLC*, No. 10- 10166-FDS, 2013 WL 1703890, at *15–16 (D. Mass. Apr. 18, 2013) (finding expert report calculating damages was sufficient to create triable issue of material fact regarding damages,

---

[10]  Copart further argues that the Eichmann Report "does not describe the factual basis for [Sparta's milestone completion], other than the fact that Sparta asked him to assume that Sparta completed 84% of these milestones."  (Mot. at 16 n.6.)  Yet Copart conveniently ignores the sections of Mr. Eichmann's report that chronicle, in detail, how he analyzed Sparta's damages as well as the section where he identifies at least six documents and deposition testimony that he relied on to reach this opinion.  (Suppl. Llewellyn Decl., Ex. A at 8–10, 33.)

1    thereby precluding summary judgment on the breach of contract claim).[11]

2         In the face of this consistent and clear evidence, Copart now claims (1) Sparta's Initial

3    Disclosures do not include a calculation of this figure; and (2) in response to two separate

4    interrogatories seeking Sparta's contentions about the percentage of milestones completed and

5    how it calculated those percentages, Sparta "refused" to provide any information.  Both

6    contentions are meritless.

7         First, with respect to its Initial Disclosures, Sparta stated in those disclosures, which were

8    served before any discovery had taken place:

9         Pursuant to section 15.2, Copart must pay Sparta 'for the portion of the Services
          that have been performed and completed as of the termination date[.]'  Sparta,

10        therefore seeks, among other things, damages for the work performed and
          completed by Sparta for Copart under the ISA and related Statements of Work,

11        and corresponding unreimbursed expenses, as of the termination date.

12   (Takenouchi Decl., Ex. 87 (Dkt. 198-87) at 9.)  Because the basis for Sparta's damages

13   calculation was disclosed to Copart in discovery responses, produced documents and expert

14   testimony, Sparta was under no duty to amend those disclosures.  *See* Fed. R. Civ. P. 26(e)

15   (requiring a party to supplement or correct its initial disclosures "if the party learns that in some

16   material respect the disclosure or response is incomplete or incorrect, and if the additional or

17   corrective information ***has not otherwise been made known*** to the other parties during the

18   discovery process or in writing.") (emphasis added); *see also City & Cty. of San Francisco v.*

19   *Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003) (courts that have granted summary

20   judgment because of a party's failure to make adequate initial disclosures do so in "extreme

21   situations" where the party lacks "any supporting evidence") (collecting cases).  Moreover, prior

22   to filing its Motion, Copart had not questioned or challenged the completeness of Sparta's initial

23

24   ─────────────────────

     [11]  Copart also claims that Sparta's corporate designee "refused to explain" how Sparta

25   calculated this figure, invoking the attorney-client privilege.  (Mot. at 16.)  The two pages of
     deposition testimony cited by Copart involved specific questions concerning communications

26   with counsel.  Omitted from Copart's motion and supporting declaration are the preceding
     pages of the deposition, where Sparta's corporate designee testified at length about the work

27   performed and completed by Sparta under the remaining milestones.  (Suppl. Llewellyn
     Decl., Ex. CC (Sparta Dep.) at 290:8–312:24.)

28

1    disclosures.  (Suppl. Llewellyn Decl. ¶ 3.)  If Copart was unsatisfied with the disclosures, it

2    should have brought a motion to compel pursuant to Rule 37.  It did not and cannot now, after

3    sleeping on its rights, seek an issue sanction disguised as summary judgment.  *See, e.g.*, *Cash v.*

4    *State Farm Fire & Cas. Co.*, 125 F. Supp. 2d 474, 477 (M.D. Ala. 2000) ("[T]he moving party

5    cannot sleep on its rights; it may not wait until the summary judgment stage to object to the use

6    of materials that it has made no prior reasonable efforts to obtain.").

7         Second, with respect to Sparta's apparent "refusal" to answer interrogatories relating to

8    its damages calculation, the simple explanation is that Copart's interrogatories were untimely.

