MARK P. RESSLER (*admitted pro hac vice*)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:      (212) 506-1700
Facsimile:      (212) 506-1800
mressler@kasowitz.com

JASON S. TAKENOUCHI (SBN 234835)
MARGARET A. ZIEMIANEK (SBN 233418)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone:      (415) 421-6140
Facsimile:      (415) 398-5030
jtakenouchi@kasowitz.com
mziemianek@kasowitz.com

Attorneys for Plaintiff COPART, INC.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SPARTA CONSULTING, INC., KPIT INFOSYSTEMS, INC., and KPIT TECHNOLOGIES, LTD.,<br><br>        Defendants.<br>_____<br>SPARTA CONSULTING, INC.,<br><br>        Counterplaintiff,<br><br>    v.<br><br>COPART, INC.,<br><br>        Counterdefendant. | Case No: 2:14-CV-00046-KJM-CKD<br><br>**PLAINTIFF COPART INC.'S OPPOSITION TO DEFENDANT KPIT TECHNOLOGIES, LTD.'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Hearing Date: February 24, 2017<br>Time:        10 a.m.<br>Judge:      Hon. Kimberly J. Mueller<br>Location:   Courtroom 3, 15th Floor<br><br>Trial Date:   August 14, 2017 |

**TABLE OF CONTENTS**

<u>Page</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.     FACTUAL BACKGROUND ...........................................................................................3

      A.     Copart's Imaging Technology and Replication of the Technology In AIMOS .........3

      B.     KPIT India's Involvement In AIMOS .......................................................................4

      C.     KPIT Technologies' Relationship With Sparta And KPIT US ..................................6

      D.     Defendants' Plan to Use AIMOS Materials in AutoEdge, a KPIT/Sparta Product, Included KPIT Employees and Managers ..................................................................6

III.    ARGUMENT ...................................................................................................................8

      A.     Legal Standard...........................................................................................................8

      B.     There Is A Genuine Dispute Of Material Fact Concerning KPIT India's Liability For The Failure Of AIMOS And Other Misconduct .........................................................9

            1.    KPIT India was a direct participant in the wrongful conduct at issue .................9

            2.    There is substantial evidence to support piercing the corporate veil between KPIT India and Sparta ....................................................................................10

                 a.   There is substantial evidence of unity of interest .........................................10

                 b.   Substantial injustice will result if alter ego liability is not imposed ............11

            3.    KPIT India Is Also Liable Under Agency Theory of Liability ..........................12

      C.     The Property Defendants Stole Qualifies For Trade Secret Protection; At A Minimum, There Are Genuine Disputes Of Fact Underpinning Whether The Property Qualifies As A Trade Secret....................................................................12

      D.     There Is A Genuine Dispute Of Material Fact Regarding Copart's Damages From The Trade Secret Misappropriation........................................................................17

      E.     ZCL_IMAGING Is Copart's Property; At A Minimum, There Is A Genuine Dispute Of Material Fact Regarding The Ownership Of This Property................................18

      F.     The Paymetric Configuration Was Copart's Property .............................................19

IV.     CONCLUSION ..............................................................................................................21

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1

# TABLE OF AUTHORITIES

2

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,*
   399 F. Supp. 2d 1064 (N.D. Cal. 2005) ................................................17

*Agency Solutions.com, LLC v. TriZetto Grp., Inc.,*
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................17

*Ajaxo Inc. v. E\* Trade Fin. Corp.,*
   187 Cal.App.4th 1295 (2010) ................................................17

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.,*
   226 Cal. App. 4th 26 (2014) ................................................14, 15, 17

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................9

*Art of Living Found. v. Does 1-10,*
   2012 WL 1565281 (N.D. Cal. May 1, 2012) ................................................17

*Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal., Inc.,*
   545 F. App'x 600 (9th Cir. 2013) ................................................17

*Berster Techs., LLC v. Christmas,*
   2012 WL 33031 (E.D. Cal. Jan. 6, 2012) ................................................13

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................8

*Clark v. Cty. of Placer,*
   923 F. Supp. 1278 (E.D. Cal. 1996) ................................................8

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) ................................................12

*Dong AH Tire & Rubber Co. v. Glasforms, Inc.,*
   2009 WL 975817 (N.D. Cal. Apr. 10, 2009) ................................................10, 11, 12

*DVD Copy Control Ass'n, Inc. v. Bunner,*
   31 Cal.4th 864 (2003) ................................................12

*FAS Techs., Ltd. v. Dainippon Screen Mfg. Co., Ltd.,*
   2001 U.S. Dist. LEXIS 15444 (N.D. Cal. Sept. 24, 2001) ................................................18

*FAS Techs., Ltd. v. Dainippon Screen Mfg. Co., Ltd.,*
   2001 WL 647451 (N.D. Cal. May 31, 2001) ................................................18

*First Nat'l Bank of Ariz. v. Cities Serv. Co.,*
   391 U.S. 253 (1968) ................................................8

*Graham-Sult v. Clainos,*
   756 F.3d 724 (9th Cir. 2014) ................................................19

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

ii

*Imi-Tech Corp. v. Gagliani,*
    691 F. Supp. 214 (S.D. Cal. 1986) ................................................................................ 14

*In re Chinese Manufactured Drywall Prods. Liab. Litig.,*
    894 F. Supp. 2d 819 (E.D. La. 2012) ............................................................................. 11

*In re iPhone Application Litig.,*
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ............................................................................. 19

*Integral Dev. Corp. v. Tolat,*
    2017 U.S. App. LEXIS 514 (9th Cir. Jan. 11, 2017) ..................................................... 13

*Kayne v. Ho,*
    2013 WL 12123202 (C.D. Cal. Aug. 28, 2013) ............................................................. 11

*Knights Armament Co. v. Optical Sys. Tech., Inc.,*
    2008 WL 2157108 (M.D. Fla. May 21, 2008) ................................................................ 12

*Las Palmas Assocs. v. Las Palmas Center Assocs.,*
    235 Cal. App. 3d 1220 (1991) ....................................................................................... 10

*Masson v. New Yorker Magazine, Inc.,*
    501 U.S. 496 (1991) ......................................................................................................... 9

*Nelson v. City of Davis,*
    571 F.3d 924 (9th Cir. 2009 .......................................................................................... 19

*NetApp, Inc. v. Nimble Storage, Inc.,*
    2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015) .............................................. 10

*NFC Collections LLC v. Deutsche Bank Aktiengesellschaft,*
    2013 WL 3337800 (C.D. Cal. July 2, 2013) .................................................................. 11

*Padilla v. Beard,*
    2017 U.S. Dist. LEXIS 11851 (E.D. Cal. Jan. 27, 2017) .............................................. 20

*PMC, Inc. v. Kadisha,*
    78 Cal. App. 4th 1368 (2000) .................................................................................... 16, 17

*SEC v. Hickey,*
    322 F.3d 1123 (9th Cir. 2003) ....................................................................................... 10

