MARK P. RESSLER (*admitted pro hac vice*)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:     (212) 506-1700
Facsimile:     (212) 506-1800
mressler@kasowitz.com

JASON S. TAKENOUCHI (SBN 234835)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone:     (415) 421-6140
Facsimile:     (415) 398-5030
jtakenouchi@kasowitz.com

Attorneys for Plaintiff COPART, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC.,<br><br>                 Plaintiff,<br><br>         v.<br><br>SPARTA CONSULTING, INC., KPIT INFOSYSTEMS, INC., and KPIT TECHNOLOGIES, LTD.,<br><br>                 Defendants.<br>_____<br><br>SPARTA CONSULTING, INC.,<br><br>                 Counterplaintiff,<br><br>         v.<br><br>COPART, INC.,<br><br>                 Counterdefendant. | Case No: 2:14-CV-00046-KJM-CKD<br><br>**PLAINTIFF COPART INC.'S OPPOSITION TO DEFENDANT KPIT INFOSYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Hearing Date: February 24, 2017<br>Time:            10 a.m.<br>Judge:           Hon. Kimberly J. Mueller<br>Location:        Courtroom 3, 15th Floor<br><br>Trial Date:      August 14, 2017 |

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................1

II.  FACTUAL BACKGROUND .............................................................................2

    A.  KPIT US's Involvement in AIMOS and AutoEdge...................................2

    B.  Loans Among KPIT India, KPIT US, and Sparta ....................................3

    C.  Overlapping Officers, Directors And Employees Among Defendants ...................4

    D.  Defendants' Unauthorized Access to the Copart Database.......................4

III.  ARGUMENT .....................................................................................................6

    A.  Legal Standard.........................................................................................6

    B.  There Is A Genuine Dispute Concerning KPIT US's Liability ................6

        1.  KPIT US had a direct role in the misconduct..................................6

        2.  There is a genuine dispute about KPIT US's alter ego status ......................7

            a.  There is ample evidence of unity of interest ....................................7

            b.  If alter ego liability is not imposed, substantial injustice will result ...................................................................10

        3.  There is a genuine dispute whether Sparta acted as PIT US's agent ..................................................................10

    C.  Copart's Claims Are Not Preempted By CUTSA.................................11

        1.  Copart's Common Law Misappropriation and Conversion Claims are not Preempted.....................................................11

        2.  CUTSA Preemption Does Not Apply Unless, And Until, There Is A Determination That The Property Is A "Trade Secret" Under CUTSA ...............................................13

        3.  Copart's unjust enrichment and UCL claims are not preempted ...............15

        4.  Copart's professional negligence claim is not preempted by CUTSA.............................................................15

    D.  Substantial Evidence Supports Copart's CFAA Claim..........................16

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

           1.        There is a genuine dispute whether Defendants accessed Copart's computer systems without authorization ...................................................16

           2.        There is a genuine dispute regarding Copart's damages ............................18

    E.      Substantial Evidence Supports Copart's CDAFA Claim .......................................19

    F.      Copart's Professional Negligence Claim Is Not Time Barred ...............................19

IV.     CONCLUSION .............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2KDirect, LLC v. Azoogleads US, Inc.*,
    No. CV 08-3340-VBF(JWJX), 2010 WL 11455972 (C.D. Cal. Apr. 19, 2010) ................... 12

*Ali v. Fasteners for Retail, Inc.*,
    544 F.Supp.2d 1064 (E.D. Cal. 2008) ........................................................................ 14

*Boeing Co. v. KB Yuzhnoye*,
    No. CV-13-00730-ABA-JWX, 2016 WL 2851297 (C.D. Cal. May 13, 2016) ...................... 9

*Bowoto v. Chevron Texaco Corp.*, 312 F.Supp.2d 1229 (N.D. Cal. 2004) ........................... 10

*Brooks v. AM Resorts, LLC*,
    954 F. Supp. 2d 331 (E.D. Pa. 2013) ........................................................................ 19

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
    295 F.Supp.2d 430 (D. Del. 2003) ........................................................................... 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................. 6

*Chase Pratt, LLC v. Aetna Life Ins. Co.*,
    No. CV 960560740S, 1999 WL 229214 (Conn. Super. Ct. Mar. 26, 1999) ......................... 9

*City Solutions, Inc. v. Clear Channel Communications*,
    365 F.3d 835 (9th Cir. 2004) .................................................................................. 14

*Clark v. County of Placer*,
    923 F.Supp. 1278 (E.D. Cal. 1996) ...................................................................... 6, 7

*Dolarian Capital, Inc. v. SOC, LLC*,
    No. 1:11-CV-00031-LJO, 2013 WL 433001 (E.D. Cal. Feb. 1, 2013) ............................... 9

*Dong AH Tire & Rubber Co. v. Glasforms, Inc.*,
    No. C 06-3359 JFRS, 2009 WL 975817 (N.D. Cal. Apr. 10, 2009) ............................. 8, 11

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
    No. 14-CV-748-WMC, 2016 WL 845341 (W.D. Wis. Mar. 2, 2016) ........................... 17, 18

*Fina Oil & Chem. Co. v. Pester Mktg. Co.*,
    No. 95-1367-JTM, 1997 WL 225900 (D. Kan. Apr. 25, 1997) ....................................... 9

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
    569 F.Supp.2d 929 (N.D. Cal. 2008) ................................................................... 13, 14

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

*Hat World, Inc. v. Kelley*,
    2:12–CV–001591–LKK, 2012 WL 3283486 (E.D. Cal. Aug. 10, 2012) .............................. 18

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ........................................................................................ 14

*Integral Dev. Corp. v. Viral Tolat*,
    No. 14-16629, 2017 WL 123316 (9th Cir. Jan. 11, 2017) ..................................................... 12

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations*,
    Inc., 171 Cal.App.4th 939 (2009)......................................................................................... 14

*Kayne v. Ho*,
    No. LA-CV-0906816-JAK-CWX, 2013 WL 12123202 (C.D. Cal. Aug. 28,
    2013)............................................................................................................................................. 9

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010) ................................................................................................................ 20

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
    944 F. Supp. 2d 775 (N.D. Cal. 2013) ............................................................................... 13

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
    No. C 10-02605 JW, 2011 WL 13153247 (N.D. Cal. Mar. 17, 2011)................................... 13

*Las Palmas Associates v. Las Palmas Center Associates*,
    235 Cal. App. 3d 1220 (1991) ................................................................................................ 8

*Leatt Corp. v. Innovative Safety Tech., LLC*,
    No. 09-CV-1301-IEG (POR), 2010 WL 2803947 (S.D. Cal., July 15, 2010) ................. 11, 14

*Loop AI Labs Inc v. Gatti*,
    No. 15-CV-00798-HSG, 2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) ........................... 15, 16

*Martell v. Trilogy Ltd.*,
    872 F.2d 322 (9th Cir. 1989)................................................................................................. 20

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) .................................................................................................................. 6

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) .............................................................................. 13

*Modis, Inc. v. Bardelli*,
    531 F. Supp. 2d 314 (D. Conn. 2008) ................................................................................. 19

*NetApp, Inc. v. Nimble Storage, Inc.*,
    2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015) ...................................................... 8

ii

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

*NFC Collections LLC v. Deutsche Bank Aktiengesellschaft*,
    No. CV 12-10718 DDP JEMX, 2013 WL 3337800 (C.D. Cal. July 2, 2013) ...................... 10

