1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COPART, INC.,                          No.  2:14-cv-00046-KJM-CKD

12                  Plaintiff,

13        v.                                ORDER

14   SPARTA CONSULTING, INC., KPIT
     INFOSYSTEMS, INC., and KPIT
15   TECHNOLOGIES, LTD.,

16                  Defendants.

17

18              An online vehicle auction company hired a software development company to

19   design and build its new online system, but when the project did not go as planned the auction

20   company terminated the contract and the parties sued each other.  The auction company, plaintiff

21   Copart, Inc. ("Copart"), moves for summary judgment on counter-claims brought by the software

22   development company, defendant Sparta Consulting, Inc. ("Sparta"), and for partial summary

23   judgment on elements of its own claims.  Copart Mot., ECF No. 197.  Sparta, along with its

24   parent companies, defendants KPIT Infosystems, Inc. ("KPIT Infosystems") and India-based

25   KPIT Technologies, Ltd. ("KPIT India"), move for summary judgment on Copart's claims.

26   Sparta Mot., ECF No. 184; KPIT India Mot., ECF No. 185; KPIT Infosystems Mot., ECF No.

27   186.  For the reasons explained below, the court GRANTS IN PART and DENIES IN PART each

28   motion.

                                              1

Table of Contents

I.     Factual Background .................................................................................................. 4
   A.   The Parties and the Project ................................................................................ 4
   B.   The Contract and Design Statement .................................................................. 4
   C.   The Build Statement and Contract Amendment ............................................... 5
   D.   Termination and the Lawsuits ........................................................................... 5
II.    Procedural Background ............................................................................................ 6
   A.   Procedural History ............................................................................................. 6
   B.   Copart's and Sparta's Claims ............................................................................. 6
III.   Summary Judgment .................................................................................................. 7
IV.    Contract-Related Claims .......................................................................................... 9
   A.   The Implementation Services Agreement .......................................................... 9
   B.   Sparta's Motion .................................................................................................. 9
   C.   Copart's Motion on Copart's Claims ............................................................... 13
   D.   Copart's Motion on Sparta's Claims ............................................................... 14
V.     Fraud-Related Claims ............................................................................................ 19
   A.   Fraud under California Law .............................................................................. 19
   B.   Sparta's Motion ................................................................................................ 21
   C.   Copart's Motion ............................................................................................... 26
   D.   Derivative Claims ............................................................................................. 26
VI.    Trade Secrets .......................................................................................................... 27
   A.   Factual Background .......................................................................................... 27
   B.   Trade Secrets Generally ................................................................................... 27
   C.   Copart's Trade Secrets ..................................................................................... 28
   D.   Copart's Ownership of the Trade Secrets ........................................................ 30
   E.   Copart's Damages ............................................................................................. 31
VII.   Preemption .............................................................................................................. 32
   A.   CUTSA Preemption .......................................................................................... 32
   B.   Common Law Misappropriation ....................................................................... 34
   C.   Conversion ........................................................................................................ 35
   D.   Unfair Competition and Unjust Enrichment .................................................... 37
   E.   Professional Negligence ................................................................................... 38
   F.   Conclusion ........................................................................................................ 38
VIII.  Computer Hacking Claims ..................................................................................... 38
   A.   CFAA and CDAFA Generally .......................................................................... 39
   B.   Copart's Evidence of Computer Hacking ........................................................ 40
IX.    Professional Negligence ......................................................................................... 41
   A.   Relation Back Generally ................................................................................... 42
   B.   Initial Matters ................................................................................................... 42

2

C.      Relation Back Here ................................................................................... 43

X.      KPIT Entities ............................................................................................. 46

XI.     Conclusion ................................................................................................ 47

3

I.      FACTUAL BACKGROUND

        The following facts are not disputed unless otherwise noted. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016).

        A.      The Parties and the Project

        Copart is a publicly traded company that sells more than two million vehicles per year. Sparta's Statement of Undisputed Facts ("SSUF") 2, ECF No. 187. To auction vehicles online, Copart uses its self-developed Enterprise Resource Planning ("ERP") system called Copart Auction System (or "CAS"). SSUF 3. Copart began using CAS in 1997. SSUF 4; Takenouchi Decl. Ex. 173 at 19:3–21, ECF No. 222-8.

        In 2011, Copart sought a software development company to help replace Copart Auction System with a different software language made by SAP.[1] SSUF 5. The new system was to be called "AIMOS," for Auction Inventory Management and Operating System. After initially hiring Accenture, LLP ("Accenture") to design and build AIMOS, Copart fired Accenture and split the contract into two phases, a design phase and a build phase, with a bidding process for each phase. SSUF 6, 9.

        B.      The Contract and Design Statement

        After considering bids from three firms, Copart selected Sparta, a California corporation that designs and implements SAP-based ERP software solutions, to design AIMOS. SSUF 1, 10. On October 6, 2011, Copart and Sparta signed the Implementation Services Agreement ("the Contract" or "ISA"). SSUF 13; *see also* Takenouchi Decl. Ex. 2 (ISA), ECF No. 198-2. Under the Contract, Sparta promised to complete work laid out in the Design Project Statement of Work ("Design Statement"), which the parties also signed on October 6. SSUF 26. The Design Statement outlines a twenty-week project and details three milestones for Sparta's design of AIMOS during that time. Takenouchi Decl. Ex. 3 (Design Statement), ECF No. 198-3; SSUF 27. Each milestone in the Design Statement includes technical requirements, a completion

_____

[1] SAP is an enterprise application software company. *See About SAP SE*, https://www.sap.com/corporate/en.html (last visited July 10, 2017). SAP Software is written in ABAP, which is short for Advanced Business Application Programming. Kumar Decl. ¶ 9, ECF No. 193.

schedule, and a fixed fee conditioned on Copart's review and acceptance.  SSUF 29.  Copart agreed to pay $3,250,000 for the first three milestones and an additional $1,400,000 for a fourth milestone the parties later added.  Design Statement at 26; ISA § 9.1; SSUF 28; Llewellyn Decl. Ex. I (Change Request Form), ECF No. 196-9.

Between December 2011 and March 2012, Copart accepted in writing and paid for the first four milestones (Milestones 1 through 4), all related to AIMOS's design.  SSUF 31–41. Copart contends Sparta fraudulently induced Copart's acceptance of these milestones.  *See* Opp'n to Sparta at 15–16, ECF No. 209 (alleging six instances of Sparta's fraud).

        C.      <u>The Build Statement and Contract Amendment</u>

On March 28, 2012, after considering bids from several firms to actually build AIMOS, Copart again selected Sparta.  SSUF 42.  Copart and Sparta signed the Statement of Work for the AIMOS SAP Implementation at Copart Realization Project ("Build Statement"). SSUF 45; Takenouchi Decl. Ex. 18 (Build Statement), ECF No. 198-18.  The Statement includes eleven milestones (Milestones 5 through 15) for an agreed amount of $18,800,000.  SSUF 48; Build Statement at 8–34.

In mid-2012, Copart accepted in writing and paid for the first three build phase milestones (Milestones 5 through 7).  SSUF 49–57.  As with the design phase milestones, Copart contends Sparta fraudulently induced its acceptance.

In August 2013, Copart and Sparta amended the Implementation Services Agreement ("the Contract Amendment" or "ISA Amendment").  SSUF 59; Takenouchi Decl. Ex. 69 (ISA Amendment), ECF No. 198-69.  The Amendment sets forth requirements for Milestones 8 and 9 and revised the schedule for the remaining milestones (i.e., Milestones 10 through 15). *See* ISA Amendment §§ 1–2; *id.* Ex. B.  Copart neither accepted nor paid for the remaining eight milestones, including the two the Amendment covered.  SSUF 58.

        D.      <u>Termination and Litigation</u>

On September 17, 2013, Copart terminated its agreements with Sparta "for convenience" and asked Sparta to submit a request for payment for work completed to date. SSUF 60; Nadgauda Decl. Ex. L (Termination Letter), ECF No. 190-12.  Sparta replied, detailing

the work performed and requesting payment for approximately $12 million, a substantial remainder of the unpaid fees. SSUF 62; Llewellyn Decl. Ex. M (Request for Payment), ECF No. 196-13. Copart rejected Sparta's request and sued Sparta in Texas state court for its "unreasonable" position. Llewellyn Decl. Ex. M (Copart's Rejection Letter), ECF No. 196-14; SSUF 63 (complaint filed November 1, 2013). Sparta sued Copart in this court. Compl., ECF No. 1 (filed January 8, 2014). Copart's state action was removed to federal court and transferred here; the two actions are now consolidated. *See* Order Consolidating Cases at 1–2, ECF No. 30.

II.    PROCEDURAL BACKGROUND

    A.    Procedural History

        In this consolidated case, Copart is the plaintiff/counter-defendant and Sparta is the defendant/counter-claimant. Scheduling Order at 2, ECF No. 33 (realigning the parties in this way). On June 8, 2016, Copart filed the operative Third Amended Complaint, which added Sparta's parent entities, KPIT Infosystems and KPIT India, as defendants. For simplicity, this order uses "plaintiff" to refer to Copart and "defendants" to refer to Sparta and its parent entities, collectively.

        Sparta counterclaimed against Copart. Countercl., ECF No. 134. As discussed below, the parties move for summary judgment on both Copart's and Sparta's claims.

    B.    Copart's and Sparta's Claims

        Copart brings the following claims against Sparta only: (1) Fraudulent Inducement; (2) Fraud; (3) Negligent Misrepresentation; (4) Breach of Contract; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (6) Request for Declaratory Relief. TAC ¶¶ 121–159. Copart brings the following claims against Sparta, KPIT Infosystems, and KPIT India: (7) Trade Secret Misappropriation; (8) Common Law Misappropriation; (9) Conversion; (10) Professional Negligence; (11) Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (12) Violation of Comprehensive Computer Data Access And Fraud Act, Cal. Penal Code § 502 ("CDAFA"); (13) Unfair Competition; and (14) Unjust Enrichment. TAC ¶¶ 160–220.

6

Sparta counter-claims against Copart for: (1) Breach of Contract; (2) Promissory Estoppel; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Quantum Meruit; (5) Unjust Enrichment; and (6) Declaratory Relief. Countercl. ¶¶ 101–41.

Copart moves for summary judgment on Sparta's counter-claims and for partial summary judgment on elements of some of its own claims. *See* Copart Mot. Defendants jointly oppose. Opp'n to Copart, ECF No. 204. Copart has filed a reply. Copart Reply, ECF No. 224.

Defendants move for summary judgment on Copart's claims. Sparta Mot.; KPIT India Mot.; KPIT Infosystems Mot. Copart opposes. Opp'n to Sparta; Opp'n to KPIT India, ECF No. 210; Opp'n to KPIT Infosystems, ECF No. 212. Defendants have replied. KPIT India Reply, ECF No. 232; Sparta Reply, ECF No. 233; KPIT Infosystems Reply, ECF No. 234.

