1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COPART, INC.,                              No.  2:14-CV-00046-KJM-CKD

12                  Plaintiffs,

13          v.                                  ORDER

14   SPARTA CONSULTING, INC., KPIT
     INFOSYSTEMS, INC., AND KPIT
15   TECHNOLOGIES, LTD.,

16                  Defendants.

17

18          On February 9, 2018, the court heard argument on defendants' motion to bifurcate

19   and the parties' motions in limine filed in anticipation of the trial.  The court now resolves the

20   parties' motions as explained below.

21   I.     DEFENDANTS' MOTION TO BIFURCATE

22          Defendants have moved to bifurcate the trial into two phases.  ECF No. 290.

23   Defendants argue if Copart fails to prove its fraudulent inducement claim, limited by the court's

24   previous summary judgment order, ECF No. 264, then Copart's fraud and professional negligence

25   claims are barred due to waiver and the economic loss rule.  ECF No. 290 at 3, 4-6.  According to

26   defendants, if Copart fails on its fraudulent inducement claim, then the second phase of the

27   bifurcated trial "will be limited to [Copart's] computer hacking and trade secret misappropriation

28

                                                 1

claims, along with Sparta's contract counterclaims, greatly reducing the scope of trial." ECF No. 290 at 6.

Defendants assert bifurcation will promote judicial economy and prevent juror confusion because focus on the sole alleged statement by Sparta that "it would ensure 100% Copart Auction System [CAS] functionality" during "the Design Phase" would limit evidence presented in a first phase to the first six months of the two-year AIMOS project, make relevant fewer than five percent of the exhibits in this case and require calling of only seven out of thirty-six witnesses. *Id.* at 6-7. This limitation of exhibits and witnesses would result in the first phase of the trial being "just a few days." *Id.* at 7. Defendants would suffer prejudice without a bifurcated trial because Copart could "attempt to throw in every potentially negative comment and action by Sparta to sow juror confusion over what misrepresentations can support its claims." *Id.* at 7-8. Additionally, defendants assert a bifurcated trial would permit Sparta to revive its barred quasi-contract claims if Copart prevails on fraudulent inducement and parts of the contract are rescinded or voided. *See id.* at 8 (citing ECF No. 264 at 16-19).

In opposition, Copart argues it would have to present the same evidence twice under defendants' proposed bifurcation. ECF No. 341 at 1. Copart also contends defendants misread the court's order on summary judgment. *Id*. According to Copart, the court's order does not preclude Copart's fraud or professional negligence claims.

In reply, defendants acknowledge "[e]vidence presented in the first phase that also relates to the second phase will have to be presented again." ECF No. 347 at 2. Defendants assert this issue "can be addressed by instructing the jury that they are free to consider that evidence in the second phase of the trial." *Id*. According to defendants, "If [Copart's] signoffs [for Milestones 1-7] were not fraudulently induced, then they bar all claims related to Sparta's work product, including breach of contract, fraud, and professional negligence." *Id*. at 5.

A.    Legal Standard

Rule 42(b) of the Federal Rules of Civil Procedure provides in relevant part:

For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.

A court "has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro America Inc., v. Secure Invs., Inc.,* 266 F.3d 993, 998 (9th Cir.), *amended on denial of reh'g,* 272 F.3d 1289 (9th Cir.2001). Courts are more reluctant to bifurcate proceedings when there is "an overlap of factual issues." *Hunter v. City & Cty. of San Francisco,* No. 11-4911, 2012 WL 4831634, at *10 (N.D.Cal. Oct.10, 2012). Three factors are relevant to the inquiry: convenience, prejudice to the parties, and judicial economy. *Id.*; *see also Conboy v. Wynn Las Vegas LLC,* No. 2:11-CV-1649 JCM (CWH), 2013 WL 1701073, at *14 (D.Nev. Apr.18, 2013) (stating that a court considering bifurcation weighs "convenience, prejudice, judicial economy, risk of confusion and whether the issues are clearly separable").

B.    Analysis

Defendants' position is undermined by a misreading of the court's summary judgment order. ECF No. 264. The court recounts the relevant portions of that order below.

When addressing Copart's "contract-related claims" in a clearly delineated section of its summary judgment order, the court determined "Copart may still proceed on the first seven milestones under a fraudulent inducement theory." ECF No. 364 at 9, 12. The court concluded, "Copart may continue to seek a remedy for the first seven milestones, but only under its fraudulent inducement theory." *Id.* The court reasoned that Copart had waived "its right to sue for defects within the deliverables associated with [the first seven] milestones" by accepting the milestones through signing a "Milestone Sign Off" form. *Id.* at 11. The court also determined Copart "is precluded from pursuing damages related to the remaining eight milestones for which it never paid (Milestones 8 through 15)." *Id.* at 13. All of this analysis addressed Copart's breach of contract claims.

When discussing the parties' fraud-related claims, also in a clearly delineated section of its order, i*d.* at 19-27, the court first identified six statements that could possibly support Copart's various fraud claims. *Id.* at 22. The court then limited Copart's fraudulent inducement claim to a single statement: "Sparta's reassurances that it would ensure '100% CAS functionality.'" *Id.* at 23. Yet the court found Copart could pursue at trial five of the six

3

statements, or representations, related to its fraud claim. *Id.* at 25. The court also addressed

defendants' argument that "the economic loss rule bars Copart's claims." *Id.* Citing to its

previous order, ECF No. 55 at 18-19, the court concluded its "prior order largely precludes"

reliance on the economic loss rule bar. ECF No. 264 at 25. As a specific example, the court

determined Copart can base its fraudulent inducement claim "on statement (3), Sparta's assurance

of '100% CAS functionality.'" *Id.* After identifying that example for Copart's fraudulent

inducement claim, the court concluded, "The economic loss rule does not preclude Copart's

fraud-related claims." *Id.* at 25. The court reiterated the survival of both "Copart's fraudulent

inducement and fraud claims" as limited to "reliance on specific statements," distinct from the

court's limiting recovery "on the first seven milestones" to Copart's "fraud theory." *Id.* at 13

(limiting Copart "to its fraud theory to recover on the first seven milestones" and precluding

contract damages "related to the remaining eight milestones for which it never paid"); *id.* at 23

("Copart may proceed only on . . . statement (3) for its fraudulent inducement claim, and on all

six statements for its fraud claim."); *id.* at 47 (summarizing order on contract and fraud claims).

Also relevant here, the court denied summary judgment on Copart's professional

negligence claim as against Sparta. *Id.* at 48.[1] The court now applies the factors relevant to

determining if bifurcation of the impending trial is warranted.

### 1. Convenience to the Parties

Defendant argues "the vast majority of Copart's claims fall like dominoes" if

Copart fails to prove fraudulent inducement. ECF No. 290 at 4. But Copart's fraud claims are

not dependent on proving fraudulent inducement as explained above and previously in the court's

summary judgment order. *See* ECF No. 264 at 9-13, 19-27, 47. Thus, the vast majority of

---

[1] Although Sparta moved for summary judgment on Copart's fraud-based claims, arguing in part the economic loss rule barred those claims, neither Sparta nor any other defendant asserted the economic loss rule bars a professional negligence claim until Sparta provided the following sentence, without any supporting argument, in its Reply: "Moreover, the professional negligence claim also is barred by the economic loss rule." ECF No. 233 at 4; *see also* ECF Nos. 184-86 (defendants' motions for summary judgment). The court's order did not address that assertion. *See* ECF No. 264; *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1176 & n.4 (9th Cir. 1995) (issues not raised in opening brief may not properly be raised in reply). The court need not address the new stray sentence here to resolve defendants' motion to bifurcate.

1    Copart's claims do not necessarily fail if Copart fails to prove fraudulent inducement.  *See id.* at

2    47-48 (discussing remaining Copart claims of fraud, unfair competition, unjust enrichment,

3    breach of implied covenant of good faith and fair dealing, declaratory relief, trade secret

4    misappropriation, professional negligence, and computer hacking claims).  Additionally, the court

5    has twice rejected defendants' claims that the economic loss rule bars Copart's fraud claims.

6    ECF Nos. 55 at 18-19 & 264 at 25.  In light of the claims that will remain in the case even if

7    Copart fails to prove fraudulent inducement, and the overlap in evidence relevant to defendants'

8    proposed first and second phases of trial, the court finds bifurcation will not serve the purpose of

9    convenience.

10                    2.    Avoiding Prejudice

11           Defendants assert a lack of bifurcation will prejudice the jury because "Copart will

12    undoubtedly attempt to throw in every potentially negative comment and action by Sparta to sow

13    juror confusion over what misrepresentations can support its claims" if the court permits Copart

14    "the opportunity to proceed on both fraudulent inducement and general fraud at once."  ECF

15    No. 290 at 7-8.  And according to defendants, a bifurcated trial "would allow the [c]ourt to revive

16    Sparta's quasi-contract claims if Copart prevails on fraudulent inducement" because "[t]he court

17    barred Sparta from pursuing quasi-contract claims while there is a valid contract at issue."  *Id.*

18    (citing ECF No. 264 at 16-19.

19           Copart contends even if it could not prove fraudulent inducement, Copart "would

20    still be able to present much of th[e] same evidence in support of its non-contract claims."  ECF

21    No. 341 at 5.  "[P]resentation of the same evidence to the jury again would result in waste and

22    confusion . . . ."  *Id.* (citing *Hoyt v. Career Sys. Dev. Corp.*, No. 07-CV-1733-BEN (RBB), 2010

23    WL 2653368, at *3 (S.D. Cal. July 1, 2010) (denying bifurcation in part because it "would not

24    preclude having 17 [of 20] witnesses appear and testify to one issue and then return at a later date

25    to testify again on other issues" despite possibility of shortening second phase of trial).  Copart

26    also asserts defendants will not suffer prejudice due to unavailable quasi-contract claims; Copart

27    intends not to seek rescission but rather to hold defendants "to the terms of the contract and seek

28    damages."  ECF No. 341 at 10 (citing ECF Nos. 197, 224, 282-01; other citations omitted).  At

                                              5

hearing, the court held Copart bound to this assertion not to seek rescission, with Copart's agreement.  Hr'g Tr. (Feb. 9, 2018) at 6:6-18, ECF No. 359.

Although defendants point to the small number of exhibits and relatively few witnesses needed to try Copart's fraudulent inducement claim, defendants acknowledge "[e]vidence presented in the first phase that also relates to the second phase will have to be presented again." ECF No. 347 at 2.  Defendants contend any prejudice stemming from a need to present evidence twice could be cured by a jury instruction.  *Id.*

Defendants' contention that any prejudice can be cured by a jury instruction also applies to any prejudice to defendants.  *See Afshar v. City of Sacramento*, No. CIV S-04-1088LKKJFB, 2007 WL 779748, at *1 (E.D. Cal. Mar. 14, 2007) (denying bifurcation where "[c]oncerns about potential prejudice to the defendant may be directly addressed with appropriate limiting instructions" or "a special verdict form").  Copart's consistent position, to which it is now bound, is that it does not seek rescission but instead seeks contract damages if it proves fraudulent inducement.  This alleviates the risk to Sparta of prejudice from a lack of quasi-contract claims.  The court therefore finds defendants have failed to establish bifurcation will avoid prejudice to the parties.

3.      Judicial Economy

The court finds a bifurcated trial would not improve judicial economy.  Bifurcating the trial into two phases would require "time for deliberations by the jury on [the first] issue . . . and additional time to again submit the case to the jury."  *See Hoyt*, 2010 WL 2653368, at *3. As discussed above, a finding against Copart on fraudulent inducement would not dispose of the majority of Copart's claims.  *See Powell v. Union Pac. R. Co.*, No. CIV. 2:09-1857 WBS, 2013 WL 497636, at *3 (E.D. Cal. Feb. 7, 2013) ("[E]ven if the jury finds that plaintiff was not injured, that does not necessarily preclude a finding that, for example, [defendant] terminated [plaintiff's] employment in violation of [statute] . . . .").

Defendants' motion to bifurcate the trial, ECF No. 290, is therefore DENIED.

II.     NATURE OF RULINGS ON *IN LIMINE* MOTIONS

The court issues its rulings on motions *in limine* based on the record currently before the court.  Each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial.  If a party wishes to contest a pre-trial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds.  See Fed. R. Evid. 103(a); *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 89 (2015) ("Where a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial, which allows the court to make a final ruling.") (citation and internal quotation marks omitted).

