UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPART, INC., | No.  2:14-cv-0046 KJM CKD |
| Plaintiff, | |
| v. | FINAL JURY INSTRUCTIONS |
| SPARTA CONSULTING, INC., KPIT INFOSYSTEMS, INC., and KPIT TECHNOLOGIES LTD., | |
| Defendants. | |
| _____ | |
| SPARTA CONSULTING, INC., | |
| Counterplaintiff, | |
| v. | |
| COPART, INC., | |
| Counterdefendant. | |

DATED:  May 17, 2018.

_____
UNITED STATES DISTRICT JUDGE

1

# FINAL INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence and the arguments of the parties, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. You, and you alone, are the judges of the facts. You must decide what the facts are and then apply those facts to the law, which I will give to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

# FINAL INSTRUCTION NO. 2

You are the sole judges of the evidence in this case and it is up to you to evaluate the witnesses and other evidence.  You are to perform this duty without bias, sympathy, prejudice, or what you think public opinion might be.  You must impartially consider all the evidence in the case, following the law as stated in these instructions.

1

**FINAL INSTRUCTION NO. 3**

2     All parties stand equal before the law, and are to be dealt with as equals in a court of

3     justice.  Corporations are to be treated the same as individuals.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FINAL INSTRUCTION NO. 4

You should not necessarily decide any issue of fact in favor of the side that brought more witnesses or evidence at trial.

The test is which evidence convinces you because it is most believable.

In deciding contested issues, you should keep in mind who has the burden of proof on that issue.

1    **FINAL INSTRUCTION NO. 5**

2        The evidence in this case consists of the sworn testimony of the witnesses and all exhibits

3    received into evidence.  In reaching your verdict, you may consider only the testimony and

4    exhibits received into evidence.

5        Certain things are not evidence, and you may not consider them in deciding what the facts

6    are.  I will list them for you:

7        (1)  Arguments and statements by counsel are not evidence.  The parties' attorneys are not

8    witnesses.  What the attorneys have said in their opening statements, or in their closing arguments

9    and at other times, is intended to help you interpret the evidence, but it is not evidence.  If the

10   facts as you remember them differ from the way the attorneys have stated them, your memory of

11   them controls.

12       (2)  Questions and objections by counsel are not evidence.  You should not be influenced

13   by an objection or by the court's ruling on it.

14       (3)  Testimony that has been excluded or stricken, or that you have been instructed to

15   disregard, is not evidence and must not be considered.

16       (4)  Anything you may have seen or heard when the court was not in session is not

17   evidence.  You are to decide the case solely on the evidence received at the trial.

18

19

20

21

22

23

24

25

26

27

28

6

**FINAL INSTRUCTION NO. 6**

There are two kinds of evidence, direct and circumstantial.  A witness testifying to having actual knowledge of a fact and documents received in evidence constitute direct evidence. Circumstantial evidence is a chain of evidence from which you could find that another fact exists, even though no one directly testified as to that fact.

Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

How much you believe evidence should not depend on whether it is direct or circumstantial, but on whether the evidence is trustworthy and reliable.  For that reason, you may find a fact has been proven by circumstantial evidence if that conclusion seems reasonable to you.

# FINAL INSTRUCTION NO. 7

In deciding what the facts are, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account any number of factors, which may include the following:

1. Was the witness able to see, hear or know the things about which the witness testified?

2. How good is the witness's memory and is the witness able to testify clearly?

3. Was the witness's manner while testifying straightforward and convincing, or evasive and unconvincing?

4. Did the witness have an interest in the outcome of the case or any bias or prejudice concerning anyone or anything that mattered in the case, and if so, did that interest or bias affect the testimony?

5. How reasonable was the witness's testimony when you consider it in light of all the other evidence in the case?

6. Was the witness's testimony contradicted by what that witness said or did at another time, whether those statements are presented through live testimony or contained in documents introduced into evidence or by the testimony of other believable witnesses or evidence?

7. Are there any other factors that bear on believability?

In deciding whether or not to believe a witness, remember that people sometimes forget things or sometimes get confused.

Also remember that the weight of evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**FINAL INSTRUCTION NO. 8**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial in lieu of that person's live testimony.

The depositions of certain witnesses were taken before trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

To the extent that a deposition was used for impeachment purposes with a witness testifying at trial, you may consider that deposition, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**FINAL INSTRUCTION NO. 9**

Some evidence may have been admitted only for a limited purpose.

When I instructed you that an item of evidence was being admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**FINAL INSTRUCTION NO. 10**

You have heard testimony from multiple witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**FINAL INSTRUCTION NO. 11**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess or extending a break.  Please understand that while you were waiting, we were working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum.  I did not always grant a party's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**FINAL INSTRUCTION NO. 12**

Unless I tell you otherwise, the party having the burden of proof on an issue must prove it by a "preponderance of the evidence." Copart, as the plaintiff, has the burden of proof on its claims. Defendants have the burden of proof on their affirmative defenses. Sparta Consulting, as the counterplaintiff in this case, has the burden of proof on its claims against Copart. Copart has the burden of proof on any affirmative defenses against Sparta's claims as a counterplaintiff.