9    Despite knowing the basis for Sparta's damages since at least October 2013, Copart waited

10   *nearly three years*, and *four months after the close of fact discovery*, to serve follow up

11   interrogatories on this subject.  The Court's August 17, 2016 Amended Status (Pretrial

12   Scheduling) Order (Dkt. No. 140) only permitted Copart to propound interrogatories related to

13   the new claims asserted in the Third Amended Complaint, *i.e.* the trade secret related claims.

14   (*Id.* at 2:17–18 ("No party is authorized to reopen discovery with respect to the first six

15   claims").)  Nevertheless, on September 23, 2016, Copart served interrogatories asking Sparta to

16   describe how it calculated that it completed approximately 84% of the remaining milestones and

17   the documents that Sparta used to make that calculation—discovery that had nothing to do with

18   Copart's new trade secret claims.  Because it was untimely, Sparta objected to this discovery.

19   (*See* Takenouchi Decl., Ex. 85 (Dkt. 198-85) at 3–4.)  Copart did not challenge Sparta's

20   objection or seek the assistance of the Magistrate Judge to resolve what would have been a

21   straightforward discovery dispute (Suppl. Llewellyn Decl. ¶ 3.), and it has long since missed its

22   opportunity to do so.  (*See* August 17, 2016 Amended Status (Pretrial Scheduling) Order (Dkt.

23   No. 140) at 3:6–20 (ordering all fact discovery completed on or before October 28, 2016, which

24   includes the resolution of "any disputes relative to discovery…by appropriate order if

25   necessary").)  Having failed to serve timely discovery, Copart cannot now be heard to complain,

26   as the basis for summary judgment, that it does not "understand" Sparta's damages.

27        Because Sparta has shown that triable issues of fact exist as to Sparta's damages,

28   Copart's motion should be denied.  (*See also* Defendants' Statement of Disputed Facts, No. 8.)

15

1

2. **Sparta Has Produced Additional Evidence Specifically Showing the Hours It Spent on AIMOS**

2

3      Copart also argues that Sparta failed to provide support for its estimate of the number of

4   hours spent on the Build Phase of AIMOS.  (Mot. at 17.)  As an initial matter, it is important to

5   note that the number of hours spent on AIMOS is just one of three alternative methods Sparta

6   has put forth for calculating the amount it is owed under Section 15.2.  (Llewellyn Decl., Ex. M

7   (Dkt. No. 196-13).)  As discussed above, the other methods are the percentage of technical

8   objects completed and number of test cases passed.  (*Id.*)  At best, therefore, Copart's argument

9   simply applies to one of the three damages theories, and certainly does not "bar Sparta's

10  damages."  While acknowledging Sparta produced a spreadsheet, SPARTA-00000024,[12] which

11  shows which individuals worked on AIMOS, and the hours each spent on AIMOS on a week-to-

12  week basis, Copart argues because Sparta did not produce the "source data" that was used to

13  build this spreadsheet, it is not entitled to any damages.  (Mot. at 17.)  However, Copart's

14  discovery request merely asked for "documents used by Sparta to create the spreadsheet that

15  Sparta produced at SPARTA-00000024."  (Takenouchi Decl., Ex. 85 (Dkt. 198-85) at 2–3.)

16  Sparta's personnel did not fill out physical timesheets and therefore there were no documents to

17  produce in response to this request.  (Suppl. Nadgauda Decl. ¶ 13.)  Rather, they entered their

18  time directly into Sparta's time management system, just as a lawyer may enter his or her time

19  into a billing program.  (*Id.*)  Therefore, as Sparta has confirmed in its discovery responses,[13]

20  "the timesheet produced at SPARTA-00000024 contains information that was exported from

21  Sparta's time-tracking system" and it "reflects the time that was entered into Sparta's time-

22

---

23  [12]  SPARTA-000000024 was produced in response to Copart's interrogatory that requested that Sparta "IDENTIFY all SPARTA PERSONNEL who performed work on the project."  Prior to the close of discovery, Sparta amended its written discovery response and updated the reference to SPARTA-0000000024 to SPARTA-000806205, an updated version of the spreadsheet.  (*See* Suppl. Llewellyn Decl., Ex. B, Resp. to Interrog. No. 2 at 16.)  Copart does not even mention the new spreadsheet in its motion.