*Sinclair v. Aquarius Elecs., Inc.,*
    42 Cal. App. 3d 216 (1974) ....................................................................................... 13, 14

*SkinMedica, Inc. v. Histogen Inc.,*
    869 F. Supp. 2d 1176 (S.D. Cal. 2012) ......................................................................... 14

*Spring Design, Inc. v. Barnesandnoble.com, LLC,*
    2010 WL 5422556 (N.D. Cal. Dec. 27, 2010) ........................................................... 14, 16

*T.W. Elec. Serv. v. Pac. Elec. Contr. Ass'n,*
    809 F.2d 626 (9th Cir. 1987) ........................................................................................... 9

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

COPART'S OPP. TO KPIT TECHNOLOGIES' MSJ; Case No. 2:14-cv-00046-KJM-CKD

*Ultimate Timing, L.L.C. v. Simms*,
   715 F. Supp. 2d 1195 (W.D. Wash. 2010) ................................................................................ 16

*Unilogic, Inc. v. Burroughs Corp.*,
   10 Cal.App.4th 612 (1992) ........................................................................................................ 18

**Statutes**
Cal. Civ. Code
   §3426.1(d) ................................................................................................................................. 12

   §3426.3 ...................................................................................................................................... 17

**Rules**
Fed. R. Civ. P.
   56(c) ............................................................................................................................................ 8

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

COPART'S OPP. TO KPIT TECHNOLOGIES' MSJ; Case No. 2:14-cv-00046-KJM-CKD

**I.       INTRODUCTION AND SUMMARY OF ARGUMENT**

The original complaint that Copart, Inc. ("Copart") filed against defendant Sparta Consulting Inc. ("Sparta") focused on Sparta's fraud, contract breaches, negligence, and incompetence in designing, building and testing AIMOS, an enterprise resource planning ("ERP") computer system, running on SAP software, that was supposed to replace Copart's existing computer system.  During discovery, Copart learned that Sparta secretly copied materials from the AIMOS system to a Sparta product called AutoEdge.  Copart owns the materials under the parties' contract, making Sparta's undisclosed copying of them an act of, among other things, theft.

Last year the Court allowed Copart to amend its complaint to include claims relating to this theft and to add Sparta's parent companies, KPIT Technologies, Ltd. ("KPIT India") and KPIT Infosystems, Inc. ("KPIT US"), as defendants.  Dkt. No. 125.  Copart's operative Third Amended Complaint ("TAC") added claims for conversion, trade secret misappropriation, computer fraud, and professional negligence, and added the KPIT entities as defendants to the new claims and to some of Copart's original claims.  Dkt. No. 126.

Defendants have filed three motions for summary judgment.  The instant motion ("Mot."), nominally on behalf of KPIT India, challenges Copart's trade secret misappropriation claim.[1]

The Motion fails on several grounds.  As an initial matter, the Motion fails because Copart's trade secret misappropriation claim is supported by ample evidence showing that: (1) Copart spent millions of dollars developing unique imaging functionality in Copart Auction Systems ("CAS"), Copart's existing computer system, and took measures to prevent the public disclosure of that functionality; (2) as part of its AIMOS work, Sparta replicated CAS imaging functionality for use in AIMOS, and in the process created a "class"[2] of software material named ZCL_IMAGING; (3) starting no later than October 2012, and without notice to Copart, Defendants copied the ZCL_IMAGING class and related software material from AIMOS and placed those materials into

---

[1] KPIT India's Motion incorporates by reference KPIT US's challenge to Copart's conversion and common law misappropriation claims.  Mot. at 3.  Copart addresses those challenged claims in its separate opposition to the KPIT US motion.

[2] A "class" is a collection of source code, data tables, and other software objects that collectively performs a function.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   Defendants' proprietary AutoEdge system; (4) after October 2012 Defendants used these materials

2   in demonstrations of how the imaging technology stolen from Copart could work in AutoEdge, and

3   created an internal Project Charter that described how this technology, and other AIMOS materials,

4   could be used for Defendants' own purposes; and (5) for more than a year after Copart terminated

5   Sparta, the stolen Copart materials were kept in an AutoEdge system that was accessible to anyone

6   who worked for the Defendants.  Copart Statement of Disputed Facts ("CSDF") at 52-58, 64-72.

7        KPIT India's first challenge – that the stolen materials are not trade secrets – is meritless.

8   There is ample evidence showing a genuine dispute of material fact about whether the stolen

9   materials contain "trade secrets" under California's Uniform Trade Secrets Act ("CUTSA").  The

10  evidence shows that Copart's imaging technology was independently developed, is not publicly

11  available, was critical to Copart's operations, and was kept secret by Copart.  The evidence also

12  shows that the stolen materials replicated key components of CAS imaging technology and of

13  Copart's business processes.[3]  The stolen materials include source code, which is presumptively a

14  "trade secret" under California law.

15       There is also ample evidence supporting a genuine dispute of material fact about Copart's

16  damages.  The evidence shows that Copart spent millions of dollars developing imaging

17  technology, that Defendants' team (including KPIT India employees) spent thousands of hours

18  replicating that imaging technology for use in AIMOS, and that the technology continued to have

19  value to Copart throughout the AIMOS project and afterward.  Defendants' unjust enrichment

20  includes the development costs that they avoided.  If nothing else, Copart is entitled to a royalty

21  that would take into consideration the development costs of the stolen materials.

22       Defendants' assertion that they developed the stolen materials outside of AIMOS for an

23  unnamed project in Colorado (Mot. at 7), and that the imaging class existed in AutoEdge *before* it

24  was used in AIMOS (*id*. at 8), is baseline.  Defendants' corporate designee testified under oath that

25  the stolen materials were developed for AIMOS, which is sufficient in itself to reject Defendants'

26

27  [3] After considering the materials produced in discovery and the applicable law, Copart is
    withdrawing its claim that Paymetric credit card functionality is a "trade secret."  The theft of this
28  functionality remains part of Copart's other claims.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

claim.  Copart's Opposition to Defendants' Statement of Undisputed Facts ("COSUF"), at 124.  Other evidence shows that the ZCL_IMAGING class was created for AIMOS in early 2012, and that the ZCL_IMAGING class was added to AutoEdge in early October when Sparta initiated the copying of materials from AIMOS into AutoEdge.  Dkt. No. 198 (Takenouchi Decl.) ("TD"), Ex. 88 at 16-18.  Moreover, Sparta never produced any documents about the Colorado project for which Sparta allegedly developed this imaging functionality, which is an additional reason to reject Defendants' argument.[4]

Defendants' argument that they never "used" the stolen materials is also baseless.  There is overwhelming evidence that Defendants copied the materials to test out the imaging functions in AutoEdge, and later actually ran demonstrations of how the imaging functions worked in AutoEdge.  This is more than enough to constitute "use" under CUTSA.