*Norsat Int'l, Inc. v. B.I.P. Corp.*,
    No. 12CV674-WQH-NLS, 2013 WL 5530771 (S.D. Cal. Oct. 3, 2013) ............................. 12

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 954 (N.D. Cal. 2014) ................................................................. 19

*Oracle USA, Inc. v. Rimini St., Inc.*,
    191 F. Supp. 3d 1134 (D. Nev. 2016) ................................................................. 20

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (2014) .............................................................................. 19

*Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*,
    No. CIV.A. 4304-VCP, 2009 WL 3465984 (Del. Ch. Oct. 28, 2009) ............................. 11

*Phoenix Techs. Ltd. v. DeviceVM*,
    No. C 09-04697 CW, 2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) ............................... 14

*Pollara v. Radiant Logistics Inc*,
    No. CV 12-0344 GAF (SPX), 2013 WL 12113385 (C.D. Cal. May 30, 2013) .................... 12

*Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC*,
    No. 1:13–CV–01262 AWI SKO, 2014 WL 1333999 (E.D. Cal. Apr. 3, 2014) ................... 18

*SEC v. Hickey*,
    322 F.3d 1123 (9th Cir. 2003), *amended on denial of rehearing,* 335 F.3d 834
    (9th Cir. 2003) ............................................................................................... 7

*Shamrock Foods Co. v. Gast*,
    535 F.Supp.2d 962 (D. Ariz. 2008) .................................................................. 18

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
    No. C-07-0635 JCS, 2007 WL 1455903 (N.D. Cal. May 16, 2007) ............................... 12

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal.App.4th 210, 222 (2010), *as modified on denial of reh'g* (May 27, 2010)
    *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th
    310 (2011) ................................................................................................... 14

*Singletary v. Pa. Dept. of Corrections*,
    266 F.3d 186 (3rd Cir. 2001) ........................................................................... 20

*SOAProjects, Inc. v. SCM Microsys., Inc.*,
    No. 10-CV-01773-LHK, 2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ........................... 13

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal.App.4th 523 (2000) .............................................................................. 10

iii

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
     621 F. Supp. 2d 309 (E.D. Va. 2009) ................................................................ 17

*Strayfield Ltd. v. RF Biocidics, Inc.*,
     No. CIV. S–11–2631 LKK/GGH, 2012 WL 170180 (E.D. Cal. Jan. 19, 2012) ..................... 14

*SuccessFactors, Inc. v. Softscape, Inc.*,
     544 F. Supp. 2d 975 (N.D. Cal. 2008) ........................................................... 18, 19

*SunPower Corp. v. SolarCity Corp.*,
     No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ........................ 14, 15

*Synopsys, Inc. v. ATopTech, Inc.*,
     No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................ 12

*Think Village-Kiwi, LLC v. Adobe Sys., Inc.*,
     No. C 08-04166 SI, 2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ................................... 13, 14

*TMX Funding, Inc. v. Impero Techs., Inc.*,
     No. C 10-00202 JF (PVT), 2010 WL 2509979 (N.D. Cal. June 17, 2010) .......................... 12

*Tran v. Farmers Grp., Inc.*,
     104 Cal. App. 4th 1202 (2002), *amended on denial of rehearing* (Jan. 27, 2003) ................. 7

*U.S. v. Nosal*,
     676 F.3d 854 (9th Cir. 2012) ................................................................................. 18

*U.S. v. Nosal*,
     844 F.3d 1024 (9th Cir. 2016) ............................................................................... 18

*U.S. v. Nosal*,
     No. CR-08-0237 EMC, 2014 WL 121519 (N.D. Cal. Jan. 13, 2014) ............................. 19

**Statutes**

18 U.S.C. § 1030(e)(11) ........................................................................................... 18

Cal. Civ. Code §3426.7 .......................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................. 16

Fed. R. Civ. P. 56(c) ................................................................................................ 6

Fed. R. Civ. P. 15(c)(1) ........................................................................................... 20

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## I.     INTRODUCTION

This action arises from the misconduct of a team of software consultants that included defendant KPIT Infosystems, Inc. ("KPIT US"), KPIT US's fully-owned subsidiary Sparta Consulting, Inc. ("Sparta"), and KPIT US's corporate parent KPIT Technologies, Ltd. ("KPIT India") (collectively "Defendants") during the design and build of an enterprise resource planning ("ERP") software system for plaintiff Copart Inc. ("Copart"), called the "AIMOS Project."  As described more fully in Copart's separate motion for summary judgment, Defendants' misconduct included fraud, fraudulent inducement, professional negligence in carrying out AIMOS, and the theft of Copart property for use in the Defendants' "AutoEdge" product.  Dkt. No. 197 at 4-13, 18-19.

In this motion for summary judgment, one of three brought by the Defendants, KPIT US argues that it is not responsible for the misconduct that plagued the Defendants' work on the AIMOS Project.  This assertion is false.  There is substantial evidence, and certainly enough to show a genuine dispute of material fact, that KPIT US was a direct participant in the Defendants' misconduct.  KPIT US is also liable for the actions of Sparta and KPIT India employees because all three defendants are alter egos and agents of each other.

KPIT US's other challenges to Copart's claims also fail:

- The California Uniform Trade Secrets Act ("CUTSA") *does not* preempt Copart's common law misappropriation and conversion claims because those common law claims are premised on Copart's express ownership of the stolen property, which is an exception to CUTSA preemption.  And Copart's unjust enrichment, UCL, and professional negligence claims are not preempted because they are based on a wide range of misconduct and incompetence that is unrelated to Defendants' theft.

- Copart's claims under the Computer Fraud and Abuse Act (CFAA) and California Computer Data Access And Fraud Act (CDAFA) are supported by substantial evidence showing a genuine dispute regarding both elements challenged by Defendants: (i) Defendants' employee who stole AIMOS materials lacked authorization to access the AIMOS system, and (ii) Copart can recover damages related to both the cost of investigation and the development cost of the stolen materials.

- Copart's professional negligence claim, which was added in Copart's amended complaint last year, is not time barred.  Because KPIT US and KPIT India were on notice of the claims in Copart's prior complaint in 2014, and the new professional negligence claim is based on the same nucleus of facts as the original claims, the professional negligence claim "relates back" to Copart's prior complaint.

The Court should deny KPIT US's motion in its entirety.

1

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## II.    FACTUAL BACKGROUND[1]

### A.    KPIT US's Involvement in AIMOS and AutoEdge

Sparta, a Folsom-based company, became part of KPIT India in 2009.  Declaration of Jason Takenouchi in Opposition to Defendants' Motions for Summary Judgment ("TOD") Ex. 97. As part of that transaction KPIT US became Sparta's parent company and took over control of Sparta's India-based subsidiary Sparta Infotech.  TOD Exs. 97, 98.  Ashu Bhalla, a KPIT US executive (*id.* Ex. 167 at 39:2-40:16), was part of the sales team that convinced Copart to hire Sparta for the AIMOS Project in 2011, and he negotiated the ISA and the Design SOW.  *See id.* Exs. 100, 101.  Bhalla later served as one of Defendants' primary representative in dealings with Copart, negotiating the Realization SOW signed in March 2012 (*id.* Exs. 107), and negotiating and personally signing the ISA Amendment in 2013 (*id.* Exs. 145, 151; TD[2] Ex. 70).  Bhalla also had an active role in Defendants' marketing of the AutoEdge product to potential customers in the months following the misappropriation.  TOD Ex. 139.