III.    SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, however, the burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir.

2010).  However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment.  *Scharf v. U.S. Att'y Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial."  *Anderson*, 477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial."  *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  This may be the case "even in the absence of a factual dispute."  *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

IV.  CONTRACT-RELATED CLAIMS

To assess Copart's and Sparta's summary judgment motions as to their contract-related claims, the court first reviews the material terms of their agreements.

A.  The Implementation Services Agreement

The dispute here derives from differing interpretations of the Contract, or ISA. Under the Contract, Sparta promises to complete the work the Statements ascribe to each milestone.  ISA § 2.1; *see also* Design Statement; Build Statement.  Once Copart accepts the work, Copart agrees to pay for certain associated fees as described in the Statements.  *Id.* §§ 3.1, 1.16, 1.23, 9.1, 9.3.  The Contract specifies a method of delivery, review and acceptance for all milestone-related work.  *See id.* § 4.  Copart may terminate the Contract "for convenience," "for specified events" or "for cause."  *See id.* §§ 15.2–15.4.  If Copart terminates for convenience, it must pay Sparta for a portion of the services completed as of the termination date, subject to several limitations.  *Id.* § 15.2.

B.  Sparta's Motion

Sparta moves for summary judgment on Copart's breach of contract claim, contending (1) Copart's decision to terminate "for convenience" rather than "for cause"

9

foreclosed Copart's claim; (2) Copart waived its claims for the first seven milestones by accepting them; and (3) Copart cannot show any damages for the remaining milestones. *See* Sparta Mot. at 24–26.

### 1. Termination for Convenience

Copart may terminate the contract "for convenience" under section 15.2, "for specified events" under section 15.3 or "for cause" under section 15.4. *See* ISA §§ 15.2–15.4. A "for cause" termination requires Copart to give notice of Sparta's alleged material failure to perform under the Agreement and a thirty-day opportunity to cure. *Id.* § 15.4. A "for convenience" termination requires no advance notice or cure period, but it entitles Sparta to payment for "the portion of the Services that have been performed and completed as of the termination date." *Id.* § 15.2.

Sparta argues Copart's termination "for convenience" precludes Copart from later suing for breach of contract, Sparta Mot. at 24, but the Contract does not foreclose Copart's right to do so. If the parties intended to foreclose Copart's suing after termination "for convenience," they could have done so but did not. *See, e.g.*, ISA §§ 9.7 (payment of fees not a waiver of Copart's right), 19.8 (either party's delay in exercising rights under agreement not a waiver of such right), 19.11 (waiver of any right valid only if written and signed by both parties). As a matter of law, "for convenience" termination does not necessarily foreclose suit. *See, e.g.*, *United States ex rel. EPC Corp. v. Travelers Cas. & Sur. Co. of Am.*, 423 F. Supp. 2d 1016, 1018, 1027–28 (D. Ariz. 2006) (after contractor terminated subcontract for convenience, denying subcontractor's motion for summary judgment on contractor's breach of contract claims); *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 769 (Fed. Cir. 1987) (rejecting contractor's argument that United States could not recover for corrective work after it terminated contract for convenience). No contract language forecloses Copart's ability to sue and there is no basis for such a restriction. Copart may assert breach of contract claims even after terminating for convenience.

### 2.     Acceptance of Milestones

The Contract establishes a clear process for delivery, review and acceptance of milestones and deliverables. *See* ISA § 4.1–4.4. After a milestone is delivered in accordance with the applicable Statement of Work, *id.* § 4.1, Copart has ten days to review the milestone, *id.* § 4.2, using the Statement of Work's acceptance criteria, *id.* § 4.3. "If in Copart's sole discretion a Deliverable or Milestone satisfies all the applicable Acceptance Criteria, Copart will provide written confirmation of acceptance to [Sparta]." *Id.* § 4.4(a). But if "Copart determines that a Milestone or Deliverable fails to satisfy the Acceptance Criteria, Copart shall provide a notice of non-acceptance to [Sparta], and [Sparta] shall promptly correct any non-conformity with the applicable Acceptance Criteria." *Id.* A milestone is completed and accepted only when Sparta receives Copart's acceptance of all deliverables related to that milestone. *Id.* § 4.4(b). The milestone-based fees are due upon Copart's acceptance of each milestone. *Id.* § 9.1.

Copart followed this process for the first seven milestones. SSUF 31–41, 49–57. For each milestone, Copart's Chief Technology Officer, Vincent Phillips, signed the form titled "Milestone Sign Off," which acknowledged acceptance of the milestone, expressly stating Sparta had "no further obligations with respect to" the milestone-related deliverables. *Id.* Copart also paid Sparta for the milestone-related deliverables. *Id.* Copart acknowledges it knew some of these deliverables were incomplete before accepting them. Copart's Statement of Undisputed Facts ("CSUF") at 37–42, ECF No. 200. Indeed, Copart partially bases its fraud claims on Sparta's alleged reassurances that these deficiencies would be corrected later. *Id.* Yet, Copart never exercised its contractual right of "non-acceptance" for any milestone, which would have obligated Sparta to "promptly correct any non-conformity." ISA § 4.4(a).

Copart's acceptance of the first seven milestones waived Copart's right to sue for defects within the deliverables associated with these milestones. "California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C–08–02658 RMW, 2010 WL 3504897, at *2 (N.D. Cal. Sept. 7, 2010); *see also BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*,

No. CV F 08-1086 AWI SMS, 2012 WL 1355662, at *12–13 (E.D. Cal. Apr. 18, 2012) (plaintiff estopped from claiming damages arising from contract after repeatedly accepting performance with notice of potential breach). Copart, quoting the Contract, argues "[p]ayment of an invoice will not constitute . . . a waiver by Copart of any rights." ISA § 9.7. But the Contract does not provide similar language for Copart's acceptance, *id.* § 4.1–4.4, which Copart expressly and repeatedly provided here, SSUF 31–41, 49–57.

Copart may still proceed on the first seven milestones under a fraudulent inducement theory. Copart argues that, among Sparta's misrepresentations and omissions discussed below, Sparta fraudulently induced acceptance of the milestones as well as the rehiring of Sparta for the build phase of the contract by providing false reassurances about Sparta's intent to provide "100% CAS functionality." Opp'n to Sparta at 23–24; *see also* CSUF at 37–42. If Copart can show Sparta behaved fraudulently, which a reasonable juror could find for reasons explained below, then Sparta cannot prove Copart's waiver by acceptance. Thus, Copart may continue to seek a remedy for the first seven milestones, but only under its fraudulent inducement theory.

### 3. <u>Damages</u>

Sparta moves for summary judgment on the eight milestones for which Copart never paid (Milestones 8 through 15), arguing Copart cannot show damages. Sparta Mot. at 26. Copart never responds to this argument, Opp'n to Sparta at 24–25, and the record does not show Copart's damages related to these eight milestones. "Under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967)). Moreover, "[w]here discovery has been completed, summary judgment is appropriate when a party challenged by motion fails to offer evidence supporting an element of a claim on which that party bears the burden of proof at trial." *Celotex*, 477 U.S. at 322–24. Because Copart has shown no basis for such damages, the court finds summary judgment in favor of Sparta appropriate as to these milestones. *See Weinberg v.*

12

1  *Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (where party "failed to offer competent

2  evidence of damages, dismissal on summary judgment was appropriate").[2]

3          4.    Conclusion

4          The court GRANTS IN PART Sparta's motion on these claims. Not only is

5  Copart limited to its fraud theory to recover on the first seven milestones (Milestones 1 through

6  7), but it is also precluded from pursuing damages related to the remaining eight milestones for

7  which it never paid (Milestones 8 through 15). The court next moves to Copart's motion

8  regarding its contract claim, which is accordingly limited to the first seven milestones.

9          C.    Copart's Motion on Copart's Claims

10          A claim for breach of contract has four elements: a valid contract, plaintiff's

11  performance, defendant's breach and damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th

12  811, 821 (2011). Copart moves for partial summary judgment as to the breach element of its

13  claim. *See* Copart Mot. at 23–24.

14          Copart asserts three theories for summary adjudication, but includes no supporting

15  analysis; instead, it cites several exhibits and ten pages of proffered facts, none of which support

16  summary adjudication. *Id.* (citing Takenouchi Decl. Exs. 52, 33, 8, 57, 56, 37, 21; CSUF at 15–

17  24). Copart's first two theories, that Sparta did not use "qualified individuals" and that it did not

18  act with "promptness, diligence, and in a professional manner," are heavily fact intensive. Even

19  assuming Copart satisfied its initial burden of production, *C.A.R.*, 213 F.3d at 480, Sparta cites

20  _____

21      [2] In an unsolicited letter to the court filed after hearing, Copart requests leave to file additional briefing under Federal Rule of Civil Procedure 56(e) regarding its damages tied to

22  Milestones 8 through 15. ECF No. 251. Even if the court were to consider the letter's cited evidence, the court's conclusion would not change. *Id.* (citing an amended initial disclosure at

23  ECF No. 225-11). Given Copart's full opportunity to oppose summary judgment already, *see* Opp'n to Sparta; Opp'n to KPIT India; Opp'n to KPIT Infosystems, the court exercises it

24  discretion and declines to permit additional briefing on this issue. *See* Fed. R. Civ. P. 56(e)(2)–

25  (3); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (explaining that, while a court may not grant summary judgment for mere failure to oppose, the 2010 amendments creating Rule

26  56(e) were intended to reflect the "deemed admitted" provisions in many local rules); *see also Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1109 (7th Cir. 2014) (citing Rule 56(e),

27  explaining trial courts have "considerable discretion" in managing course of litigation at summary judgment).

28

numerous genuine factual disputes, *Matsushita*, 475 U.S. at 585. *See* Defendants' Statement of

Disputed Facts ("DSDF") 1–2, 9–10, ECF No. 206; Defs.' Response to CSUF at 63–108. For

example, in signing off on the first milestone, Copart's AIMOS project manager, Terry Ash

wrote: "I am very pleased with the performance of the Sparta team on this engagement. Some

sound bytes [sic]: Strong work ethic; Good expertise in team; Strong commitment to schedule;

Excellent team work – the Sparta and Copart team are blending into one." Nadgauda Suppl.

Decl. Ex. B at 2, ECF No. 208-2; *see also id.* Ex. C, ECF No. 208-3 (Copart's Chief Technology

Officer's e-mail to Sparta employees, explaining "It was truly a joint effort – great teamwork and

effort from all. My appreciation goes out to the Sparta team."). There is thus a genuine dispute as

to Sparta employees' qualifications and professionalism. Similarly, Copart's third theory, that

Sparta stole its intellectual property, largely relies on Sparta's employees' alleged unauthorized

copying of material; but as the court finds below, whether Sparta stole Copart's intellectual

property is also genuinely disputed. *See infra* Part VIII.B.1. The court DENIES Copart's motion

for partial summary judgment as to breach element of its contract claim.