III.    PLAINTIFF'S MOTIONS *IN LIMINE*

A.     Plaintiff's Motion *in Limine* One (ECF No. 273)

Copart moves to exclude internal documents describing Copart Auction System (CAS) functionality "that Copart generated before hiring Sparta to investigate and document CAS functionality."  ECF No. 273 at 1 (emphasis removed).  Copart identifies these documents as "CAS Confirmations."  *Id*.  Copart moves to exclude this evidence under Federal Rules of Evidence 401 and 403.  *Id.* at 2-3.  Copart contends these documents, which contained a list of documents for a possible contract exhibit that would be a representation of "what is 100% CAS," are irrelevant because they "have no bearing on Sparta's obligations under the ISA [Implementation Services Agreement] or Design SOW [design project statement of work]."  *Id.* at 2-3.  Furthermore, these documents "have scant probative value" because "[t]hey were never shared with Sparta [before discovery in this case]," which reflects "express contract language that put the onus on Sparta, not Copart, to fully investigate and document 100% CAS Functionality."  *Id.* at 3.  Thus, these documents "would confuse, mislead, and distract the jury about what the parties actually agreed to, what information Sparta actually relied on, Sparta's knowledge about the [documents], and what work Sparta agreed to perform under the express terms of the contracts."  *Id*.

In opposition, defendants contend these CAS Confirmations are relevant in part because Copart must prove reliance as an element of fraud or fraudulent inducement. ECF No. 301 at 1, 3-6. Additionally, the CAS Confirmations evince "a shared understanding at the time of contracting of the role of '100 of CAS Functionalities' as an input to rather than an output of the design phase." *Id.* at 6. Defendants argue these "certifications do not contradict the terms of the Design SOW; they help explain them." *Id.* at 7.

In reply, Copart contends "nothing in the CAS Confirmations can alter the express terms of the parties' contracts, which include clear language that puts the onus on Sparta to do a full investigation of '100% CAS' using the set of documents described in the CAS Confirmations as an "input," not an endpoint." ECF No. 328 at 3.

### 1. Rule 401

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probably than it would be without the evidence," and if "the fact is of consequence in determining the action."

Here, Copart's only remaining theory related to its contract claims is its fraudulent inducement theory. *See* ECF No. 264 at 12, 47. To show fraudulent inducement, Copart must show "justifiable reliance," or "reasonable reliance, i.e., circumstances were such to make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation." *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007), *as modified* (Dec. 26, 2007) (internal quotation marks, alterations and citation omitted). "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." *Id.* (citation omitted). For the court to deny relief to Copart under this element, "It must appear that [it] put faith in representations that were preposterous or shown by facts within [its] observation to be so patently and obviously false that [it] must have closed [its] eyes to avoid discovery of the truth." *Id.* at 865 (internal quotation marks and citation omitted); *see also Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014), *as modified on denial of reh'g* (Aug. 13, 2014) ("[A] plaintiff's particular

knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified.").

The CAS Confirmations are highly relevant to determining if Copart justifiably relied on representations by Sparta that "it would ensure 100% [CAS] functionality, despite evidence that it intended to complete only that which was in the design documents." *See* ECF No. 264 at 22. The CAS Confirmations explain Copart employees' perspectives on what constitutes "100% of the functionality of CAS" related to various department and department functions. *E.g.*, ECF No. 309-2 at 3 ("100% of the functionality of CAS related to the TSS department"); ECF No. 309-3 at 2 ("100% of the functionality of CAS related to the operations department and Canadian operations functions"). From these CAS Confirmations, a jury could determine whether Copart, based on its knowledge, can show justifiable reliance on Sparta's assurance of 100% CAS functionality.

However, Copart properly argues the CAS Confirmations are irrelevant to interpreting Sparta's contract obligations. When engaging in contract interpretation, courts have repeatedly refused to consider parties' "undisclosed intent" as irrelevant under California law. *See, e.g., Hasbro, Inc. v. Sweetpea Entm't, Inc.*, No. CV133406DMGJCGX, 2014 WL 12580250, at *6 (C.D. Cal. Feb. 25, 2014) (declining to reach Rule 403 analysis because "testimony about undisclosed intent or understanding is *irrelevant* to contract interpretation and would be inadmissible under Rule 401.") (emphasis in original); *Salehi v. Surfside III Condo. Owners' Assn.*, 200 Cal. App. 4th 1146, 1159 (2011) (holding declaration failing to "indicate whether [declarant] had communicated this intent to [opposing party]" contained "no competent extrinsic evidence" to determine "whether the [agreement] was ambiguous"); *Coremetrics, Inc. v. Atomic Park.com, LLC*, No. C-04-0222 EMC, 2005 WL 3310093, at *5 (N.D. Cal. Dec. 7, 2005) (declining to admit declaration provisionally to determine whether contract was fairly susceptible to more than one interpretation where there was "no evidence showing [declarant] communicated his belief to [the other party]"). Thus, based on the current record, these CAS Confirmations are not relevant for the purpose of interpreting Sparta's contractual obligations to Copart. Because

the court finds this evidence relevant for one purpose but not for another, the court turns to analysis under Federal Rule of Evidence 403.

2.  <u>Rule 403</u>

Rule 403 permits a court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1016 (9th Cir.2008) (excluding evidence under Rule 403 a matter of discretion).

First, the court observes at least some risk of confusing the issues and misleading the jury on the issue of contract interpretation if the court permits defendants to introduce evidence of the CAS Confirmations never released to defendants before discovery in this case. Though relevant, the probative value of these CAS Confirmations is not high because the CAS functionality described in these documents is also present in the contract provisions successfully negotiated between Copart and Sparta. *See* Takenouchi Decl. Ex. 2 (ISA), ECF No. 198-2 (stating under § 9.4 "[Sparta] acknowledges and agrees that Copart has delivered or made available to [Sparta] all information and documents [Sparta] has deemed necessary for [Sparta] to determine the requirements to achieve the replacement of 100% of CAS Functionalities (as defined in the initial Statement of Work)"); Takenouchi Decl. Ex. 3 (Design Statement), ECF No. 198-3 at 3, 20 (stating "design must include the following" and listing "100% replacement of CAS Functionalities"; reciting "[t]he documents and materials that were provided to [Sparta] include the BP310, BP315 and AP357 documents and CAS menu paths" and stating Sparta "will request any additional documentation [Sparta] needs to complete the Requirements Traceability Matrix").

The contract provisions in the ISA and Design Statement provide more information than that found in the CAS Confirmations, including the "Requirement Traceability Matrix." *E.g.*, ECF No. 198-3 at 23 (Design Statement). Copart's internal company emails discussing adding "the Requirements Traceability Matrix (RTM) document to [Copart's] list of items that make up 100% of CAS," in response to circulation of the CAS, suggests some risk of

10

1   misleading and confusing the jury by permitting defendants to introduce the CAS Confirmations.

2   *See* ECF No. 337-1 at 1-3.[2]

3           Although the court observes some risk of juror confusion, the court is not yet

4   convinced a risk of confusing the issues and misleading the jury substantially outweighs the

5   probative value of the CAS Confirmations as evidence of Copart's knowledge relevant to whether

6   Copart justifiably relied on Sparta's representations that Sparta would ensure 100% CAS

7   functionality. *See Hoffman*, 228 Cal. App. 4th at 1194. The court therefore DEFERS ruling on

8   Copart's Motion *in Limine* No. 1, ECF No. 273. The parties shall meet and confer, and Copart

9   shall propose a limiting instruction should any CAS Confirmations be admitted as evidence. *See*

10  *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (observing a limiting instruction

11  "minimized" any "resultant prejudice" and stating "we must presume that juries will follow

12  district court's limiting instructions"); *see also United States v. Smith*, 282 F.3d 758, 769 & n.4

13  (9th Cir. 2004) (observing court did not abuse discretion when admitting evidence with high

14  probative value and giving limiting instruction that the evidence only "bears on . . . [defendant's]

15  intent or knowledge . . . , and for no other purpose").

16      B.      Plaintiffs Motion *in Limine* Two (ECF No 274)

17          Copart moves to exclude evidence or arguments "concerning Copart's alleged

18  disputes with unrelated third-party vendors" under Rules 401, 403 and 404. ECF No. 274 at 2.

19  Copart contends these prior disputes are irrelevant because they involve "entirely different sets of

20  facts and parties," "could only be offered as evidence of Copart's character or reputation" in

21  violation of Rule 404, and would confuse the jury and waste time under Rule 403. *Id.* at 1-4.

22          In opposition, defendants contend "Copart's motion, by its own admission, does

23  not address or impact any evidence related to Accenture, a software company that began

24  designing and building AIMOS before Sparta was hired." ECF No. 302 at 1. Sparta requests the

25  court deny the motion or at least delay ruling on these issues until trial because the motion is

26

27          [2] Although this internal email might be inadmissible as a self-serving hearsay statement, at
    least two witnesses on Copart's witness list, Simon Rote and Vincent Phillips, *see* ECF No. 367-
28  1, may be able to testify to their understanding as reflected in the email communications.

overly broad. *Id.* at 3. Sparta cites examples of what it believes is relevant evidence, including deposition testimony of witnesses on Copart's witness list from other litigation "about the AIMOS project and CAS." *Id.* at 3. Sparta also refers to a deposition of Copart's former Director of Information Technology about negotiation tactics involving disputing or downplaying the quality and amount of work of the vendor or taking certain legal positions to obtain a lower payment or avoid payment altogether. *Id.* at 4 (citing ECF No. 281-8). Defendants contend these past negotiations reflect Copart's motive or intent in deciding to hire, fire and sue Sparta. *Id.* at 4-6.

Copart disputes defendants' arguments in reply. ECF No. 330. However, Copart "agrees that if evidence relevant to Copart's or Sparta's or the other defendants' conduct specific to the AIMOS Project is presented, that evidence would not be subject to exclusion just because it arose in the context of, for example, a Lightmaker deposition, or another project." *Id.* at 330 (emphasis removed).

The court has already reviewed the standards for Rules 401 and 403 above. Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Other acts evidence may be admissible under Rule 404(b) if it: (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged. *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). If the court finds all four elements established, "[t]he court must then assess the evidence under [Rule] 403." *Id.* (citation omitted).

First, the court acknowledges Copart's concession that a separate motion addresses evidence related to the software company Accenture. Thus, the court's ruling on this motion *in limine* does not address evidence related to Accenture, which is addressed separately below.

Second, the court questions the admissibility of evidence related to Copart's disputes with any third-party vendors other than Accenture or Sparta. Under the *Beckman* test, the court does not find the evidence offered as examples by defendants "tends to prove a material point in issue"—that is, Copart's motive or intent in deciding to hire, fire and sue Sparta. Even if evidence of disputes with other third-party vendors satisfied all four elements of the *Beckman* test, the court still finds this evidence substantially more prejudicial then probative. It likely will confuse issues, mislead the jury, and waste time because the evidence will spawn collateral mini-trials to disprove or rebut the evidence offered by Sparta of disputes with third-party vendors.

Additionally, the court fails to see how evidence of third-party disputes with vendors other than Accenture and Sparta could be admitted for a purpose unrelated to propensity. Because the court must assess this evidence under Rule 403 regardless, the court also finds the evidence substantially more prejudicial then probative because of the high risk the jury will treat the evidence as propensity evidence weighed against the relatively low probative value of this evidence as to Copart's motives or intent in this case. *See Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, No. 213CV05704CASEX, 2015 WL 10733384, at *5 (C.D. Cal. Aug. 24, 2015) (barring plaintiffs from introducing evidence "to establish that defendants have a pattern and practice of not paying their vendors" because these disputes were irrelevant to the case as "collateral matters," the evidence would "potentially cause undue delay and create a series of mini-trials on collateral matters that would be wasteful of the Court's time" and the evidence appeared "to be more in the nature of propensity evidence which would be unfairly prejudicial to defendants").

Defendants' citation to *Harris v. Lynwood Unified Sch. Dist.*, No. CV0705058 DDPCTX, 2009 WL 10673589, at *2 (C.D. Cal. Sept. 21, 2009), is unavailing. There, the court denied defendant's motion *in limine* to preclude plaintiff from introducing evidence of a board candidate's "racially inflammatory language." *Id.* The court observed that candidate was "ultimately elected to the Board," and "the comments [bore] directly on the [defendant's] motive and intent in taking the employment actions at issue in this case." *Id.* The comments there

1   addressed the issues in that case.  Here, in contrast, Copart's interactions with vendors other than

2   Accenture or Sparta—and unrelated to the AIMOS project—do not address the issues in this case.

3            The court tentatively GRANTS Copart's motion *in limine* no. 2 and will prohibit

4   introduction of evidence concerning any dispute between Copart and vendors other than

5   Accenture or Sparta, unless this evidence is relevant to Copart's or any of the defendants' conduct

6   specific to the AIMOS Project.

7            C.       Plaintiff's Motion *in Limine* Three (ECF No. 275)

8            Copart moves to exclude the termination letter Copart sent to Accenture, a

9   software company who worked on the AIMOS project before Copart replaced Accenture with

10  Sparta.  ECF No. 275 at 2.  Copart advances similar arguments to those described above in

11  Copart's Motion *in Limine* No. 2, including arguments to exclude this letter under Rules 401, 403

12  and 404.  *See generally* ECF No. 274.