Proof by a preponderance of the evidence means the evidence is more convincing and more probably true than not. If the evidence as to any issue is evenly balanced, your finding upon that issue must be against the party who had the burden of proving it.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all the evidence having to do with that issue regardless of who produced it.

I will instruct you about the burden of proof in connection with the specific claims and affirmative defenses.

**FINAL INSTRUCTION NO. 13**

The parties have agreed to 23 facts. You must therefore treat these facts as having been proved. A document setting forth these facts is included in your jury binder.

**FINAL INSTRUCTION NO. 14**

You should decide the case as to each party separately.  Unless otherwise stated, the instructions apply to all parties.

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**FINAL INSTRUCTION NO. 15**

Copart's Claims

In this civil suit, Copart brings several claims against Sparta Consulting, KPIT Infosystems and KPIT Technologies.  Copart has the burden of proving these claims.

Specifically, Copart's claims against Sparta are for:

1.    Fraud

2.    Fraudulent Inducement (False Promise)

3.    Breach of Contract

4.    Breach of the Implied Covenant of Good Faith and Fair Dealing

5.    Professional Negligence

6.    Violation of the Computer Fraud and Abuse Act

7.    Violation of the California Computer Data Access and Fraud Act

Additionally, Copart has asserted an alter ego theory of liability, asserting KPIT Infosystems and/or KPIT Technologies are also liable for Copart's claims against Sparta.  The alter ego theory of liability is described in Instruction No. 36.

Sparta, KPIT Infosystems and KPIT Technologies deny all of Copart's claims, and in some instances, raise affirmative defenses, as explained below.

Sparta's Claims

Sparta has also brought several counterclaims against Copart.  Sparta has the burden of proof on these counterclaims.

Sparta's counterclaims against Copart are for:

1.    Breach of Contract

2.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Copart denies these counterclaims and in some instances raises affirmative defenses, as explained below.

Claims generally

The parties' claims, counterclaims and affirmative defenses are described in the following instructions.  Each claim, counterclaim and affirmative defense involves a distinct set of

1    elements.  Although the claims, counterclaims and affirmative defenses may have some elements

2    in common, you should consider each claim, counterclaim and affirmative defense individually.

3    Copart, Sparta, KPIT Infosystems or KPIT Technologies can succeed on any one claim,

4    counterclaim or affirmative defense only if it proves all of the elements of that claim,

5    counterclaim or affirmative defense.

6         The following instructions set forth the elements that Copart, Sparta, KPIT Infosystems or

7    KPIT Technologies must meet under each claim, counterclaim or affirmative defense.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. 16**

**Copart's Claim against Sparta**

**Fraud—Intentional Misrepresentation**

Copart claims that Sparta is liable to Copart for fraud under multiple theories of liability. Under the first theory of fraud liability, Copart claims that Sparta made a false representation that harmed it.  To establish fraud in this way, Copart must prove all of the following:

1.  Sparta represented to Copart that the following was true:

     During the Design Phase, Sparta would ensure 100% Copart Auction System ("CAS") functionality;

2.  Sparta's representation was false;

3.  Sparta knew the representation was false when Sparta made it, or Sparta made the representation recklessly without regard for its truth, because Sparta intended to complete only that which was in the design documents;

4.  Sparta intended that Copart rely on that representation;

5.  Copart reasonably relied on Sparta's representation;

6.  Copart was harmed; and

7.  Copart's reliance on Sparta's representation was a substantial factor in causing Copart's harm.

Definitions related to the elements of fraud, reviewed above, are contained in Instruction Nos. 19-20.

18

**FINAL INSTRUCTION NO. 17**

**Copart's Claim against Sparta**

**Fraud—Concealment**

Copart also claims Sparta is liable for fraud because Sparta concealed certain information. To establish this claim, Copart must prove all of the following:

1.  Sparta had a duty to disclose one or more of the following facts to Copart:

    a.  Sparta removed its assessments of risk and "scope creep" from a presentation delivered to Copart;

    b.  Sparta copied materials from AIMOS into Sparta's own AutoEdge system, but never told Copart;

    c.  While negotiating the ISA Amendment, Sparta did not disclose a single AIMOS module was not functioning and might cause "severe" problems; and/or

    d.  Sparta did not disclose ongoing failures regarding its project team;

2.  Sparta intentionally failed to disclose one or more of the facts that were known only to Sparta and that Copart could not have discovered;

3.  Sparta intended to deceive Copart by concealing the fact(s);

4.  Had the omitted information been disclosed, Copart reasonably would have behaved differently;

5.  Copart was harmed; and

6.  Sparta's concealment was a substantial factor in causing Copart's harm.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. 18**

**Copart's Claim against Sparta**

**Fraudulent Inducement—False Promise**

Copart claims it was harmed because Sparta made a false promise.  To establish this claim, Copart must prove all of the following:

   1.  Sparta promised the following to Copart:

        During the Design Phase, Sparta would ensure 100% Copart Auction System ("CAS") functionality;

   2.  Sparta did not intend to perform this promise when Sparta made it because Sparta intended to complete only that which was in the design documents;

   3.  Sparta intended that Copart rely on this promise;

   4.  Copart reasonably relied on Sparta's promise in signing off on Milestones 1-4;

   5.  Sparta did not perform the promised act;

   6.  Copart was harmed; and

   7.  Copart's reliance on Sparta's promise was a substantial factor in causing Copart's harm.

Definitions related to the elements of fraudulent inducement reviewed above are contained in the next two instructions, Nos. 19 and 20.