24

25

26  [13]  Additionally, Copart fails to mention that this spreadsheet was one of the topics of Copart's 30(b)(6) deposition of Sparta, and Sparta produced a witness who testified at length about it.  (*See*, *e.g.*, Suppl. Llewellyn Decl., Ex. CC (Sparta Dep.) at 6:7–9, 53:23–25, 57:7– 62:24, 64:4–65:17, 70:22–73:2, 78:19–81:10.)

27

28

1   tracking system."  (Suppl. Llewellyn Decl., Ex. D at 4.)  Importantly, Copart never sought access

2   to, or inspection of, Sparta's time management system in the course of discovery.  (Suppl.

3   Llewellyn Decl. ¶ 4.)[14]

4          The authorities cited by Copart concern preclusion sanctions under Rule 37 and therefore

5   they are inapposite.  Each of these cases involved a party either amending its damages theory, or

6   producing documents, at the eleventh hour, resulting the opposing party being blindsided by new

7   evidence.  For example, in *Cohen v. Hansen*, the Court granted preclusion sanctions for a party's

8   "willfull" and "bad faith" failure to produce evidence, holding that a party cannot disclaim a

9   theory of damages—thereby depriving the other side of discovery on that theory—and later

10  embrace that theory in opposition to summary judgment.  No. 2:112-cv-01401-JCM-PAL, 2014

11  WL 1873968, at *2–3, 12 (D. Nev. May 8, 2014).[15]  In contrast, since even before Copart filed

12  its lawsuit, Sparta has presented a consistent and coherent damage theory, supported by

13  documentary evidence and deposition testimony.

14         For these reasons, the Court should reject Copart's request for summary judgment.

15         **D.  Copart's Motion for Partial Summary Judgment on Elements of Its**
           **Affirmative Claims Must Be Denied**

16

17         Copart also seeks partial summary judgment with respect to certain elements of its

18  affirmative claims.  By cherry-picking from certain documents, misrepresenting their contents, or

19

20  [14]  Copart also criticizes Sparta for having "failed to provide the salary information for [its]
21  consultants."  (Mot. at 17.)  Not only is this information not relevant to calculating Sparta's
      damages, Copart waited until after the close of discovery to seek this information, and
22  therefore Sparta objected to this discovery as untimely.  (Takenouchi Decl., Ex. 85 (Dkt.
      198-85) at 4.)

23  [15]  *See also tagTrends, Inc. v. Nordstrom, Inc.*, No. SACV 13-00563 JVS (JPRx), 2014 WL
24  12561604, at *5-6 (C.D. Cal. Sept. 30, 2014) (excluding Plaintiff's damages theory because
      it failed to "present its calculation and theory of damages" until filing its opposition to
      summary judgment and did not "present a cognizable theory of actual damages"); *Fresno*
25  *Rock Taco, LLC v. Nat'l. Sur. Corp.*, No. 1:11-CV-00845-SKO, 2013 WL 3803911, at *8–10
      (E.D. Cal. July 19, 2013) (barring plaintiffs from amending the pretrial order to include
26  evidence of billing records because they did not identify the records until their final exhibit
      list on the eve of trial); *Ingenco Holdings, LLC v. ACE Am. Ins. Co.*, No. C13-543RAJ, 2016
27  WL 4703758, at *1 (W.D. Wash. Sept. 7, 2016) (precluding a party's damages evidence
      pursuant to Rule 37 where the party willfully failed to produce damages computations).