Defendants' remaining challenge – that KPIT India cannot be held responsible for any of the misconduct here – is without merit.  The evidence shows that KPIT India was an active participant in the disastrous AIMOS project and in the misappropriation of Copart's property.  At least 20 KPIT India employees worked on the AIMOS project, including Ajay Tiwari, who managed dozens of consultants on the Defendants' offshore (India-based) team during the AIMOS project, and who was actively involved in AutoEdge.  The evidence also shows that Sparta acted as the alter ego and agent of KPIT India.

## II.    FACTUAL BACKGROUND[5]

### A.    Copart's Imaging Technology and Replication of the Technology In AIMOS

Copart sells vehicles for a variety of consignors (including insurance companies and rental car companies) to a variety of buyers (including dealers and exporters).  In 2002, as Copart was experimenting with live online vehicle auctions, the company realized that its existing computer systems were unable to process, store and stage the vast numbers of images – mainly pictures of

---

[4] Copart's separate set of Evidentiary Objections Re: Defendants' Motions For Summary Judgment addresses this failure.  *See* Objection No. 1.

[5] Copart's Motion for Summary Judgment, and Copart's opposition to Sparta's summary judgment motion set forth a more complete factual background regarding the parties' dispute, and are incorporated by reference. Only the facts relevant to KPIT India's motion are addressed herein.

vehicles to be auctioned – that were a precondition for efficient online auctions.  CSDF 51.

Accordingly, the following year Copart began developing the necessary imaging technology to

support live online auctions, eventually building a team of over a dozen employee developers and

technology contractors.  CSDF 52.  Copart's team completed the core of Copart's new imaging

technology in 2005, and that imaging technology has been a critical part of Copart's CAS systems

– and a necessary part of Copart's live online auction capability – for over a decade.  CSDF 53.

Copart's imaging technology involves the intake, processing, storage, retrieval and export

for viewing of images generated at various stages of Copart's business processes.  CSDF 54.  The

technology supports millions of images at any one time, and is able to give online bidders near-

instantaneous and simultaneous access to thousands of pre-staged images during Copart's live

online bids.  *Id.*  After investing millions of dollars into this unique imaging technology, Copart

sought to keep its intellectual property confidential by ensuring that only authorized individuals

could access the software. CSDF 55.

When Copart hired Sparta in 2011 to develop AIMOS, Sparta committed to create an ERP

system that would replicate "100% of CAS Functionalities."  Part of that functionality was

imaging, and by January 2012 Sparta had created a "To Be Process Document" that described the

functionality that was part of "Imaging" at Copart.  CSDF 57.

In the following months Sparta and KPIT consultants spent thousands of hours replicating

CAS imaging functions into the AIMOS system.  *See* CSDF 19-40. The work these consultants

performed was added to the ZCL_IMAGING "class" that Sparta consultant Narahari Kotla created

in May 2012 to hold the imaging materials.  Opposition Decl. of Jason Takenouchi ("TOD"), Ex.

108. The code in the ZCL_IMAGING class was created specifically for the AIMOS Project.  *Id.*

Ex. 176 at 129:1-130:4.

### B.  KPIT India's Involvement In AIMOS

Sparta's work on the AIMOS project was governed by the Implementation Services

Agreement ("ISA") that Sparta and Copart signed in October 2011. TD Ex. 2.  The ISA provided,

among other things, that Sparta could not use subcontractors or "affiliates" of Sparta unless Copart

gave "prior written consent":

> In entering into this Agreement, Copart has relied on the reputation of, and on obtaining the personal performance of, Service Provider. No performance of this Agreement, or any portion thereof, shall be subcontracted by Service Provider to an Service Provider Affiliate or other third party without the prior written consent of Copart…Service Provider shall be responsible for the work and activities of each Service Provider Agent, including each such Service Provider Agent's compliance with the terms of this Agreement.

*Id.* at 4 §2.3.

Sparta is a wholly-owned subsidiary of KPIT US, and KPIT US is a wholly-owned subsidiary of KPIT India. CSDF 73.  Accordingly, both KPIT entities satisfy the definition of an "Affiliate" under the ISA.  TD Ex. 2 at 1 §1.3 ("'Affiliate' of a Party means any entity, whether incorporated or not, that Controls, is Controlled by, or is under common Control with such Party.").

Sparta relied heavily on KPIT India consultants throughout the AIMOS project without obtaining Copart's written approval as required by the ISA.  CSDF 19-50.  Defendants admit that at least 20 KPIT India employees worked on the AIMOS Project.  *See* Dkt. No. 187 at 170.  Those employees included Ajay Tiwari, the KPIT "Offshore Engagement Manager"[6] who served as the head of Defendants' India-based offshore AIMOS team.  CSDF 48-49; TOD Ex. 130 at 11.  Defendants' internal documents show that Tiwari's offshore team was deeply involved in the AIMOS project, and that the dysfunctional relationship between the offshore and onshore teams was one of the major reasons the Project failed.  Indeed, what emerges from Defendants' internal sniping is a portrait of a consulting organization that, at least internally, readily acknowledged, and actively chronicled, its performance failures on the AIMOS project.  For example:

- In January 2012 – just a couple months into the project – Defendants' offshore team manager Mandar Deshpande, a KPIT India employee, complained that his team was being asked to create critical design documents based on incomplete information and often contradictory instructions from the Defendants' onsite team.  CSDF 41.

- In December 2012, Defendants' onsite team complained that the KPIT offshore team's poor performance was hurting the project.  In response, KPIT India consultant Sujit Sahajan Mahanty asked – apparently for the first time – for documents and manuals describing Copart's basic processes.  CSDF 42.  This prompted further recriminations by Sparta manager Namit Swaroop, who asked how the KPIT offshore team could have designed and tested a system without understanding Copart's basic processes.  *Id.*

---

[6] While Defendants have at times suggested Tiwari was a Sparta employee, his supervisor Namit Swaroop identified him as a KPIT employee.  CSDF 48.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

- A June 18, 2013 internal analysis of the work performed by Defendants' offshore consultants described the design, training, and execution flaws that led to problems on the Project.  CSDF 43.
- Senior KPIT India executive Probodh Chiplunkar was included on email correspondence regarding staffing and performance on the AIMOS project, and provided direct feedback to Sparta's project leaders regarding how the project should be managed.  CSDF 44.
- KPIT India consultant Piyush Gupta was in charge of putting together a "Copart Resource Plan" listing the roles and skills of members of the offshore team.  CSDF 45.
- KPIT India consultant Amit Choudhary led the Defendants' AIMOS team for D&R (drag and relate) functionality. CSDF 46.
- KPIT India consultant Pooja Mittal worked on imaging for the AIMOS Project. CSDF 40.
- KPIT India consultant Roobal Sehgal complained on April 3, 2013 to Tiwari and Sparta manager Chidanand Chauhan about the poor performance of the Defendants' offshore team in handling bugs.  CSDF 47.