Bhalla was not the only KPIT US employee who performed critical work on AIMOS. KPIT US consultant Chandrasekhar Bade allegedly logged a stunning 2,736 hours on the project. TD Ex. 81 at 8-14.  Bade had a senior role on the AIMOS team, serving as Project Manager in 2013 (TOD Ex. 148), and the quality of Bade's work was questioned by Sparta's even more senior managers (*id.* Ex. 122 at 1).  Contrary to Defendants' claim that Bade "did not develop AutoEdge, and did not work on imaging," Bade was involved in both AutoEdge (*id.* Ex. 132) *and* imaging (*id.* Exs. 144, 149).[3]

---

[1] Copart's separate Motion for Summary Judgment (Dkt. No. 197) ("Copart MSJ"), and Copart's opposition to Sparta's summary judgment motion, set forth the complete factual background regarding the parties' dispute, and both of these filings are incorporated by reference herein. Copart addresses only the facts relevant to KPIT US's motion below.

[2] "TD" refers to the Declaration of Jason Takenouchi in Support of Copart's Motion for Summary Judgment and Partial Summary Judgment, Dkt. No. 198.

[3] Other consultants on Defendants' AIMOS team could have been KPIT US employees.  For example, Chidanand Chauhan, who billed 2,744 hours on the AIMOS project, has been a KPIT employee since around 2010, but he was unsure whether he was employed by KPIT US or KPIT India.  TOD Ex. 168 at 13:7-16, 23:8-24:17.  Prafulla Kharkar, a manager on AIMOS, was originally employed by Sparta but became an employee of "KPIT" during the AIMOS project; incredibly, he is unsure which KPIT entity is his employer.  *Id.* Ex. 164 at 31:3-33:20.

1  KPIT US never received any payments from Sparta for the thousands of hours of work

2  that Bade and Bhalla expended on AIMOS.  *Id.* Ex. 177 at 61:5-62:18.

3      **B.     Loans Among KPIT India, KPIT US, and Sparta**

4      KPIT India loaned KPIT US $5.5 million in February 2012, just months after the AIMOS

5  Project began.  TOD Ex. 105.  From May 2013 to March 2014, KPIT India made three more

6  loans to KPIT US totaling $8.5 million, for a grand total of $14 million. TOD Exs. 140, 157, 159.

7  KPIT US executive Indu Nangia – the treasurer, secretary, and former controller of the company

8  (*id.* Ex. 177 at 15:16-20, 72:12-19) – testified that she had no recollection of any of these loans

9  being repaid, despite being personally responsible for tracking the company's loans.  *Id.* at 83:4-

10  84:1.  Nor could Nangia recall any loan being discussed at a meeting of KPIT US's board of

11  directors, or being the subject of a vote by the board.  *Id.* at 84:22-85:15.

12      KPIT US apparently funneled all of those KPIT India funds to Sparta.  From January 2013

13  through March 2014, KPIT US made 13 loans to Sparta totaling $17.25 million.  *Id.* Exs. 126,

14  129, 136, 138, 142, 152-158, 160.   A large chunk of the loans from KPIT US to Sparta were to

15  address a "strained cash situation" at Sparta in March 2013, when Sparta and KPIT managers

16  were concerned that Sparta might be unable to cover payments to Sparta Infotech, which

17  employed many of the Indian consultants who worked on AIMOS.  *Id.* Exs. 99, 128, 135.

18      Nangia, who serves as Sparta's secretary and treasurer in addition to serving in the same

19  roles for KPIT US (*id.* Ex. 177 at 25:4-12), could not recall any individual KPIT US-Sparta loan

20  being discussed or approved at a KPIT US or Sparta board meeting, or anyone at KPIT US ever

21  discussing the status of these loans.  Copart's Statement of Disputed Facts (CSDF) 106-130.  Nor

22  could Nangia recall KPIT US ever disbursing the proceeds of any individual loan to Sparta,

23  Sparta repaying any particular KPIT US loan, or the purpose of any particular loan.  *Id.*

24      Sparta's corporate designee Vaibhav Nadgauda likewise did not know whether any KPIT

25  US-Sparta loan was ever discussed or approved by Sparta's board of directors, whether the

26  proceeds of any such loan were ever actually deposited in Sparta's accounts, or whether any

27  particular loan was actually repaid by Sparta.  TOD Ex. 176 at 34:19-37:22.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
SAN FRANCISCO, CALIFORNIA 94111

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

C.      **Overlapping Officers, Directors And Employees Among Defendants**

The president and CEO of KPIT US, Pawan Sharma, is also the president of Sparta.  *Id.* Ex. 177 at 55:9-56:9.  The secretary and treasurer of KPIT US, Nangia, is also the secretary and treasurer of Sparta.  *Id.* at 25:4-12.   Kishor Patil and Sachin Tikekar are directors of all three defendants.  *Id.* at 56:10-24; TOD Ex. 161.

KPIT US executive Nangia admitted that all of her knowledge about KPIT US's finances – the very finances she was in charge of managing for KPIT US – was from a *KPIT India* officer, Swaminathan R.  CSDF 134.  Nangia also acknowledged that she could not recall Sparta holding a board meeting in 2016, could not recall attending any particular Sparta board meeting, and receives no compensation for her work as an officer for Sparta.  *Id.* 135-137.

Nadgauda, Sparta's corporate designee on the topic of "Sparta's relationship with co-defendants KPIT Technologies and KPIT Infosystems" testified that his knowledge about the topic came from speaking with the same KPIT India employee who was the source for Nangia's knowledge about KPIT US finances: Swaminathan R.  *Id.* Ex. 176 at 28:18-31:5.

Shyam Chodapunedi, the Defendants' AIMOS program manager in 2013, testified that he made no distinction between employees of Sparta, KPIT US, and KPIT India in staffing the Project, and was in fact unaware of which entity employed the various consultants on the project. *Id.* Ex. 165 26:24-27:10; 28:25-29:5; 32:7-13.  Nearly every one of defendants' employees deposed in this case, including senior managers and executives, testified that in recent years Sparta was merged into and became part of KPIT, but they were unsure when this occurred, and could not identify the entity that presently employed them.  *See* CSDF at 140-145.

Much of the work on the AIMOS Project was done by Sparta Infotech.  *See, e.g.*, *id.* Exs. 112, 143.  That entity was originally owned by Sparta, but was taken over by KPIT India during the AIMOS Project.  *Id.* Exs. 98 at 3, 134.

D.      **Defendants' Unauthorized Access to the Copart Database**

The contract between Sparta and Copart, entitled the Implementation Services Agreement ("ISA"), contained several provisions relating to the software and other intellectual property

4

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   created during the AIMOS Project.  Those provisions included:

- <u>Section 11.3 (Ownership of Copart-Owned Intellectual Property)</u> gave Copart ownership over any "derivatives, modifications, enhancements or improvements" of Copart's existing technology.
- <u>Section 11.4 (Ownership of Deliverables)</u> made Copart "the sole and exclusive owner of all Deliverables" (*i.e.*, work product delivered by Sparta) "without further consideration or action."
- <u>Section 12 (Confidentiality)</u> included clauses requiring, among other things, that Sparta hold "in confidence" any data from Copart and use it only for AIMOS (ISA §12.1) and notify Copart of any security breach or possible breach (ISA §12.6).