> D.     <u>Copart's Motion on Sparta's Claims</u>

Copart moves for summary judgment on Sparta's contract-related claims. *See*

Copart Mot. at 19–22. Copart argues (1) section 15.2 bars Sparta's breach of contract and

implied covenant of good faith claims because Sparta did not maintain a "project management

software system" and Copart never "agreed" the work was complete; (2) Sparta may not proceed

on contract-related claims because it did not produce damages calculations; and (3) the Contract

itself bars Sparta's quasi-contract claims. *Id.*

> 1.     <u>The Contract's Requirements for Payment</u>

If Copart terminates the Contract "for convenience," it must pay Sparta "for the

portion of the Services that have been performed and completed as of the termination date, as

such portion agreed by Copart and calculated and documented by Service Provider's project

management software system." ISA § 15.2.

Copart first argues Sparta cannot show it maintained a "project management

software system" that would provide a basis for the damages Sparta seeks. Copart Mot. at 20.

But the court finds a reasonable juror could disagree. The parties essentially dispute whether SharePoint, the program on which Sparta relies, or MS Project, the program that Copart says is required, is a "project management software system." *Compare* Opp'n to Copart at 8–10, *with* Copart Reply at 5–6. Both parties present evidence in their favor. Sparta explains SharePoint is an online collaborative repository both Sparta and Copart used throughout the project, SharePoint maintained all AIMOS-related documents, and several Copart-approved documents expressly referenced SharePoint. Nadgauda Suppl. Decl. ¶¶ 6–10, ECF No. 208. But Copart contends the parties agreed to use MS Project, a program specially designed for program management, to present project plans and track progress on the development of AIMOS. *See, e.g.*, Design Statement at 6. However, neither party cites any agreement that would limit "project management software system" to only one program: a reasonable juror could find that in fact both systems meet this requirement.

Copart next argues it never "agreed" any portion of the services for which Sparta seeks recovery had "been performed and completed as of the termination date." Copart Mot. at 20. To the extent Copart suggests it must have reviewed and accepted the incomplete work for Copart to have agreed to it, Copart's argument conflates "accepted" and "agreed." *See* Copart Reply at 6–7. As discussed above, Sparta is already entitled to payment for work Copart "accepted," ISA §§ 4.1–4.4, so Sparta's right to be paid upon termination to work Copart "agreed" to must entitle it to something more, *id.* § 15.2. Whereas the Contract carefully delineates a process for Copart's acceptance of complete work, *id.* §§ 4.1–4.4, it prescribes no process by which Copart would agree to the "portion of Services" Sparta completed, *id.* § 15.2. To the extent Copart instead argues it has unfettered discretion whether to "agree" to Sparta's evaluation of work completed, the court disagrees. Sparta's contractual entitlement to be paid for its "performed and completed" services would mean nothing if Sparta could simply not "agree" because it did not want to pay. Indeed, Sparta's accusation is that Copart filed suit after it solicited then rejected Sparta's accounting of the additional completed work. *See* Termination Letter; Request for Payment; Copart's Rejection Letter (explaining "Copart does not agree to Sparta's assessment . . . . [and so] nothing is due under section 15.2").

Whether Copart "agreed" to Sparta's work thus becomes a fact-intensive inquiry not susceptible to resolution on summary judgment. Sparta may be entitled to payment for the "portion of the Services that have been performed," ISA § 15.2, as referenced in the Statements of Work, *id.* §§ 1.32, 2.1. Whether Copart "agreed" to work may be gleaned from the Contract and Statements. But a reasonable juror could also glean such agreement from the project documents Copart reviewed and the weekly and monthly meetings Sparta cites. *See, e.g.*, Nadgauda Suppl. Decl. ¶¶ 8, 10, 14. Because Copart offers no viable interpretation of the Contract that would preclude a juror from so discerning, a genuine dispute stands in the way of granting summary judgment.

### 2. Sparta's Damages

Copart argues Sparta's contract-related claims fail because Sparta has not shown damages. Copart Mot. at 21–22. But, unlike Copart, Sparta provides competent evidence and calculations supporting its request for damages. After Copart terminated the Contract, Sparta sent a payment request letter explaining two calculation methods: first, it said it had completed nearly eighty-five percent of the "technical objects" identified in the Statements of Work; second, that it had passed approximately eighty-four percent of the "test cases" Copart executed across the project's three geographic areas. *See* Request for Payment at 6. Sparta cites evidence in the record supporting the "test cases" calculation. Nadgauda Suppl. Decl. Ex. A at 9–11, ECF No. 208-1. Thus, Sparta provides competent evidence of calculating damages and summary judgment to Copart is not appropriate on this basis. *See Weinberg*, 241 F.3d at 751. The court need not address Sparta's third and alternative method based on hours spent on the AIMOS project.

### 3. The Quasi-Contract Claims

Copart argues the Contract itself precludes Sparta's claims for promissory estoppel, quantum meruit and unjust enrichment. Copart Mot. at 15. Copart cites three bases for its claims: the Contract precludes recovery for "indirect, incidental, special or consequential damages" beyond what the Contract expressly permits, *id.* (citing sections 9.3, 15.5, 18); Sparta presents no evidence of "gross negligence or willful misconduct" to trigger an exception to the

Contract's liability limitation, *id.*; and Sparta cannot show Sparta's claims are outside the

Contract's scope, *id.* n.5.  Copart has met its initial burden in this respect.

A party may allege inconsistent theories through alternative pleading, and the

court previously permitted Sparta to "seek both an equitable remedy of estoppel and a legal

remedy for breach of contract."  Sept. 14, 2015 Order at 6, ECF No. 65 (citing Fed. R. Civ. P.

8(d)(2)–(3); *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1030 n.11

(D. Ariz. 2003)).  At the time, the court specifically warned "the equitable claims will not lie if

Sparta ultimately seeks the same remedy as for the breach of contract claims."  *Id.* at 8.  This is

because "an action based on an implied-in-fact or quasi-contract cannot lie where there exists

between the parties a valid express contract covering the same subject matter."  June 9, 2015

Order at 8–10, ECF No. 55 (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal.

App. 4th 194, 203 (1996)).  "When parties have an actual contract covering a subject, a court

cannot - not even under the guise of equity jurisprudence - substitute the court's own concepts of

fairness regarding that subject in place of the parties' own contract."  *Id.* (quoting *Hedging*

*Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996)).  Based on this

reasoning, the court concluded "Sparta may assert quasi-contract principles only if the work

giving rise to the equitable claims is different from the work covered by the written agreement."

*Id.* (citing *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1077 (N.D. Cal. 2009), *aff'd*, 633 F.3d

1067 (Fed. Cir. 2010) (holding unjust enrichment claim not precluded by parties' written

agreement where agreement covered conduct different from that underlying unjust enrichment

claim)).

Here, Sparta raises no genuine dispute as to whether the work underlying the

equitable and contract claims is different.  The court already has found Sparta may be entitled

under the Contract to work Copart "agreed to" even if Copart never "accepted" it, and Sparta cites

no work it completed that the Contract would not cover.  Instead, Sparta's equitable claims seek

compensation for the reasonable value of, or benefit conferred by, Sparta's work under the

Contract.  *See* Countercl. ¶¶ 107, 123, 132.  But although Sparta generally alleges it completed

"work outside the scope of the contract," *id.* ¶ 107, it has not backed up these allegations by any reference to the record. *See* Sparta Opp'n at 15.

The Contract plainly limits Copart's liability to Sparta for its work completed under the Contract and the Statements of Work. Specifically, the Contract provides "the Fees described in Section 9 shall fully compensate [Sparta] for all of the Services" and "Copart shall not be responsible for the payment of . . . any charges, fees or other amounts other than the Fees." ISA § 9.3. Copart is thus required to pay only Milestone-Based Fees for Services in the Statements or separately agreed to by the parties. Because the Milestone-Based Fees are performed on a "fixed-fee basis," Sparta is contractually precluded from receiving fees for any other "services." ISA § 9.1. In its language regarding termination, the Contract also limits Sparta to fees under the agreement. *See* ISA § 15.2 ("Termination for Convenience" requires Copart to pay "only for the portion of the Services that have been performed and completed as of the termination date[.]"); *id.* § 15.5 (explaining "Copart shall not be obligated to pay any costs, fees, charges or other amounts in connection with any termination of this Agreement" other than the fees permitted under section 15.2). The Contract also restricts how "New Services" may be added to the agreement. *See id.* § 2.2 (unless the parties agree in writing to additional services, "[a]ny new services performed by [Sparta] . . . shall be deemed part of the Services without incremental charge"). Finally, section 18 of the Contract, entitled "Limitations on Liability," provides in relevant part "neither [party] shall be liable for any indirect, incidental, special, or consequential damages arising out of or relating to its performance or failure to perform under this Agreement[.]" *Id.* § 18. In sum, the Contract's provisions limit Copart to services payment obligations only, narrowly limit how additional compensable services may be added to the Contract, and preclude Sparta from recovering any "indirect, incidental, special, or consequential damages" for services under the agreement.

Instead of attempting to establish a genuine issue of material fact regarding work completed outside the Contract, Sparta misconstrues Copart's motion as a "pleadings challenge" this court has already rejected and asks the court, "[i]n the absence of any new evidence," to once again reject those arguments. Opp'n to Copart at 15. Sparta misconstrues its burden on summary

18

judgment.  The court limited its prior rulings to the pleadings stage and specifically warned

Sparta of its burden to show "the work giving rise to the equitable claims is different from the

work covered by the written agreement."  June 8, 2015 Order at 9.  Although Sparta alleges

Copart made additional demands for "numerous software functionalities and enhancements" that

fall outside the scope of the Contract and the Statements, *see* TAC ¶¶ 128, 134, Sparta does not

raise a genuine dispute about these allegations, *see* Opp'n to Copart at 15–16.  Sparta has not

satisfied its burden, and summary judgment is appropriate on Sparta's quasi-contract claims.

### 4.    Conclusion

A reasonable juror could dispute what work Copart "agreed to," and Sparta may

therefore be contractually entitled to compensation for some or all of that work, for which Sparta

has produced competent evidence to show damages.  The court therefore DENIES Copart's

motion as to Sparta's claims of breach of contract and implied covenant of good faith.  But

whether Copart "agreed to" that work is a separate question from whether the Contract covers the

"same subject matter" as that supporting the equitable claims.  Because Sparta has not met its

burden to establish a genuine issue as to any work beyond the Contract's scope, the court

GRANTS Copart's motion on Sparta's claims of promissory estoppel, quantum meruit and unjust

enrichment.