13           In opposition, defendants distinguish this termination letter from other third-party

14  vendor evidence.  ECF No. 303.  The letter explained that Copart terminated the Accenture

15  contract because of Accenture's "inability to achieve the very purpose" of the project and alleged

16  misrepresentations.  ECF No. 196-5 at 1- 5; s*ee* ECF No. 264 at 23.  According to defendants, this

17  letter is relevant to the "justifiable reliance" element of Copart's fraud claims.  ECF No. 303 at 2.

18  Additionally, the letter shows "Copart's knowledge, intent, motive, and lack of mistake in hiring,

19  and later terminating, Sparta" under Rule 404(b)(2).  *Id.* at 2.  Defendants also contend the letter

20  is admissible "for credibility and impeachment purposes because of conflicting testimony that

21  Copart's witnesses offered at deposition."  *Id*.  Defendants advance similar arguments to those in

22  its opposition to Copart's Motion *in Limine* No. 2.  *See* ECF No. 303.

23           In reply, Copart contends introduction of this letter will require a mini-trial

24  clarifying the relationship between Copart and Accenture.  ECF No. 331 at 2.  Copart disputes

25  defendants' relevance arguments .  *Id.* at 4-5.  Copart also disputes defendants can use the

26  termination letter as evidence of Copart's lack of credibility, claiming Rule 608(b) prohibits this

27  use of the letter.  *Id.* at 6.

28

14

1          1.    Rules 403 and 404

2                The court finds this evidence relevant because, as discussed above in relation to

3     the justifiable reliance element of fraud claims, "[t]he reasonableness of the plaintiff's reliance is

4     judged by reference to the plaintiff's knowledge and experience." *OCM Principal Opportunities*

5     *Fun*, 157 Cal. App. 4th at 864 (internal quotation marks, alterations and citation omitted).

6     Specifically, the termination letter shows Copart had a prior dispute over the meaning of "100%

7     CAS functionality." ECF No. 196-5 at 3-4. Copart's knowledge of a previous issue regarding

8     achievement of 100% CAS functionality with a third-party vendor is highly relevant to whether

9     or not Copart justifiably relied on Sparta's alleged reassurance "it would ensure 100% [CAS]

10    functionality," the only statement supporting Copart's fraudulent inducement claim and one of

11    five statements supporting Copart's fraud claim. *See* ECF No. 264 at 22-25 (Order on Summ. J.).

12    The termination letter addressing 100% CAS functionality therefore qualifies for the

13    "knowledge" exception under Rule 404(b)(2). Additionally, the relevance of this letter satisfies

14    the first element of the *Beckman* test: that the evidence "(1) tends to prove a material point in

15    issue." *Beckman*, 298 F.3d at 794; *see Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764

16    RSWL MANX, 2013 WL 4663355, at *5 (C.D. Cal. Aug. 28, 2013) (finding other-act evidence

17    admissible in part because "the alleged reverse engineering [other act] of Apple's OS X is

18    precisely the conduct alleged to have occurred with the ACTS Software" and because this

19    "alleged reverse engineering . . . establishes [defendant's] knowledge").

20                The termination letter also satisfies the other three *Beckman* elements. This letter

21    "is not too remote in time" because it is dated only a few months before Copart and Sparta

22    executed the ISA. *Beckman*, 298 F.3d at 794; *compare* ECF No. 196-5 at 2 (July 26, 2011), *with*

23    ECF No. 198-2 at 22 (October 6, 2011). The letter is also "reliable enough to show the act was

24    committed" because Copart's general counsel signed the letter. *Beckman*, 298 F.3d at 794; *see*

25    ECF No. 196-5 at 6. And if Sparta introduces this letter "to prove intent," the termination letter

26    "is similar to the offense charged" in this case, including a dispute about 100% CAS

27    functionality, alleged misrepresentations, allegedly deficient work product, and inadequate

28

staffing.  Beckman, 298 F.3d at 794; *compare* ECF No. 196, *with* Third Am. Comply. (TAC)

¶¶ 10-11, 33, 51, 110, 193, 196, ECF No. 126.

Yet the court must still "assess the evidence under [Rule 403]." *Beckman*, 298

F.3d at 794; *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003) ("Even though

evidence is admissible under 404(b), it may nonetheless be excluded under Rule 403's balancing

test, which weighs the 'probative value' of the evidence against the 'danger of unfair

prejudice.'").  The court is concerned that the termination letter will mislead the jury if introduced

to show Copart's intent, not solely Copart's knowledge as relevant to whether or not Copart

justifiably relied on Sparta's representations.  The court therefore finds a limiting instruction, to

be proposed by Copart after meeting and conferring with defendants, could alleviate concerns

about misleading the jury.  *See Smith*, 282 F.3d at 769 & n.4 (observing court did not abuse

discretion when admitting evidence with high probative value and giving limiting instruction that

the evidence only "bears on . . . [defendant's] intent or knowledge . . . , and for no other

purpose").

2.  Rule 608

Federal Rule of Evidence 608(b) provides that "extrinsic evidence is not

admissible to prove specific instances of a witness's conduct in order to attack or support the

witness's character for truthfulness."  Fed. R. Evid. 608(b); *see also United States v. Jackson*, 882

F.2d 1444, 1448 (9th Cir. 1989) (finding "[s]pacific instances of misconduct . . . may not be

proved by extrinsic evidence. They may, however, in the discretion of the trial court, if probative

of truthfulness or untruthfulness, be inquired into on cross-examination.").

To the extent defendants seek to introduce the termination letter "for credibility

and impeachment purposes because of the conflicting testimony . . . offered at deposition," ECF

No. 303 at 2, the Ninth Circuit recognizes a limited doctrine of "impeachment by contradiction,"

which "is properly considered under Rule 607, not Rule 608(b)."  *United States v. Castillo*, 181

F.3d 1129, 1133 (9th Cir. 1999).  Rule 607 merely provides that "[a]NY party . . . may attack the

witness's credibility."  This "impeachment by contradiction" doctrine applies to direct testimony

or cross-examination.  *See United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL

4310712, at *1 (N.D. Cal. Sept. 28, 2017) (citing *United States v. Kincaid-Chauncey*, 556 F.3d 923, 933 (9th Cir. 2009)).  Rule 608(b) therefore does not preclude defendants from introducing the termination letter to contradict any direct testimony or cross-examination at trial.

   The court therefore DENIES Copart's motion *in limine* to exclude the Accenture termination letter, but Copart may propose a limiting instruction explaining the evidence is offered only for the purpose of determining whether Copart justifiably relied on Sparta's assurances of 100% CAS functionality and not for any other purpose, including intent, credibility or propensity.

   D. Plaintiff's Motion *in Limine* Four (ECF No. 276)

   Copart moves to exclude any testimony from Matthew Raabe about the interpretation of any provisions in the ISA because "Raabe was not privy to either party's understanding of" the ISA's terms at the time the ISA "was negotiated and executed."  ECF No. 276 at 2.  Copart maintains Raabe's unspoken subjective intent is irrelevant to contract interpretation, and Raabe lacks personal knowledge to speak to Copart's interpretation of ISA provisions as required by Federal Rule of Evidence 602.  *Id.* at 3-4  Additionally, Raabe's testimony "would create the risk of jury confusion."  *Id.* at 4-5.

   In opposition, defendants assert Raabe "was one of two 'primary' representatives to draft and negotiate the ISA" and "[h]e sent marked-up drafts to Sparta and negotiated directly with Sparta over the proposed changes and final terms of the agreements."  ECF No. 304 at 2.  Here, defendants contend "the proper course is to object at trial" once specific questions have been asked.  *Id*.  Defendants cite multiple portions of Raabe's deposition transcripts as support for Raabe's role in contract drafting and negotiations, including discussions with Sparta and "redlining the agreement back and forth" with Sparta.  *Id.* at 2-3 (citing Raabe Dep. 24:19-25:5, 122:24-125:5, ECF No. 309-1).  Copart also contends Raabe had "contact with Sparta during the negotiations" of the Design Statement and was "one of the 'primary negotiators'" of the Implementation Statement of Work related to the ISA.  *Id.* (citing Raabe Dep. 24:19-25:5, 26:1-25).

1          In reply, Copart directs the court's attention to three statements by Raabe to

2  support Copart's motion.  ECF No. 332 at 3.  First, Raabe did not "have a recollection of [Vincent

3  Phillips, Copart's Chief Information Officer] asking questions about a specific section and what it

4  meant."  Raabe Dep. at 122:16-23.  Second, Raabe did "not specifically" recall any meetings with

5  Sparta employees or representatives about their understanding of any particular contract

6  provisions. *Id.* at 122:24-123:5.  And third, Raabe did not recall any conversations with Vincent

7  Phillips about his understanding of provisions in Section 15.  *Id.* at 162:11-24, 182:17-21, ECF

8  No. 281 Ex. 8.  Copart relies on Raabe's inability to recall particular provisions to support its

9  motion.  ECF No. 332 at 3-5.

10         The court finds Copart's motion overbroad.  Even if Raabe lacked a recollection

11 about a specific section of the ISA, *see* ECF No. 276 at 2, Raabe also recalled "walk[ing] through

12 the documents" with Vincent Phillips and "redlining the agreement back and forth" with Sparta.

13 Raabe Dep. at 122:22-123:4).  *See, e.g., Christopher Corcoran v. CVS Health*, No. 15-CV-03504-

14 YGR, 2017 WL 3873709, at *13 (N.D. Cal. Sept. 5, 2017) (witnesses had sufficient knowledge of

15 contractual agreements "either through their actual involvement in crafting the contracts at issue

16 or their duties in implementing reimbursement programs between" the parties).

17         Although the court acknowledges that Copart may object to specific statements by

18 Raabe during Raabe's testimony on the basis of a lack of personal knowledge, the court DENIES

19 Copart's motion *in limine* no. 4, ECF No. 276.

20         Finally, to clarify the parties' disputes, the court ORDERS the parties to meet and

21 confer and provide, by the first day of trial, a joint annotated version of the relevant contracts, or

22 their competing versions, showing contract terms the parties request be construed either by the

23 court or the jury.

24    E.    Plaintiff's Motion *in Limine* 5 (ECF No. 277)

25         Copart moves to exclude defendants from introducing evidence about or argument

26 before the jury that Sparta completed "approximately 84% of Milestones 8 through 15."  ECF

27 No. 277 at 2.  Alternatively, Copart moves to exclude any evidence supporting the 84% figure not

28 identified in defendants' summary judgment briefing.  *Id*.

Specifically, Copart contends Sparta never disclosed its computation of damages or its alleged 84% completion rate, and Sparta failed to respond to interrogatories requesting these computations and percentages. *Id.* at 3 (citing ECF No. 281-5 at 16-17 (Interrogatory No. 14)). Additionally, Sparta's damages expert never disclosed the basis for calculation of the 84% figure in his expert report and testified he could not validate the 84% figure. *Id.* at 4 (citing ECF Nos. 285-11 ("I have been asked to assume, that [Sparta] has completed approximately 84 percent of the remaining milestones"); 285-21 (Eichmann Dep. at 27:7-28:21)). Sparta's corporate designee also refused to explain how Sparta calculated the 84% figure, citing attorney-client privilege. *Id.* at 4 (citing ECF No. 281-10 (Dep. at 295:4-296:10)).

In opposition, defendants contend Copart raised this identical argument in its motion for summary judgment, and the court rejected that argument. ECF No. 305 at 2 (citing ECF No. 264 at 16). Defendants contend a payment request letter Sparta sent to Copart contained the damage computations, defendants made appropriate initial disclosures, and defendants had no duty to supplement the disclosures where the damage computations had been otherwise made known to Copart. *Id.* at 3-5. In interrogatory responses, defendants specifically referenced "Sparta's October 18, 2013 letter, which set forth in detail the basis for its damages calculations." *Id.* at 5. Defendants also dispute Copart's characterization of defendants' expert reports, expert depositions, and depositions of defendants' corporate designee. *Id.* at 5-6.

In reply, Copart contends the 84% figure only pertains to "work under Milestone 8," and "Sparta has never produced a computation supporting its claim that it completed '84%' of Milestones 8 through 15." EF No. 333 at 2-3.