20

# FINAL INSTRUCTION NO. 19

## Reliance

A party relies on another's misrepresentation, concealment or false promise if it proves a misrepresentation, concealment or false promise and:

    1.  The misrepresentation, concealment, or false promise substantially influenced the first party to behave in a certain way; and

    2.  The first party probably would not have behaved that way without the misrepresentation, concealment, or false promise.

It is not necessary for a misrepresentation, concealment or false promise to be the only reason for the first party's conduct.

**FINAL INSTRUCTION NO. 20**

**Reasonable Reliance**

In determining whether Copart's reliance on a misrepresentation, concealment or false promise was reasonable, Copart must first prove that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter was material, you must then decide whether it was reasonable for Copart to rely on a misrepresentation, concealment or false promise. In making this decision, you should take into consideration Copart's intelligence, knowledge, education and experience.

However, it is not reasonable for Copart to rely on a misrepresentation, concealment or false promise that is preposterous. It also is not reasonable for Copart to rely on a misrepresentation, concealment or false promise if facts that are within Copart's observation show that the misrepresentation, concealment or false promise is obviously false.

**FINAL INSTRUCTION NO. 21**

**Copart's Claim against Sparta**

**Breach of Contract—Introduction**

Copart claims it entered into a contract with Sparta for the SAP Project. The Implementation Services Agreement ("ISA") is a contract, as is the Build Statement of Work ("SOW"), Design SOW, and ISA Amendment.

Copart claims that Sparta breached a contract by failing to perform under the express terms and covenants set forth within the ISA, including, but not limited to, sections 2.2, 2.3, 3.2, 4.5, 5.2, 7.2, 9.4, 14.2 and 19.2.

Copart also claims that Sparta's breach of contract caused harm for which Sparta should pay.

To recover damages for breach of contract in this case, Copart must first prove that it was induced by a false promise made by Sparta, as explained in preceding Instruction Nos. 18-20, to sign Milestone Signoffs 1 through 4. If you first find that Copart was induced by a false promise made by Sparta to sign Milestone Signoffs 1 through 4, then you should decide whether Sparta is liable for breach of contract based on this instruction and Instruction Nos. 22-23.

If you do not find that Copart was induced to sign Milestone Signoffs 1 through 4 by a false promise made by Sparta, then you should find for Sparta on this claim, and you do not need to consider Instruction Nos. 21-23.

**FINAL INSTRUCTION NO. 22**

**Breach of Contract—Essential Factual Elements**

To recover damages from Sparta for breach of contract, Copart must prove it was induced by a false promise made by Sparta to sign Milestone Signoffs 1 through 4, as explained in the preceding instruction. Copart also must prove the following:

1. Sparta and Copart entered into a contract;

2. Copart did all, or substantially all, of the significant things that the contract required Copart to do;

3. All conditions required by the contract for Sparta's performance had occurred;

4. Sparta failed to do something that the contract required, or did something that the contract prohibited;

5. Copart was harmed; and

6. Sparta's breach of contract was a substantial factor in causing Copart's harm.

The parties agree that element one is established, and therefore you should accept it as established.

This claim also is covered by the next instruction, No. 23.

Sparta denies Copart's claim overall. Sparta also asserts the affirmative defense of unclean hands, explained further in Instruction No. 25.

If you find the above six elements established, you should find for Copart on this claim unless you find Sparta has proven its affirmative defense of unclean hands. If Sparta has proven its affirmative defense of unclean hands, then you should find for Sparta on this claim.

# FINAL INSTRUCTION NO. 23

## Interpretation—Construction of Contract as a Whole

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**FINAL INSTRUCTION NO. 24**

**Copart's Claim against Sparta**

**Breach of Implied Covenant of Good Faith and Fair Dealing—Essential Factual Elements**

To recover damages for its claim of breach of the implied covenant of good faith and fair dealing, Copart must first prove that it was induced by a false promise made by Sparta, as explained in the preceding Instructions No. 18-20, to sign Milestone Signoffs 1 through 4. If you first find that Copart was induced by a false promise made by Sparta to sign Milestone Signoffs 1 through 4, then you should decide whether Sparta is liable for breach of the implied covenant of good faith and fair dealing based on this instruction.

If you do not find that Copart was induced to sign Milestone Signoffs 1 through 4 by a false promise made by Sparta, then you should find for Sparta on this claim, and you do not need to consider this instruction.

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Copart claims specifically that Sparta violated the duty to act fairly and in good faith. To establish this claim, Copart must prove all of the following:

1. Copart and Sparta entered into a contract;

2. Copart did all, or substantially all of the significant things that the contract required it to do or that it was excused from having to do those things;

3. All conditions required for Sparta's performance had occurred or were excused;

4. Sparta unfairly interfered with Copart's right to receive the benefits of the contract; and

5. Copart was harmed by Sparta's conduct.

The parties agree that element one is established, and therefore you should accept it as established.