28

simply overreaching, Copart argues that it has "presented evidence" establishing certain

elements.

### 1.   Copart Fails to Apply the Correct Legal Standard.

Copart's Motion supposedly establishes that "Copart *Has Sufficient Evidence* In Support

Of Certain Elements Of Its Claims For Fraud/Fraudulent Inducement, Breach Of Contract,

Conversion, And Computer Fraud, For Purposes Of Partial Summary Judgment." (Mot. at 18

(emphasis added).)  But a party cannot obtain summary judgment by identifying evidence

"sufficient" to support its claim—it must instead "show[] that there is no genuine dispute as to

any material fact." Fed. R. Civ. P. 56(a); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  While it pays lip service to the real standard for

summary judgment earlier in its motion (Mot. at 13), Copart never purports to meet it.  Consider

the following from Copart's Motion:

> Fraud and Fraudulent Inducement: "Copart *has presented evidence* establishing the first
> element . . ." *Id.* at 18 (emphasis added).

> Breach of Contract: "Copart *has presented evidence* establishing the third element . . ."
> *Id.* (emphasis added).

> Conversion: "Copart *has presented evidence* establishing the first element . . ." and "*has
> also presented evidence* establishing the second element (Sparta's theft) . . ." *Id.* at 19
> (emphasis added).

> Computer Fraud: "Copart *has presented evidence* establishing that . . ." *Id.* at 13–14
> (emphasis added).

Simply "present[ing] evidence" does not entitle a party to summary judgment.  All that

means is that Copart has cherry-picked supposedly favorable evidence (which in many instances

it mischaracterizes) that it will purportedly present at trial.  Critically, in defendants' Response to

Copart's Separate Statement and its Statement of Disputed Facts, both of which are being filed

concurrently, defendants present their own evidence, which create triable issues of fact that

preclude Copart's effort attempt to obtain partial summary judgment.

/ / /

/ / /

/ / /

18

### 2. Genuine Issues of Material Fact Exist as to Each Element for Which Copart Seeks Partial Summary Judgment

Setting aside its defective arguments, Copart could never meet the proper standard for "partial" summary judgment because there are genuine factual issues as to every "fact" Copart presents in support of its claims.

**<u>Fraud and Fraudulent Inducement</u>:** As to the fraud and fraudulent inducement claims, Copart argues that it has "presented evidence" as to the first element of fraud—misrepresentation or concealment of material fact. (Mot. at 18.) Copart's argument is twofold: (1) Sparta "concealed known project risks to Copart," misrepresented that there was no risk of "scope creep" before Copart hired Sparta for the Build Phase, and "hid other project risks and problems from Copart;" and (2) Sparta "did not disclose Sparta's theft of Copart property before Copart and Sparta executed the ISA Amendment, and during the Build Phase." (*Id.*) As set forth in the Defendants' Response to Copart's Separate Statement, each of these purported facts is disputed. There is substantial evidence that Sparta disclosed project risks and the risk of "scope creep" to Copart. (*See* Defendants' Statement of Disputed Facts, No. 3; *see also* Defendants' Response Copart's Separate Statement at pp. 12–63.) And as for the supposed "theft" of Copart property, the undisputed facts show that no such "theft" occurred. (*See* Defendants' Statement of Disputed Facts, Nos. 9–10; Defendants' Response Copart's Separate Statement at pp. 97–108.)

**<u>Breach of Contract</u>:** Copart argues that it has "presented evidence" as to the third element of breach of contract—breach. *Id.* Copart argues Sparta breached certain provisions of the 21-page ISA because it (1) failed to use qualified individuals with suitable training, education, experience and skill; (2) failed to provide the Services with promptness, diligence and in a professional manner; and (3) stole, and assisted in the theft of, Copart's intellectual property. *Id.* As for the "qualifications" of individuals assigned to the Project, or whether services were performed in a "professional manner," such contentions are, by their very nature, factually intensive inquiries, inappropriate for determination of summary judgment. And cherry-picking a handful of quotes from the more than one million pages of documents produced in this case, does not come close to meeting Copart's burden that such "facts" are undisputed. To the contrary,

19

1  each of these facts is disputed by Sparta, and there is a wealth of evidence to the contrary.