**C.**  **KPIT Technologies' Relationship With Sparta And KPIT US**

Vaibhav Nadgauda, Sparta's relationship manager for the AIMOS project, was named as Head of SAP SBU for KPIT India in 2012.  CSDF 74.  Nadgauda was preceded in that role by another Sparta executive—Sparta's CEO Lokesh Sikaria, who also served as the Head of the SAP SBU for KPIT India.  *Id.*  Additionally, Kishor Patil and Sachin Tikekar served as directors of Sparta, KPIT India, and KPIT US.  *Id.*

KPIT India made millions of dollars of emergency loans to Sparta starting in 2013, through KPIT India's subsidiary KPIT US.  CSDF 75.[7]  Defendants have produced no evidence that any loan was agreed to by Sparta's or KPIT US's boards of directors, or that Sparta ever repaid any loan, in part or whole.  CSDF 76.

**D.**  **Defendants' Plan to Use AIMOS Materials in AutoEdge, a KPIT/Sparta Product, Included KPIT Employees and Managers**

AutoEdge is a KPIT/Sparta product that contains SAP applications for auto industry customers.  CSDF 61.   As of 2011, AutoEdge had no imaging or credit card processing functionality.  CSDF 62; *see also* TOD Ex. 114.

---

[7] These loans are described in more detail in Copart's Opposition to KPIT US's Motion for Summary Judgment.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

In Fall 2012, Defendants' managers began internal discussions about how to take technology from AIMOS for use in AutoEdge.  CSDF 63; TOD Ex. 114.   Weeks later, on October 10, 2012, Sparta consultant Shivraj Sinha distributed his AIMOS login and password information to several people, including Sparta consultant Narenda Pratap Singh and KPIT India manager Tiwari, with instructions to copy "the class ZCL_IMAGIN and its dependent tables from copart system and copy them into the Autoedge system."  TD Ex. 34 at 1.  Hours later Singh confirmed that the material had been copied into the AutoEdge system.  TD Ex. 35 at 1.

On October 24, 2012, Sinha asked KPIT India consultant Mugdha Gupte to copy "the necessary changes in code and methods which has been done in Copart system" into the "Auto Edge system."  TD Ex. 36 at 2.  A day later KPIT India consultant Tejas Shrishrimal confirmed that the this task was complete.  *Id.* at 1.

Soon after taking this imaging technology from AIMOS, Sparta managers discussed other technology that could be taken from AIMOS by "replicating Copart code," and "[c]opying code for what is developed for Copart."  TD Exs. 41, 43.  During the same period, Defendants' consultants began working on functions in AutoEdge at the same time that they worked on identical functions in AIMOS.  For example, KPIT India employee Mittal worked on the imaging functionality in AIMOS, and then worked on recreating the same functionality in AutoEdge, including preparing a demonstration of AutoEdge imaging functionality for KPIT management.  CSDF 40.  And during that same period Sparta set up demonstrations for imaging functions in AutoEdge.  TD Ex. 38.

Defendants also took AIMOS material relating to credit card processing for use in AutoEdge.  For example, on October 19, 2012, Sparta's Swaroop sent KPIT India employee Roobal Sehgal a document entitled "Payment Card Implementation detailed document for ERP – Copart Corporation," which describes the to-be configuration of Paymetric in AIMOS.  TOD Ex. 96.  In a cover email, Swaroop told Sehgal "[o]ur mid term goal is to have this capability build in AutoEdge (Sparta's prperitoty [*sic*] solution for automotive)."  *Id.* at 1.  And in December 2012 Sehgal reported to KPIT India manager Tiwari and Sparta manager Chauhan about his work implementing credit card configuration in AutoEdge "same as configured in Copart."  TOD Ex.

196 at 1.

In January 2013, Defendants finalized a formal plan for taking material from AIMOS and using it for AutoEdge, entitled "Copart AutoEdge Project Charter." That Charter – essentially, a license to steal Copart's trade secrets – stated in relevant part:

> Copart is a US based Auto SME Customer and some of the custom developments and configuration done for Portal, Imaging and Paymetric Integration for Copart Client and can be utilized across other US Customers are replicated by the Copart Team in the Sparta Internal AutoEdge Solution for the POC perspective.

TD Ex. 47 at 4.

KPIT India executive Gupta approved the Project Charter on January 23, 2013. TD Ex. 48. A few months later, in April 2013, Sehgal organized a "Copart and Autoedge functional meeting" of Sparta and KPIT India employees. CSDF 69. Also in April 2013, Tiwari ordered a group of KPIT India employees who were working on AIMOS – including Deshpande, Sehgal, and Choudhary – to begin working on AutoEdge. TOD Ex. 133. At that time the AIMOS project was months behind schedule and the Defendants' own managers were complaining about staffing problems. *See, e.g.,* TD Exs. 49, 55. During this same period, Sparta was advertising its AutoEdge product as a feature to entice potential customers to retain Sparta for ERP projects and began diverting onshore and (KPIT) offshore resources from AIMOS to AutoEdge. CSDF 71.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>

The purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To "establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Clark v. Cty. of Placer*, 923 F. Supp. 1278, 1282 (E.D. Cal. 1996) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

8

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contr. Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**B.** **There Is A Genuine Dispute Of Material Fact Concerning KPIT India's Liability For The Failure Of AIMOS And Other Misconduct**

**1.** **KPIT India was a direct participant in the wrongful conduct at issue**

Dozens of KPIT India employees worked on the AIMOS Project, including several who managed key project teams. For example, KPIT India manager Tiwari led Defendants' offshore team throughout the Project. TOD Ex. 130 at 11. As described in section II-B, *supra*, other KPIT India employees played key roles in other areas of the AIMOS project.

KPIT India is also directly liable for the actions Sparta Infotech, the India-based company that provided many of the consultants on Sparta's AIMOS team. *See* TOD Exs. 150 at 150-2, 127 at 127-2, 128, 143. Sparta Infotech, which was initially a subsidiary of Sparta and then KPIT US (*see* Copart's opp. to KPIT US MSJ at 2), was taken over by KPIT India through a "scheme of amalgamation." TOD Ex. 134. Under the scheme, which was finalized on January 30, 2014, but is retroactive to April 1, 2012, KPIT India explicitly took on all legal liabilities of Sparta Infotech as of April 1, 2012. *Id.* at 5 §6. Thus, under the terms of the agreement KPIT India is also directly liable for the acts of Sparta Infotech employees beginning in April 2012.