7      The SAP system that Sparta developed during the AIMOS Project was stored on servers

8   operated by vendor AT&T.  During the AIMOS project Copart issued individual logins and

9   passwords to individuals who were authorized to access the AIMOS system.  TOD Ex. 206, 174

10  at 127:1-128:6.

11      On October 10, 2012, a Sparta consultant named Shivraj Sinha distributed his personal

12  login and password information for the AIMOS database to a group of six Sparta and KPIT

13  consultants, including Narenda Singh, with instructions to use those credentials to access the

14  AIMOS system and take "the class ZCL_IMAGIN and its dependent tables from copart system

15  and copy them into the Autoedge system."  TD Ex. 34 at 1.  Hours later, Singh confirmed that he

16  had "completed the task assigned to us" by copying the material into the AutoEdge system.  *Id.*

17  Ex. 35 at 1.  Singh had not been issued his own credentials to access AIMOS as of the time of the

18  copying.  TOD Exs. 117, 119.  Singh did not begin billing time on the Copart project until

19  October 22, 2012.  TD Ex. 78 at 3.  For the week of October 10, 2012, Singh billed time on the

20  "Auto Edge tool" project.  *Id.* at 2.

21      The "class ZCL_IMAGING" that Defendants copied into their AutoEdge system had been

22  created by the Defendants' AIMOS team in early 2012 to replicate the imaging functions in

23  Copart's existing CAS system.[4]  *See* TOD Exs. 93 at 40, 108 at 1.  *See also id.* Ex. 171 at 118:4-

24  21, 119:17-25, Ex. 176 at 129:1-130:4.

25      Copart only discovered the Defendants' theft after Sparta produced incriminating

26

_____

27  [4] For a more detailed description of ZCL_IMAGING please see Copart's Opposition to KPIT India's Motion for Summary Judgment, which addresses Copart's trade secret misappropriation

28  claims relating to ZCL_IMAGING.

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

documents in late 2015. *See* Dkt. No. 125 at 11. Nearly a year later – and only *after* the Court allowed Copart to amend its Complaint to add theft-related claims – Defendants revealed that they had a copy of an AutoEdge "sandbox" environment that contained ZCL_IMAGING and its dependent tables. TOD Ex. 172 at 1. Last fall, a Copart team reviewed the AutoEdge "sandbox" to try to determine which Copart materials had been copied into AutoEdge. Mosothoane Decl. ¶¶5-10. In total, the team spent approximately 80 hours investigating the Defendants' theft and the AutoEdge system, representing a cost of approximately $8,000 to Copart in employee time expended. *Id.* ¶¶11-12.

## III.    ARGUMENT

### A.    Legal Standard

The purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). Summary judgment can only be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat summary judgment "the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Clark v. County of Placer*, 923 F.Supp. 1278, 1282 (E.D. Cal. 1996).

### B.    There Is A Genuine Dispute Concerning KPIT US's Liability

#### 1.    KPIT US had a direct role in the misconduct

At least two KPIT US employees worked on AIMOS.[5] KPIT US executive Ashu Bhalla represented Sparta in negotiations with Copart regarding the ISA, the Design and Realization

---

[5] KPIT US's claim that only one of its employees – Chandrasekhar Bade, whom they misidentify as "Chandrashakhar" Bade – worked on the AIMOS project (Mot. at 3-4) is false. *See* CSDF at 87-90.

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    SOWs, and the ISA amendment, and he helped manage the project until it was terminated. *See* p.

2    2, *supra*. Indeed, Bhalla signed a contract *on behalf of Sparta* – the ISA Amendment – that

3    purported to bind *Sparta*. *Id.* KPIT US employee Chandrasekhar Bade purportedly worked

4    thousands of hours on AIMOS and was directly involved in the flawed software that Defendants

5    generated during the Project. *Id.* Even if KPIT US's activities were limited to Bhalla and Bade's

6    work on AIMOS,[6] that would be sufficient to create a genuine dispute about KPIT US's direct

7    liability for the misconduct that underpins Copart's claims.

8    ### 2.    There is a genuine dispute about KPIT US's alter ego status

9    Even if KPIT US were not directly liable for the failure of AIMOS and the unlawful

10   access and misappropriation, which it is, there is ample evidence showing a genuine issue

11   regarding KPIT US's status as an alter ego of KPIT India and Sparta, which would make KPIT

12   US liable to the same extent as the other defendants. *Tran v. Farmers Grp., Inc.*, 104 Cal. App.

13   4th 1202, 1218 (2002). There are two general requirements for alter ego status: (1) a unity of

14   interest and ownership such that the separate personalities of the parent and subsidiary do not

15   exist, and (2) the potential of an unjust result if the fiction of a separate corporate identity is

16   maintained. *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003).

17   ### a.    There is ample evidence of unity of interest

18   The factors that can prove an alter ego relationship include identical use of the same

19   offices and employees, use of one entity as a mere shell or conduit for the affairs of the other, the

20   commingling of funds and other assets of the two entities, overlapping directors and officers,

21   inadequate capitalization, disregard of corporate formalities, shared legal counsel, and lack of

22   segregation of funds. *Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JFRS, 2009

23   WL 975817, at *5 (N.D. Cal. Apr. 10, 2009) (citing *Sonora Diamond Corp. v. Superior Court,* 83

24   Cal.App.4th 523, 539 (2000)). All relevant characteristics must be considered, and no one

---

[6] Other KPIT US employees may have worked on AIMOS – Defendants refused to answer an interrogatory asking for the corporate affiliations of the employees who were listed on the Defendants' time records for the AIMOS project. TD Ex. 85 at 4.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   characteristic is dispositive. *Id.*

2     Overlap in directors and officers.  As discussed at p. 4, *supra*: (1) the president and CEO

3   of KPIT US, Pawan Sharma, is also the president of Sparta; (2) the secretary and treasurer of

4   KPIT US is also the secretary and treasurer of Sparta; (3) two Sparta directors are also directors of

5   KPIT US.  *Id.* 56:10-24.  This supports a finding of alter ego liability.  *See, e.g.*, *Las Palmas*

6   *Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1249-50 (1991) (finding

7   alter ego liability where parent and subsidiary shared two board members).

8     Inadequate capitalization.  As discussed at p. 3, *supra*, KPIT India loaned $14 million to

9   KPIT US around the time of the AIMOS Project, and KPIT US loaned over $17 million to Sparta

10  during the same period.  Emails between Sparta and KPIT managers show that these loans were

11  necessary to keep Sparta afloat as it faced a "cash shortage" that left it unable to meet payroll and

12  pay its bills.  This shows inadequate capitalization, which is sufficient on its own to pierce the

13  corporate veil.  *NetApp, Inc. v. Nimble Storage, Inc.*, 2015 U.S. Dist. LEXIS 11406, *27 (N.D.

14  Cal. Jan. 29, 2015); *see also Las Palmas*, 235 Cal. App. 3d at 1249-50 (finding alter ego where

15  the parent company guaranteed millions of dollars in loans and loan commitments to the

16  subsidiary, indicating the subsidiary was undercapitalized).