## V.    FRAUD-RELATED CLAIMS

Sparta moves for summary judgment on Copart's claims of fraudulent inducement,

fraud and negligent misrepresentation.  Sparta Mot. at 17–24.  Copart separately moves for partial

summary judgment on the misrepresentation element common to those claims.  Copart's Mot. at

23.

### A.    Fraud under California Law

Sparta argues Copart's fraud-related claims cannot succeed under any of several

state fraud doctrines.  In California, the elements of fraud and deceit are (1) "misrepresentation

(false representation, concealment, or nondisclosure)"; (2) "knowledge of falsity (or 'scienter')";

(3) "intent to defraud, i.e., to induce reliance"; (4) "justifiable reliance"; and (5) "resulting

damage."  *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 973–74 (1997); *Lazar v.*

*Super. Ct.*, 12 Cal. 4th 631, 638 (1996); *see also* Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."). Promissory fraud or fraud in the inducement, a subspecies of fraud and deceit, has the same elements but also requires that the "defendant fraudulently induce[d] the plaintiff to enter into a contract." *Engalla*, 15 Cal. 4th at 973–74 (quoting *Lazar*, 12 Cal. 4th at 638).

Negligent misrepresentation, another form of deceit, occurs "[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief[.]" *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992). The elements of negligent misrepresentation include "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (quoting *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003)). Negligent misrepresentation differs from fraud in two core respects: it is narrower than fraud in that it requires a positive assertion, not merely an omission or implied assertion; it is broader than fraud in that it requires only an unreasonable belief in the truth of the statement, not knowledge of falsity. *Apollo Capital*, 158 Cal. App. 4th at 243 (citing *Bily*, 3 Cal. 4th at 407); *see also Shamsian*, 107 Cal. App. 4th at 984.

Deceit based on concealment, not misrepresentation, additionally requires that the defendant was under a duty to disclose the fact to the plaintiff. *Mktg. West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–13 (1992)). Such a duty may exist "when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party." *Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976). Alternatively, even where a person has no duty to speak, "if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated." *Mktg. W.*, 6 Cal. App. 4th at 613 (quoting *Rogers v. Warden*, 20 Cal. 2d 286, 289

(1942)).  "If he speaks at all he must make a full and fair disclosure."  *Id.*  Whether a duty exists can be a fact-intensive question best left for a trier of fact.  *See id.* at 614.

      B.    <u>Sparta's Motion</u>

Sparta moves for summary judgment on the fraud-related claims on the grounds that (1) the allegedly fraudulent representations are non-actionable opinions; (2) Copart cannot show it justifiably relied on these representations; (3) Copart has no evidence of Sparta's intent to defraud; and (4) the claims are barred by the economic loss rule.  Sparta Mot. at 17–24.

      1.    <u>Actionable Representations</u>

Under any theory of deceit, a misrepresentation is actionable only if it is a representation of fact rather than opinion.  *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308 (2000); *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (1983); *see also Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D. Cal. 2001) ("Representations of opinion are ordinarily not actionable for fraud because they contain judgments of quality, value, authenticity, or other matters of judgment.").  Consistent with this general rule, a fraudulent concealment claim requires that "the defendant must have concealed or suppressed a material fact."  *Mktg. W.*, 6 Cal. App. 4th at 612–13.  Likewise, a promissory fraud claim theorizes that the ostensible fact is the defendant's intent, which she misrepresents to induce the plaintiff's reliance.  *Lazar*, 12 Cal. 4th at 638 ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

Here, in opposing Sparta's motion, Copart does not discuss each alleged fraudulent act, but instead cites ten pages of documents and seventy proffered undisputed facts, almost all of which are disjointed excerpts from Sparta's and the KPIT entities' internal e-mails that do not on their face clarify Copart's position.  Opp'n to Sparta at 15–16 (citing CSUF 21–91).  A district court is "not required to comb the record to find some reason to deny a motion for summary judgment."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotations omitted); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (courts do not "manufacture" arguments for a litigant, and "[j]udges are not like pigs, hunting for truffles buried

in briefs") (citation omitted).  Thus, the court focuses only on the six instances Copart addresses

substantively in opposition:

> (1) Sparta asserted in the Contract it had "ALL the information to identify 100% CAS functionality," although internal drafts reflect that may not have been true;
>
> (2) Sparta removed its assessments of risk and "scope creep" from a presentation delivered to Copart;
>
> (3) During the Design Phase, Sparta reassured Copart it would ensure 100% Copart Auction System functionality, despite evidence that it intended to complete only that which was in the design documents;
>
> (4) Sparta copied materials from AIMOS into Sparta's own AutoEdge system, but never told Copart;
>
> (5) While negotiating the Contract Amendment, Sparta did not disclose a single AIMOS module was not functioning and might cause "severe" problems; and
>
> (6) Sparta did not disclose ongoing failures regarding its project team.

Opp'n to Sparta at 15–16.

The court begins its analysis with negligent misrepresentation, which is "narrower than fraud" as to the misrepresentation element. *Shamsian*, 107 Cal. App. 4th at 984.  Only two of the six representations Copart cites contain affirmative statements, as required for a negligent misrepresentation claim. *Apollo Capital*, 158 Cal. App. 4th at 243.  In addition, one of those two statements, of Sparta's intent to provide 100 percent Copart Auction System functionality in the future, cannot support a negligent misrepresentation claim because it is not an affirmative representation of a "past or existing material fact." *Id.*; *see also Moncada v. W. Coast Quartz Corp.*, 2 Cal. App. 4th 153, 159 (1991) ("The specific intent requirement for fraud [] precludes pleading a false promise claim as a negligent misrepresentation." (citation omitted)).  The court thus limits Copart's negligent misrepresentation claim to the only affirmative representation Copart cites about a past or existing material fact: statement (1) containing Sparta's assurance that it possessed all information necessary to provide 100 percent Copart Auction System functionality.

22

Copart's fraudulent inducement claim requires a misrepresentation about a party's intent to perform on a promise for this element. *Lazar*, 12 Cal. 4th at 638. Only one of the six statements qualifies: Sparta's reassurances that it would ensure "100% CAS functionality." Thus, the court limits Copart's fraudulent inducement claim to this statement, statement (3).

Finally, as to fraud, the broadest of Copart's three claims, each of the six statements is actionable. Statements (1) and (3) are actionable for the reasons explained above. The remaining four omissions are actionable if Sparta concealed or suppressed a material fact. *Mktg. W.*, 6 Cal. App. 4th at 612–13. This determination depends on whether Sparta had a duty to disclose additional information, an intensely fact-specific inquiry for which a trier of fact is required. *Id.* at 614. Thus, Copart may proceed on all six statements to support its general fraud claim.

In sum, the court limits Copart's case as to first element of its fraud-related claims as follows: Copart may proceed only on statement (1) for its negligent misrepresentation claim, on statement (3) for its fraudulent inducement claim, and on all six statements for its fraud claim. Because each claim is supported by at least one actionable statement, summary judgment is not appropriate on this basis. The negligent misrepresentation claims fail though on the element of justifiable reliance discussed next.

### 2.    Justifiable Reliance

Sparta next argues summary judgment is appropriate on Copart's fraud-related claims because Copart could not justifiably rely on any of the six statements set out above, as its claims require. Sparta points out that Copart is a sophisticated business with experience with enterprise software implementations, it employed hundreds of Information Technology staff, including SAP specialists, and it developed its own legacy Copart Auction System that preceded the system it hired Sparta to replace. SSUF 2, 5, 73–74, 44, 75. Copart had counsel during its contract discussions and negotiations with Sparta. And Copart had prior experience with problems when attempting to deploy the AIMOS project: months before hiring Sparta, Copart hired Accenture to design AIMOS, but terminated the contract because of Accenture's "inability to achieve the very purpose" of the project and alleged "misrepresentations." SSUF 6, 8.

Nonetheless, because justifiable reliance is a context-specific and fact-intensive inquiry, a trier of fact should hear all but one of the six representations. *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1218 (E.D. Cal. 2010) ("Justifiable reliance is normally a question of fact for a jury" except in "rare cases."). The court will preclude a jury only from hearing statement (1), the Contract's representation that Sparta had "all information and documents [Sparta] has deemed necessary for [Sparta] to determine the requirements to achieve the replacement of 100% of CAS Functionalities." ISA § 9.4. Section 9.4, entitled "Diligence," also recognizes "Copart has delivered or made available" the information necessary for Sparta to perform on its promise, and clarifies "[Sparta] shall not be relieved of any of its obligations under this Agreement . . . as a result of its failure to review the foregoing information . . . or its failure to request any information[.]" *Id.* This section, read in context, represents a past fact regarding Copart's conduct, not Sparta's; it recognizes Copart's steps to provide Sparta with information, and precludes Sparta from using lack of information as an excuse later. *Id.* But it does not make any representation on which Copart could justifiably rely. The Contract expressly addresses what would happen if Sparta did not have the information it needed. *Id.* Taken together, no reasonable juror could believe Copart justifiably relied on section 9.4's first sentence. Thus, Copart may not rely on that sentence, statement (1), to support any of its fraud-related claims.

Because Copart's negligent misrepresentation claim depends exclusively on statement (1), as discussed above, that claim ultimately fails as a matter of law based on the element of justifiable reliance. The court GRANTS summary judgment for Sparta on Copart's negligent misrepresentation claim, while continuing to assess Copart's remaining claims of fraud and fraudulent inducement.

### 3. Intent to Defraud

Copart's two remaining fraud claims both require proof of intent to defraud. A plaintiff need only show the defendant intended to induce reliance. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001). Intent is "always a question of fact" under California law. *Walter E. Heller Western, Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 160–61 (1987); *see also Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal. App. 4th 1020, 1046 (2003) ("Fraudulent intent is

an issue for the trier of fact to decide."); Cal. Civ. Code § 1574 ("Actual fraud is always a question of fact."). Thus, a fact finder must determine whether Sparta intended to defraud Copart when Sparta made the five remaining representations, statements (2) to (6). Summary judgment is not warranted on Copart's two remaining claims.

### 4. Economic Loss Rule

Sparta next argues the economic loss rule bars Copart's claims. The court's prior order largely precludes this argument. *See* June 9, 2015 Order at 18–19. The court previously explained although "purely economic losses are not recoverable in tort," *id.* (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978)), the economic loss rule does not apply "when a defendant breaches a legal duty independent of the contract," *id.* (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004)). In *Robinson*, for example, the California Supreme Court held the economic loss rule did not bar a helicopter manufacturer's fraud and negligent misrepresentation claims against a parts supplier. *Robinson*, 34 Cal. 4th at 991. The state Court explained, but for the defendant's misrepresentations, the plaintiff "would not have accepted delivery and used the nonconforming [parts] . . . nor would it have incurred the cost of investigating the cause of the faulty [parts]." *Id.* at 990–91. "Accordingly, [defendant's] tortious conduct was separate from the breach itself, which involved [defendant's] provision of the nonconforming [parts]." *Id.*; *see also BNSF Ry. Co.*, 2011 WL 3328398, at *6 (E.D. Cal. Aug. 2, 2011) (California courts permit tort damages only in contract cases in which the tort liability is "either completely independent of the contract . . . or when the plaintiff was fraudulently induced to enter the contract").