1.     Standard

Parties "must" disclose "a computation of each category of damages" and "must also make available for inspection and copying under Rule 34 the documents or other evidentiary material" on which the damages are based. Fed. R. Civ. P. 26(a)(1)(A)(iii), 34(a)(1). Rule 26(e) requires a party to "timely" supplement any responses to "an interrogatory, request for production, or request for admission . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information

19

has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." A party need not show bad faith by the non-disclosing party to obtain an exclusionary remedy. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

2.  Analysis

The court previously has observed that on summary judgment, "Sparta provide[d] competent evidence and calculations supporting its request for damages." ECF No. 264 at 16 (Order on Summ. J.). There, the court acknowledged Sparta sending to Copart "a payment request letter explaining two calculation methods," including one in which Sparta "had passed approximately eight-four percent of the 'test cases' Copart executed across the project's three geographic areas." *Id.*; ECF No. 196-13 (October 26, 2013 letter). This letter was not a brief summary; Sparta detailed its calculation totals and methods across multiple pages. *See* ECF No. 196-13 at 5-8. And in its opposition to Copart's motion for summary judgment, Sparta submitted a 27-page PowerPoint presentation detailing Sparta's calculations of its work for Copart. ECF No. 208-1. The court's order on summary judgment acknowledged this "evidence in the record supporting the 'test cases' [resulting in the 84% figure] calculation." ECF No. 264 at 16 (citing ECF No. 208-1 at 10-12).

Sparta did provide an initial disclosure, stating Sparta "seeks, among other things, damages for the work performed and completed by Sparta" under ISA § 15.2. ECF No. 198-87 at 10. Although Sparta had a duty to supplement this disclosure under Rule 26(e), if "the additional or corrective information has not otherwise been made known to the other parties," Sparta had no need to supplement because Sparta had already made known the information to Copart "in writing." *See* ECF No. 196-13 (October 26, 2013 letter). Additionally, that Sparta had already

20

made its damages computations known to Copart is evident in Sparta's incorporation of the October 18, 2013 letter into its interrogatory response.  ECF No. 198-89 at 16-17, 281-5 at 16-17.

Exclusion under Rule 37 is not appropriate because any failure was harmless, if not substantially justified.  Copart already had the information for Sparta's calculations.  And Sparta's expert, Eichmann, explained his reliance on the 84-percent figure based on deposition testimony, the October 26, 2013 letter, and the PowerPoint presentation previously relied on in the court's summary judgment order, thereby undercutting the risk of harm to Copart in the form of any surprise evidence.  *See* Eichmann Dep. at 21:15-29:11, ECF No. 207-33.  Moreover, Copart fails to explain why it did not bring a motion to compel while fact discovery was open if Sparta's production was lacking.

Although Copart accurately observes defendants have not expressly named Milestones 9 through 15 in these computations, this level of specificity might not be required by the ISA.  *See* ISA § 15.2 ("Termination for Convenience" requires Copart to pay "only for the portion of the Services that have been performed and completed as of the termination date[.]"); ECF No. 264 at 16 (holding on summary judgment "[w]hether Copart 'agreed' to Sparta's work [under § 15.2] thus becomes a fact-intensive inquiry not susceptible to resolution on summary judgment").  Additionally, in his deposition, Eichmann explained his understanding that "the objects that were being tested could be used for all of these remaining milestones as well" based on the October 26, 2013 letter, PowerPoint presentation, deposition testimony and conversations with Sparta employees.  Eichmann Dep. at 27:17-29:11.

Copart's citation to *Cohen v. Hansen*, No. 2:12-CV01401-JCM-PAL, 2014 WL 1873968, at *12 (D. Nev. May 8, 2014), is not persuasive.  There, plaintiffs "steadfastly maintained in [that] case that they were not required to provide a damages calculation by category and method with supporting documentation . . . ."  *Id.*  In contrast, here, Sparta provided Copart a computation of Sparta's damages before litigation occurred.  Nor does *Klamut v. Nibecker*, No. 15-CV-02132-MEJ, 2017 WL 1196725, at *2 (N.D. Cal. Mar. 31, 2017), help Copart.  There, plaintiff stated he was "still gathering information" in his initial disclosures, then supplemented a damages number more than a year later without making available "any evidentiary material to

support this computation." *Id.* In contrast, Sparta provided damage numbers and supporting computations quite early.

The court therefore DENIES Copart's motion *in limine* no. 5, recognizing the preliminary nature of this ruling, that Copart may object at trial to any evidence it believes "has not otherwise been made known" to Copart "during the discovery process or in writing" and that Copart can engage in vigorous cross-examination.

F.    Plaintiff's Motion *in Limine* Six (ECF No. 278)

Copart moves to exclude testimony or expert opinions from defendants' expert, Michael Shamos, about: (1) "other products that allegedly perform functions similar to the ZCL_IMAGING code"; (2) "the patentability of the ZCL_IMAGING code"; or (3) "whether ZCL_IMAGING qualifies as a trade secret." ECF No. 278 at 2, 6. Copart moves to exclude under Federal Rules of Evidence 702, 401, and 403, challenging Shamos under *Daubert v. Merrill Dow Pharmaceuticals, Inc.* (*Daubert I*), 509 U.S. 579, 593-97 (1993). *Id.* at 2-6.

Under Federal Rule of Evidence 701, a witness is authorized to provide opinion testimony that is "(1) rationally based on the witness's perception, and (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. If an opinion witness's testimony is based on "scientific, technical, or other specialized knowledge," admissibility of the opinion is governed by Rule 104, a general rule regarding preliminary questions a court must address, and Rule 702, the rule governing expert opinions. Fed. R. Evid. 104, 702. Taken together, Rules 104 and 702 focus attention on whether the expert witness is qualified to testify, whether such testimony is relevant and whether such testimony is reliable. *Id.*; *Daubert I*, 509 U.S. at 594-95.

In assessing whether an expert has the appropriate qualifications, the court considers whether the expert offers some special knowledge, skills, experience, training or education on the subject matter of the testimony contemplated. Fed. R. Evid. 702; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). If an expert is not qualified to render an opinion on a particular question or subject, it follows her opinion cannot assist the trier of fact as to that particular question or subject. *Morin v. United States*, 534 F. Supp. 2d 1179, 1185 (D. Nev.

2005), *aff'd*, 244 F. App'x 142 (9th Cir. 2007) ("Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.").  In assessing whether the expert's testimony will be relevant, the opinion must "logically advance[] a material aspect of the proposing party's case."  *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995).  The basic standard of relevance is a liberal one.  *Daubert I*, 509 U.S. at 587.

Scientific evidence is reliable if the principles and methodology used by the expert proffering it are supported by "appropriate validation" or "good grounds."  *Id*. In *Daubert I*, the Supreme Court provided a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including (1) whether the theory or methodology can be and has been tested; (2) whether "the theory or technique has been subjected to peer review and publication;" (3) the "known or potential rate of error;" (4) the "existence and maintenance of standards controlling" the methodology's operation; and, finally, (5) general acceptance in the relevant community.  *Id.* at 593-94.

*Daubert II* elaborated on the *Daubert I* factors, clarifying that experts may demonstrate scientific reliability of a theory or methodology by showing "the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication."  *Daubert II*, 43 F.3d at 1318.  Alternatively, testifying experts may also show the validity of a theory by explaining "precisely how [the experts] went about reaching their conclusions and point[ing] to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field."  *Id.* at 1319.

In determining reliability, "the expert's bald assurance of validity is not enough," *id.* at 1316, a rule meant to ensure "junk science" is kept out of the federal courtroom.  *Id.* at 1321 n.18.  Rather, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation

of the expert's methodology." *Id.* at 1316. The trial court is accorded wide discretion when acting as a gatekeeper for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert I*, 509 U.S. at 596, and the court may fulfill its gatekeeping role with a dedicated hearing allowing for voir dire of the expert, *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002). The court DENIES this motion without prejudice. Should Copart wish to renew this *Daubert* challenge at trial, it should alert the court so that it may schedule limited voir dire outside the presence of the jury before Shamos is called to testify.

G.      Plaintiff's Motion *in Limine* Seven (ECF No. 279)

Copart moves to exclude "any testimony or evidence regarding a client in Colorado for whom Defendants purportedly developed ZCL_IMAGING." ECF No. 279 at 2. Copart contends defendants "raised this theory for the first time in their motion for summary judgment, and failed to provide any discovery whatsoever to support their specious claim." *Id.* Specifically, defendant KPIT Technologies, Inc. (KPIT India) supported its summary judgment assertion "with a declaration from KPIT employee Manish Kumar," that another Sparta employee in Denver, Colorado had developed methodology that came to be known as ZCL_Imaging. *Id.* (citing ECF No. 193 ¶ 11). Kumar claims an email supports his statement, but "[t]he email contains no mention of the ZCL_IMAGING solution as a whole, of a client in Colorado, or of the scope of work for any such alleged client." *Id.* at 3.

Copart contends it "served multiple requests for production on Defendants relating to the development of the imaging materials that were copied from AIMOS into Defendants' AutoEdge system," and defendant "Sparta's initial disclosures never claimed that Sparta had documents relating to the 'independent' development in Colorado of the technology that Sparta's documents show was copied from AIMOS." *Id.* Additionally, defendants' theory "contradicts the testimony of Sparta's 30(b)(6) witness Vaibhav Nadguada, who testified that ZCL_IMAGING was created specifically for Copart." *Id.* Copart concludes by claiming it "was

24

not afforded an opportunity to take discovery regarding [defendants'] new theory," and permitting defendants' witnesses to testify "regarding an unidentified client for whom ZCL_IMAGING was allegedly developed" would prejudice Copart and confuse the jury. *Id*. at 5.

In opposition, defendants assert Copart had an opportunity to investigate the development of ZCL_IMAGING after adding a claim for misappropriated trade secrets as part of Copart's third amended complaint. ECF No. 307 at 2. Copart itself identified "Sparta employee Manish Kumar, who Copart acknowledged could offer testimony regarding . . . 'use of Copart property for other purposes." *Id.* (citing ECF No. 289-3 at 7). Sparta's disclosures identified one witness for the first time—Kumar. *Id.* at 3. All other Sparta-disclosed witnesses other than Kumar had been deposed. *Id*. All three defendants disclosed Kumar as someone having knowledge of "AutoEdge development; the alleged misappropriation of trade secrets and Copart proprietary information; [and] the allegedly unauthorized access of Copart's computer systems." ECF Nos. 309-18, 309-20, 309-21. Defendants contend Copart had an opportunity to depose Kumar and serve interrogatories "focused on the development of the ZCL_IMAGING code," but Copart did not. ECF No. 307 at 3.

Federal Rule of Civil Procedure 26 governs Copart's motion and defendants' required disclosures. Rule 37(c)(1) prohibits use of any "information or witness to supply evidence" that the party "fails to provide" under Rules 26(a) or (e) "at a trial, unless the failure was substantially justified or is harmless."

Here, defendants have directed the court's attention to evidence "properly disclosed" under Rule 26: the witness himself, the subject matter of discoverable information for that witness, and relevant documents about ZCL_IMAGING.[3] *See* ECF Nos. 193, 193-3, 309-18,

---

[3] At hearing, defendants also responded to Copart's argument in its Reply that defendants "only introduced [their] theory after the close of discovery." ECF No. 335 at 2. Defendants directed the court's attention to defendants' answers to Copart's TAC, in which all defendants asserted an affirmative defense of "Independent Development" of "the information that Copart alleges [defendants] misappropriated." *See* ECF Nos. 132 at 57, 137 at 26, 138 at 27; *see also* Hr'g Tr. (Feb. 9, 2018) at 40:4-24. Copart asserted defendants should have raised that point in their opposition and requested an opportunity to brief this issue separately if the court relies on defendants' argument. The court declines the request for supplemental briefing on this issue.

25

20-21.  Copart had the opportunity to depose Kumar, but Copart did not do so, utilizing four of five depositions available to Copart after filing its third amended complaint adding a claim for misappropriated trade secrets and before close of fact discovery.  *See* ECF No. 307 at 6; ECF No. 140 at 3.

Copart supports its argument that conflicting evidence warrants exclusion by citing *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3453529, at *4 (N.D. Cal. May 29, 2015).  But this case does not apply here.  In *Clear-View*, the plaintiff "testified in its Rule 30(b)(6) deposition that only one sale . . . had been made."  *Id*.  The court granted defendants' motion in limine excluding evidence "of the purported twelve other orders . . . unless and until [plaintiff] shows that the evidence supporting those orders were properly disclosed pursuant to Rule 26's requirements."  *Id*.  In contrast here, even if 30(b)(6) deposition testimony conflicts with other exhibits or witness testimony about ZCL_IMAGING, defendants disclosed the relevant witness, the subject matter of his testimony, and relevant documents.  Any contradiction between 30(b)(6) testimony and defendants' disclosures goes to the weight and believability of the evidence, not its admissibility.

Because Copart had an opportunity to depose Kumar or pursue other discovery related to its new misappropriated trade secrets claim, the court finds the prejudicial effect of the evidence subject to this motion in limine does not substantially outweigh its probative value.  The court also does not find that the evidence at issue will confuse the jury.

For the most part, Copart's citation to multiple cases merely reflects "a general proposition" that "no party will be allowed to offer facts or documents that were not disclosed in discovery that go beyond information provided in discovery."  *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 WL 4208317, at *4 (N.D. Cal. Nov. 27, 2007).  These cases do not apply here, where defendants disclosed the relevant witness, the subject matter of discoverable information for that witness, and the relevant documents.