Sparta denies Copart's claim overall. Here as well, Sparta asserts the affirmative defense of unclean hands, explained further in the following instruction, No. 25.

26

If you find the above five elements established, you should find for Copart on this claim unless you find Sparta has proven its affirmative defense of unclean hands.  If Sparta has proven its affirmative defense of unclean hands, then you should find for Sparta on this claim.

# FINAL INSTRUCTION NO. 25

## Sparta's Affirmative Defense—Unclean Hands

Sparta claims as a defense that Copart's misconduct precludes Copart from asserting its breach of contract and breach of the implied covenant of good faith and fair dealing claims. This defense is known as the defense of unclean hands. To establish this defense, Sparta must prove:

1. Copart acted unconscionably, in bad faith, or inequitably;

2. Copart's conduct directly related to the breach of contract and/or breach of the implied covenant of good faith and fair dealing claims it has asserted against Sparta; and

3. Copart's conduct injured Sparta.

Copart denies that it has unclean hands as relevant to this case. If you find Sparta has proven the above three elements, then you must find against Copart on its breach of contract and/or breach of the implied covenant of good faith and fair dealing claims, if you otherwise found for Copart on one or both of those claims.

# FINAL INSTRUCTION NO. 26

## Copart's Claim against Sparta

## Professional Negligence

Copart claims Sparta, as an SAP systems integrator, is liable for professional negligence. A mere breach of contract is not enough to establish professional negligence. You must independently determine whether Sparta exercised the skill and care of an SAP systems integrator under the circumstances. To establish this claim, Copart must prove all of the following:

1. Sparta had a duty as an SAP systems integrator to use such skill, prudence, and diligence as other members of the profession of SAP systems integrators commonly possess and exercise;

2. Sparta breached that duty;

3. That there was a causal connection between the negligent conduct and any resulting injury to Copart; and

4. Copart suffered actual loss or damage resulting from the professional negligence.

To meet the first element, Copart must prove that there is a particular standard of care associated with SAP systems integrators, as explained in the following instruction.

The professional negligence claim also is covered by Instruction Nos. 27-29.

Sparta denies Copart's claim overall. Sparta also asserts the affirmative defense of comparative fault, explained further in Instruction No. 30.

If you find the above four elements established, you should find for Copart on this claim and account for any percentage of Copart's fault if you find Sparta has proven its affirmative defense of comparative fault.

1

**FINAL INSTRUCTION NO. 27**

2

**Professional Negligence—Standard of Care**

3       An SAP systems integrator is negligent if it fails to use the skill and care that a reasonably

4  careful SAP systems integrator would have used in similar circumstances.  This level of skill,

5  knowledge, and care is sometimes referred to as "the standard of care."

6       You must determine the level of skill and care that a reasonably careful SAP systems

7  integrator would use in similar circumstances, based only on testimony of witnesses LaBaron

8  Hartfield and James Mottern, who have testified in this case.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30

**FINAL INSTRUCTION NO. 28**

**Professional Negligence—Success Not Required**

An SAP systems integrator is not negligent simply because its efforts are unsuccessful or it makes an error that was reasonable under the circumstances. An SAP systems integrator is negligent only if it was not as skillful, knowledgeable, or careful as another reasonable SAP systems integrator would have been in similar circumstances.

**FINAL INSTRUCTION NO. 29**

**Professional Negligence—Causation**

      To recover damages from Sparta, Copart must prove that it would have obtained a better result if Sparta had acted as a reasonably careful SAP systems integrator.  Copart was not harmed by Sparta's conduct if the same harm would have occurred anyway without that conduct.

**FINAL INSTRUCTION NO. 30**

**Sparta's Affirmative Defense to Professional Negligence Claim—**

**Comparative Fault of Copart**

Sparta claims that Copart's own negligence contributed to Copart's harm.  To succeed on this claim, Sparta must prove both of the following:

    1. Copart was negligent; and

    2. Copart's negligence was a substantial factor in causing Copart's harm.

If Sparta proves the above, any damages you award Copart will be based on the percentage of Copart's responsibility compared with Sparta's responsibility, as you determine it. I will calculate any actual reduction required.

**FINAL INSTRUCTION NO. 31**

**Copart's Claim against Sparta**

**The Computer Fraud and Abuse Act ("CFAA")—Definitions**

Copart claims that Sparta violated two provisions of the federal Computer Fraud and Abuse Act ("CFAA"). These provisions are covered by the next two instructions, Nos. 32-33. For the purposes of assessing both of Copart's claims under the CFAA, the following terms have the following meanings:

1. "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;

2. "protected computer" means a computer that is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States;

3. "without authorization" means without permission or power to use the computer for any purpose granted by an authority;

4. "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter;

5. "intent to defraud" means an intent to deceive or cheat;

6. "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; and

7. "person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity.