2  Because these issues present disputed factual issues, Copart's motion must be denied. (*See*

3  Defendants' Statement of Disputed Facts, Nos. 1–2, 9–10; Defendants' Response Copart's

4  Separate Statement at pp. 63–108.)

5     **Conversion:**  Copart argues that it has "presented evidence" as to two of the three

6  elements of conversion—ownership and theft.  (*Id.* at 19.)  Copart's cursory argument as to

7  "ownership" is that "Copart has presented evidence establishing the first element."  (*Id.*)  As to

8  "theft," Copart also vaguely states that "Copart has also presented evidence establishing the

9  second element (Sparta's theft)."  (*Id.*)  Copart then "supports" its argument with broad-

10  brushstrokes and imprecise citations to exhibits and its Separate Statement.  Such broad

11  assertions obfuscate that there are issues of material fact that must be decided at trial.  (*See*

12  Defendants' Statement of Disputed Facts, Nos. 9–10; Defendants' Response Copart's Separate

13  Statement at pp. 97–108.)

14     **Computer Fraud:**  Lastly, Copart argues that it has "presented evidence" of a violation

15  of the Computer Fraud and Abuse Act ("CFAA") and California Comprehensive Data Access

16  and Fraud Act ("CDAFA") by at least one Sparta "agent."  (*Id.*)  Partial summary judgment in

17  Copart's favor cannot be granted on these claims.  Predictably, Copart selects a narrow slither of

18  evidence in support of its Motion.  (*Id.*)  Yet, as discussed in depth in KPIT Infosystems' own

19  motion for summary judgment, an examination of the full set of facts demands that summary

20  judgment should be granted in favor of defendants on these claims.  (*See* KPIT Infosystems,

21  Inc.'s Motion for Summary Judgment (Dkt. 186) at 11–18; Defendants' Statement of Disputed

22  Facts, Nos. 9–10; Defendants' Response Copart's Separate Statement at pp. 109–119.)

23  **IV.**    **CONCLUSION**

24     Instead of presenting incontrovertible evidence establishing it is entitled to summary

25  judgment, Copart cobbles together a blunderbuss of mischaracterizations and inadmissible

26  evidence that bears little resemblance to reality.  With respect to each of the grounds raised by

27  Copart's motion, because there are disputed issues of material fact, Copart's motion should be

28  denied.

Lewis & Llewellyn LLP
Attorneys At Law
San Francisco

1    Dated:  February 10, 2017                    Respectfully submitted,

2                                                 LEWIS & LLEWELLYN LLP
                                                      Paul T. Llewellyn
3                                                     Ryan B. Erickson
                                                      Rebecca F. Furman
4
                                                 GIBSON, DUNN & CRUTCHER LLP
5                                                     Frederick Brown
                                                      Joseph R. Rose
6                                                     Ian T. Long

7                                                 By:  /s/ Paul T. Llewellyn
                                                      Paul T. Llewellyn
8
                                                 Attorneys for Defendant and
9                                                Counterplaintiff Sparta Consulting, Inc. and
                                                 Defendants KPIT Infosystems, Inc. and
10                                               KPIT Technologies, Ltd.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS & LLEWELLYN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO COPART'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:14-cv-00046-KJM-CKD

1

## **CERTIFICATION OF SERVICE**

2      The undersigned hereby certifies that on the 10th day of February, 2017, all counsel of

3  record who are deemed to have consented to electronic service are being served with a copy of

4  this document via the Court's CM/ECF system.

5

6                      By: /s/ Paul T. Llewellyn
                           Paul T. Llewellyn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28