The fact that KPIT India is not a party to the contracts between Sparta and Copart (Mot. at 10) is irrelevant. KPIT is named only in the non-contractual claims for professional negligence, trade secret misappropriation, conversion, unjust enrichment, unfair competition, and computer fraud. Dkt. No. 126 at 42-58. None of these claims require a direct contractual relationship in order to impose liability.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**2.     There is substantial evidence to support piercing the corporate veil between KPIT India and Sparta**

Even if there were no evidence showing KPIT India had a direct role in the negligence, misconduct and incompetence that underpins Copart's claims, which there is, there is ample evidence to find KPIT India liable for Sparta's misconduct as its alter ego.  As discussed in Section III-B-2 of Copart's Opposition to KPIT US's motion for summary judgment, which is incorporated by reference herein, there are two general requirements for imposing alter ego liability: (1) unity of interest and ownership such that the separate personalities of the entities do not exist and (2) the potential of an unjust result if the fiction of a separate corporate identity is maintained. *SEC Comm'n v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003), *amend. on denial of reh'g,* 335 F.3d 834 (9th Cir. 2003).

**a.     There is substantial evidence of unity of interest**

Factors supporting unity of interest include, but are not limited to: identical equitable ownership in the two entities; use of the same offices and employees; use of one entity as a mere shell or conduit for the affairs of the other; the commingling of funds and other assets of the two entities; identity of directors and officers; inadequate capitalization; disregard of corporate formalities; shared legal counsel; and lack of segregation of funds.  *Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JF(RS), 2009 WL 975817, at *5 (N.D. Cal. Apr. 10, 2009) (citation omitted).

Inadequate capitalization and comingling of funds.  Inadequate capitalization alone can provide sufficient grounds for piercing the corporate veil. *NetApp, Inc. v. Nimble Storage, Inc.*, Case No. 5:13-cv-05058-LHK(HRL), 2015 U.S. Dist. LEXIS 11406, *27 (N.D. Cal. Jan. 29, 2015); *see also Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal. App. 3d 1220, 1249-50 (1991).  Here, the evidence shows that KPIT India made millions of dollars in loans to KPIT US (which in turn loaned the funds to Sparta), yet there is no evidence that any individual loan was agreed to by KPIT US's board of directors, or that any individual loan was repaid.  CSDF 75.

Overlap in directors and officers.  In 2012, while the AIMOS project was in full swing, Vaibhav Nadgauda, Sparta's relationship manager for the AIMOS project, was named as Head of

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

10

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  SAP SBU for KPIT India.  CSDF 74.  Nadgauda was preceded in that role by another Sparta

2  executive – Sparta's CEO Lokesh Sikaria.  *Id.* Additionally, Kishor Patil, and Sachin Tikekar

3  served as directors of Sparta, KPIT India, and KPIT US.  This overlap supports a finding of alter

4  ego liability.  *See Dong AH & Rubber Co.,* 2009 WL 975817, at *5.

5      Presenting a single face to the market.  KPIT India's annual reports starting in 2012 discuss

6  an initiative called the "One KPIT Experience," described as "we present a single comprehensive

7  face to the customer. . . We have initiated the common branding effort across the globe, where all

8  our entities will fall under the KPIT brand." CSDF 78.  All KPIT entities share a single website,

9  which does not identify or discuss KPIT India and Sparta as separate entities.[8]

10     Inconsistent statements regarding ownership.  Inconsistent representations regarding

11  ownership further support unity of interest.  *Kayne v. Ho*, Case No. LA CV 09-06816 JAK(CWx),

12  2013 WL 12123202, at *9 (C.D. Cal. Aug. 28, 2013) (finding genuine dispute of material fact

13  existed where plaintiff provided evidence of overlap in board members and directors; sharing of

14  facilities, and inconsistent representations to regulators and the public regarding ownership).  KPIT

15  and Sparta's annual reports and the testimony of their witnesses in this action are filled with

16  inconsistent statements about the corporate form, ownership, and relationship between the entities.

17  CSDF 79.

18          **b.      Substantial injustice will result if alter ego liability is not imposed**

19     The substantial injustice element is satisfied where a failure to disregard the separate

20  identities of the parent and subsidiary would allow the parent to shield itself from the consequences

21  of the subsidiary's conduct and enable it to limit its liability for illegal acts by performing them

22  through its controlled subsidiary.  *NFC Collections LLC v. Deutsche Bank Aktiengesellschaft*, No.

23  CV12-10718 DDP(JEMx), 2013 WL 3337800, at *9 (C.D. Cal. July 2, 2013).  Here, KPIT India

24  directed and participated in Sparta's project failures, misappropriation, and other misconduct.

25

26  ---

27  [8] *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 873 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014), and *aff'd sub nom.*, 753 F.3d 521 (5th Cir. 2014) (finding alter ego liability where parent and subsidiary "held themselves out to customers and potential customers as a single entity.").

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    KPIT India directly profited from the money that Copart paid Sparta for its services. CSDF 77.

2    KPIT India also participated in the plan to profit from the theft of Copart trade secrets and

3    intellectual property stolen through the AutoEdge product.  *See* TD Ex. 47.

### 3.    KPIT India Is Also Liable Under Agency Theory of Liability

5         As discussed in more detail in Section III-B-4 of Copart's Opposition to KPIT US's motion,

6    KPIT India is also liable for Sparta's conduct under an agency theory of liability, based on

7    overlapping officers, a shared public presence, and the performance of functions by Sparta that are

8    necessary to KPIT India.[9]

### C.    The Property Defendants Stole Qualifies For Trade Secret Protection; At A Minimum, There Are Genuine Disputes Of Fact Underpinning Whether The Property Qualifies As A Trade Secret

11        The primary purpose of California's trade secret law, codified at Civil Code Section 3426 *et*

12   *seq.* ("CUTSA"), is to "promote and reward innovation and technological development and

13   maintain commercial ethics."  *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal.4th 864, 878

14   (2003), as modified (Oct. 15, 2003).  The statute bars the misappropriation of any "trade secret,"

15   which is defined as "information, including a formula, pattern, compilation, program, device,

16   method, technique, or process" that "(1) [d]erives independent economic value, actual or potential,

17   from not being generally known to the public or to other persons who can obtain economic value

18   from its disclosure or use" and "(2) [i]s the subject of efforts that are reasonable under the

19   circumstances to maintain its secrecy."  Cal. Civ. Code §3426.1(d).

20        The intellectual property that Defendants misappropriated is a compilation of source code,

21   SAP objects, and other materials that were included in the "class ZCL_IMAGING" that Sparta

22   created as part of its deliverables for Copart.  This "class" includes a combination of custom and

---

[9] *See Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'") (citation omitted); *Dong*, 2009 WL 975817, at *7 (agency relationship satisfied where there was an overlap in officers and directors, revolving door of employees going back and forth between the companies, shared website); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, No. 6:07-cv-1323-Orl-22KRS, 2008 WL 2157108, at *6 (M.D. Fla. May 21, 2008) (finding shared website a factor in favor of agency relationship).