17    Disregard of corporate formalities and commingling of funds.  The Defendants'

18  intercompany loans lacked the basic corporate formalities typically observed in loans between

19  corporate parents and their subsidiaries.  In fact, Defendants have produced no evidence that (1)

20  any of the loans were discussed among or agreed to by Sparta's, KPIT US's, or KPIT India's

21  boards of directors; (2) any loan proceeds were actually disbursed; or (3) any loans were ever

22  repaid.  Courts have found an alter ego relationship under similar circumstances.  *See Kayne v.*

23  *Ho*, No. LA-CV-0906816-JAK-CWX, 2013 WL 12123202, at *9 (C.D. Cal. Aug. 28, 2013)

24  (finding genuine dispute of material fact regarding alter ego liability where defendants did not

25  produce board minutes authorizing loans, or "checks, wire transfers, receipts, or other documents

26  evidencing payment of" loans between the entities).

27    There is additional evidence that KPIT US and Sparta failed to maintain the core corporate

28

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   formalities that would distinguish them from each other or from KPIT India.  For example, KPIT

2   US provided thousands of hours of labor to the AIMOS project, and its executive Bhalla

3   represented Sparta throughout the AIMOS Project, but Sparta never paid KPIT US a penny for

4   those services.  TOD Ex. 177 at 61:2-62:18.  And Sparta's secretary-treasurer – who is not paid

5   by Sparta for her services – could not recall ever seeing Sparta's corporate books or attending any

6   particular Sparta board meeting, and could not recall Sparta having a single board meeting in

7   2016.  *Id.* at 27:21-29:10.  Courts have found a lack of corporate separateness in similar

8   situations.  *See, e.g.*, *Fina Oil & Chem. Co. v. Pester Mktg. Co.*, No. 95-1367-JTM, 1997 WL

9   225900, at *41 (D. Kan. Apr. 25, 1997) (piercing the veil based, in part, on finding that officer

10  "drew no salary from the company"); *Dolarian Capital, Inc. v. SOC, LLC*, No. 1:11-CV-00031-

11  LJO, 2013 WL 433001, at *4 (E.D. Cal. Feb. 1, 2013) (finding alter ego liability where a

12  company "has not had a meeting of the board of directors since 2009"); *Boeing Co. v. KB*

13  *Yuzhnoye*, No. CV-13-00730-ABA-JWX, 2016 WL 2851297, at *13 (C.D. Cal. May 13, 2016)

14  (finding alter ego liability where company failed to hold board meetings over two-year period).

15       <u>Conflicting statements and conduct regarding employee affiliation</u>.  There is conflicting

16  evidence about whether and how the defendants distinguish their employees.  As described at p.

17  3, *supra*: (1) Defendants' AIMOS managers did not distinguish between employees of KPIT US,

18  KPIT India, Sparta, or Sparta Infotech; and (2) several of Defendants' witnesses admitted that

19  they became employees of "KPIT" in 2012 and 2013, but they could not identify which KPIT

20  entity employed them.  Such inconsistent representations and conduct can support alter ego

21  liability.  *See, e.g.*, *Chase Pratt, LLC v. Aetna Life Ins. Co.*, No. CV 960560740S, 1999 WL

22  229214, at *8 (Conn. Super. Ct. Mar. 26, 1999) (finding genuine disputes regarding alter ego

23  liability where plaintiff presented evidence showing "that formalities to distinguish the particular

24  corporation such employees were acting for, or on behalf, may not have been followed.")

25       <u>Shared legal counsel</u> – Sparta, KPIT India, and KPIT US have shared the same counsel

26  throughout this litigation.  CSDF 156.  This supports a finding of unity of interest.  *NFC*

27  *Collections LLC v. Deutsche Bank Aktiengesellschaft*, No. CV 12-10718 DDP JEMX, 2013 WL

28

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

3337800, at *8 (C.D. Cal. July 2, 2013) (shared litigation counsel supports finding of alter ego liability).

### b. If alter ego liability is not imposed, substantial injustice will result

Where a failure to disregard the separate identities of the parent and subsidiary would allow the parent to shield itself from the consequences of the subsidiary's conduct and enable it to limit its liability for illegal acts by performing them through its controlled subsidiary, the substantial injustice element is satisfied. *NFC Collections*, 2013 WL 3337800, at *9. Here, a senior KPIT US executive (Bhalla) directed and participated in Sparta's AIMOS project failures and other misconduct, and at least one KPIT US consultant (Bade) spent thousands of hours on the project and was directly involved in areas that are at the center of Copart's claims (*supra*, pp. 2-3). Moreover, as the parent company of Sparta, KPIT US benefitted from Sparta's unjust enrichment through the collection of fees on the Project.

### 3. There is a genuine dispute whether Sparta acted as KPIT US's agent

KPIT US is also liable for Sparta's conduct under an agency theory of liability, which provides that a "parent corporation can be held vicariously liable for the acts of a subsidiary corporation if an agency relationship exists between the parent and the subsidiary." *Bowoto v. Chevron Texaco Corp.,* 312 F.Supp.2d 1229, 1238 (N.D. Cal. 2004) (explaining that "agency liability does not require the court to disregard the corporate form"). Under California law there is an agency relationship "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities." *Sonora Diamond Corp.,* 83 Cal.App.4th at 541; *see also Dong AH Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JFRS, 2009 WL 975817, at *7 (N.D. Cal. Apr. 10, 2009) (agency relationship satisfied where there was an overlap in officers and directors, revolving door of employees going back and forth between the companies, shared website). There is ample evidence showing a genuine dispute about whether Sparta acted as KPIT US's

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    agent.  *See* pp. 2-4, *supra*; *see also* CSDF 78, 85-147.

2         **C.      Copart's Claims Are Not Preempted By CUTSA**

3         The California Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 *et seq.* ("CUTSA"),

4    provides a cause of action for misappropriation of material that meets the definition of a "trade

5    secret" under CUTSA.[7]  While CUTSA has been held to preempt some common law claims,

6    Section 3426.7(b) provides that CUTSA "does not supersede…other civil remedies that are not

7    based upon misappropriation of a trade secret."

8         The application of Section 3426.7(b) depends, in large part, on whether a non-CUTSA

9    claim is merely a restatement of a CUTSA claim – *i.e.*, whether the plaintiff is trying to "plead

10   around" CUTSA preemption by merely dropping the allegation that the misappropriated material

11   is a trade secret – or whether the non-CUTSA claim instead involves other operative facts that

12   establish a common law claim that falls outside of CUTSA.  *Leatt Corp. v. Innovative Safety*

13   *Tech., LLC*, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 (S.D. Cal., July 15, 2010)

14   ("claims are not preempted…when based upon a broader spectrum of misconduct than

15   misappropriation").  For example, when a claim is based on rights that are separate from trade

16   secret rights under CUTSA, CUTSA does not preempt the common law claim.  *See Petroplast*

17   *Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, No. CIV.A. 4304-VCP, 2009 WL 3465984, at *11

18   (Del. Ch. Oct. 28, 2009) (applying Section 3426.7; finding common law misappropriation claim

19   not preempted where "claim applies only if the information at issue is not a trade secret").

20        **1.      Copart's Common Law Misappropriation and Conversion Claims are
                     not Preempted**

21        Copart's claims for common law misappropriation and conversion are not preempted by

22   CUTSA for the simple reason that Copart's ownership of the materials at issue *is not* based on the

23   status of the materials as a "trade secret" under CUTSA; rather, it is based on the fact that the ISA

24   between Sparta and Copart gave Copart ownership of all AIMOS project "deliverables," and the

25   stolen materials were "deliverables."  *See* Copart's Third Amended Complaint, Dkt. No. 128

26

27   ───────────────────
     [7] Copart's opposition to KPIT India's motion for summary judgment addresses the CUTSA claim
28   in more detail.  This brief focuses on KPIT US's preemption challenge based on CUTSA.