Here, Copart can base its fraudulent representation claim on statement (3), Sparta's assurance of "100% CAS functionality." Because Sparta made that representation during the project design phase, Copart could show it was fraudulently induced to accept the deliverables and to agree to hire Sparta to build AIMOS. Sparta made the representation prior to and separate from the parties' agreement and it thus involves a "legal duty independent of the contract." *Robinson*, 34 Cal. 4th at 990. The economic loss rule does not preclude Copart's fraud-related claims.

25

5.     Conclusion

In sum, the court limits Copart's fraudulent inducement and fraud claims to reliance on specific statements as explained above, but DENIES Sparta's motion for summary judgment on these two claims. The court GRANTS summary judgment on Copart's negligent misrepresentation claim.

C.     Copart's Motion

Copart moves offensively for partial summary judgment on the misrepresentation element of its own fraud and fraudulent inducement claims, arguing Sparta concealed known project risks and did not disclose its theft of Copart's intellectual property before the parties amended the Contract. Copart Mot. at 23. Copart contends either of Sparta's omissions supports the misrepresentation element as a matter of law.

But Sparta successfully raises a genuine issue of disputed fact as to both omissions Copart asserts. First, Sparta cites evidence that it repeatedly revealed project risks to Copart, both within project management documents the parties shared and in their weekly and monthly meetings. *See* DSDF 3. Second, Sparta's supposed non-disclosure of its theft relies on an assumed fact, that Sparta stole Copart's intellectual property, which Copart has not established as a matter of law. *See infra* Part VIII. Thus, a reasonable juror could find for Sparta on this element. The court DENIES Copart's request for summary judgment on this element of both claims.

D.     Derivative Claims

Sparta also moves for summary judgment on Copart's claims that derive from Copart's fraud and breach of contract claims, namely unfair competition, unjust enrichment, breach of implied covenant of good faith and fair dealing as well as declaratory relief. Sparta Mot. at 26–28. Sparta argues, because the underlying claims fail the derivative claims must fail too. *Id.* As discussed above, except for its negligent misrepresentation claim, Copart's fraud and breach of contract claims all survive at this stage. Thus, the derivative claims also survive here. The court DENIES Sparta's motion on these claims.

Having addressed Copart's and Sparta's competing motions on the contract-related and fraud-related claims, the court next turns to Copart's claims against all three defendants.

VI.     TRADE SECRETS

A.     Factual Background

With its third amended complaint, Copart added new claims and named the KPIT entities as defendants.  The remaining claims derive from the following new allegations.

Copart alleges Sparta and the KPIT entities stole its proprietary software in late 2012 to enhance Sparta's own "AutoEdge" SAP product.  TAC ¶ 94.  Copart cites two October 2012 e-mail threads in which Sparta employee Shivraj Sinha instructed other Sparta and KPIT employees to copy material to the "AutoEdge system." *Id.* ¶ 99(a)–(b); Opp'n to KPIT India at 11–13; Takenouchi Decl. Exs. 34–36, ECF Nos. 198-34-36.  Defendants respond, first, that they developed the software for another project, and it did not belong to Copart.  KPIT India Mot. at 13; Kumar Decl. ¶ 4, ECF No. 193.  Second, even assuming Copart owned the material, defendants contend they copied it not to their AutoEdge product but to their AutoEdge "sandbox," a development environment they used to test code for their work on AIMOS for Copart.  KPIT India Mot. at 14–15; Kumar Decl. ¶ 14–15.

B.     Trade Secrets Generally

Defendants contend Copart's trade secrets claim fails as a matter of law because the cited information is not a trade secret, Copart does not own the information and Copart has not established any damages.  KPIT India Mot. at 17–23.

To succeed on its trade secrets claim, Copart must satisfy the elements of California's Uniform Trade Secrets Act ("the Uniform Act" or "CUTSA").  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (citing Cal. Civ. Code §§ 3426–3426.10).  Copart must show: (1) it owned a trade secret, (2) defendants acquired, disclosed or used its trade secret through improper means, and (3) defendants' actions damaged Copart.  *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003).

C.    Copart's Trade Secrets

To prove a "trade secret," Copart must show its cited information "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). In other words, the information "is valuable because it is unknown to others." *DVD Copy Control Assn. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004). The economic advantage "need not be great, but must be more than trivial." *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 564 (2007) (internal quotations omitted) (quoting Restatement (Third) of Unfair Competition § 39 (1995)).

Copart defines its alleged trade secret as "a compilation of source code, SAP objects, and other materials that were included in the 'class ZCL_IMAGING' that Sparta created as part of its deliverables for Copart. This 'class' includes a combination of custom and standard SAP source code, and data tables that replicated the imaging functionality in Copart's CAS system." Opp'n to KPIT India at 17–18. For simplicity, the court refers to Copart's alleged trade secret as "the SAP Code." Defendants argue Copart has not established a genuine dispute sufficient to survive summary judgment on the claim that the SAP Code is a trade secret. KPIT India Mot. at 17–19.

Defendants rely on Michael Shamos's expert report to argue the SAP Code is "generally known to the public" and does not "derive[] independent economic value." *Id.*; *see also* Shamos Decl., ECF No. 188; Shamos Decl. Ex. A (Shamos Report), ECF No. 189. Defendants are correct that Shamos's report undermines Copart's claim that the SAP Code is a trade secret. Shamos analyzes the SAP Code using two methods: first, Shamos evaluates how it functions, Shamos Report ¶¶ 22–92; second, he examines how it is made, *id.* ¶¶ 95–137. The first method suggests the SAP Code performs much like an array of publicly available sources and preexisting patents. *Id.* ¶¶ 22–92. The second method shows how, according to Shamos, the underlying code consists primarily of standard SAP language that is neither unique nor secret. *Id.*

¶¶ 95–137.  Without its own expert, Copart may struggle at trial to show the SAP Code "derives independent economic value" and constitutes a trade secret.

The court nonetheless concludes the "better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.  Whether information constitutes a trade secret is a fact-intensive determination. *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 300–01 (2002).  Here, Copart can show economic value using circumstantial evidence of its investment of resources in producing the information. *See Mattel, Inc. v. MGA Entm't., Inc.*, 782 F. Supp. 2d 911, 972 (C.D. Cal. 2011); Restatement (Third) of Unfair Competition § 39 (1995).  Copart hired Sparta for approximately two years to design and build its new online system and paid Sparta over $10 million for the first seven associated milestones. *See* SSUF 33–41, 50–57; Design Statement; Build Statement.  Although the record does not show precisely how much of this work went towards developing the relevant SAP Code, a reasonable juror could infer it was a non-trivial amount. *See Yield Dynamics*, 154 Cal. App. 4th at 564 (trade secret's economic advantage "need not be great" but only "more than trivial").  Given Copart's investment in the SAP Code, defendants also cannot prevail at this stage on the ground that Copart never used it. *See* Restatement (Third) of Unfair Competition § 39 (1995) (explaining how the Uniform Act "reject[s] any requirement of use by the trade secret owner").  Nor can defendants succeed by asserting the SAP Code was inoperable and never incorporated into any product. *See Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 65 (2014) ("[T]he fact that [trade secret information] is not incorporated into a product on the market does not preclude a finding of independent economic value . . . . even if further refinement and development is required[.]").  It also is not enough that parts of the SAP Code were publicly available, *id.* at 47 ("[E]even if some or all of the elements of Altavion's design were in the public domain and thus unprotectable, the *combination* was a protectable trade secret if it was secret and had independent economic value." (emphasis in original)).  Because the inquiry here is complex and fact-intensive, the court has "doubts as to the wisdom of terminating the case before trial." *Gen. Signal Corp.*, 66 F.3d at 1507.  The court DENIES summary judgment on the basis of the SAP Code's trade secret status.

D.      Copart's Ownership of the Trade Secrets

Defendants argue Sparta, and not Copart, owns the SAP Code, and so Copart's misappropriation claim is doomed.  KPIT India Mot. at 22–23.

The Contract expressly addresses who owns the project deliverables: Copart owns the project deliverables, but Sparta owns its "Background Intellectual Property."  *See* ISA § 11.4. Although the Contract does not define "Background Intellectual Property," it defines "Background Technology" to include "[a]ny software, tools, database, data or methodologies and other intellectual property that are . . . (ii) developed or acquired by [Sparta] independent of the Services or this Agreement after the Effective Date."  *Id.* § 11.2.  Because "intellectual property" is listed as a "Background Technology," the court construes "Background Intellectual Property" to similarly include intellectual property "developed or acquired by [Sparta] independent of the Services or this Agreement after the Effective Date."  Defendants' assertion of ownership thus turns on whether they independently developed or acquired the SAP Code, an issue that is genuinely disputed.

Defendants argue Sparta first developed the SAP Code while working on a different project, and it is thus Sparta's "Background" property.  KPIT India Mot. at 22–23 (citing SSUF 123–25).  Defendants rely on a declaration from Sparta's principal consultant, Manish Kumar, who began work on AIMOS in April 2012; yet Kumar neither explains how he learned another team developed the product nor asserts firsthand knowledge of that fact.  Kumar Decl. ¶¶ 10–13, ECF No. 193.  In response, Copart cites deposition testimony of Sparta Executive Vice President, Vaibhav Nadgauda, who explains the SAP Code "was created as a requirement for the AIMOS project" and that Sparta needed to "test if [the SAP Code] works or not, because it was a brand-new functionality."  Takenouchi Decl. Ex. 171 at 119:17–25, ECF No. 222-79; Nadgauda Decl. ¶ 1, ECF No. 190.  In other words, defendants say Sparta developed the SAP Code for another project, Copart says it was for AIMOS, and neither side's evidence supersedes the other's.  A genuine factual dispute exists and the court DENIES summary judgment.

E.     Copart's Damages

Under the Uniform Act, a party must show its entitlement to damages. *Sargent Fletcher*, 110 Cal. App. 4th at 1665; *Integral Dev. Corp. v. Tolat*, C 12-06575 JSW, 2015 WL 674425, at \*6 (N.D. Cal. Feb. 12, 2015).  A party may recover "damages for the actual loss caused by misappropriation" or the "unjust enrichment caused by misappropriation."  Cal. Civ. Code § 3426.3(a).  However, if these are not provable, a party may instead recover a "reasonable royalty for no longer than the period of time the use could have been prohibited."  Cal. Civ. Code § 3426.3(b).  The Uniform Act's reasonable royalty provision "track[s] the common law practice of allowing for reasonable royalties when the plaintiff could not prove any loss and the defendant 'made no actual profits.'"  *Ajaxo Inc. v. E\*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1311 (2010); *see also A. Inertial Sys., Inc. v. Condor P. Indus. of Cal. Inc.*, 545 Fed. App'x 600, 601 (9th Cir. 2013) (trial court erred in ruling jury's finding of no damages precluded a reasonable royalty).