---

Kumar's declaration falls squarely within the parameters of the defense defendants pleaded in their answers.

1    In its reply, Copart cites numerous cases to support its arguments.  For instance,

2    *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 556 (N.D. Cal. 2009), involved a "late disclosure,"

3    which is inapplicable here.  Additionally, *Endurance Am. Spec. Ins. Co. v. LanceKahian & Co.*,

4    No. CV F 10-1284 LJO DLB, 2011 WL 4375264, *3-5 (E.D. Cal. 2011), is not analogous

5    because defendants failed to disclose a damages theory, explicitly required by Federal Rule of

6    Civil Procedure 26(a)(1)(A)(iii), until after the close of discovery.  *See also Accentra Inc. v.*

7    *Staples, Inc.*, No. CV 07-5862 ABC RZX, 2010 WL 8450890, at *6 (C.D. Cal. Sept. 22, 2010)

8    (granting motion in limine to exclude new patent infringement theories never pleaded in

9    complaint, raised in infringement contentions, or pursued during discovery and to exclude

10   witnesses identified after close of discovery).

11            Accordingly, Copart's motion *in limine* no. 7, ECF No. 279, is DENIED.

12       H.       Plaintiff's Motion *in Limine* Eight (ECF No. 280)

13            For its final motion *in limine*, Copart seeks to exclude "all evidence related to the

14   damages sought by defendant [Sparta] arising from allegedly unpaid travel expenses and

15   purportedly unpaid invoices for work outside the scope of the [ISA]."  ECF No. 280 at 2.  Copart

16   contends Sparta's counterclaims for breach of contract and breach of the implied covenant of

17   good faith and fair dealing are limited to the ISA by Sparta's own claims. *Id.* (citing ECF No. 132

18   ¶¶ 102, 114).  According to Copart, Sparta only disclosed damages for "services" under the ISA,

19   which does not include "expenses."  *Id*. at 4.  This failure to disclose precludes Sparta from

20   offering at trial evidence of expenses or work outside the ISA's scope.  *Id.*  Additionally, such

21   evidence is not relevant to Sparta's reimbursement for services under ISA, and the probative

22   value of this evidence "is substantially outweighed by the danger of . . . unfair prejudice,

23   confusing the issues or misleading the jury."  *Id.* at 5.

24            In opposition, defendants contend Copart's failure to specify what damages it

25   claims are outside the ISA warrants denying Copart's motion. ECF No. 308 at 2.  Defendants

26   offer examples of "time and material" contracts identified in an expert report, asserting "some of

27   [these] contracts, in fact, explicitly mention the ISA or the AIMOS Build SOW."  *Id.* at 3; *see*,

28   *e.g.*, ECF No. 309-8 ("This Exhibit is subject to the terms and conditions of the [ISA] . . . .").

Defendants observe other documents reference a "Master Services Agreement," which defendants contend evidence shows to be the ISA. ECF No. 308 at 3. Sparta disclosed this category of damages and all relevant documents. *Id.* at 3-4 (citing ECF No. 309-11 (referring to "corresponding unreimbursed expenses")).

This motion is similar in part to Copart's motion *in limine* no. 5, ECF No. 277. In both motions, Copart contends Sparta failed to disclose damages computations in violation of Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Here, Copart contends more specifically that "Sparta failed to disclose damages computations for expenses and projects outside the scope of the ISA during discovery and never identified any documents purportedly supporting either category." ECF No. 280 at 3. Yet defendants have disclosed these damages computations in detail through Eichmann's Expert Report. *See* ECF No. 207-1; *Crescenta Valley Water Dist. v. Exxon Mobil Corp.*, No. CV 07-2630-JST (ANX), 2013 WL 12095206, at *2 & n.5 (C.D. Cal. June 24, 2013) (finding plaintiff fulfilled Rule 26(e) obligations to supplement in part through deposition testimony and deposition exhibits despite not providing this updated information "in the form that [d]efendants' [sic] would have liked").

However, this court, in ruling on summary judgment, determined Sparta "may be entitled to payment for the 'portion of the Services that have been performed,' ISA § 15.2, as referenced in the Statements of Work, *id.* §§ 1.32, 2.1." ECF No. 264 at 16. The court found "the Contract's provisions limit Copart to services payment obligations only, narrowly limit how additional compensable services may be added to the Contract, and preclude Sparta from recovering any 'indirect, incidental, special, or consequential damages' for services under the agreement." *Id.* at 18.

The Eichmann expert report does refer to work "outside the scope" of the two AIMOS phases. *E.g.*, ECF No. 207-1 ¶¶ 19 & n.41, 22, 25. On the other hand, defendants have offered examples of contracts indicating they are "subject to the terms and conditions of the [ISA]," list "reimbursable expenses" under "services" the "Assigned Employee shall provide," and refer to "Section 15.2 of the ISA." *E.g.*, ECF Nos. 309-8, 309-9.

In light of the uncertainty involving a contract interpretation issue and the apparent need to allow evidence regarding construction of the term "services" under the ISA, the court DENIES Copart's motion. *See Hot Rods, LLC v. Northrop Grumman Sys. Corp.*, 242 Cal. App. 4th 1166, 1175-76 (2015) ("Ordinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning. The language, in such a case, must be 'reasonably susceptible' to the proposed meaning.") (internal quotation marks and citation omitted). Copart remains free to engage in vigorous cross-examination, and defendants are on notice that Copart may object to evidence of work Copart believes is outside the scope of the ISA.

## IV.    DEFENDANTS' MOTIONS *IN LIMINE*

### A.    Defendants' Motion *in Limine* One (ECF No. 266)

Defendants move to exclude evidence of lost profits and an expert report on lost profits written by Dr. Mohan Rao, Ph.D. (the Rao Report). Defendants first contend this court's summary judgment order, ECF No. 264, precludes Copart from pursuing lost profits damages. Second, defendants contend the Rao Report is not based on sufficient facts or data, and the Rao Report's data and methods are unreliable. *See* ECF No. 321 at 5-10.

In opposition, Copart argues the court's summary judgment order does not prohibit Copart's pursuit of lost profits damages. ECF No. 310 at 8-9. Additionally, the Rao Report's analysis is based on sufficient facts or data and is the product of reliable principles and methods, reliably applied to the facts here. *Id.* at 9-13.

First, the court addresses defendants' contention that the court's summary judgment order prohibits Copart from introducing evidence of lost profits. The court granted summary judgment on Sparta's motion for summary judgment, ECF No. 184 at 26, in which Sparta asserted "Copart suffered no damage resulting from Sparta's alleged non-performance of its obligations under [milestones 8 through 15] and "Copart's breach of contract claim fails as a matter of law." ECF No. 264 at 12-13. Moreover, the parties' own letters to the court after the hearing on summary judgment reflect an understanding that the court's questioning about

29

damages for milestones 8 through 15 pertained to "breach of contract damages." ECF No. 256 at 2 (defendants' letter); *see* ECF No. 251 at 1-3 (Copart's letter).

Although the court's order on summary judgment does contain at points some expansive language, the order addresses Sparta's motion on damages for milestones 8 through 15 in its analysis of Copart's contract-related claims. *See* ECF No. 264 at 9-12. The court also recited California law on proving damages for breach of contract claims. *Id.* at 12. Thus, the court's order limited summary judgment against Copart on Milestones 8 through 15 to Copart's contract-related claims. *See id.* at 47 (granting in part "Sparta's motion on Copart's contract claims" and concluding Copart "is precluded from pursuing damages related to the remaining eight milestones for which it never paid").

Defendants' remaining claims are a challenge to expert testimony falling under *Daubert I*, 509 U.S. at 593-97. The court has reviewed the standards for these challenges in analyzing Copart's motion *in limine* no. 6 (ECF No. 278), as discussed above. Similarly here, the court recognizes "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert I*, 509 U.S. at 596. Additionally, the court may fulfill its gatekeeping role with a dedicated hearing allowing for voir dire of the expert. *Hanford*, 292 F.3d at 1138. The court therefore DENIES the motion without prejudice. Should Copart wish to renew this *Daubert* challenge at trial, it should alert the court so it may schedule limited voir dire outside the presence of the jury before Rao is called to testify.

B.     <u>Defendants' Motion *in Limine* Two (ECF No. 267)</u>

Defendants move to exclude percipient expert testimony and opinions of Phatela Mosothoane, Rama Prasad and Justin Chapman, arguing that they "seek to testify on matters far beyond their personal knowledge." ECF No. 267 at 6. Copart responds that "each of the employees has personal and in-depth exposure to the topics on which they will testify." ECF No. 311 at 2. Copart also contends this court's summary judgment order limited Copart's available damages in multiple ways. ECF No. 267 at 9-10.

On August 17, 2016, the court issued an amended scheduling order. ECF No. 140. There, the court defined "expert as follows:

> For purposes of this scheduling order, an "expert" is any person who may be used at trial to present evidence under Rules 702, 703 and 705 of the Federal Rules of Evidence, which include both "percipient experts" (persons who, because of their expertise, have rendered expert opinions in the normal course of their work duties or observations pertinent to the issues in the case) and "retained experts" (persons specifically designated by a party to be a testifying expert for the purposes of litigation). A party shall identify whether a disclosed expert is percipient, retained, or both.

*Id.* at 4.

Copart filed its expert disclosures on November 23, 2016. *See* ECF No. 169 at 2. The disclosures listed Mosothoane, Prasad and Chapman as employee-experts under Federal Rule of Civil Procedure 26(a)(2)(C). *Id*. at 2-6. Copart did not serve expert reports for these witnesses on defendants but instead provided a brief summary of each witness's background, the subjects about which each witness would testify and the basis for each witness's testimony. *Id*. Witnesses under Rule 26(a)(2)(C) must disclose only "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). A written report is required only "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). This court previously found Copart's three employee experts fell under Rule 26(a)(2)(C) and the written report requirement does not apply to them. ECF No. 182 at 6.

1. <u>Legal Standard</u>

The 2000 Amendments to Federal Rule of Evidence 701 distinguish between expert and lay testimony. "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Fed. R. Evid. 701 advisory committee's note on 2000 amendments (citation omitted). Expert opinions do not require a report where "the opinion is based on information the expert witness acquired through percipient observations" but require a report where "as in the case of retained experts, the

31

opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue." *United States v. Sierra Pac. Indus.*, No. CIV S-09-2445 KJM EFB, 2011 WL 2119078, at *4 (E.D. Cal. May 26, 2011).  A "non-reporting expert witness" who offers "expert opinions beyond percipient facts . . . 'morphs' into a reporting expert." *F.D.I.C. v. Anderson*, No. 2:11-CV-01061-GEB, 2013 WL 146427, at *5 (E.D. Cal. Jan. 14, 2013) (citing *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819-20 (9th Cir. 2011).

### 2.      Phatela Mosothoane

Defendants argue that Mosothoane joined Copart almost a year after the completion of Milestone 7 and "seeks to offer sweeping opinions about Sparta's documentation of AIMOS during Milestones 1 through 7."  ECF No. 267 at 7.  Defendants contend Mosothoane's opinions are not limited to what he learned in the course of his job duties but rather are grounded in a review of documents produced in this litigation.  ECF No. 322 at 9.

In opposition, Copart contends "Mosothoane participated directly in Copart's attempts during AIMOS to understand and improve Sparta's design and build" and can offer relevant testimony without "having been on the AIMOS Project for its entire two-year lifespan."  ECF No. 311 at 9-10.  According to Mosothoane's Expanded Disclosure Report, his opinions are based on his "experience in SAP implementations" and "direct involvement in the Project" as well as "direct involvement in Copart's assessment of Sparta's work after the termination of Sparta and review of the SAP environment produced by Sparta."  ECF No. 267-2 at 4.

### 3.      Rama Prasad

Defendants contend that Prasad "proposes to value Copart's legacy CAS imaging solution, not the ZCL_IMAGING code that Copart asserts was stolen," but that Prasad "did not work on the CAS legacy system" and has used documents produced in litigation to arrive at the estimates he proposes.  ECF No. 267 at 8.  Copart argues that Prasad will testify "about his assessment of Copart's imaging technology, and the value of that technology, based on firsthand use of it."  ECF No. 311 at 10.  According to Prasad's Expanded Disclosure Report, in addition to his "direct involvement in managing the imaging technology developed by [his] predecessors,"

some of his opinions are based off of "Copart documentation (including payroll records and invoices) concerning imaging development costs" and "analysis of former Copart CIO David Bauer's deposition testimony in this action concerning the development of technology." ECF 267-3 at 3-4.

4.     Justin Chapman

Defendants assert Chapman's knowledge of the expenses related to the AIMOS project is limited to his subsequent involvement in Copart's 2014 capital impairment—an accounting calculation—process because he "joined Copart in 2014, months after this case began and years after many of the expenses he opines upon were incurred." ECF No. 267 at 15. Additionally, defendants contend Chapman relies on documents produced in this litigation and second-hand data collection and analysis. *Id.* at 16; *see* ECF No. 26-7 (Chapman deposition).