34

**FINAL INSTRUCTION NO. 32**

**CFAA Claim Based on 18 U.S.C. § 1030(a)(2)(C)**

Copart claims that Sparta committed computer fraud in violation of Section 1030(a)(2)(C) of the CFAA.  To establish this claim, Copart must prove all of the following by a preponderance of the evidence:

    1.  Sparta intentionally accessed a Copart computer;

    2.  Copart's computer was a protected computer;

    3.  Sparta accessed the protected computer without authorization or in a manner exceeding authorized access;

    4.  Sparta thereby obtained information from the protected computer; and

    5.  there was loss to Copart during any one-year period aggregating at least $5,000 in value.

If you find Copart has established there was loss to Copart as otherwise required by the fifth element, the court instructs you that the amount of loss is $8,000.

**FINAL INSTRUCTION NO. 33**

**CFAA Claim Based on 18 U.S.C. § 1030(a)(4)**

Copart also claims that Sparta committed computer fraud in violation of Section 1030(a)(4) of the CFAA.  To establish this claim, Copart must prove all of the following by a preponderance of the evidence:

    1.  Sparta knowingly and with intent to defraud accessed a Copart computer or computer system;

    2.  Sparta accessed the Copart computer or computer system without authorization or in a manner that exceeded authorized access;

    3.  Sparta did so with intent to defraud;

    4.  Copart's computer was a protected computer;

    5.  by accessing the Copart computer or computer system, Sparta furthered the intended fraud;

    6.  by accessing the Copart computer or computer system, Sparta obtained anything of value; and

    7.  Sparta caused a loss to Copart during any one-year period aggregating at least $5,000 in value.

If you find Copart has established there was a loss to Copart as otherwise required by the seventh element, the court instructs you that the amount of loss is $8,000.

36

# FINAL INSTRUCTION NO. 34

## Copart's Claim against Sparta

### The California Computer Data Access and Fraud Act ("CDAFA")—Definitions

Copart claims Sparta violated the California Computer Data Access and Fraud Act ("CDAFA"). This claim is also covered by Instruction No. 35. For the purposes of assessing Copart's claim under the CDAFA, the following terms have the following meanings:

1. "Access" means to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network.

2. "Computer network" means any system that provides communications between one or more computer systems and input/output devices, including, but not limited to, display terminals, remote systems, mobile devices, and printers connected by telecommunication facilities.

3. "Computer program or software" means a set of instructions or statements, and related data, that when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions.

4. "Computer services" includes, but is not limited to, computer time, data processing, or storage functions, Internet services, electronic mail services, electronic message services, or other uses of a computer, computer system, or computer network.

5. "Computer system" means a device or collection of devices, including support devices and excluding calculators that are not programmable and capable of being used in conjunction with external files, one or more of which contain computer programs, electronic instructions, input data, and output data, that performs functions, including, but not limited to, logic, arithmetic, data storage and retrieval, communication, and control.

6. "Data" means a representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device.

7.  "Supporting documentation" includes, but is not limited to, all information, in any form, pertaining to the design, construction, classification, implementation, use, or modification of a computer, computer system, computer network, computer program, or computer software, which information is not generally available to the public and is necessary for the operation of a computer, computer system, computer network, computer program, or computer software.

# FINAL INSTRUCTION NO. 35

## CDAFA—Elements

Copart claims that Sparta committed violations of the CDAFA.  To establish this claim, Copart must prove all of the following by a preponderance of the evidence:

1.  Sparta:

    a.  Knowingly accessed and without permission altered, damaged, deleted, destroyed, or otherwise used any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data; or

    b.  Knowingly accessed and without permission took, copied, or made use of any data from a computer, computer system, or computer network, or took or copied any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network; or

    c.  Knowingly and without permission used or caused to be used computer services; or

    d.  Knowingly and without permission provided or assisted in providing a means of accessing a computer, computer system, or computer network in violation of this section; or

    e.  Knowingly and without permission accessed or caused to be accessed any computer, computer system, or computer network;

2.  Copart suffered damage or loss by reason of this violation; and

3.  the acts attributable to Sparta were not committed by a person within the scope of his or her lawful employment.  For purposes of this element, a person acts within the scope of his or her employment when he or she performs acts that are reasonably necessary to the performance of his or her work assignment.

**FINAL INSTRUCTION NO. 36**

**Copart's Claim of Alter Ego Liability**

In this case, Copart claims that Sparta, a subsidiary of KPIT Infosystems, was the mere instrument or tool of its parent corporation, KPIT Infosystems.  Copart also claims that KPIT Infosystems, a subsidiary of KPIT Technologies, was the mere instrument or tool of its parent corporation, KPIT Technologies.  The law calls the relationship Copart claims in each instance an alter ego relationship.

To find that either KPIT Infosystems or KPIT Technologies, or both, are liable for the acts of Sparta based on alter ego liability in this case, Copart must prove two things: (1) a unity of interest and ownership between the parent and subsidiary company such that the separate personalities of the parent and subsidiary do not in reality exist; and (2) there would be an inequitable result if the acts in question are treated as those of Sparta alone.

In determining whether Copart has met its burden of showing a unity of interest and ownership such that the separate personalities of the parent and subsidiary do not exist, you may consider:

     a.     commingling of funds and other assets of the two entities;

     b.     the holding out by one entity that it is liable for the debts of the other;

     c.     identical equitable ownership in the two entities;

     d.     use of the same offices and employees;

     e.     use of one as a mere shell or conduit for the affairs of the other;

     f.     inadequate capitalization;

     g.     disregard of corporate formalities;

     h.     lack of segregation of corporate records; and

     i.     identical directors and officers.