1   standard SAP source code, and data tables that replicated the imaging functionality in Copart's

2   CAS system.  CSDF 59.

3        Copart devoted significant resources to develop the underlying CAS imaging technology.

4   CSDF 52-53.  This imaging technology gives Copart a competitive advantage over competitors and

5   would-be competitors by making Copart's operations more efficient and by enabling Copart to run

6   high volume, high frequency live online auctions, and was the critical precondition to transforming

7   Copart's business from in-person-only auctions to more lucrative live online auctions.  CSDF 56.

8   Because SAP does not contain this imaging functionality, Defendants had to create software code

9   and objects to replicate the functionality in AIMOS.  CSDF 60.

10       California courts have long recognized that source code constitutes a trade secret.[10]  But

11  California law's broad definition of trade secrets extends far beyond source code; as the court

12  explained in *Sinclair v. Aquarius Elecs., Inc.*, 42 Cal. App. 3d 216, 221–22 (1974), "a trade secret

13  in the broad sense consists of any unpatented idea which may be used for industrial and

14  commercial purposes."

15       Defendants' challenge to Copart's trade secret claim is based primarily on their expert

16  Michael Shamos's opinion that the imaging technology at issue does not constitute a trade secret.

17  Mot. at 12.  Even putting aside that Shamos' opinion has no factual basis – indeed, he admitted at

18  deposition that he had not actually compared Copart's imaging source code to the source code of

19  any of the other imaging software programs he identified, and he admitted that Copart's imaging

20  technology is not identical to other technology on the market[11] – his opinion is ineffective under

21  California law.

22       First, Shamos and Defendants argue that the *functions* performed by the imaging technology

23  are all well-known.  Mot. at 13.  But this is meaningless under California law.  The fact that a

---

[10] *Integral Dev. Corp. v. Tolat,* No. 14-16629, 2017 U.S. App. LEXIS 514, *4 (9th Cir. Jan. 11, 2017) ("[S]ource code is undoubtedly a trade secret.") (citation omitted); *Berster Techs., LLC v. Christmas*, No. CIV. S-11-1541 KJM, 2012 WL 33031, at *10 (E.D. Cal. Jan. 6, 2012) (Mueller, J.) (finding that identification of computer code was sufficient for purposes of the CUTSA).

[11] *See* TOD Ex. 181 at 40:11-15; 51:17-52:7.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    general function is publicly known *does not* preclude trade secret protection for privately developed

2    methods for enabling that function.[12]

3          *Spring Design, Inc. v. Barnesandnoble.com, LLC,* No. C 09-05185 JW, 2010 WL 5422556

4    (N.D. Cal. Dec. 27, 2010) – a case cited in Defendants' brief – is on point here.  There, defendants

5    argued that plaintiff disclosed the trade secrets at issue in *its own* patent application, and that other

6    publicly available eReader devices incorporated plaintiff's trade secrets.  *Id.* at *4.  However,

7    defendant's expert conceded that no patent application and no single eReader device disclosed the

8    *entirety* of Plaintiff's trade secrets.  *Id.* at *4-5.  In light of this conflicting evidence, the Court

9    found that triable issues of fact precluded summary judgment on the trade secrets claims.  *Id.* at *5.

10   Similarly, Shamos here conceded in deposition that he was unable to compare the Copart imaging

11   source code to the source code of any of the other imaging software programs he identified because

12   such code is non-public, and further conceded that the entirety of the source code was *not* revealed

13   in public materials.  TOD, Ex. 181 at 40:11-15.

14         Second, Defendants point to Shamos's belief that software programs such as Thumbs Plus

15   and Instagram also process, store, and upload images, and to Shamos's review of imaging-related

16   patents.  Dkt. No. 189 at ¶¶ 8-53, 55-91.  However, as *Sinclair* makes clear, novelty and invention

17   are not required for trade secret protection, nor do materials need to be patentable to be considered

18   a trade secret.  *Sinclair*, 42 Cal. App. 3d at 222; *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226

19   Cal. App. 4th 26, 54 (2014), *rev. denied* (Aug. 20, 2014) (applying *Sinclair*).

20         *Altavion* is instructive.  In that case the court awarded damages to plaintiff Altavion for

21   defendant's misappropriation of Altavion's "digital stamping technology" ("DST") concept.  On

22   appeal, defendant argued that concepts are not protectable as trade secrets, in part because elements

23   of the concept were in the public domain.  *Id.* at 47.  The *Altavion* court rejected this position,

24

25   _____

     [12] *See Sinclair*, 42 Cal. App. 3d at 222; *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D.
26   Cal. 1986) ("it is not required that a trade secret be patantably [*sic*] nonobvious or novel…All that
     is required is that, except by use of improper means, there would be difficulty in acquiring the
     information."); *see also SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1196 (S.D. Cal.
27   2012) ("a trade secret may consist of several elements, each of which is generally known, put
     together in a novel and previously unknown combination").

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

holding instead that "even if some or all of the elements of Altavion's design were in the public domain and thus unprotectable, the *combination* was a protectable trade secret if it was secret and had independent economic value." *Id.* at 47 (emphasis original). The court further explained that Altavion's "implementation of DST was potentially protectable as a 'combination of characteristics and components [], regardless of whether particular design concepts separately qualified for protection as trade secrets." *Id.* at 48 (internal citation omitted).

Defendants and Shamos also argue the stolen imaging source code is not a trade secret because it contains 37 "standard SAP methods," and therefore is not unique or proprietary. Dkt. No. 187 at SUF 98 (citing Dkt. No. 189 at ¶¶93-149). This fails on several fronts, including the fact that the inclusion of "standard SAP methods" does not mean the source code built around those methods, and the business processes behind those methods, is not unique. Hartfield Decl. ¶6. Indeed, Shamos himself conceded that the imaging source code is not identical to the publicly available source materials Shamos cited in his expert report. TOD Ex. 181 at 51:17-52:7. And, as a matter of law, the inclusion of public source materials does not preclude the designation of material as a trade secret. *Altavion,* 226 Cal.App.4th at 47.

Defendants also attack Copart's expert, LaBaron Hartfield, for referring to the ZCL IMAGING and ZCL packages – which were part of the ZCL_IMAGING class – as Copart's intellectual property. Mot. at 12. However, Copart is not required to put forth expert opinion that these packages are Copart's intellectual property *because the parties' ISA explicitly defines them as such*. TD Ex. 2 (ISA) at 11 §§11.3, 11.4. The source code contained in these packages was a "deliverable" under the ISA, and a "derivative" of Copart's existing technology, and is therefore Copart's property under the ISA.[13]

Defendants' suggestion that these two packages do not constitute a trade secret because they are just "one small part" of the entire CAS imaging functionality (Mot. at 13) is baseless. The

---

[13] Defendants' claim that Hartfield "conceded he had never tried to run [the ZIMAGING and ZIMG packages] in an SAP system" (Mot. at 12) is simply false. To the contrary, Hartfield testified that he accessed the ZIMAGING and ZIMG packages in the AutoEdge system, which was produced by Defendants in discovery, and that he was able to execute functions in that system. TOD Ex. 180 at 254:5-260:6.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

ZCL_IMAGING class that Sparta created was designed to encompass the bulk of the imaging technology that Copart developed for CAS. *See* TOD Ex. 93. And, in any event, the stolen materials do not have to constitute the entirety of CAS imaging functionality in order to be protectable as trade secrets. CUTSA contains no such requirement, and Copart could find no case imposing such a requirement.