("TAC") ¶¶175, 184; TD Ex. 2 at 11, §11.4.[8]  Put another way, Copart's property interest in the stolen materials is independent of whether the materials are "trade secrets" under CUTSA.  *See Silicon Image, Inc. v. Analogix, Inc.*, No. C-07-0635 JCS, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) (no CUTSA preemption where the common law claims were based on the existence of a Software License Agreement); *Integral Dev. Corp. v. Viral Tolat*, No. 14-16629, 2017 WL 123316, at *2 (9th Cir. Jan. 11, 2017) (breach of fiduciary duty claim, based on defendants' sharing of confidential information, not preempted because "[t]his claim does not require that the confidential information qualify as a 'trade secret'").[9]

The cases cited by KPIT US for the proposition that CUTSA preempts Copart's claims (Mot. at 8-9) are distinguishable on their face.  *See, e.g., Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *8 (N.D. Cal. Oct. 24, 2013) (finding "no distinction" between plaintiff's CUTSA and non-CUTSA claims).[10]

---

[8] The stolen imaging-related materials, including the contents of ZCL_IMAGING, were also Copart's property under § 11.3 of the ISA, which gave Copart ownership over any "derivatives" of Copart's existing technology.  *See* Bauer Decl.¶6; TOD Ex. 173 at 164:23-177:9.

[9] *See also, Norsat Int'l, Inc. v. B.I.P. Corp.*, No. 12CV674-WQH-NLS, 2013 WL 5530771, at *7 (S.D. Cal. Oct. 3, 2013) (intentional interference claim not preempted where it "is based, in part, on a contract"); *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *4 (N.D. Cal. June 17, 2010) ("Regardless of whether the information is a trade secret, Defendants may be liable…for conversion if they wrongfully deprived TMX of possession of that information [and] for unfair competition if they misappropriated TMX's proprietary information").

[10] *See also, 2KDirect, LLC v. Azoogleads US, Inc.*, No. CV 08-3340-VBF(JWJX), 2010 WL 11455972, at *7 (C.D. Cal. Apr. 19, 2010) ("both the CUTSA claims and the common law misappropriation claims rest *on the exact same allegations*") (emphasis added); *Pollara v. Radiant Logistics Inc*, No. CV 12-0344 GAF (SPX), 2013 WL 12113385, at *7 (C.D. Cal. May 30, 2013) (dismissing common law misappropriation and UCL claims because they were based on "*the same nucleus of operative facts*" but refusing to find preemption with respect to breach of the duty of loyalty claim for diversion of business) (emphasis added); *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 781 (N.D. Cal. 2013) ("*plaintiff re-alleges the same facts* in support of its conversion claim as it alleges in support of its CUTSA claim in its pleadings and in its responses to discovery questions") (emphasis added); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (finding that conversion claim was "*no more than a restatement of the same operative fact*s supporting trade secret misappropriation" but noting that plaintiffs "may be able to state a claim for conversion based on allegations different from those that form the basis of its trade secrets claim") (emphasis added); *SOAProjects, Inc. v. SCM Microsys., Inc.*, No. 10-CV-01773-LHK, 2010 WL 5069832, at *10 (N.D. Cal. Dec. 7, 2010) (finding Plaintiff "could not, at this time, *allege any facts* that SCM misappropriated any information not falling under the Trade Secret Act") (emphasis added).

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**2.** **CUTSA Preemption Does Not Apply Unless, And Until, There Is A Determination That The Property Is A "Trade Secret" Under CUTSA**

Even if Copart did not have a non-CUTSA property right in the stolen materials, which it does, courts have held that preemption is premature until there was a final decision on whether the material at issue qualifies as a "trade secret" under CUTSA.  *See, e.g., First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F.Supp.2d 929, 942 (N.D. Cal. 2008).  Under this analysis, if the material is not a trade secret as defined by CUTSA, then common law claims based on the theft of that material are not preempted.  *Id.*; *see also Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. C 10-02605 JW, 2011 WL 13153247, at *4 (N.D. Cal. Mar. 17, 2011) ("because the Court must first determine whether the [technology at issue] constitutes a trade secret, a CUTSA preemption analysis would be premature at this time").

*First Advantage* is on point.  In that case a subcontractor accused a background check company of breaching the parties' contract, and the background check company counterclaimed for violations of CUTSA and for fraudulently disclosing confidential information, among other claims.  569 F.Supp.2d at 934.  The subcontractor challenged the fraud claim based on CUTSA preemption, arguing that the confidential information at issue was the same information that underpinned the company's CUTSA claim.  *Id.* at 941-942.  The *First Advantage* court rejected this attack, holding instead that the company could continue to pursue the claim until there was a final determination of whether the information was a trade secret under CUTSA.  *Id.* at 942.  Other courts have applied the same analysis to CUTSA.  *See, e.g.*, *Think Village-Kiwi, LLC v. Adobe Sys., Inc.*, No. C 08-04166 SI, 2009 WL 902337, at *2 (N.D. Cal. Apr. 1, 2009) (applying *First Advantage*; noting that "Defendants cannot have it both ways" by arguing the material at issue is not a CUTSA trade secret but then arguing that a common law claim for misappropriation of that material is nonetheless preempted by CUTSA).[11]

---

[11] *See also, Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F.Supp.2d 430, 437 (D. Del. 2003) ("until it is shown that the information is entitled to trade secret protection, it is premature to rule whether Dunlop's claims of conversion, unjust enrichment, patent title and negligence are preempted under CUTSA"); *Phoenix Techs. Ltd. v. DeviceVM*, No. C 09-04697 CW, 2009 WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009) (applying *First Advantage* and *Think Village–Kiwi*); *Leatt Corp. v. Innovative Safety Technology, LLC*, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 (S.D. Cal. July 15, 2010) (same); *Ali v. Fasteners for Retail, Inc.*, 544

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Defendants' reliance on *K.C. Multimedia, Inc. v. Bank of America Technology & Operations*, Inc., 171 Cal.App.4th 939 (2009), and its progeny (Mot. at 7) is misplaced.  Courts have rejected the proposition that *K.C. Multimedia* overrode the rule enunciated in *First Advantage* and followed by *Think Village-Kiwi*.  *See Phoenix Techs.*, 2009 WL 4723400 at *5; *Leatt Corp.*, 2010 WL 2803947 at *6.[12]

Defendants' reliance on *Silvaco* and *SunPower* (Mot. at 7) is also misplaced.  To the extent those cases stand for the proposition that Copart is required to show a non-CUTSA property right, Copart has done so.[13]  Those cases are also distinguishable on their facts.  In *Silvaco* the defendant did not copy the source code at issue – it merely executed compiled code in a third party's software product that allegedly used the stolen source code.  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal.App.4th 210, 222 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) ("there is no evidence that [defendant] ever had the source code to disclose").  Here, by contrast, defendants copied source code and other materials directly from Copart's systems.  And in *SunPower* the plaintiff failed to specify how it had any property interest in the stolen materials other than the fact that the materials were not known to the public.  *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *10 (N.D. Cal. Dec. 11, 2012); *see also id.* at *5 ("If the basis of the alleged property right is in essence that the information is that it is 'not . . . generally known to the public,' . . . then the claim is sufficiently close to a trade secret claim that it should be superseded").  Here, by contrast, Copart has enunciated – and supported – an alternative basis for its property rights.