Here, Copart cites no evidence to support its argument that the alleged misappropriation caused damages.  *See* Opp'n to KPIT India at 22–23.  Indeed, the undisputed facts undermine such a claim because Sparta never sold or licensed the AutoEdge product.  SSUF 141–42.  Although Copart cites evidence purportedly showing Sparta used the SAP Code to market itself to new clients, the exhibits are difficult to follow.  Takenouchi Decl. Ex. 65, ECF No. 198-65; Takenouchi Decl. Ex. 139, ECF No. 222-47.  Copart alternately requests the reasonable royalty rate, which the project development cost evidence discussed above supports.  Opp'n to KPIT India at 22; *see* SSUF 33–41, 50–57; Design Statement; Build Statement.  To determine a reasonable royalty rate, the court imagines a "'suppositious meeting' between the parties . . . [and] calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred."  *Ajaxo Inc.*, 187 Cal. App. 4th at 1308 (quoting *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 451 (2d Cir. 1998)).  For now, it suffices to conclude the SAP Code, which Sparta itself argues was developed for another client, would have some value to support a royalty rate.  *See id.* at 1314 (evidence of negotiations related

to licensing of software could support court-imposed royalty rate).  The court DENIES summary judgment as to Copart's damages.

In sum, the court DENIES summary judgment on Copart's CUTSA claims.  The court next turns to Copart's related claims that CUTSA may preempt.

VII.   PREEMPTION

Defendants argue CUTSA preempts Copart's common law misappropriation, conversion, professional negligence, unfair competition and unjust enrichment claims.  KPIT Infosystems Mot. at 14–19.

A.   CUTSA Preemption

"The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 953 (2009) (quoting *I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985)).  Because CUTSA has a "comprehensive structure and breadth," *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003), courts have found "that breadth suggests a legislative intent to preempt[3] the common law," *I.E. Assoc.*, 39 Cal. 3d at 285; *see also SilvacocData Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011) ("[A] prime purpose of [CUTSA] law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'").[4]

---

[3] The California Supreme Court disfavors the use of the word "preempt" to describe the supersession of one state law by another, and instead suggests the word "displace."  *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 247 n.5 (2007).  Courts also regularly use the statutory term "supersede."  *Silvaco*, at 184 Cal. App. 4th at 232 n.14.  Here, the court follows the parties' use of the word "preempt," which California courts have also continued to use after *Zengen*.  *See, e.g.*, *K.C. Multimedia*, 171 Cal. App. 4th at 954.

[4] Section 3426.8 provides: "This title shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it."  Cal. Civ. Code § 3426.8. To help interpret CUTSA, California courts cite case law from other jurisdictions that have also adopted the Uniform Trade Secrets Act.  *See, e.g.*, *K.C.*

CUTSA's express preemption provision provides in pertinent part:

(a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

(b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code § 3426.7. CUTSA thus "expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation." *K.C. Multimedia*, 171 Cal. App. 4th at 954. "At the same time, § 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation." *Id.*

CUTSA preempts a claim that is based on the "same nucleus of facts as the misappropriation of trade secrets claim." *Id.* at 958 (adopting rule applied in *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). Applying this test, a number of courts have held that CUTSA may preempt various claims, including claims for conversion, common count, quantum meruit, unjust enrichment, breach of confidence, unfair competition as well as intentional and negligent misrepresentation, where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets. *Id.* at 958 (holding claims for breach of confidence, interference with contract and statutory unfair competition preempted because they were based on same nucleus of facts as trade secrets claim); *see SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, *3 (N.D. Cal. Dec. 11, 2012) (collecting cases); *see also 2KDirect, LLC v. Azoogleads US, Inc.*, 2010 WL 11455972, at *7 (C.D. Cal. Apr. 19, 2010) ("[C]laims for common law misappropriation are plainly based on the same nucleus of facts underlying the CUTSA claims . . . ."); *Digital Envoy*, 370 F. Supp. 2d at 1035 (claims for unjust enrichment and unfair competition based on same nucleus of facts); *Callaway Golf Co. v.*

*Multimedia*, 171 Cal. App. 4th at 955 ("California courts ordinarily adopt the construction given a uniform code section by other jurisdictions, unless the construction is manifestly erroneous."). This is true even though CUTSA's preemption language, which lists those areas not preempted, is distinct from the text of the Uniform Act, which affirmatively lists the areas the act preempts. *Id.* at 955 n.6.

*Dunlop Slazenger Grp. Americas, Inc.*, 318 F. Supp. 2d 216, 220 (D. Del. 2004) (finding CUTSA preempted claims for conversion and unjust enrichment "based entirely on the same factual allegations" as the trade secrets claim); *cf. Leatt Corp. v. Innovative Safety Tech., LLC*, 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 (S.D. Cal. July 15, 2010) (CUTSA does not preempt claims of unfair competition and tortious interference "based on more than just the misappropriation of Plaintiff's trade secrets").

Here, Copart's CUTSA claim alleges Sparta stole Copart's SAP Code and incorporated it into Sparta's AutoEdge software product. *See* TAC ¶¶ 164–171. To the extent any other claim relies on this "same nucleus of facts," CUTSA preempts it. The court next applies this test to determine which of Copart's claims, if any, CUTSA preempts.

B.     Common Law Misappropriation

Two conclusions, taken together, foreclose Copart's common law misappropriation claim. First, CUTSA may preempt a claim for misappropriation of confidential information even if the information does not ultimately meet the statutory definition of a trade secret. *See SunPower*, 2012 WL 6160472, at *5 ("If the basis of the alleged property right is in essence that the information is that it is 'not . . . generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." (citations omitted)); *Mattel*, 782 F. Supp. 2d at 987 (citing *Silvaco*, 184 Cal. App. 4th at 239; *K.C. Multimedia*, 171 Cal. App. 4th at 954) ("[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."). In other words, while Copart's CUTSA claim survives summary judgment due to a genuine dispute regarding Copart's claim to trade secrets, that claim may preempt others at this stage. *See Mattel*, 782 F. Supp. 2d at 963, 985 (although genuine disputes precluded summary judgment on trade secret misappropriation claims, concluding CUTSA nonetheless preempted various tort claims at summary judgment).

Second, CUTSA fully "occupies the field" and preempts all claims of common law misappropriation. *AccuImage*, 260 F. Supp. 2d at 954 (discussing *Cadence Design Systems, Inc.*

34

*v. Avant! Corp.*, 29 Cal. 4th 215, 224 (2002)); *K.C. Multimedia*, 171 Cal. App. 4th at 954 (adopting *AccuImage*).  Given CUTSA's purpose of "sweep[ing] away the [] bewildering web of rules and rationales and replac[ing] it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value,' *Silvaco*, 184 Cal. App. 4th at 239 n.22, CUTSA fully preempts Copart's common law misappropriation claim.

      C.      <u>Conversion</u>

      Copart concedes its conversion claim and CUTSA claim rely on the same alleged intellectual property theft, *see* TAC ¶ 187, but argues CUTSA does not preempt its conversion claim because Copart owns the property based on the parties' contract; ownership does not rest on the property's trade secret status.  Opp'n to KPIT India at 18–19 (citing ISA § 11.4 (Copart owns "deliverables" from the project)).  Copart's argument relies on the *Silvaco* court's suggestion that a contractual basis to trade secret ownership may take the claim out of the "nucleus of facts" as a CUTSA claim and therefore survive preemption.  184 Cal. App. 4th at 238–39.

      Neither party cites case law that clearly resolves the question here.  Sparta cites authority holding, at least where there is no contractual basis for ownership, a common law claim may not proceed under the theory that the material is not a trade secret but still proprietary information.  *See, e.g.*, *id.* at 233 n.22 (2010); *SunPower*, 2012 WL 6160472, at *5.  To the extent these cases stand for the proposition that Copart is required to show a non-CUTSA property right, Copart has done so.  Opp'n at 21 (citing ISA §§ 11.3–11.4).

      On the other hand, Copart cites no case that demonstrates a contractual right to the material yields a different "nucleus of facts" as the trade secrets claim.  *Silicon Image, Inc. v. Analogix, Inc.*, is distinguishable.  No. C-07-0635 JCS, 2007 WL 1455903, at *1, *9–10 (N.D. Cal. May 16, 2007).  There, the court found Silicon Image's false advertising and tortious interference claims, which were based on its software license agreements with its customers and not the defendant, relied on new facts distinct from those supporting its CUTSA claim.  *Id.* *Silicon Image* does not support the exception Copart asserts.  Copart's reliance on *Integral Dev. Corp. v. Viral Tolat*, is also misplaced.  675 Fed. App'x 700 (9th Cir. 2017).  In *Integral Development*, the Ninth Circuit in an unpublished memorandum applied the "nucleus of facts"

test and determined that CUTSA did not preempt a claim for breach of fiduciary duty for a former employee's sharing of confidential information with the employer's competitor. *Id.* at 704. The decision does suggest a narrow test that finds preemption only if the claim "require[s] that the confidential information qualify as a trade secret." *Id.* (citing *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506–08 (2013)). But the sole case relied on by the Ninth Circuit does not engage in such a narrow inquiry. *See Angelica Textile Servs.*, 220 Cal. App. 4th at 508 (finding conversion of tangible property provided independent basis for conversion claim); *see also Lifeline Food Co., Inc. v. Gilman Cheese Corp.*, 5:15-CV-00034-PSG, 2015 WL 2357246, at *5 (N.D. Cal. May 15, 2015) (finding no preemption where, unlike in *Angelica*, plaintiffs could not point to converted property other than the alleged trade secrets). *Integral Development* does not appear to provide helpful guidance here.

Courts evaluating preemption of a conversion claim look to the source of the property's value rather than a person's basis for owning it. In *Mattel*, for example, the court considered CUTSA preemption of conversion claims involving: a product designer's property and materials; other tangible inventory; and trade secret documents, materials, designs, names and other information. *See Mattel*, 782 F. Supp. 2d at 996–97. The court found CUTSA preempted Mattel's conversion claim "to the extent it is based upon the misappropriation of Mattel's confidential information" and "predicated upon the physical documents allegedly misappropriated by Mattel's former employees because Mattel cannot show that the documents had any value apart from the information contained therein." *Id.* at 997. But CUTSA did not preempt Mattel's claim to the extent it was based on misappropriation of "tangible documents and things," such as sketches and sculpts, because they had some value apart from the information they embodied and Mattel sought the return of those items. *Id.* Thus, when the property and the alleged trade secret are distinguishable, and the property's value is not tied to the trade secret, CUTSA does not preempt the conversion claim; when they are indistinguishable, and the property's only source of value is the trade secret information, CUTSA preempts. *Compare Loop AI Labs, Inc. v. Gatti*, 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (finding CUTSA did not preempt claim of conversion of plaintiff's computer, as "[n]o reasonable application of CUTSA's

savings clause precludes a cause of action based on an employee's alleged theft of a piece of tangible property), *with MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (finding CUTSA preempted claim of conversion of property, including "certain documents and data and computer data discs," that was indistinguishable from the alleged trade secret material).