Copart argues Chapman was a "direct participant in the impairment and the calculation of Copart's AIMOS costs" and "someone with an intimate knowledge of Copart's finances," easily satisfying Rule 701. ECF No. 311 at 7. According to Chapman's Expanded Disclosure Report his opinions are based on his "accounting expertise," "direct involvement in Copart's 2014 capital impairment," "knowledge of Copart's expenses and financial records" and "review of documents produced in this litigation related to Copart's losses." ECF No. 267-4 at 3.

5.     Analysis

Defendants argue that all three employee witnesses seek to testify on matters far beyond their personal knowledge. ECF No. 267 at 6. Copart argues it is well established that sufficient personal knowledge to testify "can come from review of the contents of files and records." ECF No. 311 at 8 (citing *Washington Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (finding personal knowledge sufficient when the declarant was the official records custodian); *Aniel v. GMAC Mortg., LLC*, No. C 12-04201 SBA, 2012 WL 5373388, at *6 (N.D. Cal. Oct. 30, 2012).

Mosothoane, Prasad and Chapman may not render opinions based on information obtained outside of their personal knowledge, specifically documents that have been produced in this litigation, without an expert report filed under Federal Rule of Civil Procedure 26(a)(2)(B).

As percipient experts, the witness's testimony is restricted to expert opinions rendered in the normal course of their work duties. Courts have previously recognized the opinions of these witnesses as "historical opinions." *See, e.g.*, *Johnson v. St. Mary*, No. S-06-0508 WBS EFB PS, 2006 WL 3001872, at *2 (E.D. Cal. Oct. 19, 2006) ("Percipient experts are . . . limited to testifying to their historical opinions and the reasons for them" and "may be asked to testify to their opinions given in the past and the reasons concerning the development of those opinions," but "they may not be asked to render a current opinion for the purposes of the litigation.").

Based on the court's reading of the current record, the court DEFERS ruling on defendant's motion *in limine* no. 2, ECF No. 267. The court will discuss this motion with the parties on the first day of trial to determine if focused voir dire of any of these witnesses will clarify the contours of their testimony. The court makes the following preliminary observations:

Mosothoane may testify based on his experiences working with the AIMOS team, his experience leading the team at Copart to assess reusability of Sparta's work product from the AIMOS project and review of documents as part of his work duties but may not testify based on any "review of documents produced by defendants" as part of this litigation, including "the SAP environment produced by Sparta." *See* ECF No. 267-2 ¶¶ 7, 9, 17, 28, 33-37, 41; *see Goodman*, 644 F.3d at 819 (observing treating doctors "reviewed information provided by [plaintiff's] attorney that they hadn't reviewed in the course of treatment" and holding in that context "Rule 26(a)(2)(B) required disclosure of written reports"). Based on the current record, the court does not find Mosothoane's proposed testimony irrelevant or duplicative of testimony of Copart's retained expert, LaBaron Hartfield.

Prasad may not testify based on his review of any documents produced in this litigation, including review of David Bauer's deposition transcript or associated exhibits. Although the court declines to preclude Prasad from testifying at this stage, the court questions the probative value of Prasad's opinions based on his "direct involvement in managing the imaging technology developed by [his] predecessors," or Copart's legacy CAS imaging technology. ECF No. 267-3 at 3.

1    Chapman may testify based on his direct involvement in Copart's 2014 capital

2    impairment conducted in April and May of 2014 and his personal knowledge of Copart's

3    expenses and financial records, including his calculation of the original impairment charge, but he

4    may not testify based on his "review of documents produced in this litigation relating to Copart's

5    losses."  *See* ECF No. 267-4 ¶ 7; *see also Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403

6    (3d Cir. 1980) (holding "personal knowledge of appellant's balance sheets acquired by [witness]

7    as [appellant's] accountant was clearly sufficient under Rule 602 to qualify him as a witness

8    eligible under Rule 701"); *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir.

9    1989) (holding inferences "that businessmen customarily draw" may count "as personal

10   knowledge, not hearsay").

11           Additionally, to the extent Chapman testifies to any facts or opinions relevant to

12   Copart's damages suffered from a misappropriation of trade secrets, those facts could only

13   support "a reasonable royalty rate" to the extent such support is possible.  *See* ECF No. 264 at 31

14   (holding on summary judgment "the undisputed facts undermine" a claim that "the alleged

15   misappropriation caused damages" but concluding the alleged trade secrets "would have some

16   value to support a royalty rate").  Any testimony of Chapman related to Milestones 8 through 15

17   cannot apply to Copart's contract claims.  *See id.* at 9-12.  To the extent Chapman's testimony

18   fails to distinguish between Milestones 1 through 7 and Milestones 8 through 15, the court will

19   entertain a limiting instruction.

20           C.      Defendants' Motion *in Limine* Three (ECF No. 268)

21           Defendants move to exclude testimony of David Bauer, contending his testimony

22   is irrelevant and inadmissible because he "has no knowledge of the development costs of

23   ZCL_IMAGING, and therefore no information to provide related to a reasonable royalty rate for"

24   the code at issue here.  ECF No. 323 at 3; *see* ECF No. 268 at 2, 6.  Copart opposes, contending

25   Bauer's testimony is relevant to prove all three required elements of Copart's trade secret

26   misappropriation claim, including damages.  ECF No. 312 at 3-6.

27           Copart has defined its alleged trade secret as "a compilation of source code, SAP

28   objects, and other materials that were included in the 'class ZCL_IMAGING' that Sparta created

                                          35

as part of its deliverables for Copart. This 'class' includes a combination of custom and standard SAP source code, and data tables that replicated the imaging functionality in Copart's CAS system." Opp'n to KPIT India's Mot. for Summ. J. at 12-13, ECF No. 210. Copart also referred to "overwhelming evidence that [d]efendants copied the materials from AIMOS into their AutoEdge system." *Id.* at 16.

Bauer was not familiar with any work Copart, or others on Copart's behalf, did on ZCL_IMAGING before he left in 2011. Bauer Dep. at 134:14-19. Bauer was not working with Sparta and Copart in May of 2013 on any imaging project. *Id.* at 180:23-25. The relevance of Bauer's testimony is questionable, and the probative value of Bauer's testimony appears to be low.

Bauer did recognize in an internal Sparta email some field names and abbreviations he used in the database that was part of the CAS imaging system. Bauer Dep. at 167:1-174:4. However, as explained below in discussing Copart's motion *in limine* no. 8, ECF No. 288, Copart has not defined its alleged trade secret as the CAS imaging system. And Bauer's testimony about CAS imaging development costs could risk substantial prejudice because Bauer was unable to discuss specifically project development costs across different "key results" for the CAS imaging system, only one of which relates to ZCL_Imaging. *See* Bauer Dep. 101:22-102:23, 111:3-18. Bauer's testimony regarding project development costs for the CAS imaging system could confuse the issues or mislead the jury with respect to Copart's trade secret misappropriation claim.

Despite the court's skepticism as to the relevance of Bauer's testimony and its probative value weighed against the risk of unfair prejudice, confusing the issues or misleading the jury, the court DEFERS ruling on defendants' motion *in limine* no. 3, ECF No. 268.

D.     Defendants' Motion *in Limine* Four (ECF No. 269)

Defendants move to exclude any reference to witness Matthew Raabe's dismissed criminal conviction from 1995. Defendants move under Federal Rules of Evidence 402, 403, 404 and 609, arguing discussion of Raabe's dismissed criminal conviction is irrelevant, unduly prejudicial and inadmissible. ECF No. 269 at 3. Copart "concedes that Rule 609 precludes

Copart from introducing Raabe's overturned conviction to impeach him at trial" but contends defendants may "open the door" with testimony by Raabe about whether he was forthcoming to Copart about his prior work experience. ECF No. 313 at 3. Defendants reply "the door will remain firmly closed to Mr. Raabe's hiring process and unrelated tenure in Orange County." ECF No. 324 at 2.

Between June 2011 and March 2014 Raabe, a potential witness for defendants, was Copart's Director of Information Technology. ECF No. 269 at 3. Raabe helped negotiate and draft contracts at issue here and has testified about Copart's relationships with vendors like Sparta. *Id*. Before working for Copart, Raabe was an Assistant Treasurer of Orange County. In 1995, Raabe was indicted and convicted of securities fraud and misappropriating public funds for his role in Orange County's bankruptcy. *Id*. at 4. But Raabe prevailed on appeal in 2000, the case was remanded and the prosecution declined to prosecute. *Id*.

Federal Rule of Evidence 609(e) allows convictions pending on appeal be used for impeachment. Defendants direct the court to an Eleventh Circuit case discussing a conviction reversed on appeal and subsequently dismissed by the government. There, the court held "appellants did not and could not seek to introduce [witness's] prior conviction under Federal Rule of Evidence 609." *United States v. Van Dorn*, 925 F.2d 1331, 1337 (11th Cir. 1991). The Fourth Circuit has also held a reversed conviction is inadmissible under Federal Rule of Evidence 609. *United States v. Russell*, 221 F.3d 615, 620 (4th Cir. 2000) ("[I]t is elementary that once a conviction has been reversed, it cannot be used to impeach the accused."). These cases comport with the Ninth Circuit's holding in a case pre-dating Rule 609(e) that convictions pending on appeal are admissible for impeachment "until the judgment of the lower court is reversed." *United States v. Allen*, 457 F.2d 1361, 1363 (9th Cir. 1972). This court therefore agrees with the Eleventh and Fourth Circuits that, under Rule 609(e), "once a conviction has been reversed, it cannot be used to impeach the accused." *Russell*, 221 F.3d at 620.

Even if Rule 609(e) is not a general bar to admitting successfully appealed convictions, Rule 609(b) prohibits admitting evidence of Raabe's successfully appealed convictions. Rule 609(b) prohibits admitting a conviction or evidence of a conviction more than

ten years old unless "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Here, a conviction more than twenty years old that was successfully appealed, with no subsequent prosecution, has minimal probative value. Weighing that minimal probative value against the likely prejudicial effect of convictions for securities fraud and misappropriating public funds, the court finds Rule 609(b) prohibits introducing evidence of Raabe's successfully appealed convictions from 1995.

Copart maintains Raabe may be impeached under the "opening the door" doctrine. ECF No. 313 at 3. Defendants state in reply "the door will remain firmly closed." ECF No. 324 at 2. Under the "opening the door" doctrine, the "introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir.1988).

The court finds it highly unlikely a 1995 conviction could be introduced to rebut testimony of honesty to an employer in 2011 when the convictions in question had been successfully appealed ten years before the employee began working at that company. Moreover, to the extent any line of questioning could "open the door," the court observes that a door is not opened "to otherwise inadmissible evidence by [a witness] doing no more than providing a truthful answer to a direct question." *United States v. Osazuwa*, 564 F.3d 1169, 1176 (9th Cir. 2009) (finding defendant's testimony in response on direct examination as to how much time he had spent in prison for bank fraud, that he spent one day in prison, did not open door to prosecution to introduce collateral details of defendant's bank fraud conviction).

Accordingly, defendants' motion *in limine* no. 4 is GRANTED.

E.  Defendants' Motion *in Limine* Five (ECF No. 270)

Defendants move to exclude any reference to the expunged assault conviction of a former Sparta employee's misdemeanor conviction. ECF No. 270. Copart opposes this motion, asserting this conviction is relevant because it "made it abundantly apparent" that the employee "was not qualified to lead" or manage "the AIMOS project" especially in light of complaints by

the employee's subordinates during the AIMOS project.  ECF No. 318 at 2-3, 5.  Copart also

asserts the evidence is admissible under Federal Rule of Evidence 404(b).  *Id.* at 5.  Copart

clarifies that it does not intend to use this evidence to impeach the employee under Federal Rule

of Evidence 609 based on the prior conviction.  *Id.* at 9.

In reply, defendants assert "there is no evidence [the employee] managed the

individual who was assaulted, no evidence [the employee] ever physically assaulted or threatened

any Sparta or Copart employees, and no evidence that this one incident bears any relevance to

[the employee's] ability to successfully manage an ERP software implementation."  Reply to

Defs.' Mot. in Lim. No. 5 at 5.

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible

to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character."  However, "[t]his evidence may be admissible for another

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Copart fails to show how this evidence offered serves a purpose other than to

prove propensity.  *See United States v. Major*, 676 F.3d 803, 808 (9th Cir. 2012).  Evidence of the

former Sparta employee's assault shows that same employee was more likely to be an abusive,

ineffective manager during his time at Sparta.  The court therefore questions Copart's asserted

purpose under Rule 404(b) for introducing this evidence.