No single factor controls your decision, and you do not need to find that each of these factors applies to find Copart has proven a unity of interest and ownership.

For Copart to prove there would be an inequitable result to treat the acts in question as Sparta's alone, Copart must prove that substantial injustice will result if alter ego liability is not

40

1    imposed.  Where a failure to disregard the separate identities of the parent and subsidiary would

2    allow the parent to shield itself from the consequences of the subsidiary's conduct and enable it to

3    limit its liability for unlawful acts by performing them through its controlled subsidiary, the

4    substantial injustice element is satisfied.

5          An identical analysis should be undertaken to determine whether Sparta is the alter ego of

6    KPIT Infosystems and separately whether KPIT Infosystems is the alter ego of KPIT

7    Technologies.

8          Should you find that Copart has proved either relationship, or both, by a preponderance of

9    the evidence, the law requires you to disregard the separate status of Sparta and hold KPIT

10   Infosystems legally responsible for Sparta's acts, and/or to disregard the separate status of KPIT

11   Infosystems and hold KPIT Technologies legally responsible for KPIT Infosystems' acts.  In

12   other words, if you find Sparta an alter ego of KPIT Infosystems, then for each claim on which

13   you find against Sparta, you will also find against KPIT Infosystems.  If you also find KPIT

14   Infosystems an alter ego of KPIT Technologies, then for each claim on which you find against

15   Sparta you will also find against KPIT Technologies.

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. 37**

**Sparta's Breach of Contract Claim against Copart**

Sparta claims that Copart breached the ISA by failing to perform under the express terms and covenants set forth within section 15.2 of the ISA by failing to pay Sparta and by failing to reimburse Sparta for expenses incurred and owed under the ISA.

Sparta also claims that Copart's breach of contract caused harm for which Copart should pay.

This claim is also covered by the following instructions, Nos. 38-39.

Copart denies Sparta's claim overall. Copart also asserts the affirmative defenses of waiver and unclean hands, explained further in Instruction Nos. 41-42.

**FINAL INSTRUCTION NO. 38**

**Sparta's Breach of Contract Claim—Essential Factual Elements**

To recover damages from Copart for breach of contract, Sparta must prove the following:

1. Sparta and Copart entered into a contract;

2. Sparta did all, or substantially all, of the significant things that the contract required Sparta to do;

3. All conditions required by the contract for Copart's performance had occurred;

4. Copart failed to do something that the contract required, or did something that the contract prohibited;

5. Sparta was harmed; and

6. Copart's breach of contract was a substantial factor in causing Sparta's harm.

The parties agree that element one is established, and therefore you should accept it as established.

Copart denies Sparta's claim overall. Copart also asserts the affirmative defenses of waiver and unclean hands, explained further in Instruction Nos. 41-42.

If you find the above six elements established, you should find for Sparta on this claim unless you find Copart has proven its affirmative defense of unclean hands. If you find Copart has proven its unclean hands affirmative defense (Instruction No. 42), then you should find for Copart on this claim. If you find Copart has proven its waiver affirmative defense, then you should adjust any damages you otherwise award to Sparta, as explained in Instruction No. 41.

43

**FINAL INSTRUCTION NO. 39**

**Interpretation—Disputed Word**

As relevant to Sparta's breach of contract claim against Copart, Sparta and Copart dispute the meaning of the word "agreed" as used in Section 15.2 of the ISA:

> In the event that Copart terminates this Agreement pursuant to this Section 15.2, then Copart shall pay [Sparta] only for the portion of the Services that have been performed and completed as of the termination date, as such portion agreed by Copart and calculated and documented by [Sparta's] project management software system.

For context, section 4 of the ISA provides that Sparta is entitled to payment for work Copart "accepted," and also provides a process for Copart's acceptance of completed work.  *See* ISA §§ 4.1-4.4.  Section 15.2 of the ISA separately provides for Sparta's right to be paid upon termination for work Copart "agreed" to, without setting out a process for determing "the portion of the Services that have been performed and completed as of the termination date."  ISA § 15.2.  Whether Copart "agreed" to Sparta's work is a fact-intensive inquiry submitted to you for resolution.  Sparta may be entitled to payment for the "portion of the Services that have been performed and completed as of the termination date," ISA § 15.2, as referenced in the Statements of Work, *see* ISA §§ 1.32, 2.1.  Whether Copart "agreed" to the work may be determined from a review of the ISA, SOWs and ISA Amendment, from evidence of project documents Copart reviewed, weekly and monthly meetings, and any other evidence you find matters for the purpose of answering this question.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

44

# FINAL INSTRUCTION NO. 40

## Sparta's Claim of Breach of Implied Covenant of Good Faith and Fair Dealing—

## Essential Factual Elements

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Sparta claims that Copart violated the duty to act fairly and in good faith. To establish this claim, Sparta must prove all of the following:

1. Sparta and Copart entered into a contract;

2. Sparta did all, or substantially all of the significant things that the contract required it to do or that it was excused from having to do those things;

3. All conditions required for Copart's performance had occurred or were excused;

4. Copart unfairly interfered with Sparta's right to receive the benefits of the contract; and

5. Sparta was harmed by Copart's conduct.

The parties agree that element one is established and therefore you should accept it as established.