Likewise, it is irrelevant that Copart's 30(b)(6) designee did not know the details of how Defendants created the objects in the ZCL_IMAGING class, or how Defendants used that class in AutoEdge (*see* Mot. at 13). Copart's expert witness, Hartfield, was able to verify that the copied code worked, as discussed above.[14] It is undisputed that Sparta, not Copart, was tasked with writing the source code and other objects contained in the ZCL_IMAGING class. *See* TOD Exs. 108 at 1, 93. And there is overwhelming evidence that Defendants copied the materials from AIMOS into their AutoEdge system and then later ran demonstrations of that functionality. CSDF 64-68, 71; TD Exs. 35, 38. This is sufficient under CUTSA. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("[e]mploying the confidential information in manufacturing, production, research or development…constitute[s] use").[15]

Where, as here, one party claims the technology at issue is commonplace while the other presents evidence that it is a variation on industrywide technology, the matter should be left to the trier of fact.[16]

---

[14] In contrast, Defendants' expert Shamos conceded that he did not attempt to run any portions of the code. TOD Ex. 181 at 84:22-85:12.

[15] Moreover, as explained in *Spring Design,* a trade secret can have independent economic value "even if there is no actual product on the market utilizing the information" and even if the value "comes from a 'negative' standpoint, such as 'the results of lengthy and expensive research which proves that a certain process will not work.'" 2010 WL 5422556 at *5. The court concluded triable issues of fact existed as to whether the trade secrets at issue had independent economic value, despite evidence that plaintiff's expert "had difficulty…assigning a dollar value to individual elements [of plaintiff's trade secrets]," the fact that plaintiff's damages expert assigned no value to any specific portion of the trade secrets, and evidence that plaintiff's expert could not "identify how certain elements of Plaintiff's trade secrets were utilized" in defendant's product. *Id.* at *6.

[16] *See, e.g., Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1205–06 (W.D. Wash. 2010), on reconsideration in part, No. C08-1632-MJP, 2010 WL 2650705 (W.D. Wash. June 29, 2010) (denying summary judgment; "The statements of those individuals extolling the purported novelty of the Kia systems are in tension with those statements describing the commonplace nature of the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**D.** **There Is A Genuine Dispute Of Material Fact Regarding Copart's Damages From The Trade Secret Misappropriation**

California courts have held that "[e]mploying the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use." *PMC*, 78 Cal.App.4th at 1383 (cit. omitted).  Courts in the Eastern District have agreed with that analysis. *See Agency Solutions.com, LLC v. TriZetto Grp., Inc.,* 819 F. Supp. 2d 1001, 1028 (E.D. Cal. 2011) ("relying on the trade secret to assist or accelerate research or development or soliciting customers through the use of information that is a trade secret all constitute 'use'").

Defendants' contention that they did not "use" the stolen imaging materials (Mot. at 14-15) is contradicted by documents showing that Defendants tested the stolen imaging functions in AutoEdge and ran demonstrations of how the imaging functionality worked in AutoEdge. *See, e.g.,* TOD Exs. 115, 120; TD Ex. 38; CSDF 63-72.

Even if Copart were unable to prove damages or unjust enrichment, which it can, Copart would still be entitled to a reasonable royalty.  Cal. Civ. Code §3426.3.[17]  The reasonable royalty provision of CUTSA "track[s] the common law practice of allowing for reasonable royalties when the plaintiff could not prove any loss and the defendant 'made no actual profits.'" *Ajaxo Inc. v. E\* Trade Fin. Corp.*, 187 Cal.App.4th 1295, 1311 (2010); *see also Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal., Inc*., 545 F. App'x 600, 601 (9th Cir. 2013) (holding that trial court erred in ruling jury's finding of no harm precluded reasonable royalty).

Defendants' challenge to Copart's reasonable royalty for allegedly failing to apportion between the ZCL IMAGING/ZIMG packages and Copart's internal imaging functionality (Mot. at

technology. A trier of fact must therefore determine whether Kia's system possessed independent economic value and was not readily ascertainable.").

[17] *See also Altavion,* 226 Cal.App.4th at 68 (where an "actual loss was unprovable," a reasonable royalty should be determined by the court); *see also 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005) (awarding reasonable royalty where neither damages nor unjust enrichment could be proven); *Art of Living Found. v. Does 1-10*, No. 5:10-CV-05022-LHK, 2012 WL 1565281, at \*24 (N.D. Cal. May 1, 2012) ("damages for trade secret misappropriation may be awarded not only for actual loss, but also for unjust enrichment, and if neither loss nor unjust enrichment can be proven, the Court may also order payment of a reasonable royalty in certain circumstances.").

15-16) is undermined by the evidence showing that the ZCL_IMAGING class was designed to include *all* of CAS's imaging functionality.  TOD Ex. 108.  KPIT's cited authorities are unpersuasive.  The court in *Unilogic* reviewed an order granting nonsuit *after trial* and concluded that plaintiff "presented *no evidence* that would allow the court to determine what royalty, if any, would be reasonable under the circumstances." *Unilogic, Inc. v. Burroughs Corp.,* 10 Cal.App.4th 612, 628 (1992) (emphasis added).  Here, Copart has presented evidence of development costs – both Copart's and Sparta's – from which a reasonable royalty can be calculated.  KPIT's citation to *FAS Techs., Ltd. v. Dainippon Screen Mfg. Co., Ltd.,* No. C 00-01879CRB, 2001 WL 647451 (N.D. Cal. May 31, 2001) is misleading.  In a subsequent opinion, *FAS Techs., Ltd. v. Dainippon Screen Mfg. Co., Ltd.,* No. C 00-01879 CRB, 2001 U.S. Dist. LEXIS 15444, *13 (N.D. Cal.  Sept. 24, 2001), the court clarified that plaintiff FAS did not *make* a royalty argument until oral argument on defendant's motion for attorneys' fees, *after* summary judgment had already been granted; in other words, the court *did not* consider the royalty argument on summary judgment.

### E.       ZCL_IMAGING Is Copart's Property; At A Minimum, There Is A Genuine Dispute Of Material Fact Regarding The Ownership Of This Property

There is ample evidence that the imaging source code and related material created by Sparta is Copart's property, pursuant to sections 11.3 and 11.4 of the ISA.  *See* TOD Exs. 93, 108; TD Ex. 2 (ISA) at 11 §§11.3, 11.4.