F.Supp.2d 1064, 1072 (E.D. Cal. 2008) ("[I]t is still unclear how much of the allegedly misappropriated information was a trade secret. Therefore, it would be premature to hold that CUTSA preempts Plaintiff's conversion claim.").

[12] *See also Strayfield Ltd. v. RF Biocidics, Inc.*, No. CIV. S–11–2631 LKK/GGH, 2012 WL 170180, at *1 (E.D. Cal. Jan. 19, 2012) (holding that defendants failed to show that "CUTSA preempts common law misappropriation claims and unfair competition claims that pertain to intellectual property other than trade secrets").

[13] The *SunPower* court also noted the existence of several district court cases and "at least two Ninth Circuit cases" that held that CUTSA preemption does not apply to non-trade secret information.  2012 WL 6160472, at *8 (*citing Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) and *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 842 (9th Cir. 2004)).  Both *Imax* and *City Solutions* remain good law in the Ninth Circuit.

14

### 3.    Copart's unjust enrichment and UCL claims are not preempted

Defendants claim, falsely, that Copart's unjust enrichment claim is premised only on the theft of intellectual property.  Mot. at 9-10.  In fact, Copart's claim for unjust enrichment is also, and primarily, based on Sparta's receipt of payments for AIMOS, and the fact that "[i]t would be unjust for Sparta to retain those benefits" because they were the result of "fraud, negligence, and other improper conduct."  TAC ¶218.  Copart has presented substantial evidence of this other misconduct.  *See, e.g.*, TD Exs. 4, 5, 8, 12-14, 16, 21,-23, 25, 27, 28, 33, 39, 45, 52, 62, 67, 70; *see also* Copart MSJ at 4-13, CSDF 1-16.

Defendants make the same false statement with respect to Copart's UCL claim.  Mot. at 10.  In fact, Copart's UCL claim is not limited to the defendants' theft – it is also expressly based on defendants' fraud, negligence, and incompetence, and it seeks the return of, among other things, "all monies and fees paid by Copart to Sparta."  TAC ¶¶214, 216.

Even if the Court were to reject the *First Advantage*/*Think Village-Kiwi* line of cases, and even if the Court were to ignore the separate, contract-based property right that underpins Copart's common law misappropriation and conversion claims, there would be no grounds for finding Copart's unjust enrichment and UCL claims preempted here, as these claims are based on a wide range of conduct that has nothing to do with the misuse of intellectual property.  *See Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (rejecting preemption argument where unjust enrichment and UCL claims "arise from alleged misconduct besides misappropriation").

### 4.    Copart's professional negligence claim is not preempted by CUTSA

Copart's claim for professional negligence, like its unjust enrichment and UCL claims, is based on a wide range of misconduct unrelated to the misuse of intellectual property, including defendants' fraud, negligence and incompetence.  TAC ¶¶193-196.  Copart has already presented evidence showing, at a minimum, a genuine dispute of material fact about the non-intellectual property basis for this claim.  *See, e.g.*, TD Exs. 4, 5, 8, 12, 13, 14, 16, 21, 22, 23, 25, 27, 28, 33, 39, 45, 52, 62, 67, 70; CSDF 1-16.  For that reason alone there is no basis to find that Copart's professional negligence claim is preempted.  *See* Fed. R. Civ. P. 56(a); *see generally Loop AI*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

15

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  *Labs*, 2015 WL 5158461 at *3.

2       To the limited extent that Copart's professional negligence claim is supported, in part, by

3  defendants' misuse of intellectual property, there is an additional reason there is no CUTSA

4  preemption: the professional negligence claim is premised on the existence of professional

5  standards relating to a client's intellectual property.  TAC ¶195.  This element is not required by

6  CUTSA and brings the claim within the Section 3426.7(b) exception to preemption.

7       **D.    Substantial Evidence Supports Copart's CFAA Claim**

8           **1.    There is a genuine dispute whether Defendants accessed Copart's**
              **computer systems without authorization**
9

10      Liability under the CFAA requires the following elements: intentional access to a

11  computer, without authorization or exceeding authorization, obtaining information, from a

12  protected computer.  Defendants have only challenged one of these elements – that access was

13  unauthorized.  Mot. at 12.  There is in fact ample evidence showing that Defendants' access was

14  unauthorized.  Defendants' internal emails show that a member of Defendants' team (Shivraj

15  Sinha) distributed his login credentials for the AIMOS system with specific instructions to copy

16  the ZCL_IMAGING class and dependent tables into the "Auto Edge system," and these

17  instructions were carried out by Narenda Singh, who had not been issued credentials to access

18  AIMOS.  TD. Ex. No. 35 at 1; TOD Ex. 117.  That the copying involved the use of another

19  person's login and password information is, standing alone, evidence that access was

20  "unauthorized."  *See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-CV-748-WMC,

21  2016 WL 845341, at *9-10, 23 (W.D. Wis. Mar. 2, 2016) (evidence that defendant's employees

22  distributed their login and password information supported a finding that defendant "at least

23  'exceeded its authorization' when its employees intentionally and directly obtained information"

24  from the plaintiff's systems); *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309,

25  316 (E.D. Va. 2009) (allegation that defendant "accessed [plaintiff's] website using usernames

26  and passwords that did not belong to it" is sufficient to establish that access was unauthorized).

27      Defendants' argument that everyone on the "project team" was automatically authorized

28

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

to access the AIMOS system (Mot. at 13) is baseless.  In fact, Copart had a specific procedure for authorizing access to Copart's systems, including AIMOS, in order to maintain the security of the system.  TOD Ex. 174 at 127:1-128:6.  There is also a genuine dispute whether Singh was working on AIMOS at the time Defendants instructed him to take Copart's property.  TD Ex. 78 at 2-3 (Singh did not bill time on AIMOS until October 22, 2012, and billed time on AutoEdge the week of the copying).

Defendants' claim that Singh was impliedly authorized because he was going to eventually get a password, even if he did not yet have one when he copied the material from AIMOS into AutoEdge (Mot. at 13-14), only proves Copart's point.  It shows that access to AIMOS systems was not automatic, that Singh knew an individual login and password were required for authorized access, and that Singh did not have authorization at the time he copied the materials.  TOD Ex. 117 (Singh was not granted access until October 15, 2012).

Defendants' challenge that Singh did not have improper intent (Mot. at 13) is also baseless.  The relevant question is *Defendants'* intent, and Copart has presented substantial evidence that defendants had a scheme to copy Copart's property in order to develop their AutoEdge product.  *See, e.g.*, TD Exs. 38, 41, 43, 47; Copart's Opp. to KPIT India Mot. at 6-8.