Here, Copart does not argue the property underlying its conversion claim is unique from what it claims as trade secrets. Opp'n to KPIT India at 18–19. Indeed, defendants' wrongful conduct and the property defendants wrongfully took are described identically in both claims. *Compare* TAC ¶¶ 165–70 (citing ZCL_IMAGING) *with id.* ¶ 187(a)–(c) (same). This is true despite Copart's contractual ownership of that property as a "deliverable." CUTSA thus preempts Copart's conversion claim. *Cf. Argo Grp. US, Inc. v. Prof. Govtl. Underwriters, Inc.*, SACV131787AGDFMX, 2014 WL 12577144, at *1, 3 (C.D. Cal. Jan. 6, 2014) (although defendant had independent contractual duty to maintain plaintiffs' confidential information, CUTSA preempted claim for conversion of that information).

D.  Unfair Competition and Unjust Enrichment

Copart's unfair competition and unjust enrichment claims also partially rely on the same facts as its CUTSA claim. *See* TAC ¶¶ 214 ("[Defendants] violated UCL by taking materials and work product from the Project that in fact belonged to Copart, and using that work product and those materials in their proprietary AutoEdge product."), 219 (defendants were unjustly enriched when they "received benefits from their theft of work product from the AIMOS project."). CUTSA preempts the parts of those claims that rely on these allegations.

Copart nonetheless argues preemption does not apply to the portions of these claims that rely on Sparta's alleged fraud, negligence and other improper conduct aside from its theft of the intellectual property. Opp'n to KPIT India at 22; *see, e.g.*, TAC ¶¶ 214 ("Sparta has violated the UCL by engaging in [] unlawful, unfair and/or fraudulent business acts and/or practices . . . , including its false representations to Copart . . . ."), 218 (Sparta received benefits "as a result of its fraud, negligence, and other improper conduct"). The court agrees. Copart's

unjust enrichment and unfair competition claims survive CUTSA preemption to the extent they rely on these other, non-theft related allegations.

### E. Professional Negligence

Copart's professional negligence claim also relies on multiple bases, most of which do not derive from the same facts as its CUTSA claim. *See* TAC ¶ 193(a)–(f) (listing ways defendants' work processes and products fell below accepted industry standards). Thus, Copart's professional negligence claim is not preempted to the extent it relies on any of these other bases.

CUTSA does preempt Copart's allegations that rely in part on defendants' theft of its intellectual property. *See* TAC ¶ 195 ("[Defendants] knew that the theft of client property, and giving unauthorized persons access to client intellectual property, was contrary to professional standards applicable to their industry. [Defendants] nonetheless stole Copart's property and gave unauthorized persons access to that property."). Preemption applies because Copart's professional negligence claim relies on the same alleged theft as Copart's CUTSA claim. *Cf. Callaway Golf*, 318 F. Supp. 2d at 220 (CUTSA preempts claim for negligently hiring, supervising or retaining an unfit employee where claim relied on same facts as the trade secret claim).

### F. Conclusion

CUTSA wholly preempts Copart's common law trade secrets claim and its conversion claim. CUTSA also preempts parts of Copart's claims that rely on the "same nucleus of facts" as its trade secrets claims, as explained above. The court accordingly GRANTS summary judgment on Copart's claims for common law misappropriation and conversion. Copart's claims of unfair competition, unjust enrichment and professional negligence survive summary judgment to the extent they rely on allegations other than defendants' misappropriation of its trade secrets. Copart's professional negligence claim is also partially limited by the statute of limitations, as discussed further below. *See infra* Part IX.

### VIII. COMPUTER HACKING CLAIMS

Defendants move for summary judgment on Copart's "computer hacking claims": that is, Copart's claims under the Computer Fraud and Abuse Act ("CFAA" or "the Federal Act")

and California's Data Access Fraud Statute ("CDAFA" or "the California Act").  TAC ¶¶ 198–211.  Copart alleges defendants intentionally accessed Copart's computer systems without authorization and copied Copart's software to Sparta's AutoEdge product.  *Id.*

### A.    CFAA and CDAFA Generally

Congress enacted the Computer Fraud and Abuse Act in 1984 "to enhance the government's ability to prosecute computer crimes."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009) (internal quotation omitted).  The majority of the crimes the CFAA prohibits "involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data."  *Id.*  More specifically, the CFAA "imposes liability on anyone who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer.'"  *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1029 (C.D. Cal. 2012) (citing 18 U.S.C. § 1030(a)(2)).  The CFAA also imposes liability on whomever "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value."  *Id.* (quoting 18 U.S.C. § 1030(a)(4)).  A person who "suffers damage or loss" as a result of a violation may bring a civil action against the violator under five enumerated circumstances.  18 U.S.C. §§ 1030(g), (c)(4)(A)(i)(I)-(V).

Similar to the CFAA, liability under California's Data Access Fraud Statute, Cal. Penal Code § 502(a), requires the person to act "knowingly" and "without permission" in committing computer-related crimes.  *Paskenta Band of Nomlaki Indians v. Crosby*, 215CV00538MCECMK, 2016 WL 3854237, at *3 (E.D. Cal. July 15, 2016).  The CDAFA is "an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose."  *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014).  The act enumerates fourteen hacking-related crimes that trigger civil liability where a violation causes a person "damage or loss."  Cal. Penal Code § 502(c)(1)–(14); *id.* § 502(e).

B.    Copart's Evidence of Computer Hacking

Defendants argue Copart's computer hacking claims fail because Copart has not shown defendants lacked authorization or that Copart suffered any loss.  KPIT Infosystems Mot. at 19–26.

1.    Authorization

Copart's allegations of computer hacking are similar to those underlying its trade secrets claim.  Copart alleges that in 2012 Sparta employee Shivraj Sinha distributed his personal Copart computer system log-in credentials to other Sparta employees without authorization, and that at least one Sparta employee, Narenda Pratap Singh, used Sinha's login information to gain access to Copart's computer system and copy the SAP Code without authorization.  TAC ¶¶ 200–01, 207–08.

Two genuine disputes of material fact preclude summary judgement.  First, who, if anyone, actually copied the material is fairly disputable.  It is unclear if Singh copied the material: although Singh responded to a group e-mail that the "task assigned to us . . . is completed," Takenouchi Decl. Ex. 35, ECF No. 198-35, another employee also responded "[t]he work assigned has been done," Suppl. Llewellyn Decl. Ex. J, ECF No. 207-10.  Even drawing an inference that someone copied the material, a genuine dispute exists as to who did it.  Because Copart must show the person who copied the material lacked authorization, this genuine dispute about identity is material and precludes summary judgment.  If Singh copied the SAP Code, a second dispute exists as to whether Singh lacked authorization.  Sparta requested in writing that Singh have AIMOS access before the alleged copying and Copart eventually granted the request, though the record is unclear as to when.  *See* SUF 154–59.  On the other hand, Singh learned Copart granted his access to AIMOS only several days after the alleged copying.  Takenouchi Decl. Ex. 117.  A trier of fact is needed to resolve these disputes regarding defendants' authorization or lack thereof.

2.    Damages

To support a computer hacking claim under federal or state law a plaintiff must show "damage or loss."  *See* 18 U.S.C. § 1030(g); Cal. Penal Code § 502(e).  The CFAA is broad,

defining "damage" as "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" as "any reasonable cost to any victim, including the cost of responding to an offense [and] conducting a damage assessment," 18 U.S.C. § 1030(e)(11). "[C]ourts have considered the cost of discovering the identity of the offender or the method by which the offender accessed the protected information to be part of the loss for purposes of the CFAA." *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008); *see also United States v. Nosal*, 844 F.3d 1024, 1047 (9th Cir. 2016); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 963–64 (D. Ariz. 2008). Although the CDAFA does not define damage or loss, it similarly permits recovery of damages that "include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e).

Here, Copart alleges it has expended resources investigating defendants' unauthorized access to its computer systems. TAC ¶ 202. As support, Copart provides evidence that it has spent over 80 hours, at an internal rate of $100 per hour, conducting its investigation. Mosothoane Decl. ¶¶ 11–12, ECF No. 221. Investigation expenses are recoverable under the Federal and California acts. *SuccessFactors*, 544 F. Supp. 2d at 981; Cal. Penal Code § 502(e). Defendants do not challenge that Copart incurred such expenses. *See* KPIT Infosystems Mot. at 23–24. On this record, uncontested albeit sparse, summary judgment is not appropriate.

### 3. Conclusion

The court DENIES defendants' motion on Copart's computer hacking claims. In light of genuine factual disputes, and because Copart has not established the remaining elements as a matter of law, the court similarly DENIES Copart's motion for partial summary judgment on the computer hacking claims.

## IX. PROFESSIONAL NEGLIGENCE

Defendants argue California's two-year statute of limitations bars Copart's professional negligence claim. KPIT Infosystems Mot. at 28 (citing Cal. Civ. Proc. Code § 339).

Copart's professional negligence claim is partially preempted under CUTSA, as discussed above. *See supra* Part VII. This section addresses Copart's claim only to the extent it does not rely on defendants' alleged misappropriation of Copart's trade secrets. Copart argues the claim is not barred because it "relates back" to the filing of the original complaint. Opp'n to KPIT Infosystems at 27 (citing Fed. R. Civ. P. 15(c)(1)).

A.    <u>Relation Back Generally</u>

A new claim relates back to the date of the original pleading when it arises out of the "same conduct, transaction, or occurrence" as the original pleading, Fed. R. Civ. P. 15(c)(1)(B), meaning the pleadings "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *see also Martell v. Trilogy Ltd.*, 872 F.2d 322, 325–26 (9th Cir. 1989).

With respect to a new party, on the other hand, relation back applies only if: (1) the claim arises from the same conduct as the original pleading; (2) the added party received "such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the added party knew or should have known that, "but for a mistake concerning identity, the action would have been brought against it." *Butler v. Natl. Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014); Fed. R. Civ. P. 15(c)(1)(C).

Rule 15's relation back doctrine is an exception to the statute of limitations and implicates the same underlying policies of fairness to the defendant. *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 979 (9th Cir. 1988) (explaining fairness requires "the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff"); *cf. Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 738–39 (9th Cir. 1982) (permitting relation back where defendant "was not taken by surprise" by the new claim).