Even if the court could admit this evidence under Rule 404(b), the court must still

"assess the evidence under [Rule] 403."  *Beckman*, 298 F.3d at 794 (citation omitted).  The court

finds the evidence to be of relatively low probative value because it does not relate to any conduct

related to Sparta or the AIMOS project.  It is not clear from the record that the former Sparta

employee managed the assault victim, and the connection between an assault at a hair salon

before working on a software project and management of employees for that software project is

tenuous.  The probative value of the assault evidence in "establish[ing] that Sparta breached its

contractual commitment to provide only qualified managers and consultants" is even lower.

1   Weighed against the highly prejudicial nature of introducing evidence of a physical assault, the

2   court finds the evidence inadmissible under Rule 403.

3           Copart remains free to "present evidence about" the employee's "aggressive and

4   abusive treatment of AIMOS Project employees" to show the employee "was not qualified to

5   manage the AIMOS Project and was an ineffective manager." ECF No. 318 at 5. Copart's

6   evidence on this matter, discussed in Copart's opposition, reveals evidence of the expunged

7   assault conviction would be "needlessly . . . cumulative evidence" and therefore inadmissible

8   under Rule 403.

9           Accordingly, the court GRANTS defendants' motion *in limine* no. 5, ECF

10  No. 270.

11      F.      Defendants' Motion *in Limine* Six (ECF No. 271)

12          Defendants move to exclude any testimony or argument at trial that the alleged

13  trade secret in this case was transferred to KPIT Infosystems or KPIT India. ECF No. 271 at 2, 6.

14  Copart opposes, contending there is clear evidence that KPIT defendants were involved in

15  misappropriation of materials created for the AIMOS project. ECF No. 314 at 7-8. And Copart

16  need not show the trade secrets "were copied into a new separate computer system by the KPIT

17  defendants" to prevail on its trade secret misappropriation claim. *Id.* at 8.

18          At summary judgment, Copart responded to defendants' statement of undisputed

19  facts that Copart "lacks knowledge to admit or deny" that the alleged trade secrets were

20  transferred to KPIT India or KPIT Infosystems computers. ECF No. 325 at 76, 83. Also at

21  summary judgment, Copart asserted these trade secret materials "were kept in an AutoEdge

22  system that was accessible to anyone who worked for the Defendants." ECF No. 213. The court

23  has previously acknowledged "genuine disputes" about "Copart's trade secrets and computer

24  hacking claims, and the evidence of KPIT entities' involvement in that alleged misconduct is

25  sufficient for the court to deny summary judgment." ECF No. 264 at 46-47. The court also

26  reasoned defendants could not succeed on summary judgment as to Copart's trade secret

27  misappropriation claims "by asserting the SAP Code was inoperable and never incorporated into

28

                                              40

any product." *Id.* at 29 (citing *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 65 (2014)).

Copart has not provided or referred to any evidence showing the alleged trade secrets were transferred to KPIT India or KPIT Infosystems computers. Any lay testimony lacking in personal knowledge would be speculative and inadmissible under Federal Rule of Evidence 602. *Cal. Found. for Indep. Living Ctrs. v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1045 (E.D. Cal. 2015) ("Courts have found lay witness testimony unhelpful and thus inadmissible if it is mere speculation, an opinion of law, or if it usurps the jury's function.").

However, Copart's available arguments will depend on evidence admitted at trial. Thus, defendants' motion *in limine* no. 6, ECF No. 271, is DENIED. Defendants remain free to point to Copart's lack of evidence and defendants' own evidence on the alleged trade secret remaining only in the AutoEdge system.

G.      Defendants' Motion *in Limine* Seven (ECF No. 272)

Defendants move to exclude at trial any evidence and argument related to possible witness Terry Ash's retention of a backup file under Federal Rules of Evidence 401 and 402, 404(b) and 608. ECF No. 272 at 3. Copart opposes, arguing Ash's credibility will be a key issue at trial and the retention of documents is relevant to Ash's violating his duties to Copart and his bias against Copart. ECF No. 319 at 5. Defendants contend Copart's argument is vague and "will necessitate an inquiry into how Mr. Ash was put on formal notice of the (unspecified) duties," which will in turn "create a lengthy and distracting sideshow". ECF No. 327 at 2.

1.      Relevance

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Ninth Circuit has determined that evidence is relevant to a matter of consequence to the determination of the case if it has a mere tendency to impeach a "witness's credibility by a showing of bias or coercion." *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000). Defendants argue Ash's post-employment possession of Copart documents should be excluded because it is "irrelevant to Sparta's performance under the

41

Implementation Services Agreement." ECF No. 272 at 4. Copart argues that Mr. Ash's "conduct during the AIMOS project, and his violation of express duties to Copart, are relevant to credibility, bias and motive." ECF No. 319 at 4.

Bias is "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Hankey*, 203 F.3d at 1171 (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). "[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id*. Defendants argue that Ash, a former senior Copart executive on the AIMOS project, "will put to bed Copart's manufactured allegations." ECF No. 327 at 3. Copart argues that the relevance of Ash's retaining the backup file is that "Ash's misconduct relates to the very project at issue in this litigation, and his willingness to put his own pecuniary gain over the interests of his then-employer and now adversary (Copart). . . is compelling evidence of Ash's credibility." ECF No. 319 at 8. This court finds evidence of Ash's retaining Copart documents after his employment ended is probative of potential bias against his former employer and therefore relevant.

2. Rule 608(b)

Federal Rule of Evidence 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purposes of attacking or supporting the witness's credibility . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b); *see also United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir. 1989) (finding "[s]pecific instances of misconduct ... may not be proved by extrinsic evidence. They may, however, in the discretion of the trial court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination."). While Rule 608(b) is limited by the prohibition against the use of extrinsic evidence, this rule has been interpreted to prohibit the admission into evidence of documents or testimony by another witness to prove prior misconduct not resulting in a conviction. *Id*. Defendants argue the retention of documents here is inadmissible evidence under Rule 608(b) because it "sheds no light on [Ash's] truthfulness as a witness." ECF 272 at 7. Copart disputes extrinsic evidence "that Ash deceived Copart" is

42

inadmissible to attack Ash's character and argues that "Ash's actions after being recruited by Sparta, and the fact that those actions benefited him and undermined Copart" are admissible to show bias. ECF No. 272 at 7. Defendants reply Ash's deception relates only to the seeking of alternative employment and that "such alleged conduct has nothing to do with the instant motion." ECF No. 327 at 4.

Rule 608(b) does not bar the introduction of evidence to show that the witness is biased. Rule 608(b) regulates the admissibility of evidence offered to prove the truthful or untruthful character of a witness. *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir.1984); see also *United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984) ("Evidence that happens to include prior misconduct may be admissible" when "offered to show the witness's possible bias or self-interest in testifying). Copart argues Ash's conduct is relevant to whether his "testimony against Copart at trial will also be influenced by his pecuniary interests now that Sparta is his employer". ECF No. 318 at 6. The court finds Rule 608(b) does not apply here as the Rule is limited to extrinsic evidence and Copart has not argued it intends to introduce the actual documents that Ash retained but rather intends to inquire into misconduct on cross-examination.

3. <u>Rule 403</u>

Rule 403 permits a court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also In re Hanford Nuclear Reservation Litig.*, 534 F.3d at 1016 (excluding evidence under Rule 403 is a matter of discretion).

Defendants assert that Copart will rely on Ash's retention of documents to "conflate Mr. Ash's alleged wrongdoing with Defendants' alleged mismanagement of the AIMOS project," which will force the defendants to "litigate a multitude of new issues." ECF No. 272 at 7. Defendants list eight specific issues that would lead to distracting and time-consuming litigation at trial if the evidence of Ash's retention of documents is admitted. ECF No. 272 at 8. Copart argues that the "evidence is being used to show Ash's bias, not his liability" and emphasizes that the evidence bears upon the credibility of the witness. ECF No. 319 at 9.

43

1    This court finds that any prejudicial effect of the evidence may be mitigated at trial

2    by Ash's testifying the backup file was for routine "security purposes," he "never used this

3    backup file" and he did not provide files from the backup file to anyone at Sparta. *Cf. United*

4    *States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979) (reasoning "counsel was able to mitigate the

5    prejudicial effect of the testimony through effective cross examination"). Thus, any potential

6    prejudice to defendants does not substantially outweigh the probative value of this evidence, and

7    the evidence is admissible under Rule 403.

8            Accordingly, defendants' motion *in limine* seven is DENIED.

9        H.      Defendants' Motion *in Limine* Eight (ECF No. 288)

10           Defendants move to preclude Copart from departing from its stated definition of

11   the allegedly misappropriated trade secret in Copart's opposition to summary judgment. ECF

12   No. 288. Copart opposes, contending it has consistently maintained that the "ZIMAGING" and

13   "ZIMG" packages were part of the misappropriated trade secrets. ECF No. 339 at 2-3, 5-9. In

14   reply, defendants contend as part of the meet and confer process for this motion, "Copart

15   resurrected its previously debunked claims that its trade secrets at issue were: Paymetrics, all of

16   Copart's imaging functionality, a long list of documents describing parts of its technology, and

17   the code and objects in the ZIMG and ZIMAGING packages." ECF No. 345 at 2.

18           In its opposition to KPIT Technologies' Motion for Summary Judgment, Copart

19   defined the trade secret in this case as "a compilation of source code, SAP objects, and other

20   materials that were included in the 'class ZCL_IMAGING' that Sparta created as part of its

21   deliverables for Copart. This 'class' includes a combination of custom and standard SAP source

22   code, and data tables that replicated the imaging functionality in Copart's CAS system." Opp'n

23   to KPIT India's Mot. for Summ. J. at 12-13, ECF No. 210.

24           In support of Copart's contention that it is not limited to its own definition offered

25   at summary judgment, Copart directs the court's attention to its first amended responses to

26   Sparta's fourth set of interrogatories: "The stolen imaging functionality includes the global class

27   ZCL_IMAGING and its dependent tables, and all contents of the 'ZIMAGING' and 'ZIMG'

28   packages in the AutoEdge "sandbox" produced by Sparta on September 2, 2016." ECF Nos. 288-

3 at 5, 342-3 at 5.  Copart also refers to a reference in its opposition to KPIT India's motion for summary judgment to "ZIMAGING and ZIMG packages in the AutoEdge system" as part of Copart's claim that "source code" contained in "the ZCL IMAGING and ZCL packages"[4] was "Copart's property under the ISA."  Opp'n to KPIT India's Mot. for Summ. J. at 15 & n.3.  At hearing on summary judgment, when asked "what's claimed as the trade secret," Copart counsel responded, "The ZCL class, which includes code, tables and custom fields and also the Z image class, those are both the trade secrets that defendants misappropriated here."  Summ. J. Hr'g Tr. at 33:7-11, ECF No. 255.  On summary judgment, Copart "withdr[ew] its claim that Paymetric credit card functionality is a 'trade secret'."  Opp'n to KPIT India's Mot. for Summ. J. at 2 n.3.

Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory position to prevail in another phase."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  However, "[a] judicial admission must be deliberate, clear, and unambiguous."  *Dhaliwal v. KS Chandi & Sons, Inc.*, No. 1:13-CV-00484-LJO, 2014 WL 4968274, at *4 (E.D. Cal. Sept. 30, 2014).  Courts have applied judicial estoppel to a plaintiff's definition of trade secrets.  *E.g.*, *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1360-61 (C.D. Cal. 1995), *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997) (holding "plaintiff must be judicially estopped from arguing now, in a desperate attempt to avert summary judgment, that . . . 'different' trade secrets are really the subject of its claims" where the court has "relied on plaintiff's previous assertions," including in its findings "in a written order").

Additionally, California law requires a plaintiff "seeking relief for misappropriation of trade secrets" to "identify the trade secrets and carry the burden of showing that they exist."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993)).  A plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).

---

[4] Copart now contends this was a typo, stating Copart intended to write, "ZIMAGING and ZIMG packages."  *See* ECF No. 339 at 6.

Here, Copart has consistently maintained that "ZIMAGING" and the "ZIMG"
packages were part of its trade secret claims.  The magistrate judge ruled Copart had "sufficiently
identified the trade secrets at issue" in her August 31, 2016 order.  ECF No. 146 at 1.  And Sparta
had notice of Copart's definition of the trade secrets at issue after receiving Copart's first
amended responses to Sparta's fourth set of interrogatories on December 2, 2016.  *See* ECF Nos.
288-3 at 8, 342-3 at 9.  Despite some unclear wording when defining the trade secret at one point
in its opposition to summary judgment, Copart has not indicated it has abandoned its position that
the ZIMAGING and ZIMG packages were part of the trade secrets at issue.  Even at the summary
judgment hearing, where the court sought a more precise definition of the trade secrets at issue,
Copart still referred to the "Z image class" as part of the claimed trade secret.  *See* Summ. J. Hr'g
Tr. at 33:7-11.  However, Copart has not referred to Copart's "imaging functionality" more
generally as a trade secret throughout the summary judgment phase of the case, and Copart has
disclaimed the Paymetric credit card functionality as a trade secret.