Copart denies Sparta's claim overall. Copart also asserts the affirmative defenses of waiver and unclean hands, explained further in Instruction Nos. 41-42.

If you find the above five elements established, you should find for Sparta on this claim unless you find Copart has proven its affirmative defense of unclean hands. If you find Copart has proven its unclean hands affirmative defense (Instruction No. 42), then you should find for Copart on this claim. If you find Copart has proven its waiver affirmative defense, then you should adjust any damages you otherwise award to Sparta, as explained in Instruction No. 41.

# FINAL INSTRUCTION NO. 41

## Copart's Affirmative Defense—Waiver

Copart claims that it did not have to pay Sparta for any New Services, as used in ISA § 2.2, without Copart's advance agreement and that any New Services required Copart to agree upon the terms of such services, with such terms being accepted only upon Copart's written authorization of a new Statement of Work. Copart claims that Sparta gave up its right to request payments for New Services when it signed the ISA. Giving up rights in this way is called a "waiver."

To succeed on this defense, Copart must prove both of the following, by clear and convincing evidence:

1. Sparta knew Copart was required to pay Sparta only for New Services with Copart's advance agreement, that any New Services required Copart to agree upon the terms of such services, with such terms being accepted only upon Copart's written authorization of a new Statement of Work, and that Sparta was giving up its right to request payments for New Services when it signed the ISA; and

2. Sparta freely and knowingly gave up its right to have Copart perform these obligations.

A waiver may be oral or written or may arise from conduct that shows Sparta gave up the right waived.

If Copart proves that Sparta gave up its right to Copart's payment for New Services, then Copart was not required to perform these obligations.

Sparta denies that Copart can establish its affirmative defense of waiver.

If you find Copart has proven the above two elements by clear and convincing evidence, then you should not award damages to Sparta for any New Services to which Copart did not agree, and you should adjust any award of damages to Sparta to omit amounts for New Services.

46

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. 42**

**Copart's Affirmative Defense—Unclean Hands**

Copart claims as a defense that Sparta's misconduct precludes Sparta from asserting its breach of contract and breach of the implied covenant of good faith and fair dealing claims. This defense is known as the defense of unclean hands. To establish this defense, Copart must prove:

1. Sparta acted unconscionably, in bad faith, or inequitably;

2. Sparta's conduct directly related to the breach of contract and/or breach of the implied covenant of good faith and fair dealing claims it has asserted against Copart; and

3. Sparta's conduct injured Copart.

Sparta denies that it has unclean hands as relevant to this case. If you find Copart has proven the above three elements, then you must find against Sparta on its breach of contract and/or breach of the implied covenant of good faith and fair dealing claims, if you otherwise found for Sparta on one or both of those claims.

47

**FINAL INSTRUCTION NO. 43**

It is the duty of the court to instruct you about the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered.

If you find for Copart on its claims against Sparta, you must determine Copart's damages against Sparta. Copart generally has the burden of proving its damages by a preponderance of the evidence, except that it must prove its right to any punitive damages by clear and convincing evidence. Damages means the amount of money that will reasonably and fairly compensate Copart for any injury you find was caused by Sparta.

If you find for Sparta on its claims against Copart, you must determine Sparta's damages from Copart. Sparta has the burden of proving its damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Sparta for any injury you find was caused by Copart.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

# FINAL INSTRUCTION NO. 44

Copart seeks damages from Sparta under more than one legal theory. Sparta also seeks damages from Copart under more than one legal theory. Each item of damages may be awarded only once, regardless of the number of legal theories alleged. The below instructions explain what damages are available for each claim.

Copart's damages requests are covered by Instruction Nos. 45-51. Sparta's damages requests are covered by Instruction Nos. 48 and 52.

**FINAL INSTRUCTION NO. 45**

**Copart's Claims against Sparta**

**Fraud, Fraudulent Inducement—False Promise, Professional Negligence—Damages**

If you decide that Copart has proven its claims, as explained in Instruction Nos. 16-20 and 26-29, against Sparta for fraud, fraudulent inducement—false promise, or professional negligence, you also must decide how much money will reasonably compensate Copart for the harm.

The amount of damages must include an award for each item of harm caused by Sparta's wrongful conduct, even if the particular harm could not have been anticipated.

Copart does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Copart:

1.    Payments to Sparta for Milestones 1 through 7;

2.    Payments to companies or individuals other than Sparta for work on the AIMOS project;

3.    The value of Copart's internal labor;

4.    The amount of Copart's internal expenses;

5.    Copart's lost profits in Germany and Spain resulting from Sparta's breach of the contract, as explained in Instruction No. 47.

**FINAL INSTRUCTION NO. 46**

**Copart's Claims against Sparta**

**Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing—**

**Damages**

If you decide that Copart has proven its claim against Sparta for breach of contract or breach of the implied covenant of good faith and fair dealing, as explained in Instruction Nos. 21-24, you also must decide how much money will reasonably compensate Copart for the harm caused by the breach. The purpose of such damages is to put Copart in as good a position as it would have been if Sparta had performed as promised.