Defendants' newly minted assertion that it created the ZCL_IMAGING code for a different client (Mot. at 7) is contradicted by Defendants' own testimony.  At its Rule 30(b)(6) deposition, Sparta was questioned extensively regarding the creation and provenance of the imaging functionality that was copied from the AIMOS system to the AutoEdge system.  Sparta's corporate designee not only failed to mention the supposed development of the imaging code for a different customer, but he explicitly stated that the imaging functionality was created specifically for AIMOS.  TOD Ex. 171 at 119:17-25 ("It was created as a requirement for the AIMOS project.  We looked at it in the sandbox to test if it works or not, because it was a brand-new functionality."); *see*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  *also id.* 121:10-23 (describing the process of creating the functionality as "coming up with

2  something new").[18]

3      Defendants' attempt to use hearsay testimony from an employee, Kumar, to support their

4  new version of events (Mot. at 7) is improper as a matter of law because it conflicts with Sparta's

5  sworn testimony.  *Nelson v. City of Davis,* 571 F.3d 924, 927 (9th Cir. 2009) (rejecting a

6  declaration "contradicting [] prior deposition testimony").  Even if the Court were to consider this

7  improper evidence, which it should not,[19] the conflict between Sparta's testimony and Kumar's

8  declaration presents a genuine dispute of material fact.

9      **F.    The Paymetric Configuration Was Copart's Property**

10      In order to establish its conversion claim, Copart must show (1) its ownership or right of

11  possession, (2) defendant's conversion, and (3) damages.  *Graham-Sult v. Clainos*, 756 F.3d 724,

12  737 (9th Cir. 2014).

13      Copart has presented evidence showing a genuine dispute as to each element with respect to

14  Defendants' theft of imaging materials.  *See* TD Ex. 2 at 11 §§11.3, 11.4, TOD Exs. 93 & 108

15  (ownership); TOD Ex. 95 (conversion); pp. 17-18, *supra* (damages).

16      Copart has also presented evidence showing a genuine dispute as to each element of

17  conversion with respect to Defendants' theft of credit card configuration materials created by

18  Sparta and contractor PrimeSys.  Copart's ownership is supported by the ISA (§11.4) and the

19  Professional Services Agreement between PrimeSys and Sparta (TOD Ex. 111).[20]  The second

20

21  _____

22  [18] Sparta's designee claimed that imaging technology was copied to the sandbox for purposes of testing. TOD Ex. 176 at 84:5-85:2.  However, Defendants' expert Shamos contends that none of the materials in the sandbox are capable of being tested.  *Id.* Ex. 181 at 84:22-85:12.

23  [19] Copart has also filed a separate evidentiary objection to this portion of the Kumar Declaration.

24  As explained in the evidentiary objection, Defendants never produced documents relating to the Colorado customer identified in the Kumar declaration, despite Copart's requests calling for such

25  documents.  Defendants' failure to produce these documents precludes their attempt to assert this new theory at the eleventh hour.  *See, e.g.*, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1010 (N.D. Cal. 2013) (denying summary judgment motion where party relied on materials not

26  produced in discovery).

27  [20] Defendants appear to rely on the Declaration of Travis Barrs – a Paymetric employee- to dispute ownership, based on a provision in the Paymetric MSA regarding Pre-Existing Materials. Dkt. No.

28  191, ¶6.  However, PrimeSys, not Paymetric, did the actual configuration work on the project, and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  element – Defendants' conversion – is supported by ample evidence, including Defendants'

2  AutoEdge Project Charter, which describes the theft of "custom developments and configuration"

3  done with respect to Paymetric credit card functionality (Dkt. No. 198-47 at 4), and an email

4  distributing Copart's Paymetric configuration information so that it can be copied into AutoEdge.

5  TOD Ex. 96.  Defendants' efforts to explain away this unambiguous evidence of theft (Mot. at 12)

6  amounts to an improper effort to have the Court weigh the credibility of the evidence on summary

7  judgment.[21]

8          There is also ample evidence showing a genuine dispute regarding the third element,

9  damages.  Documents show that Primesys and Sparta billed hundreds of hours to the Paymetric

10  configuration work: Primesys estimated it would take 624 hours of work at a cost of $124,800 to

11  integrate Paymetric with AIMOS, and later increased this estimate to 742 hours.  TOD Ex. 123.

12  Sparta estimated an additional 100 hours of its services for "remaining work" on the project.  *Id.*

13         Defendants' reliance on the Declaration of Travis Barrs is misplaced.  Barrs concedes that

14  "SAP's Business Suite [] must be configured to integrate with Paymetric's proprietary solution"

15  and that the "configuration of SAP to interoperate with Paymetric's solutions is a process that must

16  be done in any SAP implementation that seeks to take advantage of Paymetric's secure and

17  proprietary payment processing solutions" (Dkt. No. 191, ¶9) but suggests the method for

18  configuration is revealed by public materials attached to his declaration (*id.,* ¶¶10-11).  To the

19  contrary, the *actual configuration* for the AIMOS project is set forth in a 74 page document entitled

20  "Payment card implementation Detail Document for ERP-Copart," a document that shows Sparta

21  executive Swaroop instructing KPIT India employee Roobal Sehgal to utilize this Copart document

22  to accomplish Defendants' "mid-term goal [] to have this capability build in AutoEdge (Sparta's

23  prperitoty [*sic*] solution for automotive."  TOD Ex. 96 at 1.

24

25  _____

    its agreement with Sparta explicitly states the Client (Copart) owns the work product.  TOD Ex.
26  111, at p. 1.

27  [21] *Padilla v. Beard*, No. 2:14-CV-1118 KJM-CKD, 2017 U.S. Dist. LEXIS 11851, *51 (E.D. Cal.
    Jan. 27, 2017) (Mueller, J.) ("It is hornbook law that on a motion for summary judgment, a court
28  must not weigh the evidence, make credibility determinations, or draw inferences from the facts
    adverse to the non-moving party.").

COPART'S OPP. TO KPIT TECHNOLOGIES' MSJ; Case No. 2:14-cv-00046-KJM-CKD

1    **IV.      CONCLUSION**

2           For the foregoing reasons, KPIT's motion for summary judgment should be denied.

3    DATED:  February 10, 2017

4                                          /s/ *Mark P. Ressler*

5                                          MARK P. RESSLER (admitted *pro hac vice*)

6                                          KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
                                           1633 Broadway
7                                          New York, New York 10019
                                           Telephone:      (212) 506-1700
8                                          Facsimile:      (212) 506-1800
                                           mressler@kasowitz.com
9

10                                         JASON S. TAKENOUCHI (SBN 234835)
                                           MARGARET A. ZIEMIANEK (SBN 233418)
11                                         KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
                                           101 California Street, Suite 2300
12                                         San Francisco, California 94111
                                           Telephone:      (415) 421-6140
13                                         Facsimile:      (415) 398-5030
                                           jtakenouchi@kasowitz.com
14                                         mziemianek@kasowitz.com

15
                                           Attorneys for Plaintiff COPART, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on the 10th day of February, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Mark P. Ressler

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111