Defendants also argue that Defendants' intent to steal Copart's property rather than destroy it shields them from liability.  Mot. at 14.  But the cases defendants cite do not support this bizarre contention.  Rather, these cases state the general proposition that CFAA does not target misappropriation *in the absence of evidence of unauthorized access*.[14]  Where there is such evidence, courts regularly find CFAA violations where a party engages in unauthorized access for purposes of misappropriation.  In *Hat World, Inc. v. Kelley*, cited by defendants, the court found just that—the court upheld plaintiff's CFAA claim based on a former employee's access to a computer system for purposes of misappropriating customer lists and other trade secrets, to the extent plaintiff alleged unauthorized access.  2:12–CV–001591–LKK, 2012 WL 3283486, at *5

---

[14] *U.S. v. Nosal*, 676 F.3d 854, 860 (9th Cir. 2012) (each person who accessed computer system had authorization to do so); *Quad Knopf, Inc. v. S. Valley Biology Consulting, LLC*, No. 1:13–CV–01262 AWI SKO, 2014 WL 1333999, at *4 (E.D. Cal. Apr. 3, 2014) (CFAA claim barred because plaintiff failed to allege unauthorized access).

17

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   (E.D. Cal. Aug. 10, 2012); *see also*, *Epic v. Tata*, 2016 WL 845341 at *22-23 (upholding CFAA

2   claim based on unauthorized access for purpose of trade secret misappropriation).

### 2.   There is a genuine dispute regarding Copart's damages

4        The CFAA defines "loss" as "any reasonable cost to any victim, *including the cost of*

5   *responding to an offense,* conducting a damage assessment, and restoring . . . the system . . . to its

6   condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

7   incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added).  In the

8   Ninth Circuit, "where the offender has actually accessed protected information . . . courts have

9   considered the cost of discovering the identity of the offender or the method by which the

10  offender accessed the protected information to be part of the loss for purposes of the CFAA."

11  *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008).[15]

12       Copart employees spent approximately 80 hours investigating the theft, representing

13  approximately $8,000 in salary costs to Copart.  Mosothoane Decl. ¶¶11-12.  Such costs are

14  recognized as recoverable CFAA damages.  *See, e.g.*, *Epic*, 2016 WL 845341, at *23 (senior vice

15  president and the interim chief security officer's estimate that plaintiff incurred over "$9,000 in

16  costs in investigating the improper access" found sufficient to survive summary judgment.)

17       The cases Defendants cite for the proposition that investigation costs are not recoverable

18  are inapplicable.  In *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954 (N.D. Cal. 2014),

19  plaintiff alleged that defendant violated the CFAA by taking control of and refusing to relinquish

20  a computer system for several months, and the court held that time spent on investigating the

21  condition of the computer system after it was returned was cognizable as damages.  The language

22  quoted by Defendants (Mot. at 15) was dicta that was unnecessary to the court's decision.  And

23  *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013) involved *outside expert*

24  costs.  Here, Copart is seeking to recover the value of time expended by its own employees in

---

[15] *See Shamrock Foods Co. v. Gast,* 535 F.Supp.2d 962, 963–64 (D. Ariz. 2008) (finding cost incurred in conducting a forensic analysis of computer was a recoverable loss where defendant emailed plaintiff's confidential information to himself before resigning from his position with plaintiff); *cf. U.S. v. Nosal*, 844 F.3d 1024, 1047 (9th Cir. 2016) (finding "internal investigation costs to uncover extent of the breach" are recoverable as restitution in criminal CFAA case).

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

1    conducting a damage assessment immediately after the unauthorized access was discovered.

2         Nor is there merit to Defendants' assertion that investigation costs are not recoverable

3    where the there was no damage or interruption of service.  That rule has been applied to cases in

4    which there was an *unsuccessful* attempt at access, such as a spamming attack.  But where the

5    attempt was successful, "the reasonable 'cost of responding to the offense'" can include

6    investigation costs.  *SuccessFactors*, 544 F. Supp. 2d at 981; *see also Modis, Inc. v. Bardelli*, 531

7    F. Supp. 2d 314, 320 (D. Conn. 2008) (noting that "costs to investigate" are recoverable).

8         Additionally, losses can include the value of the materials taken during the hack.  In *U.S.*

9    *v. Nosal*, No. CR-08-0237 EMC, 2014 WL 121519, at *3 (N.D. Cal. Jan. 13, 2014), the court held

10   the "development costs" of creating source lists were to be included in the loss calculation under

11   the CFAA.  *Id* at *8.  The cost of developing the imaging solution was higher than $5,000.  *See*

12   *e.g.*, TOD Exs. 178 at 3-5; *see also id.* Ex. 173 at 107:17-109:17.

13        **E.    Substantial Evidence Supports Copart's CDAFA Claim**

14        Defendants' challenge to Copart's CDAFA claim suffers from the same defects as

15   Defendants' challenge to Copart's CFAA claim.[16]  Courts have explicitly rejected Defendants'

16   argument that damages under CDAFA are limited to the costs of assessing whether a breach

17   occurred and have instead concluded that "[t]he plain, unambiguous language of the CDAFA

18   provides a victim a full range of traditional remedies including . . . compensatory damages."

19   *Oracle USA, Inc. v. Rimini St., Inc.*, 191 F. Supp. 3d 1134, 1146 (D. Nev. 2016).

20        **F.    Copart's Professional Negligence Claim Is Not Time Barred**

21        Copart's professional negligence claim against KPIT US and KPIT India is not barred by

22   the two-year statute of limitations because the claim shares a common core of operative facts with

23   claims in the prior complaint and therefore "relates back" to the prior complaint under Federal

24   Rule of Civil Procedure 15(c)(1).  *See Martell v. Trilogy Ltd.*, 872 F.2d 322, 327 (9th Cir. 1989)

25

26   [16] Defendants' reliance on *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (2014), is
     misplaced.  The *Perkins* court held that a party acts "without authorization" under the CDAFA
27   "only where defendants circumvent technical or code based barriers in place to restrict or bar a
     user's access."  That is exactly what Singh did when he used Sinha's login and password to access
28   the Copart database.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

19

(where new claims "share a common core of operative facts sufficient to impart fair notice of the transaction, occurrence, or conduct called into question," the new claims relate back to the original complaint). As Defendants admitted (Mot. at 19), the original and first amended complaints share a common core of operative facts – *i.e.*, incompetence during the design and implementation of the AIMOS system – with the facts in the operative complaint that underpin the professional negligence claim.

The KPIT entities are represented by the same counsel as Sparta, and share multiple officers and directors with Sparta, so there is no question that they became aware of this action at some point within the first two years after its filing. *See Singletary v. Pa. Dept. of Corrections*, 266 F.3d 186, 196-97 (3rd Cir. 2001) (notice of action involving subsidiary is imputed to parent corporation, especially where counsel is shared). The KPIT entities knew or should have known that, once Sparta produced in discovery documents showing the KPIT entities' active role in the mismanagement of the AIMOS project and the misappropriation of Copart's property, they would be added as defendants. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.") (emphasis original).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny KPIT US's motion for summary judgment in its entirety.

DATED:  February 10, 2017

/s/ *Mark P. Ressler*
_____

MARK P. RESSLER (admitted *pro hac vice*)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:     (212) 506-1700
Facsimile:      (212) 506-1800
mressler@kasowitz.com

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

JASON S. TAKENOUCHI (SBN 234835)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone:     (415) 421-6140
Facsimile:     (415) 398-5030
jtakenouchi@kasowitz.com

Attorneys for Plaintiff COPART, INC.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

COPART'S OPPOSITION TO KPIT INFOSYSTEMS' MOT. FOR SUMMARY JUDGMENT
Case No. 2:14-cv-00046-KJM-CKD

1

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that on the 10th day of February, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Mark P. Ressler

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111