B.    <u>Initial Matters</u>

The parties dispute whether the Third Amended Complaint should be compared with the Second Amended Complaint or Copart's original complaint for the purposes of determining relation back. Opp'n to KPIT Infosystems at 26–28; KPIT Infosystems Reply at 11–

12.  The difference may impact whether the Third Amended Complaint relates to the same "conduct, transaction, or occurrence" as the prior pleading.  Because the Second Amended Complaint satisfies the statute of limitations, Copart may refer to that pleading and need not relate back to the original complaint, as discussed next.

In California, the statute of limitations for professional negligence is two years.  Cal. Civ. Proc. Code § 339; *Thomas v. Canyon*, 198 Cal. App. 4th 594, 606 (2011).  A claim for professional negligence accrues when "the plaintiff (1) sustains damage and (2) discovers, or should discover, the negligence."  *Roger E. Smith, Inc. v. SHN Consulting Eng'rs & Geologists, Inc.*, 89 Cal. App. 4th 638, 650–51 (2001).  "It does not matter [if] the damages or losses . . . may have increased over time."  *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1161 (2004).

Here, Copart terminated the Contract on September 17, 2013.  SSUF 60.  The court thus assumes Copart's professional negligence claim accrued on that date, and the parties have not argued otherwise.[5]  Because Copart filed the Second Amended Complaint on October 30, 2014, well within California's two-year period, that pleading could have included a timely professional negligence claim.  Copart filed its Third Amended Complaint on June 8, 2016, beyond the statutory time period: to be timely, the professional negligence claim would thus have to "relate back" to the previous pleading.  Copart argues the Second Amended Complaint notified defendants of the factual bases for its new claim, so the court compares the Second and Third Amended Complaints.  *Cf. Philippine Am. Life Ins. v. Raytheon Aircraft Co.*, 252 F. Supp. 2d 1138, 1148 (D. Kan. 2003) (finding claims asserted in amended complaint related back to prior, amended complaint).

C.     Relation Back Here

Copart first included its claim for professional negligence in its Third Amended Complaint.  SSUF 77; *see also* TAC ¶¶ 191–197.  The Third Amended Complaint also added the KPIT entities as defendants.  *See* Order June 2, 2016, ECF No. 125 (granting leave to amend the

---

[5] Defendants argue only that the date of accrual must be no later than the filing of the state complaint on November 1, 2013.  KPIT Infosystems Mot. at 29.

43

second amended complaint to add KPIT entities).  Accordingly, the court separately analyzes the new claim against Sparta under Rule 15(c)(1)(B) (governing amendment asserting new claim or defense) and against the new KPIT entities under Rule 15(c)(1)(C) (governing amendment naming a new party).

1.    Sparta

Copart's professional negligence claim is largely based on the same "conduct, transaction, or occurrence" to warrant relation back to the date of the Second Amended Complaint.  Sparta effectively concedes this when it argues that the original state complaint includes the same allegations that underlie the new claim, to establish the accrual date.  KPIT Infosystems Mot. at 29.  A comparison of the Second and Third Amended Complaints demonstrates Copart is correct.

Copart's new claim is largely based on defendants' failure to "adhere to, work pursuant to, employ and utilize [an accepted] standard skill, prudence and diligence in designing, configuring, coding, testing, building and implementing the AIMOS solution; in managing [] the Project; and in identifying, managing and mitigating risk on the Project."  TAC ¶ 193.  As examples of that misconduct, the complaint includes defendants' "[c]reating and providing deliverables and work product that Sparta and KPIT admitted internally were 'extremely poor quality,'" *id.* ¶ 193(a); "[c]reating and delivering a software system that Sparta and KPIT admitted internally was 'unstable,'" *id.* ¶ 193(b); and "[d]elivering a defective software system caused by a failure to use basic quality controls that are accepted practice in the software industry," *id.* ¶ 193(f).

Likewise, Copart's Second Amended Complaint alleges Sparta "assign[ed] consultants who lacked the skill and experience to successfully design and implement an SAP solution," SAC ¶ 4; Sparta knew it lacked the ability to "staff[] the Copart SAP project with consultants with the necessary skills, experience and expertise," *id.* ¶ 6; and that Sparta ultimately produced an "incomplete software system that was incapable of operating Copart's basic business processes," which left Copart "saddled with an unfinished SAP system that lacked critical functionality and an implementation project plagued by repeated missed deadlines with no

44

realistic go-live date," *id.* ¶ 7.  Because proof of these allegations would "share a common core of operative facts," relation back is appropriate.  *Williams v. Boeing Co.*, 517 F.3d at 1133.

In sum, Copart's professional negligence claim against Sparta relates back to the Second Amended Complaint.  As discussed in an earlier section, Copart's allegations of defendants' alleged theft of the SAP Code, TAC ¶ 195, are preempted by CUTSA.  *See supra* Part VII.  Accordingly, the court need not address the timeliness of this newly discovered information underlying its professional negligence claim.

2.　　KPIT Entities

In contrast, Copart's professional negligence claim against the KPIT entities is untimely and does not relate back.  Rule 15(c)(1)(C) allows relation back against a new party only if that defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010).  The court notes an ambiguity under Rule 15(c), which "distinguishes between two types of amendments: one that amends the claims against a party already named in the pleading and the other that amends the party to the original pleading."  *Martell*, 872 F.2d at 324–25; *accord Percy*, 841 F.2d at 978.  In this case, the Third Amended Complaint did both things at once, adding new claims against new parties.  The court applies the more stringent test under Rule 15(c)(1)(C) used to bring in a party not named in the original pleading.  *Cf. Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 856 (9th Cir. 1986) (where a new defendant is added, the "critical inquiry" is whether it knew or should have known, but for a mistaken identity, it would have been named).

Here, Copart does not argue the KPIT entities should have known they were the proper defendants.  Thus, Copart has not satisfied Rule 15(c)(1)(C)(ii), which requires that the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  *See, e.g.*, *Ramos-Santoya v. Ins. Co. of State of Pa.*, 379 Fed. App'x 596, 597 (9th Cir. 2010) (no mistake of identity where plaintiff first sued the Mexican Embassy and later amended the complaint to sue the Embassy's insurer, explaining "[t]hat was a mistake all right, but not one of identity").  So whether the KPIT entities had actual

or constructive notice of the suit is irrelevant. Copart's professional negligence claim against the KPIT entities is time-barred. As noted, to the extent Copart's claim relies on newly discovered information involving defendants' alleged theft of the SAP Code, TAC ¶ 195, CUTSA preempts the claim. *See supra* Part VII. Thus, Copart's professional negligence claim against the KPIT entities is either time-barred or preempted, and summary judgment is appropriate.

In sum, the court GRANTS summary judgment on Copart's professional negligence claim brought against the KPIT entities but DENIES the motion as against Sparta.

X.      KPIT ENTITIES

The KPIT entities both move for summary judgment on all claims, arguing Copart has not shown how they are liable for Sparta's actions. *See* KPIT India Mot. at 10–14; KPIT Infosystems Mot. 15–17.

The parties do not dispute that employees from both KPIT entities worked on AIMOS. *See* SSUF 170, 177. But they dispute how many employees from each entity worked on the project and for whom they worked. *See, e.g.*, SSUF 177 (dispute whether Ashu Bhalla was employee of KPIT Infosystems when working on AIMOS); *see also* Bhalla Dep. at 40:9–16. They also dispute the level of responsibility KPIT employees had on the AIMOS project. *See, e.g.*, SSUF 171.

Their general participation aside, KPIT India and KPIT Infosystems each are specifically linked to AIMOS and the alleged misappropriation involving AutoEdge. As to KPIT India, after a Sparta employee e-mailed login credentials and instructed recipients to copy material to the AutoEdge system, KPIT India consultant Maugdha Gupte responded to confirm the copying was complete. *See* Takenouchi Decl. Exs. 34–36. As to KPIT Infosystems, consultant Chandrasekhar Bade, who logged thousands of hours on the AIMOS project, also apparently worked on the AutoEdge project. *See* Takenouchi Decl. Ex. 81 at 8–14, ECF No. 198-81 (timesheet); *id.* Ex. 132 at 2, ECF No. 222-40 (Bade cc'ed on April 17, 2013 e-mail entitled "AutoEdge Data manager – Initial Thoughts"). This evidence, though thin, overcomes defendants' motion. As discussed above, genuine disputes exist regarding Copart's trade secrets and computer hacking claims, and the evidence of KPIT entities' involvement in that alleged

46

misconduct is sufficient for the court to deny summary judgment.  Accordingly, the court DENIES KPIT India's and KPIT Infosystems's motions.  The court need not address Copart's other theories of alter ego or agency liability.

XI.    <u>CONCLUSION</u>

The court orders as follows:

The court DENIES in full Copart's motion for partial summary judgment on elements of its own claims.

The court GRANTS IN PART Copart's motion for summary judgment on Sparta's claims as follows:

-    The court GRANTS IN PART Copart's motion on Sparta's contract-related counterclaims.  The court DENIES summary judgment on Sparta's counterclaims for breach of contract and implied covenant of good faith.  The court GRANTS summary judgment on Sparta's counterclaims of promissory estoppel, quantum meruit and unjust enrichment.

The court GRANTS IN PART defendants' motions for summary judgment on Copart's claims as follows:

-    The court GRANTS IN PART Sparta's motion on Copart's contract claims.  Not only is Copart limited to its fraud theory to recover on the first seven milestones (Milestones 1 through 7), but it also is precluded from pursuing damages related to the remaining eight milestones for which it never paid (Milestones 8 through 15).

-    The court GRANTS IN PART Sparta's motion on Copart's fraud-related claims.  The court limits Copart's fraudulent inducement and fraud claims to reliance on specific statements as explained above, but DENIES summary judgment on these two claims.  The court GRANTS summary judgment on Copart's negligent misrepresentation claim.  The court DENIES summary judgment on the derivative claims, that is Copart's claims for unfair

47

competition, unjust enrichment, breach of implied covenant of good faith and fair dealing as well as declaratory relief.

- The court DENIES summary judgment on Copart's claim for trade secret misappropriation under CUTSA.

- The court GRANTS IN PART defendants' motion on Copart's claims on the basis of CUTSA preemption. The court GRANTS summary judgment on Copart's claims for common law misappropriation and conversion, which are wholly preempted. The court DENIES summary judgment on Copart's claims for unfair competition, unjust enrichment and professional negligence, although these claims are partially preempted, as discussed above.

- The court DENIES summary judgment on Copart's computer hacking claims under CFAA and CDAFA.

- The court GRANTS summary judgment on Copart's professional negligence claim brought against the KPIT entities as time-barred, but DENIES the motion as against Sparta.

This order resolves ECF Nos. 184, 185, 186 and 197.

IT IS SO ORDERED.

DATED: September 25, 2017.

_____
UNITED STATES DISTRICT JUDGE