Thus, defendants' motion *in limine* no. 8 is GRANTED in part, as follows: Copart
may contend at trial that the trade secrets at issue in this case are "a compilation of source code,
SAP objects, and other materials that were included in the 'class ZCL_IMAGING'," including "a
combination of custom and standard SAP source code, and data tables that replicated the imaging
functionality in Copart's CAS system" and "all contents of the 'ZIMAGING' and 'ZIMG'
packages in the AutoEdge 'sandbox' produced by Sparta on September 2, 2016."  Copart may not
revive its abandoned trade secret claim for Paymetric credit card functionality or assert generally
that Copart's imaging functionality is a trade secret at issue in this case.  *See MAI Systems, Inc. v.
Peak Computer, Inc.,* 991 F.2d 511, 522 (9th Cir.1993) (identification not specific enough when
plaintiff claimed only that "diagnostic software and operating system" contained valuable trade
secrets); *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 1142204, at *3
(N.D. Cal. Mar. 2, 2018) (rejecting categories including "methods for implementing" as "not even
com[ing] close to identifying plausible trade secrets with 'reasonable particularly' as required by

1   [California Code of Civil Procedure] [s]ection 2019.210")[5]; *Waymo LLC v. Uber Techs., Inc.*,

2   No. C 17-00939 WHA, 2017 WL 6887040, at *8 (N.D. Cal. Nov. 14, 2017) (rejecting assertions

3   that a trade secret "encompassed not only the information contained in the schematic itself but

4   also strategies or concepts 'reflected' in the schematic").

5        I.     <u>Defendants' Motion *in Limine* Nine (ECF No. 289)</u>

6         Defendants move to exclude the testimony at trial of four witnesses not disclosed

7   until Copart listed those witnesses on its trial witness list as part of the parties' joint pretrial

8   statement for the final pretrial conference. ECF No. 289; *see* ECF Nos. 282-3, 286. Those four

9   witnesses are Gene Boyd, Mike Mortensen, Zach Stenzler and Michael Stewart. *Id.* at 2. Copart

10   opposes, contending Copart complied with disclosure requirements because the witnesses were

11   identified during depositions, and any non-disclosure was harmless or substantially justified.

12   ECF No. 340 at 4-5, 6-9.

13         Under Federal Rule of Civil Procedure 26, a party must disclose information for

14   "each individual likely to have discoverable information—along with the subjects of that

15   information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P.

16   26(a)(1)(A)(i). Rule 26(e)(1)(A) requires that a party supplement its disclosures under Rule 26(a)

17   "in a timely manner if the party learns that in some material respect the disclosure or response is

18

19

20       [5] The magistrate judge determined that "[d]iscovery in this matter is not governed by California Code of Civil Procedure § 2019.210." ECF No. 146 at 1. The court is aware of other

21   cases in this district holding that Section 2019.210 is inapplicable where that statute conflicts "with the Federal Rules of Civil Procedure." *AtPac, Inc. v. Aptitude Sols., Inc.*, No. CV S-10-294

22   WBS KJM, 2010 WL 11571246, at *1 (E.D. Cal. Sept. 22, 2010) (citing *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007). However, as the

23   *Funcat* court observed, binding Ninth Circuit authority in *IMAX Corp.*, 152 F.3d at 1167,

24   "determined at summary judgment that a trade secret claim was insufficiently set forth" without reference to Section 2019.210 and "after full federal discovery had been permitted." 2007 WL

25   273949, at *3 n.3. Although courts in the Northern District of California have applied Section 2019.210 outside of the discovery context, *e.g.*, *Openwave Messaging, Inc. v. Open-Xchange,*

26   *Inc.*, No. 16-CV-00253-WHO, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018) (summary judgment), the court declines to resolve that issue here, instead relying on the above Northern

27   District cases for analogous reasoning.

28

incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." A party need not show bad faith by the non-disclosing party to obtain an exclusionary remedy. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Copart relies on *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1000 (9th Cir. 2006), asserting "it is well established that witnesses should not be excluded from testifying when their identities are revealed on a pretrial witness list, even though they were not included on initial or supplemental disclosures." ECF NO. 340 at 6. However, in that case, the court observed that the "actual close of discovery" had not yet occurred, observing a party subpoenaing a third-party witness later. *First Alliance*, 471 F.3d. at 1000 n.3. Courts have also excluded witnesses disclosed after the discovery cutoff when defendants were unable to depose those witnesses. *E.g.*, *Sanchez v. California*, No. 1:12-CV-01835-SAB, 2015 WL 2185186, at *12 (E.D. Cal. May 8, 2015) (excluding witnesses disclosed after discovery cutoff who defendants were unable to depose); *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 13376731, at *3 (N.D. Cal. July 6, 2015) ("[W]itnesses and evidence disclosed after the close of fact discovery are out under Fed. R. Civ. P. 37(c)."). Other courts have permitted witnesses learned of through depositions before discovery closed. *E.g.*, *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584 H (POR), 2008 WL 4001066, at *3 (S.D. Cal. Aug. 28, 2008) (defendant knew of the witnesses "prior to the close of discovery" because "their identities were discussed and disclosed" during a deposition); *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812-13 & n.3 (E.D. Cal. 2006) (allowing witnesses that were "disclosed and discussed in depositions taken of other witnesses" but excluding another witness because he had not "been previously disclosed during the course of discovery").

1    Fact discovery first closed in this case for depositions on May 16, 2016.  ECF

2    No. 114.  The parties exchanged expert reports related to Copart's second amended complaint on

3    May 31, 2016.  ECF No. 346-5.  Later, the court re-opened discovery only for Copart's new

4    claims in the Third Amended Complaint, until October 28, 2016.  ECF No. 140 at 3.

5            Here, only one witness was disclosed through a deposition before the close of fact

6    discovery for claims relevant to that witness.  Boyd was referenced once along with the names of

7    multiple other people in an April 29, 2016 deposition as part of a project not directly related to the

8    litigation—a project other than the AIMOS project.  ECF No. 346-3 at 6.  "The mere mention of

9    an individual during a deposition is insufficient to place the opposing party on notice that that

10   individual would be called at trial."  *Sanchez v. California*, No. 1:12-CV-01835-SAB, 2015 WL

11   2185186, at *12 (E.D. Cal. May 8, 2015) (citing *Ollier v. Sweetwater Union High School

12   Dist.,* 267 F.R.D. 39, 343 (S.D.Cal.2010) *aff'd*, 768 F.3d 843 (9th Cir.2014)); *see Rhodes v. Sutter

13   Health*, 949 F.Supp.2d 997, 1010 (E.D.Cal.2013) (finding deposition testimony not sufficient to

14   put party on notice even where witness was repeatedly mentioned in depositions).

15           However, at hearing Copart explained it has offered Boyd "for a very limited

16   purpose," which is "to show that Copart did . . . have IT security policies in place during the time

17   of the AIMOS project."  Hr'g Tr. (Feb. 9, 2018) at 55:2-10.  Copart stated it "initially disclosed

18   Dennis Cavanagh as its chief of IT security during the AIMOS project," and "Cavanagh's emails

19   were produced to the other side."  *Id.* at 55:3-6.  Yet defendants "never asked to depose Mr.

20   Cavanagh."  *Id.* at 55:6.  Because Cavanagh "is no longer with the company," Copart has offered

21   Boyd as a substitute witness for Cavanagh.  Copart conceded it would bear the costs associated

22   with a limited reopening for a short deposition of Boyd.  *Id.* at 57:13-16; *see also Paladin

23   Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164-65 (9th Cir. 2003) (affirming district

24   court's ordering party to pay costs and attorneys' fees associated with the defendants' depositions

25   of witnesses designated after the district court's deadline).

26           The court therefore DENIES in part defendants' motion as to Boyd, but ORDERS

27   the parties to meet and confer to depose Boyd for four hours in California.  Copart shall pay all

28

costs and attorneys' fees associated with this deposition. The court now discusses the other three witnesses subject to this motion.

Stewart was identified as Copart's "corporate controller" in a January 4, 2017 deposition, well after the close of all phases of fact discovery. ECF No. 346-2 at 3. Additionally, Copart's disclosure about Stewart indicates only that he would "testify about Copart's business and damages." ECF No. 286-1 at 5.

Stenzler was disclosed in the Rao Report, served on May 31, 2016, then mentioned again during Rao's depositions on January 3 and 17, 2017. Rao's depositions occurred after the close of both fact discovery phases in the case. And the Rao Report was disclosed to defendants after the close of the first phase of fact discovery.

Mortensen also was disclosed in the Rao Report and during Rao's depositions. Additionally, Mortenson was disclosed during the deposition of Diane Yassa on May 19, 2016. ECF No. 346-4 at 3. However, these disclosures all occurred after the close of the first phase of fact discovery.

Stewart, Stenzler and Mortenson were not sufficiently disclosed under Federal Rule of Civil Procedure 26(a) or 26(e). *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 343 (S.D. Cal. 2010), *aff'd*, 768 F.3d 843 (9th Cir. 2014) ("Certainly the mere mention of a name in a deposition is insufficient to give notice to the opposing party that [the other party] intend[s] to present that person at trial. To suggest otherwise flies in the face of the requirements of Rule 26(a) and (e)."); *Rhodes,* 949 F.Supp.2d at 1010 (Even where witness "was repeatedly mentioned" in "various depositions," and proponent claimed failure to disclose "was an honest mistake," the opposing party "should be able to rely on Rule 26 disclosures and not be required to second guess whether a disclosing party has purposefully omitted a potential witness or done so accidentally").

Copart has not identified any justification for failing to disclose these witnesses and defendants. *See* ECF No. 340 at 8-9. Copart's position that these errors were not harmless, *id.* at 6-7, is undermined by defendants' inability to depose any of these witnesses before the close of discovery. Although Copart contends these lack of disclosures were at worst "a

50

reasonable mistake" and Copart exhibited "good faith," the court need not find bad faith or willfulness to justify excluding these witnesses from testifying. *See Yeti by Molly, Ltd.*, 259 F.3d at 1106.

Thus, the defendants' motion in limine no. 9, ECF No. 290, is DENIED in part, as to Boyd, and otherwise GRANTED as to Stewart, Stenzler and Mortenson. The court ORDERS the parties to meet and confer to arrange a deposition of Gene Boyd for up to four hours in California. Plaintiff shall pay all costs and attorneys' fees associated with this deposition.

V.     CONCLUSION

Defendants' motion to bifurcate the trial, ECF No. 290, is DENIED.

Ruling on Copart's motion *in limine* no. 1, ECF No. 273, is DEFERRED, and Copart shall propose a limiting instruction.

Copart's motion *in limine* no. 2, ECF No. 274, is tentatively GRANTED as explained above.

Copart's motion *in limine* no. 3, ECF No. 275, is DENIED, and Copart shall propose a limiting instruction as explained above.

Copart's motion *in limine* no. 4, ECF No. 276, is DENIED, but Copart may make specific objections. The court also ORDERS the parties to meet and confer and provide, by the first day of trial, the court a joint annotated version of the relevant contracts, or their competing versions, showing contract terms the parties request be construed either by the court or the jury.

Copart's motion *in limine* no. 5, ECF No. 277, is DENIED.

Copart's motion *in lmine* no. 6, ECF No. 278, is DENIED without prejudice to voir dire of the witness before the witness is called to testify.

Copart's motion *in limine* no. 7, ECF No. 279, is DENIED.

Copart's motion *in limine* no. 8, ECF No. 280, is DENIED.

Defendants' motion *in limine* no. 1, ECF No. 266, is DENIED without prejudice to voir dire of the witness before the witness is called to testify.

Ruling on defendants' motion *in limine* no. 2, ECF No. 267, is DEFERRED, as explained above.

Ruling on defendant's motion *in limine* no. 3, ECF No. 268, is DEFFERRED, as explained above.

Defendants' motion *in limine* no. 4, ECF No. 269, is GRANTED.

Defendants' motion *in limine* no. 5, ECF No. 270, is GRANTED.

Defendants' motion *in limine* no. 6, ECF No. 271, is DENIED, as explained above.

Defendants' motion in limine no. 7, ECF No. 272, is DENIED.

Defendants' motion *in limine* no. 8, ECF No. 289, is GRANTED in part, as explained above.

Defendant's motion in limine no. 9, ECF No. 290, is GRANTED in part and DENIED in part, as explained above.  The court ORDERS the parties to meet and confer to arrange for a deposition of Gene Boyd for up to four hours in California.  Plaintiff shall pay all costs and attorneys' fees associated with this deposition.

IT IS SO ORDERED.

DATED:  April 19, 2018.

_____
UNITED STATES DISTRICT JUDGE