To recover damages for any harm, Copart must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of contract or breach of the implied covenant of good faith and fair dealing.

Copart also must prove the amount of its damages according to the following instructions. Copart does not have to prove the exact amount of damages. However, you must not speculate or guess in awarding damages.

Copart claims damages for:

1.    Payments to Sparta for Milestones 1 through 7;

2.    Payments to companies or individuals other than Sparta for work on the AIMOS project;

3.    The value of Copart's internal labor;

4.    The amount of Copart's internal expenses;

5.    Copart's lost profits in Germany and Spain resulting from Sparta's breach of the contract, as explained in Instruction No. 47.

Copart cannot recover damages for Milestones 8 through 15 based on breach of contract or breach of the implied covenant of good faith and fair dealing.

Copart's request for damages based on breach of contract and breach of the implied covenant of good faith and fair dealing also is covered by Instruction Nos. 47-48.

51

# FINAL INSTRUCTION NO. 47

## Copart's Claimed Lost Profits

To recover damages for lost profits, Copart must prove it is reasonably certain it would have earned profits but for Sparta's conduct.

To decide any damages for lost profits, you must determine the gross amount Copart would have received but for Sparta's conduct and then subtract from that amount the expenses Copart would have had if Sparta's conduct had not occurred.

An amount of lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**FINAL INSTRUCTION NO. 48**

**Both Parties' Claims**

**Breach of Contract—Mitigation of Damages**

If Sparta breached a contract and the breach caused harm, Copart is not entitled to recover damages for harm that Sparta proves Copart could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of Copart's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Copart made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

Likewise, if Copart breached a contract and the breach caused harm, Sparta is not entitled to recover damages for harm that Copart proves Sparta could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of Sparta's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Sparta made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

53

**FINAL INSTRUCTION NO. 49**

**Copart's Claim against Sparta**

**The Computer Fraud and Abuse Act, 18 U.S.C. § 1030—Compensatory Damages**

If you find that Sparta violated either section of the CFAA as described above in Instruction Nos. 31-33, you may award damages under the CFAA for any reasonable cost to Copart. If you do award these damages, in this case they include the costs of investigating the violation, which the court instructs you is $8,000.

1

**FINAL INSTRUCTION NO. 50**

2

**Copart's Claim against Sparta**

3

**The California Computer Data Access and Fraud Act—Compensatory Damages**

4     If you find that Sparta violated the CDAFA as described above in Instruction Nos. 34-35,

5   you may award damages to Copart.  If you do award these damages, in this case they include

6   amounts sufficient to compensate Copart, which the court instructs you is $8,000.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTION NO. 51**

**Copart's Claimed Punitive Damages**

If you find for Copart on its claims for fraud, fraudulent inducement—false promise, or professional negligence, then you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Sparta only if Copart proves by clear and convincing evidence that Sparta engaged in that conduct with malice, oppression, or fraud.

"Malice" means that Sparta acted with intent to cause injury or that Sparta's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his, her, or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that Sparta's conduct was despicable and subjected Copart to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Sparta intentionally misrepresented or concealed a material fact and did so intending to harm Copart.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Sparta's conduct? In deciding how reprehensible Sparta's conduct was, you may consider, among other factors:

    1. Whether the conduct caused physical harm;

    2. Whether Sparta disregarded the health or safety of others;

    3. Whether Copart was financially weak or vulnerable and Sparta knew Copart was financially weak or vulnerable and took advantage of Copart;

    4. Whether Sparta's conduct involved a pattern or practice; and

56

5.  Whether Sparta acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Copart's harm?

(c) In view of Sparta's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because Sparta has substantial financial resources.

# FINAL INSTRUCTION NO. 52

## Sparta's Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims—Damages

If you decide that Sparta has proven its claim against Copart for breach of contract or breach of the implied covenant of good faith and fair dealing as explained in Instruction Nos. 37-40, you also must decide how much money will reasonably compensate Sparta for the harm caused by the breach. The purpose of such damages is to put Sparta in as good a position as it would have been if Sparta had performed as promised.

To recover damages for any harm, Sparta must prove by a preponderance of the evidence that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of contract or breach of the implied covenant of good faith and fair dealing.

Sparta also must prove by a preponderance of the evidence the amount of its damages according to this instruction. Sparta does not have to prove the exact amount of damages. However, you must not speculate or guess in awarding damages.

Sparta claims damages for:

1. Payment for work Sparta performed and completed as provided by section 15.2 of the ISA; and

2. Sparta's unreimbursed expenses.

Sparta's request for damages based on breach of contract and breach of the implied covenant of good faith and fair dealing also is covered by Instruction No. 48.

If you find Copart has proven its waiver affirmative defense, then you should adjust any damages you otherwise award to Sparta, as explained in Instruction No. 41

58

**FINAL INSTRUCTION NO. 53**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

**FINAL INSTRUCTION NO. 54**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**FINAL INSTRUCTION NO. 55**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**FINAL INSTRUCTION NO. 56**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy or security officer, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**FINAL INSTRUCTION NO. 57**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.